James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Proposed Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ———————————————————— x | | |
| In re | : | Chapter 11 |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| ———————————————————— x | | |

## DEBTOR'S APPLICATION FOR APPOINTMENT OF
## KROLL RESTRUCTURING ADMINISTRATION LLC
## <u>AS CLAIMS AND NOTICING AGENT</u>

The above-captioned debtor and debtor in possession (the "***Debtor***") files this application

(the "***Section 156(c) Application***") for entry of an order, substantially in the form of **<u>Exhibit A</u>**

hereto (the "***Retention Order***"), pursuant to section 156(c) of title 28 of the United States Code,

section 105(a) of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 5075-1 of

the Local Bankruptcy Rules for the Southern District of New York (the "***Local Rules***"),

appointing Kroll Restructuring Administration LLC ("***Kroll***")[2] as claims and noticing agent

("***Claims and Noticing Agent***") in the Debtor's chapter 11 case effective *nunc pro tunc* to the

---

[1]  The last four digits of SVB Financial Group's tax identification number are 2278.

[2]  Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.  There has not been any change in the company's leadership, ownership, or organizational structure.

Petition Date (as defined below).  In support of the Section 156(c) Application, the Debtor

submits the Declaration of Benjamin J. Steele, Managing Director of Kroll (the "***Steele***

***Declaration***"), attached hereto as __**Exhibit B**__, and respectfully represents as follows:

### Jurisdiction and Venue

1.        The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28

U.S.C. §§ 1408 and 1409.

### Background

2.        On March 17, 2023 (the "***Petition Date***"), the Debtor filed a voluntary petition

under chapter 11 of the Bankruptcy Code.  The Debtor continues to operate its business and

manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  As of the date hereof, no creditors' committee, trustee or examiner has been

appointed in this chapter 11 case.

3.        Additional factual background relating to the Debtor's business and the

commencement of this chapter 11 case is set forth in the *Declaration of William Kosturos in*

*Support of the Debtor's Chapter 11 Petition and First Day Pleadings*.

### Relief Requested

4.        The Debtor requests entry of an order appointing Kroll as the Claims and Noticing

Agent for the Debtor and its chapter 11 case, including assuming full responsibility for the

distribution of notices and the maintenance, processing and docketing of proofs of claim filed in

the Debtor's chapter 11 case.  The Debtor's selection of Kroll to act as the Claims and Noticing

Agent has satisfied the Court's ***Protocol for the Employment of Claims and Noticing Agents***

***under 28 U.S.C. § 156(c)*** (the "***Claims Agent Protocol***"), in that the Debtor has obtained and

reviewed engagement proposals from at least two other court-approved claims and noticing

agents to ensure selection through a competitive process.  Moreover, the Debtor submits, based

on all engagement proposals obtained and reviewed, that Kroll's rates are competitive and

reasonable given Kroll's quality of services and expertise.  The terms of Kroll's retention are set

forth in the Engagement Agreement attached hereto as **Exhibit C** (the "***Engagement***

***Agreement***"); provided, however, that the Debtor is seeking approval solely of the terms and

provisions as set forth in this Section 156(c) Application and the proposed Retention Order

attached hereto.

5.      Although the Debtor has not yet filed its schedules of assets and liabilities, it

anticipates that there will be thousands of entities to be noticed.  Local Rule 5075-1(b) provides

that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is

250 or more, the estate shall retain, subject to approval of the Court, a claims and noticing agent

in accordance with the [Claims Agent Protocol]."  In view of the number of anticipated claimants

and the complexity of the Debtor's business, the Debtor submits that the appointment of a claims

and noticing agent is required by Local Rule 5075-1(b) and is otherwise in the best interests of

both the Debtor's estate and its creditors.

6.      By separate application, the Debtor will seek authorization to retain and employ

Kroll as administrative advisor in this chapter 11 case pursuant to section 327(a) of the

Bankruptcy Code because the administration of this chapter 11 case will require Kroll to perform

duties outside the scope of 28 U.S.C. § 156(c).

