James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Proposed Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ──────────────────── x | | |
| In re | : | Chapter 11 |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| ──────────────────── x | : | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) CONTINUE TO USE ITS CASH MANAGEMENT SYSTEM, INCLUDING EXISTING BANK ACCOUNTS, (B) PAY OR HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO AND (C) MAINTAIN EXISTING BUSINESS FORMS, (II) AUTHORIZING INVESTMENT ACTIVITIES, (III) TEMPORARILY WAIVING THE REQUIREMENTS OF SECTION 345(b) AND (IV) GRANTING RELATED RELIEF**

SVB Financial Group (the "Debtor") hereby submits this motion (this "Motion") for entry of an interim order, substantially in the form attached hereto as Exhibit A (the "Interim Order"), and a final order, substantially in the form attached hereto as Exhibit B (the "Final Order" and together with the Interim Order, the "Orders"), pursuant to sections 105(a), 345(b), 363(c)(1) and 503(b)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and rule 6003 of the Federal Rules of Bankruptcy Procedure (the

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

"Bankruptcy Rules"), (a) authorizing, but not directing, the Debtor, in its sole discretion, to (i) continue to use its existing cash management system (the "Cash Management System") as described herein, including existing bank accounts, (ii) honor certain prepetition obligations related thereto and (iii) continue using existing business letterhead, purchase orders, invoices, envelopes, promotional materials and other business forms and correspondence; (b) authorizing and directing (i) applicable banks and other financial institutions to honor and process related checks and transfers and (ii) the Debtor to continue to perform investment activities with its affiliates and third parties on a postpetition basis in the ordinary course of business and consistent with historical practice; (c) transferring funds currently held at institutions that are not in compliance with section 345(b) of the Bankruptcy Code; (d) temporarily waiving the requirements of section 345(b) of the Bankruptcy Code to the extent such requirements are inconsistent with the Debtor's current practices; and (e) granting certain related relief, including scheduling a hearing to consider approval of the Motion on a final basis (the "Final Hearing"). Certain facts supporting this Motion are set forth in the concurrently filed *Declaration of William C. Kosturos in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"). In further support of the Motion, the Debtor respectfully states as follows:

## Background

1. SVB Financial Group is a financial services company focusing on the innovation economy and offering financial products and services to clients across the United States and in key international markets. The Debtor is a Delaware corporation established in 1999 with its principal place of business located at 387 Park Avenue South, New York, NY 10016.

2. Prior to March 10, 2023, the Debtor's businesses and operations comprised four segments: Silicon Valley Bank, a state-chartered bank; SVB Private, the private

banking and wealth management division of Silicon Valley Bank; SVB Capital, a venture capital

and credit investment platform that focuses on funds management; and SVB Securities LLC, an

investment bank.  On March 10, 2023, the California Department of Financial Protection and

Innovation closed Silicon Valley Bank and appointed the Federal Deposit Insurance Corporation

as the receiver (the "FDIC-R") of Silicon Valley Bank.  The FDIC-R subsequently transferred all

deposits and substantially all assets of Silicon Valley Bank to a newly created, FDIC-R-operated

bridge bank, Silicon Valley Bridge Bank, National Association (the "Bridge Bank").

3.　　On March 17, 2023 (the "Petition Date"), the Debtor filed with the United

States Bankruptcy Court for the Southern District of New York (the "Court") a voluntary petition

for relief under the Bankruptcy Code (this "Chapter 11 Case").  The Debtor continues to operate

its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a)

and 1108 of the Bankruptcy Code.  As of the date hereof, no creditors' committee, trustee or

examiner has been appointed in this Chapter 11 Case.

4.　　Additional factual background relating to the Debtor's businesses and the

commencement of this Chapter 11 Case is set forth in the First Day Declaration.

## Facts Specific to the Relief Requested

**I.**　　**The Cash Management System**

5.　　In the ordinary course of business, the Debtor maintains a centralized cash

management system (the "Cash Management System"), which it uses to collect cash generated

by its operations and disburse those cash to satisfy obligations required to operate its businesses.

The Cash Management System is similar to the systems commonly employed by financial

institutions and investment managers comparable to the Debtor.  The scope and breadth of the

operations of the Debtor and its subsidiary businesses mandates the use of the Cash Management

System for the stabilization and continuation of the Debtor's businesses, as well as the preservation and enhancement of its going concern value.

6.    As described in further detail below, the Cash Management System is critical to the Debtor's businesses because it allows the Debtor to facilitate its investment activities, including collecting cash payments, aggregating cash and making disbursements to satisfy its financial obligations and maximize profits.  Given the nature of the Debtor's businesses, including contractual commitments by the Debtor to invest equity in the form of cash contributions to funds on the SVB Capital platform and to third-party businesses, the Debtor must provide its businesses with continuous liquidity and be able to make investments in the ordinary course of business.

7.    Any interruption of the Cash Management System would have severe and irreparable adverse effect on the Debtor's operations, business relationships and ability to preserve assets and generate profits.  The complexity of the Debtor's business operations makes it difficult and time consuming to establish an entirely new cash management system.  Additionally, the Debtor has contractual commitments to continue making equity investments and would risk defaults under such agreements if it ceased such cash transfers in accordance with the Cash Management System.  Accordingly, to minimize the disruption caused by this Chapter 11 Case, the Debtor seeks authority to continue to use its existing Cash Management System in the ordinary course of business on a postpetition basis in a manner consistent with past practice, and to pay any prepetition fees related to the Cash Management System.  The Debtor will maintain accurate and current records with respect to all transactions so that all transactions can be readily ascertained, traced and properly recorded.

## II.      The Bank Accounts

8.      The Cash Management System is operated primarily through seven bank accounts (collectively, the "Bank Accounts") maintained by the Debtor at four banking institutions (collectively, the "Banks").  Historically, the Debtor's only bank accounts were maintained at Silicon Valley Bank and the Bank of New York Mellon.  Following the closure of Silicon Valley Bank by regulators and transfer of deposits to Bridge Bank, the Debtor opened two additional bank accounts at Citizens Bank, N.A. and Keybank, N.A.  A detailed schedule of the Bank Accounts, including the last four digits of each account number is listed in the table below.  Two of the Bank Accounts were maintained for Regulation W purposes prior to the closure of Silicon Valley Bank in order to collateralize certain transactions between Silicon Valley Bank and the Debtor.  The other Bank Accounts are maintained for general operating and investment purposes.

| No. | Bank | Description | Account No.[2] |
|-----|------|-------------|------------|
| 1. | Bridge Bank | Operating Account | *5270 |
| 2. | Bridge Bank | Regulation W Account | *0822 |
| 3. | Bridge Bank | SVB Capital Operating Account | *6176 |
| 4. | Bank of New York Mellon | Treasuries Investment Account | *4250 |
| 5. | Bank of New York Mellon | Regulation W Account | *4252 |
| 6. | Citizens Bank. N.A. | Operating Account | *0664 |
| 7. | Keybank, N.A. | Operating Account | *2299 |

---

[2]      The last 4 digits of each Bank Account are listed.

