| | | |
|---|---|---|
| REED SMITH LLP | REED SMITH LLP | REED SMITH LLP |
| Kurt F. Gwynne, Esq. | Derek J. Baker, Esq. | Keith M. Aurzada, Esq. |
| Casey D. Laffey, Esq. | (*pro hac vice pending*) | (*pro hac vice pending*) |
| 599 Lexington Avenue | 1717 Arch Street | 2850 N. Harwood Street |
| New York, NY 10022 | Three Logan Square | Suite 1500 |
| Telephone: (212) 521-5400 | Suite 3100 | Dallas, TX 75201 |
| Facsimile: (212) 521-5450 | Philadelphia, PA 19103 | Telephone: (469)-680-4200 |
| E-mail: kgwynne@reedsmith.com | Telephone: (215) 851-8100 | Facsimile: (469) 680-4299 |
| E-mail: claffey@reedsmith.com | Facsimile: (215) 851-1420 | E-mail: kaurzada@reedsmith.com |
| | E-mail: dbaker@reedsmith.com | |

*Counsel to the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | X : | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | : : | Case No. 23-10367 (MG) |
| Debtor. | : : : X | |

**OBJECTION OF THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK TO DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) CONTINUE TO USE ITS CASH MANAGEMENT SYSTEM, INCLUDING EXISTING BANK ACCOUNTS, (B) PAY OR HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO AND (C) MAINTAIN EXISTING BUSINESS FORMS, (II) AUTHORIZING INVESTMENT ACTIVITIES, (III) TEMPORARILY WAIVING THE REQUIREMENTS OF SECTION 345(b) AND (IV) GRANTING RELATED RELIEF**

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

    A.    The Collapse of Silicon Valley Bank ................................................................. 3

    B.    The Debtor's Bankruptcy Case and Cash Management Motion ........................ 3

OBJECTION .................................................................................................................................. 4

    A.    Section 345 Does Not Require the Debtor to Transfer its Account to a New Bank ............................................................................................................ 4

    B.    Paragraph 7 Should Be Stricken from the Proposed Order Because it Violates FIRREA and Impairs FDIC-R's Statutory Rights. .................................. 4

        1.    Section 1821(j) of FIRREA Prohibits Paragraph 7 of the Proposed Order ................................................................................................... 5

            a.    The FDIC-R's Exclusive, Mandatory Claims Process ................... 7

            b.    The FDIC-R's Rights to Withhold Payment .................................. 8

    C.    The Court Lacks Jurisdiction Because the Debtor Has Not Exhausted Its Administrative Remedies .................................................................................... 8

    D.    The Court Should Deny the Motion Because it is Procedurally Defective. ......... 10

    E.    The Uncertainty Regarding SVB's Interest in the Cash Management Accounts Precludes the Relief Requested in Paragraph 7. .................................. 10

RESERVATION OF RIGHTS ..................................................................................................... 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Board of Governors of the Fed. Reserve Sys. v. MCorp Fin.*,
    502 U.S. 32 (1991) ............................................................................................................ 6

*Carlyle Towers Condo. Ass'n. v. FDIC*,
    170 F.3d 301 (2d Cir. 1999) ......................................................................................... 8, 9

*Circle Indus. v. City Fed. Sav. Bank*,
    931 F.2d 7 (2d Cir. 1991) ................................................................................................ 9

*Citizens Bank v. Strumpf*,
    516 U.S. 16 (1995) ........................................................................................................... 7

*Creasy v. McGarry (In re Abingdon Orthopedic Assocs., P.C.)*,
    2012 Bankr. LEXIS 6282 (W.D. Va. Oct. 11, 2012) ....................................................... 7

*FDIC v. Onebeacon Midwest Ins. Co.*,
    883 F. Supp. 2d 754 (N.D. Ill. July 10, 2012) ................................................................. 6