### Kroll's Qualifications

7.      Kroll is comprised of leading industry professionals with significant experience in

both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's

professionals have experience in noticing, claims administration, solicitation, balloting and

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size

and complexity.  Kroll's professionals have acted as debtor's counsel, official claims and

noticing agent and/or administrative advisor in many large bankruptcy cases in this District and

in other districts nationwide.  Kroll's active and former cases include: *SAS AB*, No. 2-10925

(MEW) (Bankr. S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *GTT*

*Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y.); *Stoneway Capital Ltd.*, No. 21-

10646 (JLG) (Bankr. S.D.N.Y.); *GenapSys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del); *GT Real*

*Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del.); *Stimwave Technologies*

*Incorporated*, No. 22-10541 (KBO) (Bankr. D. Del.); *TPC Group Inc.,* No. 22-10493 (CTG)

(Bankr. D. Del); *Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex.); *Sungard AS*

*New Holdings, LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *Aearo Technologies LLC*, No. 22-

02890 (KRH) (Bankr. E.D. Va.); and *PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D.

Cal.).

8.      By appointing Kroll as the Claims and Noticing Agent in this chapter 11 case, the

distribution of notices and the processing of claims will be expedited, and the Office of the Clerk

of the Bankruptcy Court (the "***Clerk***") will be relieved of the administrative burden of processing

what may be an overwhelming number of claims.

## Services to be Provided

9.      This Section 156(c) Application pertains only to the work to be performed by

Kroll under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule

5075-1, and any work to be performed by Kroll outside of this scope is not covered by this

Section 156(c) Application or by any order granting approval hereof.  Specifically, Kroll will

perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") in the form and manner directed by the Debtor and/or the Court, including (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtor's plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtor or Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

(b) Maintain an official copy of the Debtor's schedules of assets and liabilities and statements of financial affairs (collectively, the "***Schedules***"), listing the Debtor's known creditors and the amounts owed thereto;

(c) Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and

title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service and (iv) the date served;

(g)    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)    Provide an electronic interface for filing proofs of claim;

(i)    Maintain the official claims register for the Debtor (the "*Claims Register*") on behalf of the Clerk on a case specific website; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, *etc.*), (vi) the Debtor and (vii) any disposition of the claim;

(j)    Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

(k)    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original claims;

(l)    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Kroll, not less than weekly;

(n)    Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)    Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)    Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as

4889-7280-8535 v.4

directed by the Debtor or the Court, including through the use of a case website and/or call center;

(r)    If this chapter 11 case is converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to Kroll of entry of the order converting the cases;

(s)    Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submits to the Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

(t)    Within seven (7) days of notice to Kroll of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 case; and

(u)    At the close of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

## **Professional Compensation**

10.    The Debtor respectfully requests that the undisputed fees and expenses incurred by Kroll in the performance of the above services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Kroll agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly

invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not

achieved, the parties may seek resolution of the matter from the Court.

11.      Prior to the Petition Date, the Debtor provided Kroll an advance in the amount of

$250,000, which was received by Kroll on March 16, 2023.  Except as stated in this paragraph,

Kroll has not received any payments from the Debtor in the 90 days prior to the Petition Date.

Kroll seeks to first apply the advance to all prepetition invoices, and thereafter, to have the

advance replenished to the original advance amount, and thereafter, to hold the advance under the

Engagement Agreement during this chapter 11 case as security for the payment of fees and

expenses incurred under the Engagement Agreement.

12.      Additionally, under the terms of the Engagement Agreement, the Debtor has

agreed to indemnify, defend and hold harmless Kroll and its members, officers, employees,

representatives and agents under certain circumstances specified in the Engagement Agreement,

except in circumstances resulting solely from Kroll's gross negligence or willful misconduct or

as otherwise provided in the Engagement Agreement or Retention Order.  The Debtor believes

that such an indemnification obligation is customary, reasonable and necessary to retain the

services of a Claims and Noticing Agent in this chapter 11 case.

### Disinterestedness

13.      Although the Debtor does not propose to employ Kroll under section 327 of the

Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by

separate application), Kroll has nonetheless reviewed its electronic database to determine

whether it has any relationships with the creditors and parties in interest provided by the Debtor,

and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the

Steele Declaration, Kroll has represented that it neither holds nor represents any interest

materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

14.     Moreover, in connection with its retention as Claims and Noticing Agent, Kroll represents in the Steele Declaration, among other things, that:

(a)     Kroll is not a creditor of the Debtor;

(b)     Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, Kroll waives any rights to receive compensation from the United States government in connection with this chapter 11 case;

(d)     In its capacity as the Claims and Noticing Agent in this chapter 11 case, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in this chapter 11 case, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

Kroll will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

4889-7280-8535 v.4

## Compliance with Claims and Noticing Agent Protocol

15.     This Section 156(c) Application complies with the Claims Agent Protocol and substantially conforms to the standard Section 156(c) Application in use in this Court.  To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

## Notice

16.     No creditors' committee, trustee or examiner has been appointed in this chapter 11 case.  The Debtor has provided copies of this Section 156(c) Application to the United States Trustee, each of the entities listed on the List of Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d), the Securities and Exchange Commission, the Internal Revenue Service, the United States Department of Justice, the United States Attorney for the Southern District of New York, the Federal Deposit Insurance Corporation, the Federal Reserve Board of Governors and, to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 1007(d).  A copy of the Section 156(c) Application is also available on the Debtor's case website at https://restructuring.ra.kroll.com/SVBFG.  The Debtor submits that no further notice is necessary under the circumstances.