9.      In the ordinary course of business, the Banks charge, and the Debtor pays, honors or allows to be deducted from the appropriate Bank Accounts, certain service charges and other administrative fees, costs and expenses charged by the Banks (collectively, the "Bank Fees").

10.     Three of the Bank Accounts (the "Bridge Bank Accounts") are held at the Bridge Bank and two of the Bank Accounts (the "BNYM Bank Accounts," and collectively with the Bridge Bank Accounts, the "Non-Compliant Bank Accounts") are held at the Bank of New York Mellon, which are not on the list of authorized depositories for the Southern District of New York maintained by the Office of the United States Trustee (the "U.S. Trustee").  Both before and after the Petition Date, the Debtor has attempted to transfer funds from the Non-Compliant Bank Accounts to other Bank Accounts in compliance with section 345(b) of the Bankruptcy Code, but such transfer requests have not been honored by Bridge Bank or the Bank of New York Mellon, acting at the direction of the FDIC-R.  The Debtors requests authorization from the Court to transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held at authorized depositories in compliance with section 345(b) of the Bankruptcy Code.  The Debtor further requests that the Court provide the Debtor with 15 days from the Petition Date, without prejudice to seeking an additional extension, to (a) bring the Non-Compliant Bank Accounts into compliance with section 345(b) of the Bankruptcy Code, (b) transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held with authorized depositories in compliance with section 345(b) of the Bankruptcy Code or (c) to seek appropriate relief from the Court.

### III.    Investment Activities

11.     In the ordinary course of business, the Debtor engages in routine transactions with certain of its affiliates and third-party businesses (collectively, "Investment

Activities"). The Debtor routinely provides equity commitments and cash investments to the

SVB Capital business platform. SVB Capital is the venture capital and credit investment arm of

the Debtor's businesses that organizes funds and makes investments and enters into

commitments to make future investments in private companies and venture capital funds. SVB

Capital comprises 30 fund families of over 100 legal entities.

12.     As is customary in the fund management businesses, the SVB Capital

platform comprises a collection of investment funds. Each fund is managed by an entity called a

"general partner" and owned by multiple third-party investor entities called "limited partners."

These limited partners commit to invest certain amounts in the fund over a period of time and

earn a return on their investments. The limited partners typically prefer the general partner, as

the manager of the fund, to also invest money in the fund so as to align the general partner's

interest with the limited partners. The general partner earns a fixed fee for managing the fund

and also shares in the fund's returns. The Debtor then collects the fees and investment returns

earned by the general partners and the funds. The general partners depend on the Debtor to

provide capital, and the Debtor has contractual obligations to provide such capital. In addition,

the Debtor acts as a limited partner investor in certain funds on the SVB Capital platform.

13.     In the ordinary course of business, the Debtor also makes contractual

commitments to invest in third-party businesses. These commitments are customarily made in

the innovation economy because early-stage businesses rely on pre-planned investments over a

long period of time before they can start generating profits.

14.     The Debtor estimates that it has, in the aggregate, approximately $141

million of unfunded equity commitments to the funds on the SVB Capital platform as of the

Petition Date. Taking into account the Debtor's equity commitments to SVB Capital funds and

equity commitments to third-party businesses, the Debtor anticipates that it will need to make

approximately $50 million in aggregate funding of equity investments on a net investment basis

within the next three weeks.

15.    In addition to equity commitments, the Debtor also provides loans to

certain funds on the SVB Capital platform.  The funds then use the borrowed money to make

investments.  The use of borrowed money, commonly known as the use of "leverage," is critical

to the funds' success because it magnifies the funds' investment returns and provides capital

support for the funds' investment strategy.  The Debtor provides a capital call line of credit

facility (the "Capital Call Facility") to certain funds on the SVB Capital platform, under which

these funds may borrow on a revolving basis in order to support working capital needs.  The total

commitments under the Capital Call Facility are $170 million, with $62 million outstanding as of

the Petition Date.  The Capital Call Facility, under which loans accrue interest at the prime flat

rate, may be repaid and redrawn by the borrower funds in the ordinary course of business.

16.    Investment Activities such as the foregoing are crucial to the Debtor's

overall business operations and financial performance.  Discontinuing Investment Activities

would unnecessarily disrupt the Debtor's operations, the business of the SVB Capital platform

and the third-party businesses that the Debtor invests in.  Discontinuing Investment Activities

may cause SVB Capital funds' limited partners to lose confidence in the Debtor and refuse to

provide further capital to the funds to the detriment of the Debtor, its creditors and other

stakeholders.  Dishonoring equity commitments made to third-party businesses could render the

Debtor in default under those agreements and cause the Debtor to lose the value of all of its prior

investments in the third-party businesses if the third-party businesses' financial performance

suffers due to the lack of funding.  The Debtor seeks the authority to continue engaging in

Investment Activities on a postpetition basis in the ordinary course of business and consistent with historical practice, including funding any undrawn commitments under the Capital Call Facility in accordance therewith up to the total $170 million commitment amount; *provided* that prior to the entry of the Final Order, the Debtor shall (a) limit postpetition equity investment activities to $50 million in aggregate funding on a net investment basis[3] and (b) not enter into any new intercompany lending facilities other than the Capital Call Facility without leave of the Court.

### IV. Business Forms

17.    The Debtor uses a variety of preprinted business forms including business letterhead, purchase orders, invoices, envelopes, promotional materials and other business forms and correspondence in the ordinary course of business (collectively, the "<u>Business Forms</u>").  To avoid confusion during this Chapter 11 Case, and to minimize expenses to its estates, the Debtor requests that the Court authorize the Debtor's continued use of all Business Forms in existence before the Petition Date, without reference to the Debtor's status as debtor-in-possession.  The Debtor submits that once it has exhausted its existing stock of Business Forms, it will ensure that any new Business Forms are clearly labeled "Debtor-in-Possession" and with respect to any Business Forms that exist or are generated electronically, the Debtor will ensure that such electronic Business Forms are clearly labeled "Debtor-in-Possession."

### <u>Jurisdiction</u>

18.    The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the

---

[3]    Net investment basis shall give credit for fees and returns received by the Debtor in respect of existing investments.

relief requested herein are sections 105(a), 345(b), 363(c)(1) and 503(b)(1) of the Bankruptcy

Code and Bankruptcy Rule 6003.