*FDIC v. Urban P'ship Bank*,
    2018 U.S. Dist. LEXIS 73955 (N.D. Ill. May, 1, 2018) .................................................. 5

*Hindes v. FDIC*,
    137 F.3d 148 (3d Cir. 1998) ........................................................................................ 5, 6

*Jacobs v. PT Holdings, Inc.*,
    2012 U.S. Dist. LEXIS 17766 (D. Neb. Feb. 13, 2012) .................................................. 9

*Joyce v. Devastey*,
    2013 U.S. Dist. LEXIS 6392 (E.D. Pa. Jan. 16, 2013) .................................................... 7

*Miller v. Wells Fargo Bank International Corp.*,
    540 F.2d 548 (2d Cir. 1976) ............................................................................................ 7

*Pereira v. Summit Bank*,
    2001 U.S. Dist. LEXIS 1712 (S.D.N.Y. Feb. 21, 2001) .................................................. 6

*Resolution Trust Corp. v. Elman*,
    949 F.2d 624 (2d Cir. 1991) ............................................................................................ 9

*St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.*,
    2014 U.S. Dist. LEXIS 185050 (Bankr. N.D. Ga. Dec. 30, 2014) .................................. 7

*Telematics Intern., Inc. v. NEMLC Leasing Corp.*,
    967 F.2d 703 (1st Cir. 1992) ................................................................................................6

*Tom Doherty Assocs. v. Saban Entm't, Inc.*,
    60 F.3d 27 (2d Cir. 1995) ....................................................................................................9

*Volges v. Resolution Trust Corp.*,
    32 F.3d 50 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162 (1995) ......................................5, 6

**Statutes**

11 U.S.C. § 345(b) ........................................................................................................................3

12 U.S.C. § 1441a(b)(4) ................................................................................................................5

12 U.S.C. § 1441a(b)(5) ................................................................................................................5

12 U.S.C. § 1821(a)(1)(B) ............................................................................................................4

12 U.S.C. § 1821(a)(1)(E) ............................................................................................................4

12 U.S.C. § 1821(d)(3)-(13) .....................................................................................................2, 7

12 U.S.C. § 1821(d)(3)(A) ............................................................................................................7

12 U.S.C. § 1821(j) .......................................................................................................................5

12 U.S.C. § 1822(d) .................................................................................................................2, 8

**Rules**

Fed. R. Bankr. P. 7001(1) .........................................................................................................2, 9

Fed. R. Bankr. P. 7001(7) .........................................................................................................2, 9

**Other Authorities**

*FDIC Acts to Protect All Depositors of the former Silicon Valley Bank, Santa Clara, California,* March 13, 2023 (available at https://www.fdic.gov/news/press-releases/2023/pr23019.html) ...........................................................................................4

https://www.fdic.gov/resources/deposit-insurance/deposit-insurance-fund/ ................................4

The Federal Deposit Insurance Corporation, in its capacity as Receiver for Silicon Valley Bank ("FDIC-R"), by and through its counsel, Reed Smith LLP, objects (the "Objection") to the *Motion for Entry of Interim and Final Orders (I) Authorizing, But Not Directing, the Debtor to (A) Continue to Use Its Cash Management System, Including Existing Bank Accounts, (B) Pay or Honor Certain Prepetition Obligations Related Thereto and (C) Maintain Existing Business Forms, (II) Authorizing Investment Activities, (III) Temporarily Waiving the Requirements of Section 345(b) and (IV) Granting Related Relief* (the "Motion") filed by the above-captioned debtor SVB Financial Group (the "Debtor") and, in opposition to certain of the relief sought in the Motion, states as follows:

## PRELIMINARY STATEMENT

1. The overarching statutory mission of the Federal Deposit Insurance Corporation (the "FDIC") is to maintain stability and public confidence in the nation's financial system. When an insured depository institution ("IDI") fails, the FDIC is ordinarily appointed receiver. The FDIC, as receiver, assumes responsibility for efficiently maximizing the recovery from the disposition of the failed IDI's assets and the resolution of claims in the receivership. The proceeds of the failed IDI's assets are distributed to the receivership's creditors, including depositors, according to priorities set by law. To accomplish these goals, the FDIC, as receiver, takes charge of the failed IDI's assets and conducts an exclusive and mandatory claims process.