4889-7280-8535 v.4

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the

form attached hereto as **Exhibit A**, authorizing Kroll to act as Claims and Noticing Agent for the

Debtor and granting such other relief as may be appropriate.

Dated: March 19, 2023                   */s/ James L. Bromley*_____
New York, New York                    James L. Bromley
                                    Andrew G. Dietderich
                                    Christian P. Jensen
                                    SULLIVAN & CROMWELL LLP
                                    125 Broad Street
                                    New York, NY 10004
                                    Telephone: (212) 558-4000
                                    Facsimile: (212) 558-3588
                                    E-mail: bromleyj@sullcrom.com
                                              dietdericha@sullcrom.com
                                              jensenc@sullcrom.com

                    *Proposed Counsel for the Debtor*

4889-7280-8535 v.4

## Exhibit A

## Proposed Retention Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| | : | |
| | x | |

### ORDER AUTHORIZING RETENTION AND APPOINTMENT
### OF KROLL RESTRUCTURING ADMINISTRATION LLC
### AS CLAIMS AND NOTICING AGENT

Upon the application (the "***Application***") of the above-captioned debtor and debtor in

possession (the "***Debtor***") for retention and appointment of Kroll Restructuring Administration

LLC ("***Kroll***")[2] as claims and noticing agent ("***Claims and Noticing Agent***") pursuant to 28

U.S.C. §156(c), section 105(a) of the Bankruptcy Code[3] and Local Rule 5075-1 to, among other

things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and

otherwise administer the proofs of claim filed in the Debtor's chapter 11 case and (iii) provide

such other administrative services – as required by the Debtor – that would fall within the

purview of services to be provided by the Clerk's office; and upon the Steele Declaration

submitted in support of the Application; and the Debtor having estimated that there are thousands

of entities to be noticed in this chapter 11 case, many of which are expected to file proofs of

claim; and it appearing that the receiving, docketing and maintaining of proofs of claim would be

unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28

U.S.C. §156(c) to utilize, at the Debtor's expense, outside agents and facilities to provide notices

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.  There has not been any change in the company's leadership, ownership, or organizational structure.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

4889-7280-8535 v.4

to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that Kroll has the capability and experience to provide such services and that Kroll does not hold an interest adverse to the Debtor or the estate respecting the matters upon which it is to be engaged; and good and sufficient notice of the Application having been given and no other or further notice being required; and it appearing that the employment of Kroll is in the best interests of the Debtor, its estate and creditors; and sufficient cause appearing therefor; it is hereby ORDERED THAT:

1.    Notwithstanding the terms of the Engagement Agreement attached to the Application, the Application is approved solely as set forth in this Order.

2.    The Debtor is authorized to retain Kroll as Claims and Noticing Agent effective *nunc pro tunc* to the Petition Date under the terms of the Engagement Agreement, and Kroll is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and all related tasks, all as described in the Application.

3.    Kroll shall serve as the interim custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case and is authorized and directed to maintain official claims registers for each of the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk who remains the official custodian of court records under 28 U.S.C. § 156(e).

4.    Kroll is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.    Kroll is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtor is authorized to compensate Kroll in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged for each, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Kroll shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtor, the office of the United States Trustee, counsel for the Debtor, counsel for any official committee monitoring the expenses of the Debtor and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; _provided_ that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtor's estate.

10.     Kroll may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Kroll may hold its advance under the Engagement Agreement during the chapter 11 case as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.     The limitation of liability provision in section 10 and the arbitration provision in section 15 of the Engagement Agreement are deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

12.     The Debtor shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

13.     All requests by Kroll for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to the Court and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought, provided however, that in no event shall Kroll be indemnified in the case of its own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

14.     In the event that Kroll seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in Kroll's own applications, both interim and final, but determined by this Court after notice and a hearing.