## **Relief Requested**

19.     By this Motion, the Debtor requests entry of the Interim and Final Orders,

substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, granting,

among other things, the following relief:

a.  authorizing, but not directing, the Debtor to (i) continue to operate the Cash Management System, (ii) continue to use, with the same account numbers, all of the Bank Accounts in the Cash Management System and (iii) implement any changes to the Cash Management System as it may deem necessary and appropriate, in the ordinary course of business;

b.  authorizing and directing the Banks to (i) continue to maintain, service and administer the Bank Accounts as accounts of the Debtor as debtor-in-possession and provide related treasury, accounting and cash management services without interruption and in the ordinary course, (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, credit card payments, other electronic transfers or other items presented, issued or drawn on the Bank Accounts by any authorized representative of the Debtors and (iii) debit or charge back the Bank Accounts for all undisputed prepetition and postpetition Bank Fees;

c.  authorizing the Debtor to continue to engage in Investment Activities on a postpetition basis in the ordinary course of business and consistent with historical practice, including funding any undrawn commitments under the Capital Call Facility in accordance therewith up to the total $170 million commitment amount; *provided* that prior to the entry of the Final Order, the Debtor shall (a) limit postpetition equity investment activities to $50 million in aggregate funding on a net investment basis[4] and (b) not enter into any new intercompany lending facilities other than the Capital Call Facility without leave of the Court;

---

[4]   Net investment basis shall give credit for fees and returns received by the Debtor in respect of existing investments.

d.  authorizing, but not directing, the Debtor to continue to use its existing Business Forms (except electronic Business Forms), without reference to the Debtor's status as debtor-in-possession, until all Business Forms in existence before the Petition Date have been exhausted;

e.  authorizing the Debtor to transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held at authorized depositories in compliance with section 345(b) of the Bankruptcy Code;

f.  temporarily waiving the requirements of section 345(b) of the Bankruptcy Code for 15 days from the Petition Date, without prejudice to seeking an additional extension, for the Debtor to (a) bring the Non-Compliant Bank Accounts into compliance with section 345(b) of the Bankruptcy Code, (b) transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held with authorized depositories in compliance with section 345(b) of the Bankruptcy Code or (c) to seek appropriate relief from the Court; and

g.  granting related relief, including scheduling a final hearing to consider approval of the Motion on a final basis.

## Basis for Relief

**I.  The Court Should Approve the Debtor's Continued Use of the Cash Management System.**

20.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without undue oversight by creditors or the court. *See, e.g., Med. Malpractice Ins. Ass'n* v. *Hirsch* (*In re Lavigne*), 114 F.3d 379, 384 (2d Cir. 1997); *Chaney* v. *Official Comm. of Unsecured Creditors of Crystal Apparel, Inc.*, 207 B.R. 406, 409 (S.D.N.Y.

1997); *In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. 2003). Included within the purview of section 363(c)(1) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *See In re Frigitemp Corp.*, 34 B.R. 1000, 1010 (S.D.N.Y. 1983), *aff'd*, 753 F.2d 230 (2d Cir. 1985); *see also In re Amdura Corp.*, 75 F.3d 1447, 1453 (10th Cir. 1996).

21.    The Debtor respectfully requests authorization under section 363(c)(1) of the Bankruptcy Code to continue using the Cash Management System, on a postpetition basis and to honor any prepetition obligations related thereto, as set forth in this Motion. The widespread use of similar cash management systems is attributable to the numerous benefits such systems provide. Here, the Cash Management System enables the Debtor to ensure cash availability, reduce administrative costs and efficiently deploy capital. Requiring the Debtor to dismantle the Cash Management System and adopt a new, segmented cash management system or to cease ordinary course investment activities would, among other things, impair the Debtor's day-to-day operations and ability to generate timely reports of transactions and balances. By adopting a new cash management system, the Debtor would incur material expenses, create unnecessary administrative burdens on its estate and disrupt relationships with its key investors and business partners.

22.    In contrast, maintaining the Cash Management System will facilitate the Debtor's reorganization efforts by preserving a "business as usual" atmosphere and avoiding the costly delays, distraction and unnecessary confusion that would accompany any substantial disruption in the Cash Management System. Maintaining the Cash Management System would facilitate the Debtor's transition into and out of chapter 11 by, among other things, minimizing interruptions to its affiliates' investment activities and eliminating administrative inefficiencies.

23.     The Debtor respectfully submits that parties-in-interest will not be harmed by maintaining the Cash Management System.  The Debtor has implemented appropriate measures to ensure that payments will not be made on account of obligations incurred before the Petition Date other than the prepetition obligations authorized to be paid by the Court. Specifically, with the assistance of its professional advisors, the Debtor has implemented protocols prohibiting payments on account of prepetition debts or commitments without the prior approval of the Debtor's Chief Restructuring Officer.  The Debtor will also continue to work closely with the Banks to ensure that appropriate procedures are in place to prevent checks issued prepetition from being honored without the Court's approval.

24.     In addition, the Debtor requests that the Court authorize the Debtor to implement any changes to the Cash Management System it may deem necessary and appropriate in its sole discretion, in the ordinary course of business, including opening any additional bank account or closing any Bank Account.  The Debtor shall, however, give notice of any material change to the Cash Management System (including the closing of any Bank Account and the opening of any new bank account) to the U.S. Trustee and counsel to any statutory committees appointed in this Chapter 11 Case within 15 days of such change.  Any new bank account opened by the Debtor shall be maintained with a bank that has executed a Uniform Depository Agreement with the U.S. Trustee or at a bank that is willing to promptly execute such an agreement.

25.     The Debtor also requests that the Court grant the relief requested in this Motion with respect to the Banks, including, among other things, authorization for the Banks to charge back returned items to the Bank Accounts, whether such items are dated before, on or after the Petition Date, in the ordinary course of business.  In addition, to the extent a Bank

honors a prepetition check or other item drawn on any account that is the subject of this Motion, either at the direction of the Debtor or in a good-faith belief that the Court has authorized such prepetition check or item to be honored, the Debtor requests that such Bank not be deemed to be liable to the Debtor or its estates on account of such prepetition check or other item honored postpetition.  The Debtor believes that according such flexibility to the Banks is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether the Debtor may pay a particular item in accordance with a Court order or otherwise.  The relief requested is necessary to induce the Banks to continue providing cash management services.

## II.      The Court Should Authorize the Debtor to Maintain Existing Bank Accounts and Continue to Use Existing Business Forms.

26.      The U.S. Trustee's Operating Guidelines for Chapter 11 Cases (the "U.S. Trustee Guidelines") require debtors-in-possession, among other things, to:  (a) close all existing bank accounts and open one or more accounts designated as debtor-in-possession accounts; (b) establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes; (c) maintain a separate debtor-in-possession account for cash collateral; and (d) obtain checks that bear the designation "Debtor-in-Possession" and reference the bankruptcy number and type of account on such checks.