2. In normal circumstances of a failed bank, the Debtor might receive *nothing* on its uninsured deposit claims.

3. The relief requested in the Motion and paragraph 7 of the proposed order ("Paragraph 7") would prevent FDIC-R from fulfilling its statutory mission. Paragraph 7 provides

that "*Bridge Bank . . . shall honor any transfer request made by the Debtor* in order to move funds to a compliant Bank Account." *See* Proposed Order, ¶ 7 (emphasis added).

4. Silicon Valley Bridge Bank, N.A. ("Bridge Bank") has no liability on the Debtor's account claim. FDIC-R has always had such liability (even when the account was on the Bridge Bank's ledger, which is not). Thus, the relief requested in Paragraph 7 is factually unsupported. To the extent any such relief against Bridge Bank is factually possible, the relief requested is legally unavailable.

5. Paragraph 7 seeks to compel Bridge Bank to transfer the Debtor's account to a new financial institution. Such relief, if granted effectively would permit the Debtor to (i) circumvent the FDIC-R's exclusive, mandatory claims allowance process (12 U.S.C. § 1821(d)(3)-(13)) and (ii) extinguish the FDIC-R's statutory right to withhold payment (12 U.S.C. § 1822(d)) on the Debtor's deposit claims, as well as its contractual and common law rights of setoff. The FDIC-R's rights to administer its exclusive claims allowance process and withhold payments on deposit claims are referred to herein as its "Statutory Rights."

6. Section 1821(j) of title 12, U.S. Code, prohibits the Court from restraining or affecting FDIC-R's exercise of its Statutory Rights.

7. In addition, as the Debtor failed to exhaust its administrative remedies, the Court lacks jurisdiction to grant the relief requested in Paragraph 7.

8. The relief requested in Paragraph 7 also fails because it constitutes mandatory injunctive relief and an attempt to recover property that is inappropriate for a contested matter, let alone interim relief on a contested matter. *See* Fed. R. Bankr. P. 7001(1) and (7).

9. The uncertainty regarding the beneficial interest of Silicon Valley Bank ("SVB") in the Debtor's accounts also precludes the relief requested in Paragraph 7.

## BACKGROUND

A.  **The Collapse of Silicon Valley Bank**

10.  On Friday, March 10, 2023, the depositors ran on SVB, the nation's 16th-largest bank, which did not have cash on hand to cover depositors' withdrawals. It was the second-largest bank failure in U.S. history and the largest since Washington Mutual failed in 2008.

11.  Also on March 10, 2023, the California Department of Financial Protection and Innovation closed SVB and appointed the FDIC as receiver for SVB.

12.  On Monday, March 13, 2023, the FDIC-R announced the creation of the Bridge Bank.

B.  **The Debtor's Bankruptcy Case and Cash Management Motion**

13.  On Friday, March 17, 2023 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

14.  On Sunday, March 19, 2023, the Debtor filed (among other motions) the Motion and the accompanying proposed order, including Paragraph 7.

15.  The Debtor describes its accounts as an "Operating Account, Regulation W Account, and SVB Capital Operating Account." The Debtor also alleges that its cash management system was fully integrated. While FDIC-R's investigation is only just beginning, it is highly likely that some of the funds in the Operating Account were in fact owned by the SVB and both generated by and used for SVB's operations, not the Debtor's, given the lack of observance of corporate formalities in the two entities' day to day affairs. Property, books, records, contracts, and personnel were shared and used by both entities. Accounting for their separate interests in the accounts is ongoing. Moreover, the "Regulation W Account" was presumably used to maintain the Debtor's compliance with Regulation W of the Federal Reserve Act; it was maintained for

SVB's benefit, *not* the Debtor's, and could *not* have been used for the Debtor's general corporate operations.