15.     In the event Kroll is unable to provide the services set out in this order, Kroll will immediately notify the Clerk and the Debtor's attorney and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's attorney.

16.     The Debtor may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Kroll but is not specifically authorized by this Order.

17.     The Debtor and Kroll are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

18.     Notwithstanding any term in the Engagement Agreement to the contrary, the

Court retains jurisdiction with respect to all matters arising from or related to the implementation

of this Order.

19.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order

shall be immediately effective and enforceable upon its entry.

20.     Kroll shall not cease providing claims processing services during the chapter 11

case(s) for any reason, including nonpayment, without an order of the Court.

21.     In the event of any inconsistency between the Engagement Agreement, the

Application and the Order, the Order shall govern.

Dated: _____
       New York, New York

                                        _____
                                        The Honorable Martin Glenn
                                        Chief United States Bankruptcy Judge

## Exhibit B

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                                 :
In re                                                            :       Chapter 11
                                                                 :
SVB FINANCIAL GROUP,[1]                                          :       Case No. 23-10367 (MG)
                                                                 :
              Debtor.                                            :
                                                                 :
---------------------------------------------------------------- x

### DECLARATION OF BENJAMIN J. STEELE IN SUPPORT OF DEBTOR'S APPLICATION FOR APPOINTMENT OF KROLL RESTRUCTURING ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.       I am a Managing Director of Kroll Restructuring Administration LLC ("**Kroll**"),[2] a chapter 11 administrative services firm whose locations include 55 East 52nd Street, 17th Floor, New York, NY 10055.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.       This Declaration is made in support of the above-captioned debtor's (the "**Debtor**") *Application for Appointment of Kroll Restructuring Administration LLC as Claims and Noticing Agent*, which was filed contemporaneously herewith (the "**Application**").[3]

3.       Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  Kroll's professionals have experience in noticing, claims administration, solicitation, balloting and

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.
[2] Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC.  There has not been any change in the company's leadership, ownership, or organizational structure.
[3] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtor's counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide. Kroll's active and former cases include: *SAS AB*, No. 2-10925 (MEW) (Bankr. S.D.N.Y.); *Revlon, Inc.*, No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *GTT Communications, Inc.*, No. 21-11880 (MEW) (Bankr. S.D.N.Y.); *Stoneway Capital Ltd.*, No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *GenapSys, Inc.*, No. 22-10621 (BLS) (Bankr. D. Del); *GT Real Estate Holdings, LLC*, No. 22-10505 (KBO) (Bankr. D. Del.); *Stimwave Technologies Incorporated*, No. 22-10541 (KBO) (Bankr. D. Del.); *TPC Group Inc.,* No. 22-10493 (CTG) (Bankr. D. Del); *Talen Energy Supply, LLC*, No. 22-90054 (MI) (Bankr. S.D. Tex.); *Sungard AS New Holdings, LLC*, No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *Aearo Technologies LLC*, No. 22-02890 (KRH) (Bankr. E.D. Va.); and *PG&E Corporation,* No. 19-30088 (DM) (Bankr. N.D. Cal.).

4.     As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "***Clerk***"), the services specified in the Application and the Engagement Agreement, and, at the Debtor's request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement. In performing such services, Kroll will charge the Debtor the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

5.     Prior to the Petition Date, the Debtor provided Kroll an advance in the amount of $250,000, which was received by Kroll on March 16, 2023. Except as stated in this paragraph, Kroll has not received any payments from the Debtor in the 90 days prior to the Petition Date. Kroll seeks to first apply the advance to all prepetition invoices, and thereafter, to have the

advance replenished to the original advance amount, and thereafter, to hold the advance under the

Engagement Agreement during this chapter 11 case as security for the payment of fees and

expenses incurred under the Engagement Agreement.

6.     Kroll represents, among other things, the following:

(a)     Kroll is not a creditor of the Debtor;

(b)     Kroll will not consider itself employed by the United States government
and shall not seek any compensation from the United States government in
its capacity as the Claims and Noticing Agent in this chapter 11 case;

(c)     By accepting employment in this chapter 11 case, Kroll waives any rights
to receive compensation from the United States government in connection
with this chapter 11 case;

(d)     In its capacity as the Claims and Noticing Agent in this chapter 11 case,
Kroll will not be an agent of the United States and will not act on behalf of
the United States;

(e)     Kroll will not employ any past or present employees of the Debtor in
connection with its work as the Claims and Noticing Agent in this chapter
11 case;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14)
of the Bankruptcy Code with respect to the matters upon which it is to be
engaged;

(g)     In its capacity as Claims and Noticing Agent in this chapter 11 case, Kroll
will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with
respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines
promulgated by the Judicial Conference of the United States for the
implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in
this chapter 11 case shall be at the expense of the Clerk's office.