27.      The Debtor requests a waiver of the requirement of the U.S. Trustee Guidelines that the Bank Accounts be closed and that new postpetition bank accounts be opened. If enforced in this Chapter 11 Case, such requirements would cause disruption in the Debtor's businesses and could impair the Debtor's efforts to continue to successfully manage its businesses.  As described in detail above, the Bank Accounts comprise an established Cash Management System that the Debtor must maintain in order to ensure the uninterrupted collection and disbursement of funds in the ordinary course of its business.  Therefore, to avoid

delays in paying obligations incurred postpetition, and to ensure as smooth a transition into chapter 11 as possible, the Debtor should be permitted to continue to maintain the Bank Accounts and, if necessary, to open new accounts and close existing accounts in the normal course of business operations.  Additionally, the Debtor already opened new Bank Accounts with authorized depositories shortly before the Petition Date and is seeking to transfer substantially all funds to these accounts in a manner that avoids disruptions to any business operations, which would substantively provide the same "fresh start" required in technical compliance with the U.S. Trustee Guidelines.

28.    In addition, to the extent that the U.S. Trustee Guidelines require the Debtor to make all disbursements by check, the Debtor requests further relief from the U.S. Trustee Guidelines.  The Debtor conducts many transactions on a daily basis by wire transfers and other similar methods; if the Debtor's ability to conduct transactions through such methods is impaired, the Debtor's operations and ability to preserve a "business as usual" atmosphere may be unnecessarily disrupted and the estates will incur additional costs.  Therefore, the Debtor submits that authorizing the continuation of the use of wire transfers and other similar methods is warranted.

29.    Courts in other large chapter 11 cases in this district have regularly authorized debtors-in-possession to continue use of their existing bank accounts, notwithstanding the applicable requirements of the U.S. Trustee Guidelines, on the grounds that such requirements are impractical and potentially detrimental to the debtors' postpetition business operations and restructuring efforts.  *See, e.g.*, *In re Rockley Photonics Holdings Ltd.*, 23-10081 (LGB) (Feb. 27, 2023), D.I. 76 (allowing debtors to continue using their cash management system); *In re SAS AB*, 22-10925 (MEW) (Feb. 3, 2023), D.I. 879 (same); *In re Stearns*

*Holdings, LLC*, 19-12226 (SCC) (July 31, 2019), D.I. 192 (same); *In re Windstream Holdings,*

*Inc.*, 19-22312 (RDD) (Apr. 22, 2019), D.I. 382 (same); *In re Aegean Marine Petrol. Network*

*Inc.*, 18-13374 (MEW) (Dec. 17, 2018), D.I. 237 (same); *In re Nine West Holdings, Inc.*, 18-

10947 (SCC) (June 26, 2018), D.I. 428 (same).

### III.      Section 345(b) Requirements.

30.      The Debtor requests authorization from the Court to transfer the funds in

the Non-Compliant Bank Accounts to Bank Accounts held at authorized depositories in

compliance with section 345(b) of the Bankruptcy Code.  The Debtor also requests that the Court

temporarily waive the requirements of section 345(b) of the Bankruptcy Code and provide the

Debtor with 15 days from the Petition Date, without prejudice to seeking an additional extension,

to (a) bring the Non-Compliant Bank Accounts into compliance with section 345(b) of the

Bankruptcy Code, (b) transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts

held with authorized depositories in compliance with section 345(b) of the Bankruptcy Code or

(c) to seek appropriate relief from the Court.

31.      Section 345(a) of the Bankruptcy Code authorizes deposits or investments

of money of a bankruptcy estate, such as cash, in a manner that will "yield the maximum

reasonable net return on such money, taking into account the safety of such deposit or

investment." 11 U.S.C. § 345(a).  For deposits or investments that are not "insured or

guaranteed by the United States or by a department, agency, or instrumentality of the United

States or backed by the full faith and credit of the United States," section 345(b) of the

Bankruptcy Code provides that the estate must require from the entity with which the money is

deposited or invested a bond in favor of the United States secured by the undertaking of an

adequate corporate surety.  11 U.S.C. § 345(b).

32.     A court may, however, relieve a debtor-in-possession of the restrictions

imposed by section 345(b) of the Bankruptcy Code for "cause."  11 U.S.C. § 345(b).  The Debtor

believes that it is in substantial compliance with the requirements of section 345(b) of the

Bankruptcy Code and that cause exists to allow the continued use of the Cash Management

System, including the Non-Compliant Bank Accounts, consistent with historical practice and on

a temporary basis.  The Debtors have already opened 345(b) compliant accounts and attempted

to begin the process of moving funds to those accounts, and have been prevented from doing so

by Bridge Bank at the direction of the FDIC-R.

33.     The Debtor requests that the Court provide the Debtor with 15 days from

the Petition Date, without prejudice to seeking an additional extension, to (a) bring the Non-

Compliant Bank Accounts into compliance with section 345(b) of the Bankruptcy Code,

(b) transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held with

authorized depositories in compliance with section 345(b) of the Bankruptcy Code or (c) to seek

appropriate relief from the Court.  The Debtor additionally requests that this Court direct Bridge

Bank to honor any transfer request made by the Debtor in order to move funds to a compliant

Bank Account.

34.     Courts in this district have routinely granted relief similar to the relief

requested herein.  *See, e.g.*, *In re Maxcom USA Telecom, Inc.*, 19-23489 (RDD) (Sept. 27, 2019),

D.I. 73 (allowing debtors to maintain existing cash management system, including foreign bank

accounts); *In re SAS AB*, 22-10925 (MEW) (Feb. 3, 2023), D.I. 879 (waiving the requirements of

Section 345(b)); *In re GTT Communications, Inc.*, 21-11880 (MEW) (Aug. 30, 2022), D.I. 602

(waiving the investment guidelines of Section 345(b)); *In re Aegean Marine Petrol. Network

Inc.*, 18-13374 (MEW) (Nov. 9, 2018), D.I. 53 (waiving U.S. Trustee Guidelines regarding

authorized depositories); *In re Nine West Holdings, Inc.*, 18-10947 (SCC) (June 26, 2018), D.I. 428 (same); *In re Avaya Inc.*, 17-10089 (SMB) (Mar. 31, 2017), D.I. 341 (same).

**IV.    The Court Should Authorize the Debtor to Continue Performing Investment Activities.**

35.    The Debtor engages in Investment Activities with its affiliates and third parties on a regular basis and such transactions are common and fundamental to the Debtor's businesses.  Therefore, the Debtor believes that such transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require the Court's approval.  Nevertheless, out of an abundance of caution, the Debtor requests express authority to continue engaging in Investment Activities postpetition in the ordinary course of business and consistent with historical practice, including Investment Activities with its affiliates and third parties, as such transactions are integral to the Debtor's operations.

36.    The Debtor will track and record all fund transfers in the Cash Management System, through which Investment Activities flow, and the Debtor can therefore ascertain, trace and account for all Investment Activities.  As noted above, continuation of the Cash Management System, including Investment Activities, is in the best interests of the Debtor, its estates and all parties in interest.