## OBJECTION

A. **Section 345 Does Not Require the Debtor to Transfer its Account to a New Bank.**

16. The Debtor couches its request to direct the Bridge Bank to transfer funds to a new bank as an effort to comply with 11 U.S.C. § 345(b). *See* Motion, at ¶ 10, ¶¶ 30-33. In reality, there is no need to move any account. The purpose of Section 345 of the Bankruptcy Code is to avoid the risk to a debtor of bank failure. Here, the Debtor's bank (SVB) *already* failed. To the extent that the FDIC agrees that any amount is due to the Debtor (and unavailable for setoff), such amount will be paid in full through the Deposit Insurance Fund. *See* FDIC Press Release, *FDIC Acts to Protect All Depositors of the former Silicon Valley Bank, Santa Clara, California,* March 13, 2023 (available at https://www.fdic.gov/news/press-releases/2023/pr23019.html).

17. Accordingly, there is no need for the Debtor to move its accounts to another bank as the DIF insures that the Debtor's current deposit claims (as determined after full exhaustion of the administrative Claims Process (as defined below)) are compliant with section 345 of the Bankruptcy Code.

B. **Paragraph 7 Should Be Stricken from the Proposed Order Because it Violates FIRREA and Impairs FDIC-R's Statutory Rights.**

18. Although the Debtor seeks to cast the relief sought in the Motion as "regularly authorized" in a routine "first day" cash management motion, this case is anything but routine.

19. This case involves the Statutory Rights of the FDIC-R in the second-largest bank failure in United States history. Largely due to the way that the Debtor structured its business and financial relationships with its bank (SVB) and third parties, the relationships and financial entanglements between the Debtor and the FDIC-R will take time to identify, analyze, quantify,

- 4 -

and disentangle. Much of that work will take place in FDIC-R's exclusive, mandatory claims process.

20. Just days after the Petition Date, the Debtor seeks in Paragraph 7 to extinguish the Statutory Rights and circumvent the administrative process established by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101-73, 103 Stat. 183 (codified as amended in scattered sections of 12 U.S.C.). Specifically, the Debtor seeks to have the Court simply require the Bridge Bank to transfer the Debtor's accounts to a new bank in derogation of FDIC-R's Statutory Rights. *See* Proposed Order, ¶ 7. Paragraph 7 improperly restrains or affects the FDIC-R's ability to exercise its Statutory Rights.

### 1. Section 1821(j) of FIRREA Prohibits Paragraph 7 of the Proposed Order

21. Section 1821(j) of FIRREA provides that, "[e]xcept as provided in this section, *no court may take any action*, except at the request of the Board of Directors by regulation or order, *to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver*." 12 U.S.C. § 1821(j) (emphasis added).

22. "Section 1821(j) "broadly and unequivocally" prohibits any court from "restrain[ing] or affect[ing]" the FDIC's exercise of its powers or functions under FIRREA. *See Volges v. Resolution Trust Corp.*, 32 F.3d 50, 52 (2d Cir. 1994), *cert. denied*, 515 U.S. 1162 (1995);[2] s*ee FDIC v. Urban P'ship Bank*, 2018 U.S. Dist. LEXIS 73955, *11 (N.D. Ill. May, 1, 2018) ("Giving full effect to Congressional intent as reflected in the broad statutory language in [12 U.S.C. § 1821(j)], courts thus interpret § 1821(j) to bar not only injunctive relief, but *any* relief that would 'effectively restrain the FDIC' from taking statutorily authorized action.").

---

[2] "FIRREA grant[ed] [the RTC] the same powers and protections as the FDIC when the RTC operate[d] as a receiver." *Hindes v. FDIC*, 137 F.3d 148, 159 n.9 (3d Cir. 1998) (citing 12 U.S.C. § 1441a(b)(5), § 1441a(b)(4)).