7.     To the best of my knowledge, and based solely upon information provided to me

by the Debtor, and except as provided herein, neither Kroll, nor any of its professionals, has any

materially adverse connection to the Debtor, its creditors or other relevant parties. Kroll may

have relationships with certain of the Debtor's creditors as vendors or in connection with cases in

which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or

administrative advisor for another chapter 11 debtor.

8.      Kroll has reviewed its electronic database to determine whether it has any

relationships with the list of entities provided by the Debtor. Based on the results of such search,

at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of

interest. Should Kroll discover any new relevant facts or relationships bearing on the matters

described herein during the period of its retention, Kroll will use reasonable efforts to promptly

file a supplemental declaration.

9.      Certain of Kroll's professionals were partners of or formerly employed by firms

that are providing or may provide professional services to parties in interest in these cases. Such

firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP;

Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer

Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal &

Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman

& Sterling LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC;

Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be

disclosed herein, these professionals did not work on any matters involving the Debtor while

employed by its previous firms. Moreover, these professionals were not employed by its

previous firms when this chapter 11 case were filed.

10.     Kroll is an indirect subsidiary of Kroll, LLC ("***Kroll Parent***"). Kroll Parent is the

world's premier provider of services and digital products related to governance, risk and

transparency. Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent. As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtor's estate or any class of creditors or security holders.

11.     Kroll, as well as its personnel, has and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtor's chapter 11 case. Kroll may also provide professional services to entities or persons that may be creditors or parties in interest in this chapter 11 case, which services do not directly relate to, or have any direct connection with, this chapter 11 case or the Debtor.

12.     Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors. Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtor or parties in interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to this chapter 11 case.

13.     Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

14.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest

materially adverse to the Debtor's estate with respect to any matter upon which Kroll is to be engaged.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed on March 19, 2023

*/s/ Benjamin J. Steele*
Benjamin J. Steele
Managing Director
Kroll Restructuring Administration LLC
55 East 52nd Street, 17th Floor
New York, New York 10055

**<u>Exhibit C</u>**

**Engagement Agreement**



### Kroll Restructuring Administration LLC Engagement Agreement

This Agreement is entered into as of March 16, 2023 between Kroll Restructuring Administration LLC ("**Kroll**") and SVB Financial Group (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.  <u>Services</u>

    (a) Kroll agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

    (b) The Company acknowledges and agrees that Kroll will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Kroll may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

    (c) The Company agrees and understands that Kroll shall not provide the Company or any other party with legal advice.

2.  <u>Rates, Expenses and Payment</u>

    (a) Kroll will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**").  The Company agrees to pay for reasonable out of pocket expenses incurred by Kroll in connection with providing Services hereunder.

    (b) The Rate Structure sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

    (c) Kroll will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Kroll may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Kroll within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Kroll or paid by Kroll to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Kroll an advance of $250,000.  Kroll may use such advance against unpaid fees and expenses hereunder.  Kroll may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Kroll may hold such advance to apply against unpaid fees and expenses hereunder.

(h) Kroll reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year.  If such annual increases represent an increase greater than 10% from the previous year's levels, Kroll shall provide 30 days' notice to the Company of such increases.

## 3.  Retention in Bankruptcy Case

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Kroll (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Kroll.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Kroll will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4.  Confidentiality

(a) The Company and Kroll agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it, independently developed, lawfully obtained from a third party or required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.



5.    **Property Rights**

Kroll reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Kroll for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Kroll hereunder.

6.    **Bank Accounts**

At the request of the Company or the Company Parties, Kroll shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Kroll's agreement with financial institutions, Kroll may receive compensation from such institutions for the services Kroll provides pursuant to such agreement.

7.    **Term and Termination**

(a)   This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Kroll that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Kroll invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the retainer held by Kroll where Kroll reasonably believes it will not be paid.

(b)   If this Agreement is terminated after Kroll is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Kroll of its duties under such retention, which order shall be in form and substance reasonably acceptable to Kroll.

(c)   If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Kroll hereunder.

(d)   If this Agreement is terminated, Kroll shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Kroll shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

8.    **No Representations or Warranties**

Kroll makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.