37.    Courts in other large chapter 11 cases in this district have regularly authorized debtors-in-possession to continue performing transactions in the ordinary course of business.  *See, e.g.*, *In re Nine West Holdings, Inc.*, 18-10947 (SCC) (June 26, 2018), D.I. 428 (allowing debtors to continue performing transactions postpetition in the ordinary course of business, including intercompany transactions with non-debtor affiliates); *In re Rockley Photonics Holdings Ltd.*, 23-10081 (LGB) (Feb. 27, 2023), D.I. 76 (same); *In re SAS AB*, 22-10925 (MEW) (Feb. 3, 2023), D.I. 879 (same); *In re Aegean Marine Petrol. Network Inc.*, 18-

13374 (MEW) (Dec. 17, 2018), D.I. 237 (same); *In re 21st Century Oncology Holdings, Inc.*, 17-

22770 (RDD) (June 20, 2017), D.I. 133 (same); *see also In re Stearns Holdings, LLC*, 19-12226

(SCC) (July 31, 2019), D.I. 192 (allowing debtors to continue performing under and honoring

intercompany transactions postpetition); *In re Windstream Holdings, Inc.*, 19-22312 (RDD)

(Apr. 22, 2019), D.I. 382 (same).

### V.    Cause Exists to Authorize Applicable Banks and/or Financial Institutions to Honor Checks and Electronic Fund Transfers.

38.    In order to stabilize the Debtor's operations and to smoothly transition into

chapter 11, it is imperative that the Debtor maintain its ability to perform its most basic

functions.  The Debtor requests that all applicable banks and other financial institutions should

be authorized, when requested by the Debtor in its discretion, to receive, process, honor and pay

any and all checks and fund transfer requests made by the Debtor related to payment of the Bank

Fees, whether such checks or fund transfer requests were submitted prior to or after the Petition

Date.  Any such financial institution may rely on the representations of such Debtor as to which

checks and fund transfer requests are made and authorized to be paid in accordance with this

Motion without any duty of further inquiry and without liability for following the Debtor's

instructions.  The Debtor also seeks authority to issue new postpetition checks, or effect new

electronic funds transfers, to replace any prepetition checks or electronic funds transfer requests

that may be dishonored or rejected as a result of the commencement of this Chapter 11 Case with

respect to amounts owed in connection with payment of the Bank Fees.

### Bankruptcy Rule 6003 Is Satisfied

39.    In order for a debtor to obtain relief to make payments within 21 days of

the Petition Date, it must establish that making such payments satisfies the requirements

mandated by Bankruptcy Rule 6003—namely, the relief requested is necessary to avoid

"immediate and irreparable harm."  If a debtor's prospect of reorganizing is threatened, or swift diminution in value of the debtor's estate is likely absent the granting of the requested relief, immediate and irreparable harm likely exists.  *See In re Genco Shipping & Trading Ltd.*, 509 B.R. 455, 469 (Bankr. S.D.N.Y. 2009) (finding that relief requested by the debtors was necessary to avoid irreparable harm to the debtors and their estates because such relief was essential for the continued operation of the debtors' businesses).

40.     Immediate and irreparable harm would result if the relief requested herein is not granted.  As described above, if the Debtor is not authorized to continue its Cash Management System, manage ordinary course investments and pay all related obligations, the Debtor will not be able to operate its businesses as usual and risks losing its investors and business partners, which would impose substantial and unnecessary administrative burdens on its estate.  Given the economic and operational scale and complexity of the Debtor's operations, any disruption to the Cash Management System would have an adverse impact to the Debtor's businesses, thereby causing immediate and irreparable harm.  Failure to receive the requested relief during the first 21 days of this Chapter 11 Case would severely disrupt the Debtor's operations at this important juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtor to operate its business in the ordinary course, preserve the value of the Debtor's assets and maximize the value of the estates for the benefit of all stakeholders. Accordingly, the Debtor respectfully submits that it has satisfied Bankruptcy Rule 6003 as it relates to the relief requested herein.

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

41.     Given the nature of the relief requested herein, the Debtor respectfully requests a waiver of (a) the notice requirements under Bankruptcy Rule 6004(a) and (b) the 14-day stay under Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize.

### **Reservation of Rights**

42.     Nothing in this Motion: (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estates; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estates to contest the validity, priority, or amount of any claim against the Debtor or its estates; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estates with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtor. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

### **Notice**

43.     No creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Department of Justice; (e) the United States Attorney for the Southern District of New York; (f) the Federal Deposit Insurance Corporation; (g) the Federal Reserve Board of Governors; (h) the parties identified on the Debtor's consolidated list of 30 largest unsecured creditors; and (i) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be provided.

## **Conclusion**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court (a) enter the Interim Order, substantially in the form attached hereto as <u>Exhibit A</u>, (b) enter the Final Order, substantially in the form attached hereto as <u>Exhibit B</u> and (c) grant such other and further relief as is just and proper.

Dated: March 19, 2023  
New York, New York

/s/ *James L. Bromley*  
James L. Bromley  
Andrew G. Dietderich  
Christian P. Jensen  
125 Broad Street  
New York, NY 10004  
Telephone: (212) 558-4000  
Facsimile: (212) 558-3588  
E-mail: bromleyj@sullcrom.com  
      dietdericha@sullcrom.com  
      jensenc@sullcrom.com

*Proposed Counsel for the Debtor*

## EXHIBIT A

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| In re | : | Chapter 11 |
| | : | |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| | : | |
| Debtor. | : | |
| | : | |
| | x | |

### INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) CONTINUE TO USE ITS CASH MANAGEMENT SYSTEM, INCLUDING EXISTING BANK ACCOUNTS, (B) PAY OR HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO AND (C) MAINTAIN EXISTING BUSINESS FORMS, (II) AUTHORIZING INVESTMENT ACTIVITIES, (III) TEMPORARILY WAIVING THE REQUIREMENTS OF SECTION 345(B) AND (IV) GRANTING <u>RELATED RELIEF</u>

Upon the motion (the "<u>Motion</u>")[2] of SVB Financial Group (the "<u>Debtor</u>"), for

entry of an order (this "<u>Interim Order</u>") (a) authorizing, but not directing, the Debtor, in its sole

discretion, to (i) continue to use the Cash Management System as described herein, including

existing bank accounts, (ii) honor certain prepetition obligations related thereto and (iii) continue

using existing business letterhead, purchase orders, invoices, envelopes, promotional materials

and other business forms and correspondence, (b) authorizing and directing (i) applicable banks

and other financial institutions to honor and process related checks and transfers and (ii) the

Debtor to continue to perform Investment Activities with its affiliates and third parties on a

postpetition basis in the ordinary course of business and consistent with historical practice,

(c) transferring funds currently held at institutions that are not in compliance with section 345(b)

of the Bankruptcy Code; (d) temporarily waiving the requirements of section 345(b) of the

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

Bankruptcy Code for 15 days from the Petition Date, without prejudice to seeking an additional

extension; and (e) granting certain related relief, including scheduling a hearing to consider

approval of the Motion on a final basis (the "Final Hearing"); and this Court having jurisdiction

to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this Court being able to issue

a final order consistent with Article III of the United States Constitution; and venue of this