23. "FIRREA's anti-injunction provision is but part of a broader scheme" enacted to allow the FDIC "expeditiously to wind up the affairs of defunct" banks "without judicial interference." *Volges*, 32 F.3d at 52. "Consistent with that purpose, the anti-injunction provision is a direct manifestation of Congress's intent to prevent courts from interfering with the [FDIC] in the exercise of its statutory powers." *Id.* The fact that the FDIC's "actions might violate some other provision of law does not render the anti-injunction provision inapplicable." *Id.*

24. Interpreting an analogous anti-injunction provision, the United States Supreme Court declared that "the specific preclusive language in 12 U.S.C. § 1818(i)(1) [analogue to section 1821(j)]" was "not qualified or superseded by the general provisions governing bankruptcy proceedings[.]" *Board of Governors of the Fed. Reserve Sys. v. MCorp Fin.*, 502 U.S. 32, 42 (1991) (citation omitted).

25. The fact that Paragraph 7 is directed at the Bridge Bank does not except it from the preclusive effect of section 1821(j) because Paragraph 7 would impair FDIC-R's Statutory Rights. "[A] court order which operates against a third party is precluded by section 1821(j) if the order would have the same effect from the FDIC's perspective as a direct action against it precluded by section 1821(j)." *FDIC v. Onebeacon Midwest Ins. Co.*, 883 F. Supp. 2d 754, 765 (N.D. Ill. July 10, 2012) (quoting *Hindes*, 137 F.3d at 160); *see also Telematics Intern., Inc. v. NEMLC Leasing Corp.*, 967 F.2d 703, 707 (1st Cir. 1992).

26. By requiring SVB to transfer the Debtor's account to a new bank, Paragraph 7 precludes FDIC-R's exercise of its powers and functions as receiver, including (without limitation) the Statutory Rights. Therefore, section 1821(j) requires that the Court deny the Motion, unless Paragraph 7 is stricken from the order.

### a.  The FDIC-R's Exclusive, Mandatory Claims Process

27. "The relationship between a bank and a depositor is that of debtor and creditor." *Pereira v. Summit Bank*, 2001 U.S. Dist. LEXIS 1712, *35 (S.D.N.Y. Feb. 21, 2001). "The deposit of funds into a general account transfers ownership of the funds to the bank and constitutes the depositor as the bank's creditor." *Id.*  A bank account does not consist of money held by a bank: "it consists of nothing more or less than a promise to pay, from the bank to the depositor." *Citizens Bank v. Strumpf*, 516 U.S. 16, 21 (1995).[3]

28. The Debtor may assert its deposit claim against the FDIC-R pursuant to the exclusive, mandatory claims process established under FIRREA. *See* 12 U.S.C. § 1821(d)(3)-(13) (the "<u>Claims Process</u>").  That Claims Process is an exclusive process and a core function of FDIC-R.  *See St. Paul Mercury Ins. Co. v. Montgomery Cnty. Bankshares, Inc.*, 2014 U.S. Dist. LEXIS 185050, *10 (Bankr. N.D. Ga. Dec. 30, 2014) (referring to "the exclusive nature of the administrative claims process" under FIRREA); *Joyce v. Devastey*, 2013 U.S. Dist. LEXIS 6392, *5 (E.D. Pa. Jan. 16, 2013) ("Under the FIRREA, management of the claims process is committed to the exclusive power and discretion of the Receiver, and the Receiver's management of the claims process is a core function of the Receiver.  *See* 12 U.S.C. § 1821(d)(3)(A).").

29. Claimants, including the Debtor, "must submit their claims against the FDIC, as Receiver, to the administrative claims process established by the FIRREA before seeking judicial review." *Joyce*, 2013 U.S. Dist. LEXIS 6392, at *6.