9.  **Indemnification**

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Kroll and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Kroll's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Kroll and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Kroll hereunder shall exclude Losses resulting from Kroll's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10.  **Limitations of Liability**

Except as expressly provided herein, Kroll's liability to the Company for any Losses, unless due to Kroll's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Kroll's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Kroll for Services provided hereunder.  In no event shall Kroll be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11.  **Company Data**

(a)  The Company is responsible for, and Kroll does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Kroll and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Kroll bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)  The Company agrees, represents and warrants to Kroll that before delivery of any information to Kroll: (i) the Company has full authority to deliver such information to Kroll; and (ii) Kroll is authorized to use such information to perform Services hereunder.

(c)  Any data, storage media, programs or other materials furnished to Kroll by the Company may be retained by Kroll until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Kroll under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Kroll.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the



Company has not utilized Kroll's Services for a period of 90 days or more, Kroll may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice; provided that undeliverable mail may be disposed of upon closing of the case without notice to the client.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Kroll.

(d) If Kroll is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Kroll may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Kroll and its Services during and after the term of this Agreement.

## 12. <u>Non-Solicitation</u>

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Kroll during the term of this Agreement and for a period of 12 months after termination thereof unless Kroll provides prior written consent to such solicitation or retention.

## 13. <u>Force Majeure</u>

Whenever performance by Kroll of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Kroll's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. <u>Choice of Law</u>

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. <u>Arbitration</u>

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

## 16. <u>Integration; Severability; Modifications; Assignment</u>

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals,



understandings, agreements and communications between the parties relating to the subject matter hereof.

(b)  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c)  This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Kroll.

(d)  This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Kroll may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

## 17.  Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 18.  Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

|                      |                                             |
|----------------------|---------------------------------------------|
| If to Kroll:         | Kroll Restructuring Administration LLC       |
|                      | 55 East 52nd Street, 17th Floor              |
|                      | New York, NY 10055                           |
|                      | Attn:   Legal Department                     |
|                      | Tel:    (212) 257-5450                       |
|                      | Email:  Legal@kbs.kroll.com                  |

|                      |                                             |
|----------------------|---------------------------------------------|
| If to the Company:   | SVB Financial Group                          |
|                      | 387 Park Avenue South                        |
|                      | New York, NY 10016                           |
|                      | Attn: Bill Kosturos                          |
|                      | Email: BKosturos@alvarezandmarsal.com        |

|                      |                                             |
|----------------------|---------------------------------------------|
| With a copy to:      | Sullivan & Cromwell LLP                      |
|                      | 125 Broad Street                             |
|                      | New York, NY 10004                           |
|                      | Attn:   James Bromley                        |
|                      |         Andrew Dietderich                    |
|                      | Tel:    (212) 558-4923                       |
|                      |         (212) 558-3830                       |
|                      | Email:  bromleyj@sullcrom.com                |
|                      |         dietdericha@sullcrom.com             |



IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Kroll Restructuring Administration LLC**

By: Shira Weiner
Title: General Counsel


**SVB Financial Group**

By: Bill Kosturos
Title: Chief Restructuring Officer

7



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| **TITLE** | **HOURLY RATE** |
| **Analyst**<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $60 |
| **Technology Consultant**<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $110 |
| **Consultant/Senior Consultant**<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Senior Consultants average over five years of experience. | $65 - $195 |
| **Director**<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Kroll Restructuring Administration will serve in this role at this rate. Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $245 |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



**R A T E S**

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|---|---|
| **Solicitation Consultant**<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $220 |
| **Director of Solicitation**<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Kroll Restructuring Administration's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $245 |

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

### Newspaper and Legal Notice Publishing

| | |
|---|---|
| Coordinate and publish legal notices | Available on request |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106



# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
| --- | --- |
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| *Kroll does not charge for automated processes, encrypted bandwidth and other similar components of overhead.* | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.10 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services & Securities Eligibility Services** | |
| Securities Eligibility Services | Available on request |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of EIN/TIN database | Standard rates |

**About Kroll**

As the leading independent provider of risk and financial advisory solutions, Kroll leverages our unique insights, data and technology to help clients stay ahead of complex demands. Kroll's global team continues the firm's nearly 100-year history of trusted expertise spanning risk, governance, transactions and valuation. Our advanced solutions and intelligence provide clients the foresight they need to create an enduring competitive advantage. At Kroll, our values define who we are and how we partner with clients and communities. Learn more at Kroll.com.

© 2022 Kroll, LLC. All rights reserved. KR21035106