Chapter 11 Case and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and

1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court

having found that proper and adequate notice of the Motion and the relief requested therein has

been provided in accordance with the Bankruptcy Rules and the Local Rules of the Bankruptcy

Court for the Southern District of New York (the "Local Rules"), and that, except as otherwise

ordered herein, no other or further notice is necessary; and objections (if any) to the Motion

having been withdrawn, resolved or overruled on the merits; and a hearing having been held to

consider the relief requested in the Motion and upon the record of the hearing and all of the

proceedings had before this Court; and this Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtor, its estates, its creditors and all other

parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtor is (a) authorized, but not directed, on an interim basis and in

the reasonable exercise of its business judgment, to:  (i) continue to operate the Cash

Management System, (ii) honor its prepetition obligations related thereto and (iii) maintain its

existing Business Forms; and (b) authorized to continue to engage in Investment Activities on a

postpetition basis in the ordinary course of business and consistent with historical practice,

including funding any undrawn commitments under the Capital Call Facility in accordance

therewith up to the total $170 million commitment amount; *provided* that prior to the entry of the

Final Order, the Debtor shall (a) limit postpetition equity investment activities to $50 million in

aggregate funding on a net investment basis[3] and (b) not enter into any new intercompany

lending facilities other than the Capital Call Facility without leave of the Court.

3.      The Debtor is authorized, but not directed, on an interim basis and in the

reasonable exercise of its business judgment to:  (a) continue to use, with the same account

numbers, the Bank Accounts in existence as of the Petition Date, including those accounts

identified on **Exhibit 1** attached hereto; (b) treat the Bank Accounts for all purposes as accounts

of the Debtor as debtor-in-possession and to maintain and continue to use such accounts in the

same manner with the same account numbers, styles and document forms as those employed

prior to the Petition Date; (c) deposit funds in and withdraw funds from the Bank Accounts by all

usual means, including checks, wire transfers, ACH transfers and other debits; (d) pay Bank Fees

for prepetition transactions that are charged postpetition; (e) reimburse the Banks for any claims

arising before, on or after the Petition Date in connection with customer checks deposited with

the Banks that have been dishonored or returned as a result of insufficient funds; (f) pay any

ordinary course Bank Fees incurred in connection with the Bank Accounts and any related cash

management, treasury and accounting services, and to otherwise perform its obligations under

any and all documents and agreements governing the Bank Accounts and related cash

management, treasury and accounting services, irrespective of whether such fees arose prior to or

---

[3]     Net investment basis shall give credit for fees and returns received by the Debtor in respect of existing
investments.

4862-9173-5639 v.3

after the Petition Date; and (g) otherwise perform its obligations under the documents governing the Bank Accounts.

4.       The Debtor is authorized, but not directed, to continue to use its existing Business Forms, as well as checks and other documents related to the Bank Accounts existing immediately before the Petition Date, without reference to the Debtor's status as debtor-in-possession, until all Business Forms in existence before the Petition Date have been exhausted; *provided* that once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession"; *provided, further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

5.       The Banks are authorized and directed to (i) continue to maintain, service and administer the Bank Accounts identified on **Exhibit 1** attached hereto as accounts of the Debtor as debtor-in-possession and provide related treasury, accounting and cash management services without interruption, (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, credit card payments, other electronic transfers or other items presented, issued or drawn on the Bank Accounts and (iii) debit or charge back the Bank Accounts for all undisputed prepetition and postpetition Bank Fees.

6.       The Debtor and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition cash management agreements that may exist between them, except to the extent otherwise directed by the terms of this Interim Order and except as amended, modified, or supplemented by any agreement between the Debtor and such Bank.  The parties to such agreements shall continue to enjoy the rights and remedies afforded them under

-4-

such agreements, except to the extent expressly modified by the terms of this Interim Order or by operation of the Bankruptcy Code.

7.       The Banks participating in the Cash Management System shall not be liable to the Debtor, its estate or its creditors for honoring or dishonoring a prepetition or postpetition check or other item drawn on any of the Bank Accounts as a result of this Interim Order or at the direction of the Debtor.  None of the Banks shall have any liability to any person for any operational processing errors or other mistakes which are the result of human error or made despite implementation of reasonable item handling procedures, including, without limitation, any inadvertent dishonoring of any payment or other disbursement directed to be made by the Debtor.  None of the Banks shall be responsible for monitoring, or liable to any person for honoring, any payment or other transfer made or directed by the Debtor in contravention of the terms of this Interim Order, any interim or final cash collateral orders entered with respect to the Debtor, or any other order of the Court.

8.       The Debtor shall maintain accurate and detailed records of all transfers and transactions, including Investment Activities, within the Cash Management System such that all postpetition transfers and transactions are adequately and promptly documented in, and readily ascertainable from, and traced and recorded properly on, its books and records.

9.       The Debtor is authorized to continue to engage in Investment Activities on a postpetition basis in the ordinary course of business and consistent with historical practice, including funding any undrawn commitments under the Capital Call Facility in accordance therewith up to the total $170 million commitment amount; *provided* that prior to the entry of the Final Order, the Debtor shall (a) limit postpetition equity investment activities to $50 million in

-5-

aggregate funding on a net investment basis[4] and (b) not enter into any new intercompany

lending facilities other than the Capital Call Facility without leave of the Court.  In connection

therewith, the Debtor shall continue to maintain current records with respect to all transfers of

cash so that all transactions, including Investment Activities, may be readily ascertained, traced

and recorded properly on applicable accounts.  The Debtor is authorized, but not directed, to set

off mutual postpetition obligations relating to intercompany receivables and payables through the

Cash Management System.

10.      Nothing contained herein shall prevent the Debtor from opening any new

bank accounts or closing any of the Bank Accounts as the Debtor may deem necessary and

appropriate; *provided, however*, that prior to opening any new bank accounts or closing any of

the Bank Accounts, the Debtor shall provide notice of the Debtor's intentions with respect

thereto, as soon as reasonably practicable, to the U.S. Trustee and counsel to any statutory

committees appointed in this Chapter 11 Case within 15 days of such change; *provided, further*,

however, that the Debtor shall open any new such bank accounts at banks that have executed a

Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to

promptly execute such an agreement.  Nothing contained in this Interim Order shall prevent any

Bank from terminating any Bank Account(s) or related cash management services in accordance

with the respective agreements governing such accounts or services.

11.      With regard to the Banks that are on the U.S. Trustee's List of Authorized

Depositories, within 15 days from the date of entry of this Interim Order, the Debtor shall

(a) contact each Bank, (b) provide each Bank with the Debtor's employer identification number,

(c) provide each Bank with the bankruptcy number of the docket for this Chapter 11 Case, and

---

4    Net investment basis shall give credit for fees and returns received by the Debtor in respect of existing
      investments.