---

[3] *See Miller v. Wells Fargo Bank International Corp.*, 540 F.2d 548, 561 (2d Cir. 1976) ("The only property interest . . . after its deposit of the Swiss Francs was the time deposit account, an intangible chose in action"); *Creasy v. McGarry (In re Abingdon Orthopedic Assocs., P.C.)*, 2012 Bankr. LEXIS 6282, *12 (W.D. Va. Oct. 11, 2012) ("A deposit account in a bank represents the indebtedness of the bank to its depositor.  It is not a specific pile of cash in the bank's vault representing the customer's deposit with the bank . . . .").

30. Rather than pursuing its deposit claim in FIRREA's exclusive Claims Process, the Debtor seeks to have its claim effectively allowed in full and paid at its first-day hearing.

31. Paragraph 7 restrains or affects FDIC-R's right to administer its exclusive Claims Process in violation of section 1821(j). Therefore, section 1821(j) requires that the Court deny the Motion, unless Paragraph 7 is stricken from the order.

### b.   The FDIC-R's Rights to Withhold Payment

32. Congress specifically empowered the FDIC-R to:

> withhold payment of such portion of the insured deposit of any depositor in a depository institution in default as may be required to provide for the payment of any liability of such depositor to the depository institution in default or its receiver, which is not offset against a claim due from such depository institution, pending the determination and payment of such liability by such depositor or any other person liable therefor.

12 U.S.C. § 1822(d).

33. Pursuant to the Deposit Account Agreement, FDIC-R has a contractual right of setoff. FDIC-R also has a common law right of setoff.

34. Paragraph 7 restrains or affects FDIC-R's right to withhold payments on, or setoff against, the Debtor's deposit claim in violation of section 1821(j), as well as the FDIC-R's right to conduct the exclusive mandatory claims process established by FIRREA, including to demand a timely proof of claim and afford the FDIC-R an opportunity to determine whether to allow the claim.. Therefore, section 1821(j) requires that the Court deny the Motion, unless Paragraph 7 is stricken from the order.

### C.   The Court Lacks Jurisdiction Because the Debtor Has Not Exhausted Its Administrative Remedies.

35. The Debtor also is not entitled to the relief requested in Paragraph 7 because Congress has withdrawn the jurisdiction of any court over a claim unless and until a claimant has

timely exhausted the claims process; here, the Debtor has failed to exhaust the mandatory administrative Claims Process. *See* 12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided in this subsection, no court shall have jurisdiction over— (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.").

36. "[S]ection 1821(d)(13)(D), when read in conjunction with the rest of section 1821(d), creates a requirement that all claims must be presented to the FDIC before a claimant may seek judicial review." *Carlyle Towers Condo. Ass'n. v. FDIC*, 170 F.3d 301, 307 (2d Cir. 1999). "The statute means just what it says, . . . a claimant must first present its case to the [FDIC] under the administrative procedure erected by FIRREA before seeking relief in the federal courts." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991); *see Circle Indus. v. City Fed. Sav. Bank*, 931 F.2d 7, 8 (2d Cir. 1991) (per curiam). "FIRREA makes exhaustion a jurisdictional requirement[.]" *Carlyle Towers,* 170 F.3d at 307.

37. The plain language of FIRREA indicates that the statute applies to "any claim or action." 12 U.S.C. § 1821(d)(13)(D). "[T]here is no 'debtor-in-bankruptcy' exception to FIRREA's administrative exhaustion requirement." *Jacobs v. PT Holdings, Inc.*, 2012 U.S. Dist. LEXIS 17766, *30 (D. Neb. Feb. 13, 2012).

38. Because the Debtor has not exhausted the administrative Claims Process, its attempt to have this Court make a determination of rights and award the Debtor a full claim by requiring the Bridge Bank under Paragraph 7 to transfer the Debtor's account to a new bank fails as a matter of law. The Court lacks jurisdiction to grant such relief.