-6-

(d) identify each of the Bank Accounts held at such Banks as being held by a debtor-in-possession.

12.     The Debtor is authorized to transfer funds from the Non-Compliant Bank Accounts to Bank Accounts held with financial institutions in compliance with section 345(b) of the Bankruptcy Code.

13.     Within 15 days from the Petition Date, without prejudice to seeking an additional extension, the Debtor shall (a) bring the Non-Compliant Bank Accounts into compliance with section 345(b) of the Bankruptcy Code, (b) transfer the funds in the Non-Compliant Bank Accounts to Bank Accounts held with authorized depositories in compliance with section 345(b) of the Bankruptcy Code or (c) to seek appropriate relief from the Court.

14.     Bridge Bank and the Bank of New York Mellon shall honor any transfer request made by the Debtor in order to move funds to a compliant Bank Account.

15.     The Banks are hereby authorized to debit from the Bank Accounts, in the ordinary course of business and subject to any applicable account agreement, without further order of this Court:  (a) Bank Fees and charges arising in the ordinary course of business, regardless whether such fees and charges arose prepetition or postpetition; *provided, however*, that such Bank Fees and charges are authorized under the applicable account agreement with the Debtor; *provided, further, however*, that nothing set forth herein shall authorize any of the Banks to debit any Bank Fees or charges not arising in the ordinary course of business; and (b) any (i) returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or postpetition) or any credit given which is subsequently subject to return or dishonored arising out of an ACH debit or credit file, and (ii) over-advances,

-7-

credit balances or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or postpetition).

16.    To the extent not already done, the Debtor shall promptly advise the Banks of the commencement of this Chapter 11 Case, and within five business days from the date of entry of this Interim Order, the Debtor shall (a) serve a copy of this Interim Order on each Bank and (b) request that each Bank internally code each of the Bank Accounts as "debtor-in-possession" accounts.

17.    Nothing in this Interim Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate.

18.    The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

19.    The requirements set forth in Local Rule 9013-1(b) are satisfied.

20.    The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

21.    The requirements set forth in Bankruptcy Rule 6004(a) are waived.

22.    This Interim Order is immediately effective and enforceable, notwithstanding the possible applicability of Bankruptcy Rule 6004(h) or otherwise.

23.    This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Interim Order.

24.    The final hearing with respect to the relief requested in the Motion shall be held on _____, 2023 at _____ **(prevailing Eastern Time)**.  Any objections or

-8-

4862-9173-5639 v.3

responses to entry of the proposed Final Order shall be filed on or before **4:00 p.m. (prevailing Eastern Time) on _____, 2023** and served on the following parties: (a) proposed counsel to the Debtor, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Christian P. Jensen (jensenc@sullcrom.com); (b) counsel to any statutory committee appointed in this Chapter 11 Case; (c) the U.S. Trustee, 201 Varick Street #1006, New York, New York 10014 (Attn: Andrea Schwartz); and (d) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.  If no objections are timely filed, this Court may enter the Final Order without further notice or a hearing.


Dated: _____
            New York, New York

_____
The Honorable Martin Glenn
Chief United States Bankruptcy Judge

-9-

## Exhibit 1

**Bank Accounts**

| No. | Bank | Description | Account No.[1] |
|---|---|---|---|
| 2. | Bridge Bank | Operating Account | *5270 |
| 2. | Bridge Bank | Regulation W Account | *0822 |
| 3. | Bridge Bank | SVB Capital Operating Account | *6176 |
| 4. | Bank of New York Mellon | Treasuries Investment Account | *4250 |
| 5. | Bank of New York Mellon | Regulation W Account | *4252 |
| 6. | Citizens Bank. N.A. | Operating Account | *0664 |
| 7. | Keybank, N.A. | Operating Account | *2299 |

---

[1]    The last 4 digits of each Bank Account are listed.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————— x
                                              :
In re                                         :        Chapter 11
                                              :
SVB FINANCIAL GROUP,[1]                       :        Case No. 23-10367 (MG)
                                              :
             Debtor.                          :
                                              :
———————————————————— x

**FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO
(A) CONTINUE TO USE ITS CASH MANAGEMENT SYSTEM, INCLUDING
EXISTING BANK ACCOUNTS, (B) PAY OR HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO AND (C) MAINTAIN EXISTING BUSINESS
FORMS, (II) AUTHORIZING INVESTMENT ACTIVITIES AND (III) GRANTING
<u>RELATED RELIEF</u>**

Upon the motion (the "<u>Motion</u>")[2] of SVB Financial Group (the "<u>Debtor</u>"), for

entry of an order (this "<u>Final Order</u>") (a) authorizing, but not directing, the Debtor, in its sole

discretion, to (i) continue to use the Cash Management System as described herein, including

existing bank accounts, (ii) honor certain prepetition obligations related thereto and (iii) continue

using existing business letterhead, purchase orders, invoices, envelopes, promotional materials

and other business forms and correspondence, (b) authorizing and directing (i) applicable banks

and other financial institutions to honor and process related checks and transfers and (ii) the

Debtor to continue to perform Investment Activities with its affiliates and third parties on a

postpetition basis in the ordinary course of business and consistent with historical practice;

(c) transferring funds currently held at institutions that are not in compliance with section 345(b)

of the Bankruptcy Code; and (d) granting certain related relief, including scheduling a hearing to

consider approval of the Motion on a final basis (the "<u>Final Hearing</u>"); and this Court having

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

entered the *Interim Order (I) Authorizing, But Not Directing, the Debtor to (A) Continue to Use Its Cash Management System, Including Existing Bank Accounts, (B) Pay or Honor Certain Prepetition Obligations Related Thereto and (C) Maintain Existing Business Forms, (II) Authorizing Investment Activities, (III) Temporarily Waiving the Requirements of Section 345(B) and (IV) Granting Related Relief* [D.I. [•]]; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this Chapter 11 Case and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York (the "Local Rules"), and that, except as otherwise ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the record of the hearing and all of the proceedings had before this Court; and this Court having found and determined that the relief sought in the Motion is in the best interests of the Debtor, its estates, its creditors and all other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtor is (a) authorized, but not directed, in the reasonable exercise of its business judgment, to: (i) continue to operate the Cash Management System, (ii) honor its

2

prepetition obligations related thereto and (iii) maintain its existing Business Forms; and

(b) authorized to continue to perform Investment Activities with its affiliates and third-party

entities on a postpetition basis in the ordinary course of business and consistent with historical

practice.