**D.   The Court Should Deny the Motion Because it is Procedurally Defective.**

39. Paragraph 7 purports to require the Bridge Bank to honor any transfer requested by the Debtor. *See* Paragraph 7 (Bridge Bank "shall honor any transfer request . . . ."). Requiring Bridge Bank to take such action is effectively a mandatory injunction. *See Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (a mandatory injunction "alter[s] the status quo by commanding some positive act").

40. Injunctive or other equitable relief must be sought by adversary proceeding. *See* Fed. R. Bankr. P. 7001(7) ("a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief").

41. Paragraph 7 also effectively constitutes a request to recover money or property (*i.e.*, the Debtor's deposit claim). Such relief also must be sought by adversary proceeding. *See* Fed. R. Bankr. P. 7001(1) ("a proceeding to recover money or property").

42. Accordingly, the Court should deny the Motion because it is procedurally defective.

**E.   The Uncertainty Regarding SVB's Interest in the Cash Management Accounts Precludes the Relief Requested in Paragraph 7.**

43. As indicated above, the apparent beneficial interest of SVB in the Debtor's accounts (such as the Regulation W Account) also precludes the relief requested in the Motion, especially at the first-day hearing.

**RESERVATION OF RIGHTS**

44. The submission of this Objection does not constitute a submission by the FDIC-R to the jurisdiction of the Bankruptcy Court for the resolution of any regulatory matter involving the FDIC-R. Nor is the Objection an admission that this Court is the appropriate forum for disputes involving the FDIC-R. The filing of the Objection shall not constitute a waiver by the FDIC-R of any of its rights or remedies, including without limitation section 1821(d)(13)(D), regarding the

Debtor's failure to exhaust the remedies and exclusive procedures set forth in title 12 of the United States Code, as applicable. All such rights are expressly are reserved.

## CONCLUSION

The relief requested in Paragraph 7 lacks any factual or legal foundation. The purported reason for the Motion (compliance with 11 U.S.C. § 345(b)) is belied by the facts. The Bridge Bank Accounts are already compliant with 11 U.S.C. § 345(b). The effect of the relief requested in Paragraph 7 would circumvent the exclusive, mandatory Claims Procedures set forth in FIRREA and strip FDIC-R of its right to withhold payments on account of, or setoff against, the Debtor's deposit claims. Section 1821(j) of title 12, U.S. Code, prohibits the relief requested in Paragraph 7 because it restrains and affects FDIC-R's ability to exercise its rights and duties under FIRREA.

In addition, as the Debtor failed to exhaust its administrative remedies, section 1821(d)(13)(D) of title 12, U.S. Code, the Court lacks jurisdiction to grant the relief requested in Paragraph 7. Accordingly, FDIC-R respectfully requests that this Court enter an order denying the relief requested in Paragraph 7 of the Motion.

The Motion is procedurally defective and should be denied because as it seeks injunctive relief and the recovery of property by way of motion in violation Bankruptcy Rule 7001(1) and (7). The procedural defect is particularly acute because the Debtor seeks such relief in an interim order.

Finally, the beneficial interest of SVB in the Debtor's accounts also precludes the relief requested in the Motion.

Dated: March 20, 2023
New York, New York

REED SMITH LLP

*/s/ Kurt F. Gwynne*
Kurt F. Gwynne, Esq.
Casey D. Laffey, Esq.
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
E-mail: claffey@reedsmith.com

-and-

REED SMITH LLP

Derek J. Baker, Esq. (*pro hac vice pending*)
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
E-mail: dbaker@reedsmith.com

-and-

REED SMITH LLP

Keith M. Aurzada, Esq. (*pro hac vice pending*)
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
Telephone: (469)-680-4200
Facsimile: (469) 680-4299
E-mail: kaurzada@reedsmith.com

*Counsel to the Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of March 2023, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF.  I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all parties of record.

/s/ Kurt F. Gwynne
Kurt F. Gwynne