3.      The Debtor is authorized, but not directed, in the reasonable exercise of its

business judgment to:  (a) continue to use, with the same account numbers, the Bank Accounts in

existence as of the Petition Date, including those accounts identified on **Exhibit 1** attached

hereto; (b) treat the Bank Accounts for all purposes as accounts of the Debtor as debtor-in-

possession and to maintain and continue to use such accounts in the same manner with the same

account numbers, styles and document forms as those employed prior to the Petition Date;

(c) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including

checks, wire transfers, ACH transfers and other debits; (d) pay Bank Fees for prepetition

transactions that are charged postpetition; (e) reimburse the Banks for any claims arising before,

on or after the Petition Date in connection with customer checks deposited with the Banks that

have been dishonored or returned as a result of insufficient funds; (f) pay any ordinary course

Bank Fees incurred in connection with the Bank Accounts and any related cash management,

treasury and accounting services, and to otherwise perform its obligations under any and all

documents and agreements governing the Bank Accounts and related cash management, treasury

and accounting services, irrespective of whether such fees arose prior to or after the Petition

Date; and (g) otherwise perform its obligations under the documents governing the Bank

Accounts.

4.      The Debtor is authorized, but not directed, to continue to use its existing

Business Forms, as well as checks and other documents related to the Bank Accounts existing

3

immediately before the Petition Date, without reference to the Debtor's status as debtor-in-possession, until all Business Forms in existence before the Petition Date have been exhausted; *provided* that once the Debtors have exhausted their existing stock of Business Forms, the Debtors shall ensure that any new Business Forms are clearly labeled "Debtor-In-Possession"; *provided, further*, with respect to any Business Forms that exist or are generated electronically, to the extent reasonably practicable, the Debtors shall ensure that such electronic Business Forms are clearly labeled "Debtor-In-Possession."

5.      The Debtor is authorized to transfer funds from the Non-Compliant Bank Accounts to Bank Accounts held with financial institutions in compliance with section 345(b) of the Bankruptcy Code.

6.      The Banks[3] are authorized and directed to (i) continue to maintain, service and administer the Bank Accounts identified on **Exhibit 1** attached hereto as accounts of the Debtor as debtor-in-possession and provide related treasury, accounting and cash management services without interruption, (ii) receive, process, honor and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, credit card payments, other electronic transfers or other items presented, issued or drawn on the Bank Accounts and (iii) debit or charge back the Bank Accounts for all undisputed prepetition and postpetition Bank Fees.

7.      Bridge Bank and the Bank of New York Mellon shall honor any transfer request made by the Debtor in order to move funds to a compliant Bank Account.

8.      The Debtor and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition cash management agreements that may exist between

---

[3]   The term "Banks," as used in this Final Order, shall include, in addition to those Banks with which the Debtor already maintain accounts, any other banks with which the Debtor opens new accounts pursuant to the terms of this Final Order.

4862-9173-5639 v.3

them, except to the extent otherwise directed by the terms of this Final Order and except as amended, modified, or supplemented by any agreement between the Debtor and such Bank.  The parties to such agreements shall continue to enjoy the rights and remedies afforded them under such agreements, except to the extent expressly modified by the terms of this Final Order or by operation of the Bankruptcy Code.

9.      The Banks participating in the Cash Management System shall not be liable to the Debtor, its estate or its creditors for honoring or dishonoring a prepetition or postpetition check or other item drawn on any of the Bank Accounts as a result of this Final Order or at the direction of the Debtor.  None of the Banks shall have any liability to any person for any operational processing errors or other mistakes which are the result of human error or made despite implementation of reasonable item handling procedures, including, without limitation, any inadvertent dishonoring of any payment or other disbursement directed to be made by the Debtor.  None of the Banks shall be responsible for monitoring, or liable to any person for honoring, any payment or other transfer made or directed by the Debtor in contravention of the terms of this Final Order, any interim or final cash collateral orders entered with respect to the Debtor, or any other order of the Court.

10.     The Debtor shall maintain accurate and detailed records of all transfers and transactions, including Investment Activities, within the Cash Management System such that all postpetition transfers and transactions are adequately and promptly documented in, and readily ascertainable from, and traced and recorded properly on, its books and records.

11.     The Debtor is authorized to continue to perform Investment Activities on a postpetition basis in the ordinary course of business and consistent with historical practice.  In connection therewith, the Debtor shall continue to maintain current records with respect to all

transfers of cash so that all transactions, including Investment Activities, may be readily

ascertained, traced and recorded properly on applicable accounts.  The Debtor is authorized, but

not directed, to set off mutual postpetition obligations relating to intercompany receivables and

payables through the Cash Management System.

12.     Nothing contained herein shall prevent the Debtor from opening any new

bank accounts or closing any of the Bank Accounts as the Debtor may deem necessary and

appropriate; *provided, however*, that prior to opening any new bank accounts or closing any of

the Bank Accounts, the Debtor shall provide notice of the Debtor's intentions with respect

thereto, as soon as reasonably practicable, to the U.S. Trustee and counsel to any statutory

committees appointed in this Chapter 11 Case within 15 days of such change; *provided, further*,

however, that the Debtor shall open any new such bank accounts at banks that have executed a

Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to

promptly execute such an agreement.  Nothing contained in this Final Order shall prevent any

Bank from terminating any Bank Account(s) or related cash management services in accordance

with the respective agreements governing such accounts or services.

13.     The Banks are hereby authorized to debit from the Bank Accounts, in the

ordinary course of business and subject to any applicable account agreement, without further

order of this Court:  (a) Bank Fees and charges arising in the ordinary course of business,

regardless whether such fees and charges arose prepetition or postpetition; *provided, however*,

that such Bank Fees and charges are authorized under the applicable account agreement with the

Debtor; *provided, further, however*, that nothing set forth herein shall authorize any of the Banks

to debit any Bank Fees or charges not arising in the ordinary course of business; and (b) any

(i) returned items drawn or presented against the Bank Accounts (regardless of whether such

returned items originated prepetition or postpetition) or any credit given which is subsequently subject to return or dishonored arising out of an ACH debit or credit file, and (ii) over-advances, credit balances or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or postpetition).

14.     Nothing in this Final Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate.

15.     The Debtor is authorized to take any and all actions necessary to effectuate the relief granted herein.

16.     The requirements set forth in Local Rule 9013-1(b) are satisfied.

17.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion under the circumstances, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

18.     This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Final Order.

19.     As soon as practicable after entry of this Final Order, the Debtor shall serve a copy of this Final Order on the Banks.

Dated: _____

     New York, New York

_____
The Honorable Martin Glenn
Chief United States Bankruptcy Judge

4862-9173-5639 v.3

**Exhibit 1**

**Bank Account**

| No. | Bank | Description | Account No.[1] |
|-----|------|-------------|------------|
| 3. | Bridge Bank | Operating Account | *5270 |
| 2. | Bridge Bank | Regulation W Account | *0822 |
| 3. | Bridge Bank | SVB Capital Operating Account | *6176 |
| 4. | Bank of New York Mellon | Treasuries Investment Account | *4250 |
| 5. | Bank of New York Mellon | Regulation W Account | *4252 |
| 6. | Citizens Bank. N.A. | Operating Account | *0664 |
| 7. | Keybank, N.A. | Operating Account | *2299 |

---

[1]    The last 4 digits of each Bank Account are listed.