**Hearing Date: May 18, 2023 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Deadline: May 11, 2023 at 4:00 p.m. (Prevailing Eastern Time)**

Evan Hollander
Michael Trentin
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: echollander@orrick.com
        mtrentin@orrick.com

*Counsel for Gregory W. Becker*

Philip D. Anker
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: Philip.Anker@wilmerhale.com

*Counsel for Eric A. Benhamou, Elizabeth
Burr, Richard D. Daniels, Alison Davis,
Roger Dunbar, Joel P. Friedman, Thomas
King, Jeffrey N. Maggioncalda, Beverly Kay
Matthews, Mary J. Miller, Kate D. Mitchell,
John Robinson, and Garen K. Staglin*

Alexander Woolverton
Andrew J. Citron
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9220
Facsimile: (212) 715-8000
Email: awoolverton@kramerlevin.com
        acitron@kramerlevin.com

*Counsel for Daniel J. Beck*

Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839 5300
Facsimile: (212) 839 5599
Email: arovira@sidley.com

*Counsel for Michelle Draper*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | ) | |
| | ) | |
| Debtor. | ) | Case No. 23-10367 (MG) |
| | ) | |

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

**NOTICE OF HEARING AND MOTION FOR ENTRY OF AN ORDER
ALLOWING FOR THE ADVANCEMENT AND PAYMENT
OF DEFENSE COSTS OF INSUREDS PURSUANT TO D&O POLICIES**

      **PLEASE TAKE NOTICE** that on March 17, 2023 (the "Petition Date"), SVB Financial Group (the "Debtor"), filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

      **PLEASE TAKE FURTHER NOTICE** that on May 3, 2023, Gregory W. Becker, Daniel J. Beck, Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John Robinson, Garen K. Staglin, and Michelle Draper (together, the "Movants"), filed the annexed *Motion for Entry of an Order Allowing for the Advancement and Payment of Defense Costs of Insureds Pursuant to D&O Policies* (the "Motion").  A hearing (the "Hearing") on the Motion will take place before the Honorable Martin Glenn, Chief United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, in Courtroom No. 523, located at One Bowling Green, New York, New York 10004-1408 at **10:00 a.m. on May 18, 2023, prevailing Eastern Time.**

      **PLEASE TAKE FURTHER NOTICE** that, responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court by **4:00 p.m. on May 11, 2023, prevailing Eastern Time** (the "Objection Deadline") and (b) must be served on the following parties: (i) counsel for Gregory W. Becker, Orrick Herrington & Sutcliffe LLP51 West 52nd Street, New York, New York 10019, Attn: Evan Hollander (echollander@orrick.com); (ii) counsel for Daniel J. Beck, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, NY 10036, Attn: Alexander Woolverton (awoolverton@kramerlevin.com); (iii) Counsel for Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John Robinson, and Garen K. Staglin, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich St., New York, NY 10007, Attn: Philip Anker (Philip.anker@wilmerhale.com); (iv) counsel for Michelle Draper, Sidley Austin LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Alex R. Rovira (arovira@sidley.com); (v) proposed counsel to the Debtor, Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004, Attn: Christian P. Jensen (jensenc&sullcrom.com; (vi) proposed counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York NY 10036, Attn: James R. Savin (jsavin@akingump.com); (vii) the Office of the United States Trustee for the Southern District of New York; and (viii) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002.

      **PLEASE TAKE FURTHER NOTICE** that if no written objections are timely filed and served with respect to the Motion, on or after the Objection Deadline, the Movants may submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter without further notice or opportunity to be heard.

4131-9513-5559.1

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion can be viewed and/or obtained by: (i) accessing the Court's website at www.nysb.uscourts.gov (PACER password required) or (ii) from the Debtor's notice and claims agent, Kroll Restructuring Administration LLC, which maintains a website at https://restructuring.ra.kroll.com/svbfg/.

**PLEASE TAKE FURTHER NOTICE** that if you oppose the relief requested in the Motion, or if you want the Court to hear your position on the Motion, then you or your attorney must attend the Hearing.  If you or your attorney do not follow the foregoing steps, the Court may decide that you do not oppose the relief requested in the Motion and may enter orders granting the relief requested by the Movants.

Dated: May 3, 2023
　　　　New York, New York

Respectfully submitted,

*/s/ Evan Hollander*
Evan Hollander
Michael Trentin
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: echollander@orrick.com
　　　　mtrentin@orrick.com

*Counsel for Gregory W. Becker*

Alexander Woolverton
Andrew J. Citron
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9220
Facsimile: (212) 715-8000
Email: awoolverton@kramerlevin.com
　　　　acitron@kramerlevin.com

*Counsel for Daniel J. Beck*

Philip D. Anker
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: Philip.Anker@wilmerhale.com

*Counsel for Eric A. Benhamou, Elizabeth Burr,
Richard D. Daniels, Alison Davis, Roger Dunbar,
Joel P. Friedman, Thomas King, Jeffrey N.
Maggioncalda, Beverly Kay Matthews, Mary J.
Miller, Kate D. Mitchell, John Robinson, and Garen
K. Staglin*

Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839 5300
Facsimile: (212) 839 5599
Email: arovira@sidley.com

*Counsel for Michelle Draper*

Evan Hollander
Michael Trentin
ORRICK, HERRINGTON & SUTCLIFFE
LLP
51 West 52nd Street
New York, New York 10019
Telephone: (212) 506-5000
Facsimile: (212) 506-5151
Email: echollander@orrick.com
        mtrentin@orrick.com

*Counsel for Gregory W. Becker*

Philip D. Anker
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: Philip.Anker@wilmerhale.com

*Counsel for Eric A. Benhamou, Elizabeth
Burr, Richard D. Daniels, Alison Davis,
Roger Dunbar, Joel P. Friedman, Thomas
King, Jeffrey N. Maggioncalda, Beverly Kay
Matthews, Mary J. Miller, Kate D. Mitchell,
John Robinson, and Garen K. Staglin*

Alexander Woolverton
Andrew J. Citron
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9220
Facsimile: (212) 715-8000
Email: awoolverton@kramerlevin.com
        acitron@kramerlevin.com

*Counsel for Daniel J. Beck*

Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839 5300
Facsimile: (212) 839 5599
Email: arovira@sidley.com

*Counsel for Michelle Draper*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| | ) | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | ) | |
| | ) | |
| Debtor. | ) | Case No. 23-10367 (MG) |
| | ) | |

**MOTION FOR ENTRY OF AN ORDER**
**ALLOWING FOR THE ADVANCEMENT AND PAYMENT**
**OF DEFENSE COSTS OF INSUREDS PURSUANT TO D&O POLICIES**

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

JURISDICTION AND VENUE ......................................................................................... 3

BACKGROUND ................................................................................................................ 3

     A.     Bankruptcy Case ............................................................................................ 3

     B.     D&O Insurance Policies .................................................................................. 3

     C.     The Movants and the Covered Claims ......................................................... 7

     D.     Events Leading to This Motion ..................................................................... 9

BASIS FOR THE RELIEF REQUESTED ...................................................................... 10

     I.     The Movants and Additional Insureds Are Entitled to Coverage Under the D&O Policies ................................................................................................ 10

     II.     "Cause" Exists to Grant Relief from the Automatic Stay. ........................... 13

WAIVER OF BANKRUPTCY RULE 4001(a)(3) .......................................................... 16

NOTICE ........................................................................................................................... 16

CONCLUSION ................................................................................................................ 17

EXHIBIT A    Proposed Order
EXHIBIT B    The Primary Policy
EXHIBIT C    The Lead Side A DIC Policy

4133-0025-5047

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allied Digital Techs., Corp.*,
    306 B.R. 505 (Bankr. D. Del. 2004) ...................................................................12, 15, 16

*In re Beach First Nat'l Bancshares, Inc.*,
    451 B.R. 406 (Bankr. D.S.C. 2011) .............................................................................. 16

*In re CHS Elecs., Inc.*,
    261 B.R. 538 (Bankr. S.D. Fla. 2001) .......................................................................... 12

*Deangelis v. Corzine*,
    151 F. Supp. 3d 356 (S.D.N.Y. 2015) .......................................................................... 11

*In re Downey Fin. Corp.*,
    428 B.R. 595 (Bankr. D. Del. 2010) ............................................................................. 12

*In re Enron Corp.*,
    306 B.R. 465 (Bankr. S.D.N.Y. 2004) .......................................................................... 14

*In re Enron Corp.*,
    No. 01-16034, 2002 WL 1008240 (Bankr. S.D.N.Y. May 17, 2002) .............................. 16

*In re Garrett Motion Inc.*,
    Case No. 20-12212, ECF No. 1114 (Bankr. S.D.N.Y. (April 16, 2021) ........................... 16

*In re Laminate Kingdom, LLC*,
    Case No., 07010279, 2008 WL 1766637 (Bankr. S.D. Fla. Mar. 13, 2008) ..................... 16

*In re Louisiana World Exposition, Inc.*,
    832 F.2d 1391 (5th Cir. 1987) .............................................................................. 11-12

*In re MF Glob. Holdings Ltd.*,
    469 B.R. 177 (Bankr. S.D.N.Y. 2012) ..................................................................11, 15, 16

*In re MF Glob. Holdings Ltd.*,
    515 B.R. 193 (Bankr. S.D.N.Y. 2014) .......................................................................... 13

*Ochs v. Lipson (In re First Cent. Fin. Corp.)*,
    238 B.R. 9 (Bankr. E.D.N.Y. 1999) ......................................................................... 11, 12

*In re Relativity Fashion*,
    LLC, No. 18-11358, ECF No. 604 (Bankr. S.D.N.Y. Nov. 19, 2018) ............................... 16

*In re Sonnax Indus., Inc.*,
    907 F.2d. 1280 (2d Cir. 1990) .............................................................................. 14, 15

4133-0025-5047

*In re TierOne Corp.*,
　2012 WL 4513554 (Bankr. D. Neb. Oct. 2, 2012) ............................................................. 13

*In Sears Holding Corp.*,
　Case No. 18-23538, ECF No. 5382 (Oct. 16, 2019) .......................................................... 16

*In re Valeritas Holdings, Inc.*,
　Case No. 20-10290, ECF No. 578 (Bankr. D. Del. Nov. 22, 2022).................................... 16

*In re World Health Alternatives, Inc.*,
　369 B.R. 805 (Bankr. D. Del. 2007) ........................................................................... 12, 13

**Statutes**

11 U.S.C. § 105(a).................................................................................................................. 1, 3

11 U.S.C. § 362(d) ............................................................................................................... *passim*

4133-0025-5047

Gregory W. Becker, Daniel J. Beck, Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John Robinson, Garen K. Staglin, and Michelle Draper (together, the "Movants") submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), pursuant to sections 105(a) and 362(d)(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), modifying the automatic stay, to the extent it applies, and permitting the D&O Insurers (defined below) to make payments, including the advancement of defense costs, in accordance with certain directors and officers' liability insurance policies to, or on behalf of, the Movants in connection with the Covered Claims (defined below), as well as other insureds (the "Additional Insureds") who are covered under the directors and officers' liability policies and who join this Motion by separate joinder.  The Movants have conferred with counsel to the Debtor and the Official Committee of Unsecured Creditors prior to filing this Motion.  Counsel to the Debtor has advised that it does not object to the requested relief.  In support of the Motion, the Movants, by and through their undersigned counsel, respectfully state as follows:

## PRELIMINARY STATEMENT

1.      After the Debtor's subsidiary Silicon Valley Bank was placed into receivership, the Movants were named as defendants in several securities class action lawsuits and became involved in various regulatory investigations.  These proceedings have required, and will continue to require, the Movants to incur legal fees and related expenses.  Because, on account of this bankruptcy, the Debtor has declined to advance such defense costs to the Movants, the Movants

1

need to access certain directors and officers' liability insurance policies to fund their defense.  The insurance policies at issue exist for this very purpose.

2.      The Movants have provided proper notice of the pending claims against them to the insurers pursuant to the terms of the polices.  The Movants have been informed that the insurers require an order from this Court authorizing the insurers to advance defense costs prior to making payments under the policies.  Accordingly, the Movants bring this Motion for entry of an order lifting the automatic stay, to the extent it applies, to permit the insurers to pay the Movants' and Additional Insureds' defense costs.

3.      As explained herein, Movants believe that all or a substantial portion of the proceeds of the policies are not property of the estate and not subject to the automatic stay.  But, even to the extent the stay does apply to any portion of the proceeds of the policies, ample justification exists for lifting the stay to permit Movants and Additional Insureds to seek and obtain payment of their defense costs from the policies.  Movants and Additional Insureds would be significantly prejudiced if the stay is not lifted.  The policies exist for the very purpose of funding Movants' and the Additional Insureds' legal defenses, and any uncertainty concerning the availability of the policies' proceeds would severely hinder their ability to effectively defend against civil litigation and respond to regulatory inquiries.  In contrast, the estate is not prejudiced because it does not have a present need for coverage and because the Movants' and Additional Insureds' defense costs will not likely exhaust the policies, which provide more than $200 million in coverage.  Indeed, the estate will benefit from Movants' robust legal defense, particularly to the extent that any portion of the proceeds of the policies are property of the estate.  Movants are committed to coordinating with one another, wherever possible, in order to make the most efficient use of the proceeds of the policies in mounting a defense.

4133-0025-5047

4.        The primary purpose of D&O insurance is to protect a company's directors and officers.  Such coverage in intended to enable directors and officers to defend themselves from third-party actions without regard to the priority of the claims that such third parties might be able to assert in a bankruptcy of the company.  Not permitting the Movants and Additional Insureds to access much-needed coverage at this time would undermine this purpose and severely prejudice the Movants' and Additional Insureds' ability to set forth a fulsome defense to the claims against them.  Accordingly, and for the reasons set forth herein, the Motion should be granted.

## JURISDICTION AND VENUE

5.        The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b).

6.        The legal predicate for the relief requested herein are Bankruptcy Code sections 105(a) and 362(d)(1), Bankruptcy Rules 4001 and 9014, and Local Rule 4001-1.

## BACKGROUND

**A.    Bankruptcy Case**

7.        On March 17, 2023 (the "Petition Date"), SVB Financial Group (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 case (the "Chapter 11 Case").  The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.        On March 28, 2023, the Office of the United States Trustee for Region 2 (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") [Dkt. No. 72].  No request for a trustee or examiner has been made in this Chapter 11 Case.

**B.    D&O Insurance Policies**

9.        In the ordinary course of its business, the Debtor obtained directors and officers liability insurance policies to, *inter alia*, protect its directors and officers.  Specifically, the Debtor

maintains a primary Directors & Officers and Entity Securities Liability Insurance policy.  This

primary policy was issued by Federal Insurance Company, as primary insurer ("Primary Insurer"),

with an aggregate coverage limit of $10 million (the "Primary Policy").  A copy of the Primary

Policy is attached hereto as Exhibit B.

10.     In addition to the $10 million of coverage under the Primary Policy, the Debtor

obtained excess layers of D&O insurance in an aggregate amount of $200 million (including $50

million of Side A DIC coverage)[2] from certain insurers (collectively, with the Primary Insurer, the

"D&O Insurers") for total insurance coverage of $210 million, pursuant to the following policies

(collectively, the "D&O Policies" and each a "Policy"):

|   | Coverage | Insurer(s) | Policy Number |
|---|---|---|---|
| 1. | D&O – Primary ($10 million) | Federal Insurance Company/Chubb | 8248-0807 |
| 2. | D&O – $10 million excess $10 million | National Union Fire Insurance Company of Pittsburgh, PA | 01-436-43-28 |
| 3. | D&O – $10 million excess $20 million | Continental Casualty Company/CAN | 596711499 |
| 4. | D&O – $10 million excess $30 million | Freedom Specialty Insurance Company | XMF2202386 |
| 5. | D&O – $10 million excess $40 million | Argonaut Insurance Company | MLX4244146-3 |
| 6. | D&O – $10 million excess $50 million | Travelers Casualty and Surety | 106566983 |

---

[2] The Side A DIC Policies do not provide any insurance coverage to the Debtor itself.  The Side A DIC Policies provide protection exclusively for the directors and officers, including in situations where the Debtor fails to comply with its retention obligations under the Primary Policy and where any of the insurers lower in the tower become insolvent or are unwilling or unable to comply with their obligations to pay a covered claim.  A copy of the policy that provides the first layer of Side A DIC coverage (the "Lead Side A DIC Policy") is attached hereto at Exhibit C.

4133-0025-5047

| | Coverage | Insurer(s) | Policy Number |
|---|---|---|---|
| | | Company of America | |
| 7. | D&O – $10 million excess $60 million | Endurance Risk Solutions Assurance Company | FIX10011569105 |
| 8. | D&O – $10 million excess $70 | Starr Indemnity & Liability Company | 1000059476221 |
| 9. | D&O – $10 million excess $80 million | Markel American Insurance Company | MKLM6EL0008527 |
| 10. | D&O – $10 million excess $90 million | Arch Insurance Company | DOX9300529-07 |
| 11. | D&O – $10 million excess $100 million | Twin City Fire Insurance Company | 57 DA 0331021-22 |
| 12. | D&O – $10 million excess $110 million | Berkley Insurance Company | BPRO8082373 |
| 13. | D&O – $10 million excess $120 million | Zurich American Insurance Company | DOC 3855423-01 |
| 14. | D&O – $10 million excess $130 million | Everest National Insurance Company | FL5EX00724-221 |
| 15. | D&O – $10 million excess $140 million | Old Republic Insurance Company | ORPRO 12 102476 |
| 16. | D&O – $10 million excess $150 million | Allianz Insurance Company | USF01120122 |
| 17. | Lead Side A DIC – $10 million excess $160 million | ACE American Insurance Company/Chubb | G23684639 009 |
| 18. | Side A DIC – $10 million excess $170 million | National Union Fire Insurance Company of Pittsburgh, Pa. | 01-450-84-30 |

5

| | Coverage | Insurer(s) | Policy Number |
|---|---|---|---|
| 19. | Side A DIC – $10 million excess $180 million | Continental Casualty Company | 596479695 |
| 20. | Side A DIC – $10 million excess $190 million | Freedom Specialty Insurance Company | XMF2200515 |
| 21. | Side A DIC – $10 million excess $200 million | Axis Insurance Company | P-001-000167503-03 |

11.     The D&O Policies are "claims-made" policies[3] covering the period from August 1, 2022, through August 1, 2023 (the "Covered Period").  The D&O Policies, generally, cover losses that directors and officers incur on account of claims during the policy period and provide for advancement of defense costs in connection with such claims and with governmental investigations.[4] *See generally* Ex. B, Primary Policy; *see also* Ex. C, Lead Side A DIC Policy.  The D&O Policies thus ensure that directors and officers will be protected from the financial burden associated with their involvement in, and defense against, covered legal proceedings.  *See* Ex. B, Primary Policy § VII (as amended by Endorsement/Rider No. 31).

12.     Certain of these D&O Policies—those listed in the first sixteen (16) rows of the chart above—provide Side A, Side B, and Side C coverage (the "ABC Policies").  Relevant here, the D&O Policies' Side A coverage provides protection directly to directors and officers where the Debtor has not indemnified, or will not indemnify, the directors and/or officers.  Side B coverage generally allows for the Debtor to receive reimbursement when it indemnifies a director or officer for costs associated with covered claims or governmental investigations.  Side C

---

[3] Generally speaking, a "claims-made" policy is an agreement by the insurer to indemnify the insured against all claims made during the policy period for alleged acts committed or attempted prior to the policy expiration (or within some other specified period).

[4] The descriptions of the D&O Policies as provided herein are for summary purposes only and are qualified in their entirety by reference to the D&O Policies themselves.

4133-0025-5047

coverage generally applies to any loss suffered by the Debtor from securities claims made against it in its own right. Even though the ABC Policies provide Side A, Side B, and Side C coverage, the ABC Policies include "Priority of Payments" provisions which state that, where available insurance is insufficient to cover liabilities of both the directors and officers, on the one hand, and the Debtor, on the other hand, the insurer must first provide coverage to the directors and officers. *See* Ex. B, Primary Policy § XI.

13.    Moreover, as noted, *supra* n. 2, in addition to Side A coverage, the D&O Policies identified in rows seventeen (17) through twenty-one (21) in the above chart (the "<u>Side A DIC Policies</u>"), provide coverage ***solely*** to directors and officers, including in instances where the Debtor and the insurers lower in the tower fail to indemnify such directors and officers. In that case, the Side A DIC Policies, like the ABC Policies (a) provide coverage, *inter alia*, for defense costs and other losses incurred by directors and officers as a result of claims, enforcement actions, and investigations, and (b) require defense costs to be advanced on a current basis. *See* Ex. C, Lead Side A DIC Policy §§ 1, 10; *see also* Ex. B, Primary Policy § 1; Ex. B, Primary Policy § VII (as amended by Endorsement/Rider No. 31).

## C.    <u>The Movants and the Covered Claims</u>

14.    The Movants are or were directors and/or officers of the Debtor. Mr. Becker was the Chief Executive Officer, and Mr. Beck was the Chief Financial Officer, of the Debtor. Mr. Benhamou, Ms. Burr, Mr. Daniels, Ms. Davis, Mr. Friedman, Mr. King, Mr. Maggioncalda, Ms. Matthews, Ms. Miller, Ms. Mitchell, and Mr. Staglin were as of the Petition Date and today remain the outside directors of the Debtor. Mr. Dunbar and Mr. Robinson are former outside directors of the Debtor. Ms. Draper was the Chief Marketing and Strategy Officer of the Debtor.

15.    To date, a total of seven putative securities class actions, five in the United States District Court for the Northern District of California and two in the Superior Court of the State of

California for the County of Santa Clara, have been filed against certain of the Movants and, in certain of the actions, the Debtor: *Vanipenta v. SVB Financial Group, et al.*, Case No. 3:23-cv-01097-JD (N.D. Cal. Filed March 13, 2023) ("Vanipenta"); *Snook v. SVB Financial Group, et al.*, Case No. 3:23-cv-01173-VC (N.D. Cal. Filed March 15, 2023) ("Snook"); *Siddiqui v. Becker and Beck*, Case No. 4:23-cv-01228-HSG (N.D. Cal. Filed March 17, 2023) ("Siddiqui"); *City of Hialeah Employees' Retirement System et al. v. Becker, et al.*, Case No. 3:23-cv-01697-AMO (N.D. Cal. Filed April 7, 2023) ("City of Hialeah"); *International Union of Operating Engineers Local 132 Pension Fund v. SVB Financial Group, et al.*, Case No. 3:23-cv-01962-TLT (N.D. Cal. Filed April 24, 2023) ("International Union"); *Stevenson and Howard v. Becker, Beck, et al.*, Case No. 23CV413949 (Cal. Super. Ct. Filed April 10, 2023) ("Stevenson"), and *Rossi v. Becker, Beck, et al.*, Case No. 23CV414120 (Cal. Super. Ct. Filed April 14, 2023) ("Rossi") (together, the "Securities Class Actions").  The Vanipenta and Snook actions were filed prior to the Petition Date.  The Siddiqui action was filed on the Petition Date.  The remaining Securities Class Actions were filed after the Petition Date.  Messrs. Becker and Beck are defendants in all of the Securities Class Actions. Certain of the other Movants are defendants in the City of Hialeah, Stevenson, and Rossi actions. The Debtor remains a defendant in the Vanipenta and International Union actions.[5]

16.    The plaintiffs in the Securities Class Actions allege violations of the Securities Act of 1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act") based on alleged materially false or misleading statements and/or omissions of material facts by the Debtor and certain of Movants in connection with the Debtor's securities filings.[6]  The

---

[5] After the Petition Date, Plaintiffs voluntarily dismissed the Debtor from the Snook action.

[6] The Vanipenta, Snook, Siddiqui, and International Union plaintiffs assert violations of the Exchange Act.  The Stevenson and Rossi plaintiffs assert violations of the Securities Act.  The City of Hialeah plaintiffs assert both.

4133-0025-5047

Movants anticipate that additional similar lawsuits or claims may be asserted against them in the future.

17.     In addition, certain non-public regulatory investigations concerning the events leading to Silicon Valley Bank's receivership and the role of the Debtor's executives and directors, including the Movants and Additional Insureds, have been commenced (the "Regulatory Investigations," and, together with the Securities Class Actions and any other claims, investigations, and causes of action, whether currently pending or brought in the future, to which Movants and Additional Insureds are or may be entitled to coverage under the D&O Policies, for defense costs, any judgment or settlement, or otherwise, the "Covered Claims").[7]

**D.    Events Leading to This Motion**

18.     As directors and officers of the Debtor during the Covered Period, the Movants and Additional Insureds are entitled to indemnification for, and advancement of, expenses—including attorneys' fees—under the Debtor's bylaws and other applicable law.  The Debtor, however, has informed the Movants that, as a debtor in chapter 11, it cannot advance any defense costs to or on behalf of the Movants or on behalf of the Additional Insureds with respect to the Covered Claims. As a result, the Movants and Additional Insureds seek payment directly from the D&O Policies to cover the expenses they incur in responding to the Covered Claims.

19.     The Movants have submitted claim notices to the D&O Insurers through the insurance broker.  The D&O Insurers have advised that they require an order from this Court authorizing the D&O Insurers to advance defense costs under the D&O Policies.

---

[7] The Movants neither admit any liability nor do they waive any defenses to the Covered Claims, including any claims that may be raised in the Chapter 11 Case, the Securities Class Actions, the Regulatory Investigations or otherwise. The Movants reserve all rights and defenses to the extent applicable to them under the D&O Policies and applicable law.

4133-0025-5047

20.     Movants, therefore, request that the Court enter an order modifying the automatic stay, to the extent necessary, to allow the Movants and Additional Insureds to receive such payments and thus carry out the primary purpose of the D&O Policies.

## BASIS FOR THE RELIEF REQUESTED

21.     Absent coverage under the D&O Policies, the Movants and Additional Insureds would be substantially prejudiced in mounting effective defenses of the Covered Claims because of the uncertain status of the D&O Policies, undermining the very purpose of the D&O Policies. Accordingly, the Movants seek entry of the Proposed Order to permit the Insurers to make the payments required by the D&O Policies.

## I.     The Movants and Additional Insureds Are Entitled to Coverage Under the D&O Policies.

22.     In determining whether an insurance policy issued to a debtor is "property of the estate" under section 541 of the Bankruptcy Code, case law distinguishes between ownership of the *policy* and ownership of the *proceeds* of the policy (*i.e.*, the payments made by the insurer pursuant to the insurance policy). *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012). The difference turns on the language and the scope of the policy at issue. *Id.*

23.     When analyzing whether, and the extent to which, insurance proceeds constitute estate property, courts have recognized that "[i]n essence and at its core, a D&O policy remains a safeguard of officer and director interests and not a vehicle for corporate protection." *Ochs v. Lipson (In re First Cent. Fin. Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999); *see also In re MF Glob. Holdings Ltd.*, 469 B.R. at 192. Thus, the proceeds of a D&O policy are not property of the estate where the policy provides for payment only to a third party (such as a director or officer). *See, e.g.*, *Deangelis v. Corzine*, 151 F. Supp. 3d 356, 361 (S.D.N.Y. 2015) (insurance proceeds do

10

not constitute estate property where such proceeds can only be accessed by directors and officers);

*In re First Cent. Fin. Corp.*, 238 B.R. at 17-18 (bankruptcy estate had no interest in the D&O

policy's proceeds); *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987)

("[T]he liability proceeds payable to the directors and officers are not part of the bankrupt's

estate."). Here, the Side A and Side A DIC Policies are exclusively for the benefit of the directors

and officers, and thus are not property of the Debtor's estate.

24.     Moreover, even where a debtor is also an insured under a D&O policy, but the

debtor's potential claim against the policy is speculative or hypothetical, courts hold that the

proceeds of that D&O policy are not property of the estate.  *See, e.g., In re Downey Fin. Corp.*,

428 B.R. 595, 607 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 810

(Bankr. D. Del. 2007) (courts "have found that insurance policy proceeds are not property of the

estate where a debtor is covered for indemnification, but indemnification 'either has not occurred,

is hypothetical, or speculative'"); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D.

Del. 2004) ("[W]hen the liability policy provides the debtor with indemnification coverage but

indemnification either has not occurred, is hypothetical, or speculative, the proceeds are not

property of the bankruptcy estate.").[8]

25.     Here, the Debtor's present need for coverage under the ABC Policies is

hypothetical and speculative.  It would appear that the Debtor does not need access to Side C

coverage because, while the Debtor remains a defendant in two of the pending putative class

---

[8] A debtor's potential claim against a D&O policy vis-à-vis its (potential) status as a plaintiff against the insureds is insufficient to make the policy's proceeds property of the debtor's estate.  *See, e.g., In re CHS Elecs., Inc.*, 261 B.R. 538, 544 (Bankr. S.D. Fla. 2001) ("Proceeds which [trustee] seeks to protect to satisfy his claims if he obtains a judgment against the officers and directors are not property of the estate.").

actions, section 362 of the Bankruptcy Code stays those actions as to the Debtor.[9] It would also appear that the Debtor does not need access to Side B coverage since it has declined to indemnify the Movants. And significantly, the Debtor does not object to this Motion.

26.      Even if the Debtor eventually seeks coverage, the policies contain a Priority of Payment provision, which subordinates the Debtor's rights in the proceeds of the ABC Policies to those of the directors and officers.[10] *See In re TierOne Corp.*, 2012 WL 4513554, at *3 (Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate since they are the insureds that are first in line."); *see also In re MF Glob. Holdings Ltd.*, 515 B.R. 193, 203-04 (Bankr. S.D.N.Y. 2014) ("Even if [debtors] had a contractual claim to the D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment provision."); *In re World Health Alternatives, Inc.*, 369 B.R. at 810 (insurance proceeds not property of estate where the policy contained a priority of payment provision and the debtor was entitled only to coverage for amounts it was required to indemnify, and no indemnification claims had yet been made).

27.      Accordingly, the proceeds to which the Movants and Additional Insureds are entitled to under the D&O Policies are not property of the estate.

---

[9] The securities plaintiffs' claims in the Securities Class Actions, and the claims of any other purchasers of securities that may be filed in this Chapter 11 case, would presumably be subordinated to those of other secured and unsecured creditors pursuant to section 510(b) of the Bankruptcy Code.

[10] The Priority of Payment provision states in pertinent part:

> It is understood and agreed that any coverage provided under this Policy is principally intended to protect and benefit the Insured Persons. Accordingly, in the event that: (1) Loss for which an Insured Person has not been paid or indemnified; and (2) any other Loss, are concurrently due under this Policy, then the Loss described in (1) above shall be paid first.

Ex. B, Primary Policy § XI. Even if the Debtor held a non-speculative and non-hypothetical claim against the ABC Policies' proceeds, the Debtor would have no interest in the Side A DIC Policies' proceeds. Such proceeds provide coverage exclusively to directors and officers—such as the Movants—and therefore the Debtor cannot claim an interest in such policies' proceeds.

4133-0025-5047

## II.    **"Cause" Exists to Grant Relief from the Automatic Stay.**

28.    Even if the D&O Policies or their proceeds are estate property, cause exists to modify the automatic stay to permit the D&O Insurers to advance defense costs for the Covered Claims.

29.    Under section 362 of the Bankruptcy Code, the Court shall grant relief from the automatic stay upon the request of a party in interest for "cause."  11 U.S.C. § 362(d).  Because "cause" is not defined in the Bankruptcy Code, courts in this district consider the factors articulated by the Second Circuit in order to determine whether cause exists to modify the automatic stay.  *See In re Sonnax Indus., Inc.*, 907 F.2d. 1280, 1286 (2d Cir. 1990).[11]  Not all of the *Sonnax* factors will be relevant in every case and the court need not give equal weight to every factor.  *See In re Enron Corp.*, 306 B.R. 465, 476 (Bankr. S.D.N.Y. 2004).   The Movants submit that the second and twelfth factors are relevant here.

30.    As to the second factor (the lack of any connection with or interference with the bankruptcy case), granting the requested relief will not result in any interference with the bankruptcy case.  The advancement of defense costs is critical to the Movants' ability to present

---

[11] The twelve *Sonnax* factors are as follows:

| | |
|---|---|
| (i) | whether relief would result in a partial or complete resolution of the issues; |
| (ii) | lack of any connection with or interference with the bankruptcy case; |
| (iii) | whether the other proceeding involves the debtor as a fiduciary; |
| (iv) | whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; |
| (v) | whether the debtor's insurer has assumed full responsibility for [a defense]; |
| (vi) | whether the action primarily involves third parties; |
| (vii) | whether litigation in another forum would prejudice the interests of other creditors; |
| (viii) | whether the judgment claim arising from the other action is subject to equitable subordination; |
| (ix) | whether the Movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; |
| (x) | the interests of judicial economy and the expeditious and economical resolution of litigation; |
| (xi) | whether the parties are ready for trial in the other proceeding; and |
| (xii) | [the] impact of the stay on the parties and the balance of harms. |

*Sonnax Indus.*, 907 F.2d at 1286.

13

defenses to the Covered Claims.  In fact, granting the requested relief should reduce the Covered Claims' potential interference with the bankruptcy case because the Debtor's estate will benefit from a vigorous defense of the Covered Claims.  *See In re MF Glob. Holdings Ltd.*, 469 B.R. at 194 (finding that estate will benefit from vigorous defense by the insureds).  Moreover, many of the Movants remain directors of, or consultants to, the Debtor.  Absent the assurance that the D&O Policies are protecting them in the various lawsuits and investigations, their attention may be diverted from the Debtor's operations, to the detriment of the estate.

31.    In addition to the second factor, the twelfth *Sonnax* factor (the impact of the stay on the parties and the balance of harm) is of significant relevance, deserves substantial weight, and weighs in favor of modifying the automatic stay.

32.    If the Court authorizes the D&O Insurers to advance defense costs in accordance with the D&O Policies, the Debtor's estate will suffer no prejudice.  The Securities Class Actions, and related claims, against the Debtor are stayed under section 362 of the Bankruptcy Code, and thus the Debtor does not appear to have a present interest in the proceeds of the D&O Policies.  And the Debtor's right to proceeds under the policies is expressly subordinated to the right of the directors and officers to coverage.  *See* Ex. B, Primary Policy § XI.  Separately, as noted, it is to the estate's benefit for the Movants to present a vigorous defense to the Covered Claims.

33.    In contrast, the Movants and Additional Insureds would be severely prejudiced— in fact, they would suffer irreparable harm—if they are not able to draw on insurance proceeds to fund their defense.  *See In re MF Glob. Holdings Ltd.*, 469 B.R. at 192-93 ("Lifting the automatic stay to permit [the insurer] to advance defense costs on behalf of the Individual Insureds would not severely prejudice the Debtors estates.  But the failure to do so would significantly injure the Individual Insureds, whose defense costs are covered by the [insurance policies]."); *see also Allied*

14

*Digital*, 306 B.R. at 514 (stating that "[w]ithout funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [] claims and may suffer substantial and irreparable harm").

34.     In similar cases, where the directors and officers would suffer great harm absent relief and the debtor would suffer no meaningful harm if relief were granted, courts in this district and elsewhere have lifted and/or modified the automatic stay to allow insurers to provide defense coverage to individual insureds such as the Movants and Additional Insureds. *See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. at 196; *Allied Digital*, 306 B.R. at 514; *In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011); *In re Laminate Kingdom, LLC*, Case No., 07010279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("[N]umerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's officers and directors – even though the insurance policies also provided direct coverage to the debtor."); *see also In re Valeritas Holdings, Inc.*, Case No. 20-10290, ECF No. 578 (Bankr. D. Del. Nov. 22, 2022); *In re Garrett Motion Inc.*, Case No. 20-12212, ECF No. 1114 (Bankr. S.D.N.Y. (April 16, 2021); *In re Sears Holdings Corp.*, No. 18-23538, ECF No. 5382 (Bankr. S.D.N.Y. Oct. 16, 2019); *In re Relativity Fashion, LLC*, No. 18-11358, ECF No. 604 (Bankr. S.D.N.Y. Nov. 19, 2018); *In re Enron Corp.*, No. 01-16034, 2002 WL 1008240, at *1 (Bankr. S.D.N.Y. May 17, 2002).  In fact, this Court has stated that "reasonable defense costs should be paid on behalf of the [i]ndividual [i]nsureds whether or not the policy proceeds are property of the estates." *In re MF Glob. Holdings Ltd.*, 469 B.R. at 187.

35.     For these reasons, the Debtor and its estate will not be harmed by entry of the Proposed Order, but if the Movants and Additional Insureds are not granted the requested relief, they will be severely prejudiced.  Reflecting that reality, the Movants understand that the Debtor

does not object to the relief requested. The Movants and Additional Insureds, therefore, respectfully submit that "cause" exists to grant relief from the automatic stay, to the extent applicable, to permit the D&O Insurers to advance and pay defense costs to or on behalf of Movants and Additional Insureds under the D&O Policies.

## WAIVER OF BANKRUPTCY RULE 4001(a)(3)

36.    Given the nature of the relief requested herein, the Movants respectfully request a waiver of the 14-day stay under Bankruptcy Rule 4001(a)(3). Pursuant to Bankruptcy Rule 4001(a)(3), "[a]n order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." For the reasons described above, the relief requested is essential to prevent potential irreparable damage to the Movants.

## NOTICE

37.    Notice of this Motion shall be provided to: (a) the Debtor's proposed counsel; (b) the Committee's proposed counsel; (c) the U.S. Trustee; (d) the United States Attorney's Office for the Southern District of New York; (e) the D&O Insurers; and (f) all parties requesting notice pursuant to Bankruptcy Rule 2002. Movants submit that, in light of the nature of the relief requested, no other or further notice need be provided.

*[Remainder of page intentionally left blank]*

4133-0025-5047

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Movants respectfully request that the Court enter an order, substantially in the form annexed hereto, granting the relief requested in the Motion and such other and further relief as the Court deems just and proper.

Dated: May 3, 2023
      New York, New York             Respectfully submitted,

                               */s/ Evan Hollander*
                               Evan Hollander
                               Michael Trentin
                               ORRICK, HERRINGTON & SUTCLIFFE LLP
                               51 West 52nd Street
                               New York, New York 10019
                               Telephone: (212) 506-5000
                               Facsimile: (212) 506-5151
                               Email: echollander@orrick.com
                                      mtrentin@orrick.com

                               *Counsel for Gregory W. Becker*

                               */s/ Alexander Woolverton*
                               Alexander Woolverton
                               Andrew J. Citron
                               KRAMER LEVIN NAFTALIS & FRANKEL LLP
                               1177 Avenue of the Americas
                               New York, NY 10036
                               Telephone: (212) 715-9220
                               Facsimile: (212) 715-8000
                               Email: awoolverton@kramerlevin.com
                                      acitron@kramerlevin.com

                               *Counsel for Daniel J. Beck*

4133-0025-5047

*/s/ Philip D. Anker*
Philip D. Anker
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Facsimile: (212) 230-8888
Email: Philip.Anker@wilmerhale.com

*Counsel for Eric A. Benhamou, Elizabeth Burr,
Richard D. Daniels, Alison Davis, Roger Dunbar,
Joel P. Friedman, Thomas King, Jeffrey N.
Maggioncalda, Beverly Kay Matthews, Mary J.
Miller, Kate D. Mitchell, John Robinson, and Garen
K. Staglin*

*/s/ Alex R. Rovira*
Alex R. Rovira
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839 5300
Facsimile: (212) 839 5599
Email: arovira@sidley.com

*Counsel for Michelle Draper*

18

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | |
| In re | ) | |
| | ) | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | ) | |
| | ) | |
| Debtor. | ) | Case No. 23-10367 (MG) |
| _____ | ) | |

### [PROPOSED] ORDER GRANTING MOVANTS' MOTION FOR ORDER ALLOWING THE ADVANCEMENT AND PAYMENT OF DEFENSE COSTS OF INSUREDS PURSUANT TO THE D&O POLICIES

Upon the motion (the "Motion")[2] of Gregory W. Becker, Daniel J. Beck, Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John Robinson, Garen K. Staglin, and Michelle Draper (together, the "Movants") for entry of an order (this "Order"), pursuant to sections 105(a) and 362(d)(1) of the Bankruptcy Code, Bankruptcy Rule 4001 and Local Bankruptcy Rule 4001-1, modifying the automatic stay, to the extent it applies, and authorizing the D&O Insurers to follow the terms of the D&O Policies by advancing and paying defense costs in defense of the Covered Claims; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that no other or further notice is necessary; and any objections (if any) to the Motion having been withdrawn, resolved or overruled on the merits; and a hearing having been held to consider the relief requested in the Motion and upon the

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

record of the hearing and all of the proceedings had before this Court; and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      The automatic stay imposed by section 362 of the Bankruptcy Code, to the extent

applicable, is hereby modified to authorize the D&O Insurers to make payments to or on behalf of

the Movants and the Additional Insureds of defense costs and any other sums incurred in

connection with the Covered Claims in accordance with the terms of the D&O Policies.

3.      Nothing in the Motion or this Order shall affect, impair, prejudice, or otherwise

alter (i) the terms and conditions of the D&O Policies, any related agreements, and/or any related

reservation(s) of rights provided by the D&O Insurers, the Movants, the Additional Insureds or the

Debtor in connection therewith or (ii) the rights, obligations, and defenses of the D&O Insurers,

the Movants, the Additional Insureds, or the Debtor under the D&O Policies, any related

agreements, and/or any related reservation(s) of rights provided by the D&O Insurers, the

Movants, the Additional Insureds or the Debtor in connection therewith.

4.      This Order is immediately valid and fully effected upon its entry and the fourteen

(14) day stay imposed pursuant to Bankruptcy Rule 4001(a) is waived.

5.      The requirements set forth in Local Bankruptcy Rule 9013-1(b) are satisfied by the

contents of the Motion.

6.      This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation or interpretation of this Order.

2

4133-0025-5047

Dated: New York, New York
      May ___, 2023

                                              _____
                                              The Honorable Martin Glenn
                                              United States Bankruptcy Judge

3

## **EXHIBIT B**

**The Primary Policy**



September 15, 2022

Kristina Lobo
LOCKTON COMPANIES LLC
3 EMBARCADERO CTR STE600
SAN FRANCISCO, CA 94111-0000


RE:    SVB FINANCIAL GROUP

Insuring Company: Federal Insurance Company

Dear Kristina:

Enclosed is our The Chubb Primary Policy for the above referenced Insured.

I want to thank you for the opportunity to underwrite this account.

Please let me know if I can be of further assistance.

Sincerely,




Thomas Saunders

CHUBB


t y

PREMIUM BILL

Insured:   SVB FINANCIAL GROUP                                    Date:   09/15/2022

Producer:   LOCKTON COMPANIES LLC
3 EMBARCADERO CTR STE600
SAN FRANCISCO, CA 94111-0000

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:   8248-0807

Policy Period:   August 1, 2022 to August 1, 2023

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 8248-0807

| Product | Effective Date | Premium |
|---|---|---|
| CBPRIM | 08/01/22 | $301,817.00 |
|  |  |  |
|  |  |  |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $301,817.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $301,817.00 |

Form 26-10-0426 (Ed. 2/98)

PREMIUM BILL

Date:    09/15/2022

Insured:    SVB FINANCIAL GROUP

Producer:    LOCKTON COMPANIES LLC
3 EMBARCADERO CTR STE600
SAN FRANCISCO, CA 94111-0000

Company:    Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

Policy Number:    8248-0807

Policy Period:    August 1, 2022 to August 1, 2023

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

| Product | Effective Date | Commission Rate | Premium |
|---------|---------------|-----------------|---------|
| CBPRIM  | 08/01/22      | 15.00%          | $301,817.00 |
|         |               |                 |         |
|         |               |                 |         |

| | |
|---|---|
| **TOTAL POLICY PREMIUM** | $301,817.00 |
| **TOTAL INSTALLMENT PREMIUM DUE** | $301,817.00 |

WHEN REMITTING PLEASE INDICATE POLICY OR CERTIFICATE NUMBER

Form 26-10-0426 (Ed. 2/98)

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
**(for policies with no terrorism exclusion or sublimit)**
**Insuring Company: Federal Insurance Company**

You are hereby notified that, under the Terrorism Risk Insurance Act (the "Act"), this policy makes available to you insurance for losses arising out of certain acts of terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 85% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. Beginning in 2016, the Federal share will be reduced by 1% per year until it reaches 80%, where it will remain.

However, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 03/2015)



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents. You can obtain that information by accessing our website at  http://www.chubbproducercompensation.com or by calling the following toll-free telephone number:

1-866-512-2862.

ALL-20887a (09/19)

# Notice of Loss Control Services

Insuring Company: Federal Insurance Company

As a Chubb policyholder, you have loss prevention information and/or services available to you, as listed in this Notice. You may order any brochure by email to formsordering@chubb.com  and to view our full suite of loss prevention brochures/services go to www.chubb.com/us/fl-lossprevention

### Directors and Officers (D&O) Liability Loss Prevention Services

- ***Directors and Officers Liability Loss Prevention* Manuals:**
  Directors and Officers Liability Loss Preventions – #14-01-0035
  Directors and Officers Securities Litigation Loss Preventions – #14-01-0448
  Director Liability Loss Prevention in Mergers and Acquisitions – #14-01-1099
  Directors and Officers Liability Loss Prevention for Not-for-Profit- -#14-01-0036
  Cyber Loss Mitigation for Directors -#14-01-1199

### Employment Practices Liability (EPL) Loss Prevention Services

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis P.C. We offer customers an unlimited number of calls to the hot line at no additional charge.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  *Employment Practices Loss Prevention Guidelines - #14-01-0061*

- **Loss Prevention Consultant Services**

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues.

- **Public Company EPL Customers**

  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues faced by for-profit companies and offers proactive idea for avoiding employment lawsuits.

- **Private Company EPL Customers**
  Employment Practices Loss Prevention Guidelines – Written by Seyfarth Shaw exclusively for Chubb this manual provides an overview of key employment issues for –profit companies and offers proactive idea for avoiding employment lawsuits.

**Fiduciary Liability Loss Prevention Services**

- **Fiduciary Liability Loss Prevention Manual**
  Who May Sue You and Why: How to Reduce Your ERISA Risks and the Role of Fiduciary
  Liability Insurance #14-01-1019

**Crime Loss Prevention Services**

- **Crime/Kidnap, Ransom & Extortion Loss Prevention Manual**

  Preventing Fraud: How Anonymous Hotlines Can Help #14-01-1090

**Cyber Security Loss Prevention Services**

Visit: https://www2.chubb.com/us-en/business-insurance/cyber-security.aspx to learn more
about Chubb's Cyber Services for our policyholders.

**Health Care Directors and Officers (D&O) Liability Loss Prevention Services**

- **Readings in Health Care Governance Manual**
  Readings in Health Care Governance -#14-01-0788

- **ChubbWorks.com**
  ChubbWorks.com for Health Care Organizations – The Health Care Zone is a free online
  resource containing health care specific loss prevention information for employment practices
  liability, directors and officers (D&O) liability, and fiduciary liability exposures. To gain
  immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy
  number.

- **Health Care D&O Loss Prevention Consultant Services**
  Health Care D& O Loss Prevention Consultant Services- #14-01-1164

--------------------
The services provided are advisory in nature. While this program is offered as a resource in
developing or maintaining a loss prevention program, you should consult competent legal counsel
to design and implement your own program. No liability is assumed by reason of the services,
access or information provided. All services are subject to change without notice.

CHUBB®

Chubb Group of Insurance
Companies
202B Hall's Mill Road
Whitehouse Station, NJ 08889

**The Chubb Primary**
*Directors & Officers and Entity
Securities Liability Insurance*

---

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
A stock insurance company, incorporated
under the laws of Indiana, herein called the
Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

Policy Number: 8248-0807

**NOTICE: THIS IS A CLAIMS MADE POLICY, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", INCLUDING ANY APPLICABLE EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY "LOSS" WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE COSTS", AND "DEFENSE COSTS" SHALL BE APPLIED AGAINST THE RETENTION AMOUNT. THE COMPANY SHALL NOT BE LIABLE FOR "DEFENSE COSTS" OR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT UPON EXHAUSTION OF THE APPLICABLE LIMIT OF LIABILITY. READ THE ENTIRE POLICY CAREFULLY.**

Item 1.  **Parent Organization**:
SVB FINANCIAL GROUP
3003 Tasman Drive
Santa Clara , CA 95054

Item 2.  **Policy Period**: From: August 1, 2022
To:     August 1, 2023
At 12:01 A.M local time at the address shown in Item 1.

Item 3.  **Limit of Liability**:

Each **Policy Period**:                                    $10,000,000.00

Item 4.  **Retentions**:

(A)  Insuring Clause (A):                              None

(B)  Insuring Clause (B) (**Claims** other than **Securities Claims**):   $5,000,000.00

(C)  Insuring Clauses (B) and (C) (**Securities Claims** only):   $5,000,000.00

(D)  Inquiry Coverage (A):                            None

(E)  Inquiry Coverage (B)(1):                         None

(F)  Inquiry Coverage (B)(2):                         $5,000,000.00

Item 5.  **Extended Reporting Period**:

(A) Additional Period:          1 year

(B) Additional Premium:         150 % of Annual Premium

Item 6.  **Pending or Prior Proceedings Date**:          January 01, 1992

**CHUBB**®    **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity*
*Securities Liability Insurance*

In witness whereof, the Company issuing this policy has caused this policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

### FEDERAL INSURANCE COMPANY

_____
Secretary

_____
President

09/15/2022
_____
Date

_____
Authorized Representative

CHUBB®  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

## I. INSURING CLAUSES

(A) Individual Non-Indemnified Liability Coverage

The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, except to the extent that such **Loss** has been paid or indemnified.

(B) Individual Indemnified Liability Coverage

The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, to the extent the **Organization** pays or indemnifies such **Loss**.

(C) Entity Securities Coverage

The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Securities Claim** first made against the **Organization** during the **Policy Period**.

## II. INQUIRY COVERAGES

(A) Securityholder Derivative Demand Investigation Coverage

The Company shall pay, on behalf of an **Organization**, **Defense Costs** in an amount not to exceed $500,000 per **Policy Period** on account of all **Securityholder Derivative Demand Investigations** first made during the **Policy Period**, which amount is part of, and not in addition to, the Limit of Liability set forth in Item 3 of the Declarations.

(B) Interview Coverage

(1) The Company shall pay, on behalf of an **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** on account of an **Interview** first made during the **Policy Period**, except to the extent that such **Defense Costs** have been paid or indemnified.

(2) The Company shall pay, on behalf of an **Organization**, **Defense Costs** incurred solely by an **Insured Person** on account of an **Interview** first made during the **Policy Period**, to the extent the **Organization** pays or indemnifies such **Defense Costs**.

## III. EXCLUSIONS

The Company shall not be liable for **Loss** on account of any **Claim**:

(A) Prior Notice
based upon, arising from or in consequence of any fact, circumstance or **Wrongful Act** that was the subject of any notice accepted under any policy of which this Policy is a direct or indirect renewal or replacement;

CHUBB°   **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(B) <u>Pending or Prior Proceedings</u>
based upon, arising from or in consequence of any written demand first received by, or action, proceeding, **Claim** or **Related Claim** commenced against, any **Insured** on or prior to the Pending or Prior Proceedings Date set forth in Item 6 of the Declarations;

(C) <u>Entity v. Insured</u>
(1) brought by, or on behalf of, an **Organization** against another **Organization**; or

(2) brought by, or on behalf of:

(a) an **Organization** against an **Insured Person**; or

(b) an **Outside Entity** against an **Insured Person** serving in his capacity as such for such **Outside Entity**,

provided that Paragraph (C)(2) above shall not apply to a **Claim** brought:

(i) outside the United States of America or Canada;

(ii) while the **Parent Organization** is in **Financial Impairment**;

(iii) against an **Insured Person** serving in his capacity as such for an **Outside Entity** while such **Outside Entity** is in **Financial Impairment**;

(iv) as a securityholder derivative action; or

(v) while such **Insured Person** is no longer serving in his capacity as such;

(D) <u>Bodily Injury/Violation of Right of Privacy/Property Damage</u>
for bodily injury, violation of any right of privacy, mental anguish, humiliation, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not it is damaged or destroyed; provided that this Exclusion (D) shall not apply to any invasion of privacy, mental anguish, humiliation or emotional distress for which a claimant seeks compensation in an employment-related claim;

(E) <u>ERISA</u>
for any violation of the responsibilities, obligations or duties imposed by **ERISA**; or

(F) <u>Conduct</u>
based upon, arising from or in consequence of:

(1) any deliberate fraud, any criminal act, or any knowing and willful violation of any statute or regulation, by an **Insured**; or

(2) an **Insured** having gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled,

established by a final, non-appealable adjudication in any underlying action or proceeding (other than a declaratory action or proceeding brought by or against the Company), provided that:

(a) no conduct pertaining to any **Insured Person** shall be imputed to any other **Insured Person**; and

⊏ㄷㅑㅌㅁㅁ®  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(b) conduct pertaining to any past, present, or future chief financial officer, chief executive officer or chief operating officer (or an equivalent position to any of the foregoing worldwide) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**.

## IV. LIMIT OF LIABILITY

(A) The Company's maximum aggregate liability for all **Loss** shall be the Limit of Liability set forth in Item 3 of the Declarations, subject to any sublimits in this Policy.

(B) **Defense Costs** are part of, and not in addition to, the Limit of Liability set forth in Item 3 of the Declarations.

(C) The limit of liability available during the Extended Reporting Period, if applicable, shall be part of, and not in addition to, the Limit of Liability set forth in Item 3 of the Declarations.

## V. RETENTION

(A) The Retentions shall apply as set forth in Item 4 of the Declarations and shall only apply to covered **Loss**.

(B) If different parts of a single **Claim** are subject to different Retentions, then the total amount of **Loss** applied to the applicable Retentions shall not exceed the largest applicable Retention.

(C) Any payment by an **Organization** of a Retention on account of an **Interview** shall reduce any Retention due from the **Organization** on account of a **Claim** subsequently afforded coverage under Insuring Clause (B), Individual Indemnified Liability Coverage, that is based upon, arising from or in consequence of any fact or circumstance that was the subject of such **Interview**.

## VI. REPORTING

(A) The **Insureds** shall, as a condition precedent to exercising any right to coverage under this Policy, give to the Company written notice of any **Claim** no later than:

(1) one hundred and eighty (180) days after this Policy expires and is renewed with the Company; provided, however, if the **Parent Organization** can prove to the Company's satisfaction that it was not reasonably possible for the **Insureds** to give such notice within the one hundred and eighty (180) day time period and that subsequent notice was given as soon as reasonably possible thereafter, the Company shall waive the foregoing time period; or

(2) sixty (60) days after: (a) this Policy expires or terminates and is not renewed with the Company; or (b) the expiration date of the Extended Reporting Period, if applicable.

(B) If during the **Policy Period** an **Insured** gives written notice to the Company of:

(1) circumstances which could give rise to a **Claim**;

(2) receipt of a written request to toll or waive a statute of limitations applicable to a **Wrongful Act**; or

(3) an **Interview** or a **Securityholder Derivative Demand Investigation**,

⊏⊓⊓⊔⊟⊟° **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

then any **Claim** subsequently arising from the circumstances, **Wrongful Act**, **Interview** or **Securityholder Derivative Demand Investigation** described in Paragraph (B)(1) or (B)(2) or (B)(3) above shall be deemed to have been first made during the **Policy Period** in which such written notice was first given by an **Insured** to the Company; provided any such subsequent **Claim** is reported to the Company as soon as practicable after the in-house general counsel or risk manager of the **Parent Organization** becomes aware of such **Claim**.

(C) The **Insured** shall give to the Company in any written notice described in Subsection (A) or (B) above a description of the **Claim**, circumstances, request to toll or waive a statute of limitations, **Interview** or **Securityholder Derivative Demand Investigation**, the nature of any alleged **Wrongful Acts**, the nature of the alleged or potential damage and the names of all actual or potential defendants.

## VII. ADVANCEMENT OF DEFENSE COSTS

(A) The Company shall advance covered **Defense Costs** on account of a **Claim** reported pursuant to Section VI, Reporting, on a current basis after receipt by the Company of bills detailing such **Defense Costs** and all other information requested by the Company with respect to such bills until the applicable Limit of Liability set forth in Item 3 of the Declarations has been satisfied.

Furthermore, if an **Organization** refuses in writing, or fails within sixty (60) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the reporting of the **Claim** pursuant to Section VI, Reporting, the Company shall advance covered **Defense Costs** until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Limit of Liability set forth in Item 3 of the Declarations has been exhausted, whichever first occurs.

(B) Any advancement of **Defense Costs** shall be repaid to the Company by the **Insureds**, severally according to their respective interests, if and to the extent it is determined that such **Defense Costs** are not insured under this Policy. However, the Company shall not seek repayment from an **Insured** of advanced **Defense Costs** that are uninsured pursuant to Exclusion III(F), Conduct, unless a final, non-appealable adjudication has occurred.

(C) Any advancement of **Defense Costs** by the Company shall reduce the Limit of Liability set forth in Item 3 of the Declarations. If the Company recovers any such **Defense Costs** paid, the amount of such **Defense Costs** less all costs incurred by the Company to obtain such recovery shall be reinstated to the Limit of Liability set forth in Item 3 of the Declarations.

## VIII. DEFENSE AND SETTLEMENT

(A) The **Insured**:

   (1) shall have the sole duty to defend **Claims** made against the **Insured**;

   (2) agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's prior written consent, subject to Paragraph (A)(3) below;

   (3) may settle a **Claim** without the Company's prior consent if the **Claim** is reported pursuant to Section VI, Reporting, and the amount of such settlement and **Defense Costs** does not exceed the amount of the applicable Retention; and

CHUBB°    **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(4) agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agrees that, in the event of a **Claim**, the **Insured** shall not do anything that could prejudice the Company's position or its potential or actual rights of recovery; provided that the failure of any **Insured Person** to give the Company such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this Policy.

(B) The Company:

(1) shall have the right and shall be given the opportunity to effectively associate with the **Insured** and shall be consulted in advance by the **Insured**, regarding the investigation, defense and settlement of any **Claim** that appears reasonably likely to be covered in whole or in part under this Policy, including selecting appropriate defense counsel and negotiating any settlement;

(2) shall not be liable for any element of **Loss** incurred in excess of the amount of the applicable Retention, for any obligation assumed, or for any admission made, by any **Insured** without the Company's prior written consent, which the Company shall not unreasonably withhold; and

(3) may, in its sole discretion, waive the consent requirement in Paragraph (B)(2) above with respect to **Defense Costs** incurred within ninety (90) days prior to the reporting of a **Claim** pursuant to Section VI, Reporting.

## IX. RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** made in the **Policy Period** in which the earliest of such **Related Claims** was either first made or deemed to have been made in accordance with Section VI(B), Reporting.

## X.  ALLOCATION

The **Insureds** and the Company shall use their best efforts to determine an allocation between **Loss** that is covered and **Loss**, or any other amount, that is not covered based on the relative legal and financial exposures of the covered parties to the covered matters.

## XI. PRIORITY OF PAYMENTS

(A) It is understood and agreed that any coverage provided under this Policy is principally intended to protect and benefit the **Insured Persons**.  Accordingly, in the event that: (1) **Loss** for which an **Insured Person** has not been paid or indemnified; and (2) any other **Loss**, are concurrently due under this Policy, then the **Loss** described in (1) above shall be paid first.

(B) Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Policy without regard to the potential for other future payment obligations under this Policy.

## XII. OTHER INSURANCE AND INDEMNITY

⊏HUBB°  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(A) If any **Loss** covered under this Policy is insured under any other valid and collectible insurance policy (other than an insurance policy that is issued specifically as excess over the Limits of Liability provided by this Policy or a personal umbrella policy or personal directorship liability policy purchased by an **Insured Person**), then this Policy shall cover such **Loss**, subject to its terms and conditions, only to the extent that the amount of such **Loss** is in excess of the applicable retention or deductible and limit of liability under such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

(B) This Policy shall be specifically excess of, and shall not contribute with, any insurance policy for: third party liability coverage for environmental exposures, employment practices liability or professional liability.

(C) Any payment by an **Insured** of a retention or deductible under any other insurance policy described in Subsection (A) or (B) above shall reduce the applicable Retention under this Policy by the amount of such payment which would otherwise have been covered **Loss** under this Policy.

(D) Any coverage afforded under this Policy for a **Claim** in connection with an **Insured Person** serving in his capacity as such for an **Outside Entity** shall be specifically excess of any indemnity and insurance available to such **Insured Person** by, or on behalf of, such **Outside Entity**. Notwithstanding the foregoing, if the Company or any subsidiary or affiliate of The Chubb Corporation makes payment under another policy on account of such **Claim**, the Limit of Liability for this Policy with respect to such **Claim** shall be reduced by the amount of such payment.

## XIII. INDEMNIFICATION AND SUBROGATION

(A) This Policy has been issued to the **Parent Organization** with the understanding and agreement that each **Organization** agrees to fulfill its indemnification obligations to each **Insured Person** to the fullest extent permitted by: (1) any United States law; and (2) any contract or agreement providing an indemnification obligation exceeding any such law.  If the Company pays as **Loss** any indemnification owed to any **Insured Person** by any **Organization**, the Company does not waive or compromise any of its rights to recover such **Loss** from such **Organization**.

(B) In the event of any payment of **Loss** under this Policy, the Company shall be subrogated to the extent of such payment of **Loss** to all of the **Insureds'** rights of recovery, including any such right to indemnification from any **Organization**, **Outside Entity**, other insurer or other source.  The **Insureds** shall take all reasonable actions to secure and preserve the Company's rights, including any action against any **Organization** for indemnification.

## XIV. EXTENDED REPORTING PERIOD

(A) If this Policy does not renew or otherwise terminates for a reason other than for non-payment of premium (each a "Termination of Coverage"), then an **Insured** shall have the right to purchase the Extended Reporting Period for the Additional Period and Additional Premium set forth in Item 5 of the Declarations and the Extended Reporting Period shall become part of the **Policy Period**.

(B) The right to purchase the Extended Reporting Period shall lapse unless written notice of election to purchase the Extended Reporting Period, together with payment of the Additional Premium, is received by the Company within sixty (60) days after the effective date of a Termination of Coverage.

(C) If the Extended Reporting Period is purchased, then coverage otherwise afforded by this Policy shall be extended to apply to **Claims** that are:

(1) first made during the Extended Reporting Period;

⊏HUBB˚  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(2)  reported to the Company in accordance with Section VI, Reporting; and

(3)  for **Wrongful Acts** before the effective date of a Termination of Coverage or the date of any conversion of coverage described in Section XVI, Acquisition of the Parent Organization, whichever first occurs.

(D)  The Additional Premium for the Extended Reporting Period shall be deemed fully earned at the inception of the Extended Reporting Period.

(E)  No coverage shall be available under this Section XIV for that portion of any **Claim**, **Securityholder Derivative Demand Investigation** or **Interview** covered under insurance purchased subsequent to the effective date of a Termination of Coverage.

## XV. ACQUISITION OR CESSATION OF SUBSIDIARIES

(A)  Acquisition of a Subsidiary

(1)  If before or during the **Policy Period** an **Organization** acquires voting rights in another entity, such that the acquired entity becomes a **Subsidiary**, then such **Subsidiary** and the **Insured Persons** thereof, shall be **Insureds** only with respect to **Wrongful Acts** after such acquisition.

(2)  If a **Subsidiary** is acquired during the **Policy Period** pursuant to Paragraph (1) above and the total assets of such **Subsidiary** exceed fifteen percent (15%) of the total assets of the **Parent Organization** (as reflected in the most recent audited consolidated financial statements of such **Subsidiary** and the **Parent Organization**, respectively, as of the date of such acquisition), the **Parent Organization** shall, no later than sixty (60) days after the date of such acquisition, give written notice of such acquisition to the Company together with all information the Company may require.  Coverage for any such acquired **Subsidiary** and its **Insured Persons** shall be subject to additional or different terms and conditions and payment of additional premium.

If the **Parent Organization** fails to give such notice and information in accordance with the foregoing, coverage for such acquired **Subsidiary** and its **Insured Persons** shall terminate with respect to **Claims** first made more than sixty (60) days after such acquisition.

(B)  Cessation of a Subsidiary

If before or during the **Policy Period** an **Organization** ceases to be a **Subsidiary**, then with respect to such **Subsidiary** and its **Insured Persons** coverage shall continue for **Claims** for **Wrongful Acts** while such **Organization** was a **Subsidiary** in accordance with either Section XVI, Acquisition of the Parent Organization, or Section XIX, Termination of Policy, whichever first occurs.

## XVI. ACQUISITION OF THE PARENT ORGANIZATION

(A)  If during the **Policy Period** the **Parent Organization** is acquired such that another entity, person or group of entities or persons acting in concert, acquires more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors or **LLC Managers** of the surviving entity, then:

(1)  coverage under this Policy shall continue until the expiration of the current **Policy Period**, solely for **Claims** for **Wrongful Acts** prior to such acquisition; and

**CHUBB°**    **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(2) the entire premium for this Policy shall be deemed fully earned as of the effective date of such acquisition.

(B) If the **Parent Organization** gives the Company written notice of an acquisition described in Subsection (A) above at least thirty (30) days prior to the date of such acquisition together with all information that the Company may require, the Company shall provide the **Parent Organization** with a quote for up to a six (6) year extension of coverage solely for **Claims** for **Wrongful Acts** prior to such acquisition (the "Run-Off Quote"). Coverage offered pursuant to the Run-Off Quote shall be subject to additional or different terms and conditions and payment of additional premium. If the **Parent Organization** accepts the Run-Off Quote, the extension of coverage provided pursuant to the Run-Off Quote shall replace any extension of coverage that would otherwise be available to the **Insureds** pursuant to Section XIV, Extended Reporting Period.

## XVII. SPOUSES, DOMESTIC PARTNERS, ESTATES AND LEGAL REPRESENTATIVES

Coverage under this Policy shall extend to **Claims** for **Wrongful Acts** of an **Insured Person** made against:

(A) the estate, heirs, legal representatives or assigns of such **Insured Person** if such **Insured Person** is deceased or the legal representatives or the assigns of such **Insured Person** if such **Insured Person** is legally incompetent, insolvent or bankrupt; or

(B) the lawful spouse or domestic partner of such **Insured Person** solely by reason of such spouse's or domestic partner's: (1) status as a spouse or domestic partner; or (2) ownership interest in property which the claimant seeks as recovery for an alleged **Wrongful Act** of such **Insured Person**,

provided that, no coverage provided by this Section XVII shall apply with respect to loss arising from an act, error or omission by an **Insured Person's** estate, heirs, legal representatives, assigns, spouse or domestic partner.

## XVIII. NOTICE

(A) All notices to the Company under this Policy of a **Claim**, circumstances which could give rise to a **Claim**, a written request to toll or waive a statute of limitations, a **Securityholder Derivative Demand Investigation** or an **Interview** shall be given in writing to one of the following addresses:

(1) specialtyclaims@chubb.com;

(2) Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.- P.O. Box 2002
Simsbury, CT 06070-7683; or

(3) Attn: Claims Department
Chubb Group of Insurance Companies
82 Hopmeadow St.
Simsbury, CT 06089.

(B) All other notices to the Company under this Policy shall be given in writing addressed to:

Attn: Chubb Underwriting Department
Chubb Group of Insurance Companies
202B Hall's Mill Road

**⊏HUBB®**  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

---

Whitehouse Station, NJ 08889.

(C) Any notice described in Subsection (A) or (B) above shall be effective on the date of receipt by the Company.

## XIX. TERMINATION OF POLICY

This Policy shall terminate at the earliest of the following times:

(A) ten (10) days after receipt by the **Parent Organization** of written notice of termination from the Company for non-payment of premium;

(B) upon expiration of the **Policy Period**; or

(C) at such other time as may be agreed upon by the Company and the **Parent Organization**, in which case any returned premium shall be computed on a pro rata basis.

## XX. BANKRUPTCY

(A) Bankruptcy or insolvency of any **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights or defenses under this Policy.

(B) In the event a liquidation or reorganization proceeding is commenced by or against an **Organization** under United States bankruptcy law, the **Organization** and the **Insured Persons** hereby agree not to oppose or object to any efforts by the Company, the **Organization** or an **Insured Person** to obtain relief from any stay or injunction.

## XXI. REPRESENTATIONS AND SEVERABILITY

(A) The Company, in issuing this Policy, has relied upon the statements, representations and information in the **Application** as being true and accurate. The **Application** is the basis for, and considered incorporated into, this Policy and shall be construed as a separate request for coverage by each **Insured**.

(B) With respect to any statements, representations and information contained in the **Application**, no knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person**.

(C) If the **Application** contains any misrepresentations which were made with the actual intent to deceive or which materially affect the Company's acceptance of the risk or the hazard assumed, the Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of, any such misrepresentations under:

(1) Insuring Clause (A), Individual Non-Indemnified Liability Coverage, with respect to any **Insured Person** who had actual knowledge of the matters misrepresented;

(2) Insuring Clause (B), Individual Indemnified Liability Coverage, with respect to any **Organization** to the extent such **Organization** indemnifies any **Insured Person** who had actual knowledge of the matters misrepresented; or

(3) Insuring Clause (C), Entity Securities Coverage, with respect to any **Organization** if a past or present chief executive officer or chief financial officer of the **Parent Organization** had actual knowledge of the matters misrepresented.

⊏ CHUBB°    **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(D) The Company shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

## XXII. VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America.  Except as otherwise provided in this Policy, if a judgment is rendered, a settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in The Wall Street Journal on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of **Loss** is due, respectively.

## XXIII. ACTION AGAINST THE COMPANY

No action may be taken against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy.  No person or entity shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the Company be impleaded by such **Insured** or legal representatives of such **Insured**.

## XXIV. ROLE OF PARENT ORGANIZATION

By acceptance of this Policy, the **Parent Organization** agrees that it shall be considered the sole agent of, and shall act on behalf of, each **Insured** with respect to: (A) the payment of premiums and the receiving of return premiums that may become due under this Policy; (B) the negotiation, agreement to and acceptance of endorsements; and (C) the giving or receiving of any notice provided for in this Policy (except the giving of notice of a **Claim**, circumstances which could give rise to a **Claim**, a written request to toll or waive a statute of limitations, a **Securityholder Derivative Demand Investigation** or an **Interview** as provided in Section VI, Reporting, or the giving of notice to apply for an Extended Reporting Period as provided in Section XIV, Extended Reporting Period).  Each **Insured** agrees that the **Parent Organization** shall act on its behalf with respect to all such matters.

## XXV. ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under, this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized representative of the Company.

## XXVI. WORLDWIDE TERRITORY AND APPLICATION OF LAW

(A) This Policy shall apply anywhere in the world.

(B) Any reference to United States law shall include:

(1)  United States federal, state and local statutory law and any rule or regulation promulgated thereunder;

(2)  United States common law; and

**⊏HUBB°**  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

---

(3)   with respect to Paragraphs (B)(1) and (B)(2) above, any equivalent body of law anywhere in the world.

(C)  If the **Parent Organization** requests directors and officers liability policies for issuance to its foreign **Subsidiaries** in their own countries, the Company or a subsidiary or affiliate of The Chubb Corporation shall provide a quote to the **Parent Organization** for such policies; provided that the Company or a subsidiary or affiliate of The Chubb Corporation can support or facilitate the issuance of the policies to such foreign **Subsidiaries** in their applicable foreign countries.  Any coordination of coverage under such policies with coverage under this Policy shall be set forth in an endorsement attached to this Policy.

---

## XXVII. HEADINGS

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms and conditions of coverage.

---

## XXVIII. COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

This insurance does not apply to the extent that any United States trade or economic sanctions law or any other similar United States law prohibits the Company from providing insurance.

---

## XXIX. DEFINITIONS

When used in this Policy:

**Application** means:

(A)  any application, including attachments, or any written information or representations, provided to the Company by, or on behalf of, an **Insured** during the negotiation of this Policy or for the purposes of the Company's underwriting of this Policy;

(B)  all publicly available documents filed by an **Organization** with the Securities and Exchange Commission during the twelve (12) months preceding this Policy's inception date; and

(C)  if applicable, any warranty provided to the Company within the past three (3) years in connection with any  policy of which this Policy is a renewal or replacement.

**Claim** means any:

(A)  written demand (other than a securityholder derivative demand) for:

    (1) monetary or non-monetary (including injunctive) relief; or

    (2) arbitration or mediation,

    against an **Insured** for a **Wrongful Act**, commenced by the first receipt of such demand by an **Insured**;

(B)  proceeding, including any appeal therefrom, against an **Insured** for a **Wrongful Act**, commenced by:

    (1)  the service of a civil complaint or similar pleading;

⊏⊔⊔⊏⊔⊔ **CHUBB**®    **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

---

(2) the filing of a notice of charges or the entry of a formal order of investigation in connection with a formal civil administrative or formal civil regulatory proceeding; provided that such proceeding is pending against at least one named **Insured Person**; or

(3) solely with respect to a criminal proceeding: (a) an arrest; (b) the return of an indictment, information or similar document; or (c) the receipt of an official request for **Extradition**;

(C) investigation of an **Insured Person** for a **Wrongful Act**, commenced by the **Insured Person's** receipt of a written document from an **Enforcement Unit** identifying such **Insured Person** as the target of an investigation, including a Wells Notice, target letter or search warrant; or

(D) written request upon an **Insured Person** for witness testimony or document production, commenced by the service of a subpoena or other similar document compelling such testimony or production of documents in connection with any matter described in Subsections (A) through (C) above; provided that in such event the Company shall pay, on behalf of such **Insured Person**, **Defense Costs** incurred solely by such **Insured Person** in responding to such request.

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured Person**) incurred with the Company's prior written consent: (A) in investigating, defending, opposing or appealing any **Claim** and the premium for appeal, attachment or similar bonds; (B) in a **Securityholder Derivative Demand Investigation**; or (C) as a result of an **Interview**.

**Enforcement Unit** means any federal, state, local or provincial law enforcement or governmental regulatory authority worldwide (including the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulatory organization.

**ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Health Insurance Portability and Accountability Act of 1996), all as amended, or any similar United States law.

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

**Financial Impairment** means the status of an **Organization** resulting from:

(A) the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Organization**; or

(B) such **Organization** becoming a debtor in possession under United States bankruptcy law.

**Insured** means any **Organization** and any **Insured Person**.

**Insured Person** means any natural person who was, now is or shall become:

(A) a duly elected or appointed director, officer, **LLC Manager**, trustee, regent, governor, risk manager or the in-house general counsel of any **Organization** organized in the United States of America;

(B) a holder of an equivalent position to those described in Subsection (A) above in an **Organization** that is organized in a jurisdiction other than the United States of America;

**Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

---

(C) a holder of an equivalent position to those described in Subsection (A) or (B) above in an **Outside Entity**, but solely while serving at the specific request or direction of the **Organization**; or

(D) solely with respect to **Securities Claims**, any other employee of an **Organization**.

**Interview** means a request for an interview or meeting with, or a sworn statement from, an **Insured Person** by:

(A) an **Enforcement Unit** in connection with: (1) such **Insured Person** acting in his capacity as such; or (2) an **Organization's** business activities; or

(B) an **Organization** in connection with: (1) an inquiry or investigation of the **Organization** by an **Enforcement Unit**; or (2) a securityholder derivative demand, commenced by the first receipt of such request by such **Insured Person**,

provided that **Interview** does not include: (a) any request for document production or discovery; (b) any request by an **Enforcement Unit** that is part of any routine or regularly scheduled **Enforcement Unit** oversight, compliance, audit, inspection or examination; or (c) any request by an **Enforcement Unit** that is part of an employment-related investigation or claim.

**LLC Manager** means any natural person who was, now is or shall become a manager, member of the Board of Managers or equivalent executive of an **Organization** that is a limited liability company.

**Loss** means the amount which any **Insured** becomes legally obligated to pay as a result of any **Claim**, **Securityholder Derivative Demand Investigation** or **Interview**, including:

(A) compensatory damages;

(B) punitive, exemplary or multiplied damages, if and to the extent that such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages; provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to such damages;

(C) civil fines or penalties assessed against an **Insured Person** for a violation of any United States law, including civil fines or penalties assessed pursuant to 15 U.S.C. §78dd-2(g)(2)(B) (the Foreign Corrupt Practices Act); provided that such violation is neither intentional nor willful and such fines or penalties are insurable under the law pursuant to which this Policy is construed;

(D) judgments, including pre-judgment and post-judgment interest;

(E) settlements; and

(F) **Defense Costs**;

**Loss** does not include any portion of such amount that constitutes any:

(1) cost incurred by the **Organization** to comply with any order for non-monetary (including injunctive) relief, or to comply with an agreement to provide such relief;

(2) amount not insurable under the law pursuant to which this Policy is construed; provided that the Company shall not assert that any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this Paragraph (2), unless such amount is determined to be uninsurable in a final, non-appealable adjudication in any action or proceeding (other than a declaratory or equivalent action or proceeding brought by or against the Company);

⊏HUBB®   **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

---

(3)  amount that represents or is substantially equivalent to an increase in the consideration paid (or proposed to be paid) by an **Organization** in connection with its purchase of any securities or assets;

(4)  tax; except, solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Policy is construed;

(5)  fine or penalty, except as provided in Subsection (B) or (C) above; or

(6)  cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for or monitoring **Pollutants**.

**Organization** means the **Parent Organization** and any **Subsidiary**. **Organization** shall also mean any such entity as a debtor in possession under United States bankruptcy law.

**Outside Entity** means:

(A)  any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3) of the United States Internal Revenue Code, as amended; or

(B)  any other entity specifically added as an **Outside Entity** by written endorsement attached to this Policy,

that is not an **Organization**.

**Parent Organization** means the entity named in Item 1 of the Declarations.

**Policy Period** means the period of time set forth in Item 2 of the Declarations (subject to any termination in accordance with Section XIX, Termination of Policy) and the Extended Reporting Period, if applicable.

**Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, asbestos, asbestos products or waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Related Claims** means all **Claims** based upon, arising from or in consequence of the same or related facts, circumstances or **Wrongful Acts**.

**Securities Claim** means a **Claim**:

(A)  against an **Insured** for a violation of any United States securities law, but solely in connection with the securities of an **Organization**;

(B)  against an **Insured** for a common law cause of action, pled in tandem with, or in lieu of, any securities law violation described in Subsection (A) above and brought by:

(1)  a securityholder of an **Organization** with respect to his interest in the securities of such **Organization**; or

(2)  any person or entity in connection with the purchase, sale or offer to purchase or sell securities of an **Organization**; or

⌐CHUBB˚  **Chubb Group of Insurance Companies**
202B Hall's Mill Road
Whitehouse Station, NJ 08889

*The Chubb Primary*
*Directors & Officers and Entity Securities*
*Liability Insurance*

(C) brought as a derivative action, on behalf of an **Organization** against an **Insured Person**, including an action brought by or on behalf of the **Organization** seeking to dismiss a derivative action that a committee of such **Organization's** Board of Directors has concluded is not in the best interest of the **Organization**.

**Securityholder Derivative Demand Investigation** means an investigation by an **Organization** to determine whether it is in the best interest of such **Organization** to prosecute the claims alleged in a securityholder derivative demand or action, commenced upon:

(A) receipt of such demand; or

(B) service of a civil complaint or similar proceeding with respect to such action.

**Subsidiary** means:

(A) any entity while more than fifty percent (50%) of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **LLC Managers**, or the foreign equivalent of any such directors or **LLC Managers** of such entity, are owned or controlled by the **Parent Organization** directly or indirectly through one or more **Subsidiaries**; or

(B) any entity while the **Parent Organization** has the right, pursuant to either written contract or the by-laws, charter, operating agreement or similar documents of an **Organization**, to elect or appoint a majority of the Board of Directors of a corporation or **LLC Managers**.

**Wrongful Act** means:

(A) any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:  (1) an **Insured Person** in his capacity as such; or (2) for purposes of any coverage afforded under Insuring Clause (C), Entity Securities Coverage, by the **Organization**; or

(B) any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

*The Chubb Primary*

# Schedule of Forms

To be attached to and form part of                    Company:    Federal Insurance Company
Policy No.    8248-0807

Issued to:    SVB FINANCIAL GROUP

The Chubb Primary Federal Policy Directors and Officers and Entity Securities Liability Insurance

14-02-17754 (12/10 ed.)

14-02-18646 (1/12 ed.)

14-02-18740 (4/19 ed.)

14-02-19223 (12/12 ed.)

14-02-19224 (10/12 ed.)

14-02-19323 (10/12 ed.)

14-02-19324 (10/12 ed.)

14-02-19325CA (9/18 ed.)

14-02-19360CA (10/14 ed.)

14-02-19554 (4/16 ed.)

14-02-19593 (10/12 ed.)

14-02-19726 (12/18 ed.)

14-02-19959 (6/13 ed.)

14-02-19993 (2/15 ed.)

14-02-20063 (10/13 ed.)

14-02-21058 (7/18 ed.)

14-02-21289 (11/14 ed.)

14-02-21301 (9/16 ed.)

14-02-21317 (12/14 ed.)

14-02-21790 (4/15 ed.)

14-02-21983 (3/16 ed.)

14-02-22010 (10/18 ed.)

14-02-22071 (9/18 ed.)

14-02-22075 (6/16 ed.)

14-02-22134 (9/17 ed.)

14-02-22571 (2/17 ed.)

14-02-22674 (5/17 ed.)

14-02-22814 (12/17 ed.)

14-02-22846 (9/17 ed.)

Q17-1763 (8/18 ed.)

Q17-1767 (8/17 ed.)

Q17-2362 (10/17 ed.)

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 1

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

## CALIFORNIA PREMIUM ENDORSEMENT

In consideration of the premium charged, it is agreed that in compliance with the ruling of the Commissioner of Insurance of the State of California and the opinion of the Attorney-General of that state requiring that the premium for all bonds or policies be endorsed thereon, the basic premium charged for the attached bond/policy for the period

From:  08/01/2021

To:  08/01/2022

Is:  Two Hundred Fifty Four Thousand Nine Hundred Fifty Five Dollars and 00/100 ($254,955.00)

The Policy will be deemed to have been amended to the extent necessary to effect the purposes of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of California.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT**

Effective date of
this endorsement: August 1, 2022

Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

### CALIFORNIA AMENDATORY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

1.    Section XIX, Termination of Policy, is amended by adding the following at the end of paragraph (B):

provided that, non-renewal by the Company is effective only if the Company mails or delivers notice of non-renewal to the **Parent Organization** and to the agent of record, if any, at the mailing address shown on this Policy at least sixty (60) but not more than one hundred twenty (120) days before the expiration of the **Policy Period**; or

2.    Section XIX, Termination of Policy, is amended further to add the following paragraphs at the end of the section:

No notice of nonrenewal by the Company is required in any of the following situations:

(1)    the transfer of, or renewal of, this Policy without a change in its terms or conditions or the rate on which the premium is based to another insurer within the Chubb Group of Insurance Companies;

(2)    if this Policy is extended for ninety (90) days or less, provided that the Company has given notice of nonrenewal before such extension;

(3)    if the **Parent Organization** has obtained replacement coverage or has agreed, in writing, within sixty (60) days of the termination of this Policy, to obtain such coverage;

(4)    if the **Parent Organization** requests a change in the terms or conditions or risks covered by this Policy within sixty (60) days before the end of the **Policy Period**;

(5)    if this Policy is for a period of no more than sixty (60) days and the Company notifies the **Parent Organization** at the time of issuance that it may not be renewed; or

(6)    if the Company has made a written offer to the **Parent Organization**, within the required time period for doing so under this Policy, to renew this Policy under changed terms or conditions or at a changed premium rate.

The Company may condition renewal of this Policy upon a reduction in limits, elimination of coverages, increase in retentions or increase of more than twenty-five percent (25%) in the rate upon which the premium is based, by mailing or delivering notice of such renewal change(s) to the **Parent Organization** at the mailing address shown on this Policy and to the agent of record, if any, at least sixty (60) but not more than one hundred twenty (120) days before the expiration of the **Policy Period**.

3.      Paragraph (B) in the definition of **Loss** as set forth in of Section XXIX, Definitions, is deleted and replaced with the following

(B)      punitive, exemplary or multiplied damages, if and to the extent that such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages, provided such jurisdiction has a substantial relationship to the relevant **Insureds**, to the Company, or to the **Claim** giving rise to such damages; and provided further that, if such jurisdiction is the State of California, then **Loss** does not include punitive, exemplary or multiplied damages;

The Policy will be deemed to have been amended to the extent necessary to effect the purposes and intent of this Amendatory Endorsement.

The regulatory requirements set forth in this Amendatory Endorsement shall supercede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the State of California.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 3

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX SECURITIES CLAIM – MERGER OBJECTION AND AIDING AND ABETTING
ENDORSEMENT

In consideration of the premium charged, it is agreed:

(1)    Item 4 of the Declarations of this Policy is deleted and replaced with the following:

Item 4. **Retentions**:

| | | |
|---|---|---|
| (A) | Insuring Clause (A): | None |
| (B) | Insuring Clause (B) (**Claims** other than **Securities Claims**): | $5,000,000 |
| (C) | Insuring Clauses (B) and (C) (**Securities Claims** other than **Merger Objection Claims** and **Aiding and Abetting Claims**): | $5,000,000 |
| (D) | Insuring Clauses (B) and (C) (**Merger Objection Claims** and **Aiding and Abetting Claims**): | $5,000,000 |
| (E) | Inquiry Coverage (A): | None |
| (F) | Inquiry Coverage (B)(1): | None |
| (G) | Inquiry Coverage (B)(2): | $500,000 |

(2)    Section XXIX, Definitions, of this Policy is amended by adding the following to the definition of
**Securities Claim**:

**Securities Claim** also means any **Merger Objection Claim** or **Aiding and Abetting Claim**.

(3)    Section XXIX, Definitions, of this Policy is amended by adding the following:

**Aiding and Abetting Claim** means a **Claim** brought by any securities holder of an Acquisition
Target, in such securities holder's capacity as such, alleging that the **Insured** aided and abetted any:
(i) common law cause of action, including a breach of fiduciary duty owed to the Acquisition Target's
securities holders; or (ii) violation of securities law by the Acquisition Target regarding the

**Organization's** acquisition or proposed acquisition of the Acquisition Target, provided that coverage for such **Claim** shall be limited to **Defense Costs** only.   For the purpose of this paragraph, "Acquisition Target" means any entity that an **Organization** has acquired, or proposed to acquire, in a transaction that results in, or would result in, such entity becoming a **Subsidiary**.

**Merger Objection Claim** means a **Claim** based upon, arising from, or in consequence of any proposed or actual acquisition of an **Organization**, or of all or substantially all of the **Organization's** assets by another entity, or the merger or consolidation of the **Organization** into or with another entity such that the **Organization** is not the surviving entity, or the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate more than 50% of the directors, management committee members, or members of the management board of the **Organization**, or similar transaction.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 4

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

AMEND SECTION III BODILY INJURY/VIOLATION OF RIGHT OF PRIVACY/PROPERTY DAMAGE EXCLUSION:
ENDORSEMENT

In consideration of the premium charged, it is agreed that Exclusion (D), Bodily Injury/Violation of Right of Privacy/Property Damage, of this Policy shall not apply to **Defense Costs** on account of a criminal proceeding for manslaughter (or any other similar offense).

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 5

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX, DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Insured Person** in Section XXIX, Definitions, of this Policy is amended to
include Advisory Directors (each an "Additional Insured Person"), solely with respect to any
**Wrongful Act** by an Additional Insured Person in his capacity as such.

(2)     For the purposes of determining the **Organization's** indemnification obligation to an Additional
Insured Person under this Policy, each Additional Insured Person shall be deemed a director or
officer of the **Organization**.  Accordingly, it is understood and agreed that the **Organization** shall
grant indemnification to each Additional Insured Person to the same extent as any director or
officer of the **Organization**.


The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 6

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION III PENDING OR PRIOR PROCEEDINGS EXCLUSION FOR INCREASED LIMITS
ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The Company shall not be liable under this Policy for **Loss** on account of any **Claim** based upon, arising from, or in consequence of any written demand first received by, or action, proceeding, **Claim** or **Related Claim** commenced against, any **Insured** on or prior to December 02, 1996.

(2)    This endorsement shall only apply to the limit of liability of $5,000,000 in excess of $5,000,000 for each **Claim** and $5,000,000 in excess of $5,000,000 for each **Policy Period**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 7

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXIX DEFINITION OF APPLICATION ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (C) of the definition of **Application** in Section XXIX, Definitions, of this Policy, is deleted.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 8

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION II, SUBSECTION (B), INQUIRY COVERAGES TO ADD REQUEST TO TOLL OR WAIVE STATUTE
OF LIMITATIONS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subsection II(B), Inquiry Coverages, of this Policy is amended to add the following:

(3)     The Company shall pay, on behalf of an **Insured**, **Defense Costs** incurred solely by such
**Insured** responding to a written request to toll or waive a statute of limitations, first made
during the **Policy Period,** applicable to a **Wrongful Act**.

(2)     With respect to any coverage afforded by this endorsement, Item 4 of the Declarations shall be
amended to add the following Retention solely with respect to any **Defense Costs** paid or
indemnified by the **Organization**:

(G) Inquiry Coverage B(3):  $2,500,000

(3)     Section V, Retention, is amended to add the following:

(D)     Any payment by an **Organization** of a Retention on account of a written request to toll or
waive a statute of limitations shall reduce any Retention due from the **Organization** on
account of a **Claim** subsequently afforded coverage under Insuring Clause (B), Individual
Indemnified Liability Coverage, or Insuring Clause (C), Entity Securities Coverage, that is
based upon, arising from or in consequence of any fact or circumstance that was the subject
of such request to toll or waive a statute of limitations.

(4)     The definition of **Defense Costs**, set forth in Section XXIX, Definitions, is amended to add the
following Subsection:

(D)  as a result of responding to a written request to toll or waive a statute of limitations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 9

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX INTERVIEW ENDORSEMENT

In consideration of the premium charged, it is agreed that:

Solely with respect to any coverage afforded under Section II, B(1), Interview Coverage, the definition of **Interview**, set forth in Section XXIX, Definitions, is amended by deleting and replacing subparagraph (a) with the following:

(a)   any request for document production or discovery for information in the possession or control of an **Organization** or any other party other than such **Insured Person**;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 10

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION VIII DEFENSE AND SETTLEMENT (COOPERATION SEVERABILITY) ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (A)(4) of Section VIII, Defense and Settlement, of this Policy is deleted and replaced with the following:

(4)     agrees to provide the Company with all information, assistance and cooperation which the Company may reasonably require and agrees that, in the event of a **Claim**, the **Insured** shall not do anything that could prejudice the Company's position or its potential or actual rights of recovery; provided that the failure of any **Insured** to give the Company such information, assistance or cooperation shall not impair the rights of any other **Insured Person** under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 11

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXIX DEFINITION OF EXTRADITION ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Extradition** in Section XXIX, Definitions, of this Policy is deleted and replaced with the following:

**Extradition** means any formal process by which an **Insured Person** located in any country is surrendered, or sought to be surrendered, to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

---

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 12

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

PRO RATA CANCELLATION ENDORSEMENT

In consideration of the premium charged, it is agreed that, notwithstanding anything to the contrary in the policy or any endorsements thereto, in the event that this policy is cancelled, any premium refund due to the insured shall be computed on a pro rata basis.

The cancellation will be effective even if a refund has not been made or offered.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 13

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

AMEND SECTION XIII INDEMNIFICATION AND SUBROGATION ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (B) of Section XIII, Indemnification and Subrogation, of this Policy is amended by adding the following clause at the end of the last sentence:

;provided that it is understood and agreed that the Company shall only subrogate against natural persons who are not **Insured Persons** under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 14

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMENDS SECTION XXIX DODD-FRANK 954 AND SOX 304 ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subparagraph (B) of the definition of **Wrongful Act** in Section XXIX, Definitions, of this policy is deleted and replaced with the following:

(B)     any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such, including any matter claimed pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(2)     The definition of **Loss**, as defined in Section XXIX, Definitions, of this policy, shall not include any portion of an amount reimbursed to, or recovered by, an **Organization** or any other party on behalf of the **Organization**, pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(3)     Exclusion III(C)(2)(a) shall not apply to **Loss** on account of any **Claim** brought by an **Organization** against an **Insured Person** of such **Organization** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

(4)     Solely with respect to any **Claim** against an **Insured Person** brought pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002:

The definition of **Defense Costs**, as defined in Section XXIX, Definitions, of this policy is amended to include any costs under Insuring Clause (A) that are deemed by the Company, in its sole discretion, to be reasonable and necessary costs, expenses and fees incurred by the Chief Executive Officer or Chief Financial Officer of an **Organization** solely to facilitate a reimbursement which such officer is required to make pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 (including the premium or origination fee for a bond or loan).

(5)     Solely with respect to the coverage afforded under this endorsement, the Company shall not seek recoupment of advanced **Defense Costs** from an **Insured Person** if it is determined that such **Defense Costs** are not insured under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 15

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXIX, DEFINITIONS, JOINT VENTURE ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    The term **Subsidiary** as defined in Section XXIX, Definitions, of this Policy is amended to include the following joint venture(s):

SPD-SVB.

(hereinafter referred to as "Joint Venture")

(2)    The Company's liability for payment of **Loss** on account of any **Claim** made against:

(a)    any Joint Venture or any **Insured Person** thereof; or

(b)    any other **Insured** as a result of any **Wrongful Act** committed, attempted, or allegedly committed or attempted by such Joint Venture or **Insured Person** thereof,

shall be the lesser of the **Insureds**' proportion of liability for such **Loss** or the amount that the **Organization's** percentage equity interest in the Joint Venture bears to the total amount of loss resulting from the **Claim**.

(3)    In the event an **Organization** ceases to maintain an equity interest in the Joint Venture during the **Policy Period**, any coverage afforded for **Loss** as specified in paragraph (2) above, shall continue until termination of this Policy, but only with respect to **Wrongful Acts** committed attempted, or allegedly committed or attempted while such **Organization** maintained an equity interest in the Joint Venture.

(4)    In no event shall the Company be liable under this Policy for **Loss** on account of any **Claim** for a **Wrongful Act** committed, attempted, or allegedly committed or attempted by SPD-SVB or any natural person director, officer, **LLC Manager**, trustee, regent, governor, risk manager, general counsel, partner or employee thereof.

(5)    Nothing in this endorsement shall be construed to obligate or require the Company to pay **Loss** under this Policy in any amount exceeding the available maximum aggregate limit of liability under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 16

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION III PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III, Exclusions is amended by adding the following exclusion:

The Company shall not be liable for **Loss** on account of any **Claim** brought by, or on behalf of, a customer or client of an **Organization** based upon, arising from or in consequence of the rendering of, or the failure to render, professional services for others; provided that this Exclusion shall not apply to **Loss** on account of any **Securities Claim** brought by a securityholder of the **Organization** in his capacity as such, whether in his own right or on behalf of the **Organization**, provided that such **Securities Claim** is brought and maintained without any active assistance or participation of, or solicitation by, any **Insured**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 17

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXIX FINANCIAL IMPAIRMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that the definition of **Financial Impairment** set forth in Section XXIX is deleted and replaced with:

**Financial Impairment** means the status of any entity resulting from:

(A)     the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or any similar party (including a creditors' committee, if applicable) or foreign equivalent empowered to initiate the assumption of control, supervision, management or liquidation of such entity; or

(B)     such entity becoming a debtor in possession under United States bankruptcy law.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 18

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

CLASS CERTIFICATION EVENT STUDY COSTS ENDORSEMENT

IIn consideration of the premium charged, it is agreed that the Policy is amended as follows:

(1)  Section V., Retention, is amended to add the following:

In the event that the retention applicable to a **Securities Claim** has not been exhausted, any remaining retention applicable to such **Securities Claim** shall not apply to **Class Certification Event Study Costs**.

(2)  Section VIII, Defense And Settlement, is amended to add the following:

This Section VIII shall apply to **Class Certification Event Study Costs**.  However, if the **Insureds** elect to use a **Preferred Securities Panel** firm, and such **Preferred Securities Panel** firm, in defending a **Securities Claim**, recommends to the **Insured** a specific expert witness to conduct an event study in the defense of such **Securities Claim**, then the **Insured** may hire such expert witness to perform such event study without further approval by the Company.

(3)  Section XXIX, Definitions, is amended to add the following definitions:

**Class Certification Event Study Costs** means that portion of **Defense Costs** constituting reasonable costs, charges, fees and expenses of an expert witness incurred by an **Insured** to conduct an admissible event study regarding issues of fact relevant to class certification in a **Securities Claim** subsequent to the denial of a motion to dismiss in such **Securities Claim**.

**Preferred Securities Panel** means a law firm from the list of law firms contained on our website at https://www2.chubb.com/microsites/chubb-preferred-securities-panel/preferred-securities-panel.aspx, and made a part of this Policy.  The **Insureds** may choose any **Preferred Securities Panel** firm, regardless of the venue, jurisdiction or nature of the **Claim**, for the defense of any **Securities Claim** made against the **Insureds**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 19

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX DEFINITIONS ORGANIZATION AS A NOMINAL DEFENDANT
ENDORSEMENT

In consideration of the premium charged, it is agreed that the following definitions set forth in Section XXIX Definitions of this Policy are amended as follows:

(1)     **Defense Costs** shall also include **Defense Costs** incurred by an **Organization** in its capacity as a nominal defendant in a derivative action: (A) while seeking to dismiss a **Securities Claim** for lack of jurisdiction or failure to allege demand futility; or (B) while conducting a **Securityholder Derivative Demand Investigation** commenced by a derivative action alleging demand futility.

(2)     Subsection (C) of **Securities Claim** is deleted and replaced with the following:

(C)     brought as a derivative action, on behalf of an **Organization** against an **Insured Person**, including a motion brought by or on behalf of the **Organization** seeking to dismiss a derivative action: (1) that a committee of such **Organization's** Board of Directors has concluded is not in the best interest of the **Organization**; (2) for lack of jurisdiction; or (3) for failure to allege demand futility.

(3)     **Securityholder Derivative Demand Investigation**, as defined in Section XXIX, is deleted and replaced with the following:

**Securityholder Derivative Demand Investigation** means an investigation by an **Organization** to determine whether it is in the best interest of such **Organization** to prosecute the claims alleged in a: (A) securityholder derivative demand, or (B) a derivative action alleging demand futility, commenced upon:

(1) receipt of such demand; or

(2) service of a civil complaint or similar proceeding with respect to such action.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 20

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX DEFINITION OF OUTSIDE ENTITY ENDORSEMENT

In consideration of the premium charged, it is agreed that Subsection (A) of the definition of **Outside Entity** in Section XXIX, Definitions, is deleted and replaced with the following:

(A)    any non-profit corporation, community chest, fund or foundation that is exempt from federal income tax as an entity described in Section 501(c)(3), 501(c)(4), 501(c)(6), 501(c)(7), 501(c)(10), or 501(c)(13) of the United States Internal Revenue Code, as amended; or

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 21

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXI REPRESENTATIONS AND SEVERABILITY ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)      Paragraphs (B) and (C) of Section XXI, Representations and Severability, are deleted and replaced with the following:

      (B)      The knowledge of an **Insured** shall not be imputed to any other **Insured Person**, and only the actual knowledge of a past or present chief executive officer or chief financial officer of the **Parent Organization** shall be imputed to the **Organization**.

(2)      The following is added to the end of Section XXI, Representations and Severability:

(E)      This Section XXI shall supersede any inconsistent language in the **Application**:

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 22

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX DEFENSE COSTS: BOOKS AND RECORDS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Section XXIX, Definitions, definition of **Defense Costs** is amended to add the following:

**Defense Costs** shall also include reasonable and necessary costs, charges and fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured Person**) incurred by an **Organization** to respond to that part of a **Books and Records Request** relevant to a **Securities Claim** and commenced during the **Policy Period**; provided that, (a) the Company shall take into reasonable consideration all extrinsic evidence presented by the **Insured** when determining whether such  request is relevant to such allegations; and (b) the Company shall waive the consent requirement with respect to incurring such **Defense Costs**, set forth in Section VIII(B)(2), Defense and Settlement.

(2)     Section XXIX, Definitions, is amended to add the following definition:

**Books and Records Request** means a written demand by or on behalf of any securityholder of an **Organization** pursuant to Section 220 of the Delaware General Corporation Law or any similar statute in any other jurisdiction.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 23

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

EMPLOYED LAWYERS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Section XXIX, Definitions, is amended as follows:

    A.     The following definitions are added:

        **Employed Lawyer** means any employee of the **Organization** who is admitted to practice law and who is or was employed as a lawyer for and salaried by the **Organization**.

        **Employed Lawyer Wrongful Act** means any **Wrongful Act** by an **Employed Lawyer**, committed, attempted or allegedly committed or attempted in the rendering or failure to render professional legal services for an **Organization**, in his capacity as a lawyer for such **Organization**.

    B.     The definition of **Insured Person** is amended to include the following:

        **Insured Person** also means any **Employed Lawyer** but solely for an **Employed Lawyer Wrongful Act**.

(2)     The Company shall not be liable for **Loss** on account of any **Claim**:

    (a)     based upon, arising from, or in consequence of any act, error or omission in connection with any activities by such **Employed Lawyer** which:

        (i)     are not related to such **Employed Lawyer's** employment with the **Organization**;

        (ii)     are not rendered on the behalf of, for, or to the **Organization**; including activities as an employee of any entity other than the **Organization**; or

        (iii)     are performed by the **Employed Lawyer** for others for a fee; or

    (b)     based upon, arising from, or in consequence of any **Employed Lawyer Wrongful Act** occurring at a time when the **Employed Lawyer** was not employed as a lawyer by the **Organization**.

(3)     For the purposes of determining the **Organization's** indemnification obligation to any such **Employed Lawyer** under this policy, each **Employed Lawyer** shall be deemed a director or officer of the **Organization**.    Accordingly, it is understood and agreed that the **Organization** shall grant indemnification to each **Employed Lawyer** to the same extent as any director or officer of the **Organization**.

(4)     With respect to any coverage afforded under this Endorsement; Item 6 of the Declarations is deleted and replaced with .August 1, 2016.

(5)     Any coverage afforded under this Endorsement shall be specifically excess of, and shall not contribute with, any insurance policy for lawyers' professional liability, legal malpractice or professional liability.

(6)     The Company's maximum liability under this Policy for all **Loss** on account of all **Claims** for all **Employed Lawyer Wrongful Acts** shall be $1,000,000, which amount is part of and not in addition to the Company's maximum Limits of Liability set forth in Item 3 of the Declarations.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 24

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

SIDE A PLUS ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)    Solely for the purposes of determining coverage for **Loss** for which an **Insured Person** has not been paid
or indemnified, the terms and conditions of CODA Premier® Directors and Officers Liability Excess DIC
Policy, DOX G23684639 008, August 1, 2021 - August 1, 2022 ("Side A Policy") shall apply to such **Loss**,
with the exception of the following provisions set forth in such policy, if applicable: independent coverage
review, limit of liability (including any reinstated limit of liability), choice of law and alternative dispute
resolution.  In addition to the foregoing exceptions, the following scheduled sections or endorsements of
the Side A Policy, if applicable, shall not apply:

| SECTION/ENDORSEMENT NAME: | SECTION/ENDORSEMENT NUMBER: |
|---|---|
| Not applicable | Not applicable |

(2)    In no event shall this Endorsement provide coverage to any **Organization** or entity, including coverage
for any **Loss** for which an **Organization** is permitted by law to indemnify an **Insured Person**.

(3)    All other obligations of the **Insureds** and the Company under this Policy with respect to the handling of
any **Claim** for **Loss** described in Paragraph (1) above shall remain unchanged.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 25

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION III CONDUCT EXCLUSION ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III(F), Conduct is deleted and replaced with the following:

(F)    <u>Conduct</u>

based upon, arising from or in consequence of:

(1)    any deliberate fraud, any deliberate criminal act, or any knowing and willful violation of any statute or regulation, by an **Insured**; provided that, for acts or omissions which are treated as a criminal violation in a jurisdiction other than the United States of America or any of its territories or possessions **("Foreign Jurisdiction")** that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such **Foreign Jurisdiction** will not, by itself, be conclusive proof that a deliberate criminal act or deliberate fraud has occurred;

(2)    an **Insured Person** having gained any personal profit, remuneration or other financial advantage to which such **Insured Person** was not legally entitled; or

(3)    an **Organization** having gained any profit, remuneration or other financial advantage to which such **Organization** was not legally entitled,

established by a final, non-appealable adjudication in any underlying action or proceeding (other than a declaratory action or proceeding brought by or against the Company); provided that:

(a)    this Section III(F) shall not apply to Insuring Clause (B), Individual Indemnified Liability Coverage,

(b)    no conduct pertaining to any **Insured** shall be imputed to any other **Insured Person**;

(c)    conduct or knowledge pertaining only to any past or present chief financial officer or chief executive officer (or an equivalent position to any of the foregoing worldwide) of an **Organization** shall be imputed to such **Organization** and its **Subsidiaries**; and

(d)     Paragraphs (2) and (3) above shall not apply to that portion of a **Securities Claim** for a violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended, to the extent such amount is insurable under the law pursuant to which this Policy is construed.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 26

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION VIII DEFENSE AND SETTLEMENT ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (A)(2) of Section VIII, Defense and
Settlement, of this Policy is deleted and replaced with the following:

(2)      agrees not to settle or offer to settle any **Claim**, incur any **Defense Costs** or otherwise assume
         any contractual obligation or admit any liability with respect to any **Claim** without the Company's
         prior written consent, which the Company shall not unreasonably withhold, subject to Paragraph
         (A)(3) below;

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 27

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

ADD SELLING INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that Section XXIX, Definitions, of this Policy is amended as follows:

(1)     Solely with respect to a **Securities Claim** brought and maintained against both a **Selling Insured Person** and at least one other **Insured**, the definition of **Wrongful Act** is amended by adding the following:

**Wrongful Act** also means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by a **Selling Insured Person** in his capacity as such with respect to the sale of any securities of an **Organization** within the meaning of Section 12(2) of the Securities Act of 1933, as amended.

(2)     The definition of **Selling Insured Person** is added as follows:

**Selling Insured Person** means an **Insured Person** who is, and who is acting in the capacity of, a selling shareholder.

For the purposes of determining the **Organization's** indemnification obligation to a **Selling Insured Person** under this Policy, each **Selling Insured Person** shall be deemed a director or officer of the **Organization**.   Accordingly, it is understood and agreed that the **Organization** shall grant indemnification to each **Selling Insured Person** to the same extent as any director or officer of the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 28

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

In consideration of the premium charged, it is agreed that:

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk
    Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the
    Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such
    losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro
    rata allocation in accordance with procedures established by the Secretary of the Treasury.

    "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance
    with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such
    Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the
    following:

    1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of
        insurance subject to the Terrorism Risk Insurance Act; and

    2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is
        committed by an individual or individuals as part of an effort to coerce the civilian population of the
        United States or to influence the policy or affect the conduct of the United States Government by
        coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism
    exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 29

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

ADD CONTROLLING INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that Section XXIX, Definitions, of this Policy is amended
as follows:

(1)    The definition of **Wrongful Act** is amended to add the following:

**Wrongful Act** also means any error, misstatement, misleading statement, act, omission, neglect, or
breach of duty committed, attempted, or allegedly committed or attempted by a **Controlling Insured
Person** in his capacity as such

(2)    The definition of **Controlling Insured Person** is added as follows:

**Controlling Insured Person** means any director or officer who is, and is acting in the capacity of, a
controlling person of an **Organization** within the meaning of Section 15 of the Securities Act of 1933,
as amended, on or prior to the inception date of this **Policy**.

For the purposes of this Policy, the **Organization's** indemnification obligation to a **Controlling
Insured Person** acting in his capacity as such shall be equivalent to that of a director or officer of the
**Organization**.  Accordingly, it is understood and agreed that the **Organization** shall grant
indemnification to each **Controlling Insured Person** to the same extent as any director or officer of
the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms
and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

14-02-22846  (09/2017)            Page 1

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 30

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

SVB FINANCIAL GROUP AMENDMENTS

In consideration of the premium charged, it is agreed that:

1) Section III, Exclusions, paragraph (A), <u>Prior Notice</u>, is deleted in its entirety and replaced with the following:

   (A) <u>Prior Notice</u>
   based upon, arising from or in consequence of the same or substantially the same fact, circumstance or **Wrongful Act** that was the subject of any notice accepted under any policy of which this Policy is a direct or indirect renewal or replacement;

2) Section XXIX, Definitions, **Claim**, paragraph (C), is deleted in its entirety and replaced with the following:

   (C)    investigation of an **Insured Person** for a **Wrongful Act**, commenced by the **Insured Person's** receipt of a written document from an **Enforcement Unit** identifying such **Insured Person** as the target of an investigation, including a subpoena, Wells Notice, target letter or search warrant; or

3) Section XXIX, Definitions, **Loss**, is amended by deleting the paragraph immediately following paragraph (F) in its entirety and inserting the following:

   **Loss** does not include any portion of such amount that constitutes any:

   (1) cost incurred by the **Organization** to comply with any order for non-monetary (including injunctive) relief, or to comply with an agreement to provide such relief;

   (2) amount not insurable under the law pursuant to which this Policy is construed; provided that the Company shall not assert that any amount attributable to violations of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, is subject to this Paragraph (2), unless such amount is determined to be uninsurable in a final, non-appealable adjudication in any action or proceeding (other than a declaratory or equivalent action or proceeding brought by or against the Company);

   (3) amount that represents, or is substantially equivalent to, an increase in the consideration paid (or proposed to be paid) in an acquisition (or proposed acquisition) of more than 50% of the outstanding securities or other ownership interest of an entity, or in the right to vote for

election of, or to appoint, more than fifty percent (50%) of the directors or limited liability company managers or members, or the equivalent of such positions, of an entity; except for any amount otherwise covered under Insuring Clause (A);

(4) tax; except, solely for the purposes of Insuring Clause (A), Individual Non-Indemnified Liability Coverage, any tax imposed upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship, or liquidation of an **Organization**, to the extent that such tax is insurable under the law pursuant to which this Policy is construed;

(5) fine or penalty, except as provided in Subsection (B) or (C) above; or

(6) cost incurred in cleaning-up, removing, containing, treating, detoxifying, neutralizing, assessing the effects of, testing for or monitoring **Pollutants**;

provided that paragraphs (1), (4), and (5) shall not apply to **Defense Costs**.

4) Section XX, Bankruptcy, paragraph (B), is deleted in its entirety and replaced with the following:

B)      In the event a liquidation or reorganization proceeding is commenced by or against an **Organization** under United States bankruptcy law, the Company, the **Organization** and the **Insured Persons** hereby agree not to oppose or object to any efforts by the Company, the **Organization** or an **Insured Person** to obtain relief from any stay or injunction.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 31

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

_____

AMEND SECTION VII ADVANCEMENT OF DEFENSE COSTS

In consideration of the premium charged, it is agreed that Section VII, Advancement of Defense Costs, is amended as follows:

(1)  Subsection (A) is deleted and replaced with the following:

(A)  The Company shall advance **Defense Costs** on account of a **Claim, Securityholder Derivative Demand Investigation** or **Interview** reported pursuant to Section VI, Reporting, on a current basis but in no event later than sixty (60) days after receipt by the Company of bills or invoices detailing such **Defense Costs** and all other information requested by the Company with respect to such bills or invoices until the applicable Limit of Liability set forth in Item 3 of the Declarations has been satisfied.

Furthermore, if an **Organization** refuses in writing, or fails within forty-five (45) days of an **Insured Person's** written request for indemnification, to advance, pay or indemnify an **Insured Person** for **Loss** on account of a **Claim**, then, upon the reporting of the **Claim** pursuant to Section VI, Reporting, the Company shall advance **Defense Costs** on a current basis until such time that the **Organization** accepts the **Insured Person's** request for indemnification or the applicable Limit of Liability set forth in Item 3 of the Declarations has been exhausted, whichever first occurs.

(2)  The second sentence of Subsection (B) is deleted and replaced with the following:

However, the Company shall not seek repayment from an **Insured** of advanced **Defense Costs** that are uninsured pursuant to Exclusion III(F), Conduct.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 32

To be attached to and
form a part of Policy No. 8248-0807

Issued to:  SVB FINANCIAL GROUP

---

AMEND SECTION XXIX, DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that Section XXIX, Definitions, **Insured Person**, is amended to add the following:

**Insured Person** also means any natural person who was, now is or shall become a holder of a position described in Subsections (A) through (D) above who is subject to the UK Senior Managers Regime (each an "Additional Insured Person"), solely with respect to any **Wrongful Act** by such Additional Insured Person in his or her capacity as such, and provided that such Additional Insured Person is indemnified by the **Organization** in the same manner and to the same extent as provided by the **Organization** to a director or officer of the **Organization**.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____

Authorized Representative



November 10, 2022

Kristina Lobo
LOCKTON COMPANIES LLC
3 EMBARCADERO CTR STE600
SAN FRANCISCO, CA 94111-0000

RE:   SVB FINANCIAL GROUP

Dear Kristina:

Enclosed is our The Chubb Primary Endorsement for delivery as an amendment to the policy for the above referenced Insured.

Please let me know if I can be of further assistance.

Sincerely,

Thomas Saunders
CHUBB SPECIALTY INSURANCE

t y

**ENDORSEMENT/RIDER**

Effective date of
this endorsement/rider: August 1, 2022

Federal Insurance Company

Endorsement/Rider No. 33

To be attached to and
form a part of Policy No. 8248-0807

Issued to: SVB FINANCIAL GROUP

_____

AMEND SECTION XXIX, DEFINITION OF INSURED PERSON ENDORSEMENT

In consideration of the premium charged, it is agreed that Paragraph (A) of the definition of Insured Person in Section XXIX, Definitions, is deleted and replaced by:

(A)      a duly elected or appointed director, officer, **LLC Manager**, trustee, regent, governor, risk manager, the in-house general counsel, head of Investor Relations, director of Investor Relations, or Manager of Investor Relations of any **Organization** organized in the United States of America;.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

# **EXHIBIT C**

**The Lead Side A DIC Policy**

 **CHUBB**®

**ACE American Insurance Company**

# CODA Premier®
# Directors and Officers Liability
# Excess DIC Policy
### Declarations

**This Policy is issued by the stock insurance company listed above.**

**THIS POLICY IS A CLAIMS MADE POLICY.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.**

**THE LIMITS OF LIABILITY AVAILABLE TO PAY INSURED LOSS SHALL BE REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS.**

**TERMS THAT APPEAR IN CAPITAL LETTERS HAVE SPECIAL MEANING.  PLEASE REFER TO CLAUSE 2, DEFINITIONS.**

---

| Policy No. DOX  G23684639 009 | |
|---|---|
| Item I. | Company: SVB Financial Group<br>Principal Address:  3003 Tasman Drive<br>Santa Clara, CA 95054 |
| Item II. | POLICY PERIOD:<br>From 12:01 a.m.  08/01/2022    To 12:01 a.m. 08/01/2023<br>(Standard time at the address shown in Item I) |
| Item III. | A. Limit of Liability:                                        $10,000,000<br>    Aggregate Limit of Liability for all LOSS paid on behalf of all INSUREDS arising from all CLAIMS first made during the POLICY PERIOD.<br><br>B. FIRST REINSTATED LIMIT OF LIABILITY:     $10,000,000     (in the aggregate)<br><br>C. SECOND REINSTATED LIMIT OF LIABILITY:    N/A          (in the aggregate)<br><br>Maximum Limit of Liability under<br>III.A, III.B and III.C combined              $20,000,000<br><br>The limits of liability in Items III.A, III.B and III.C are separate and independent. Please refer to Clause 4 of this POLICY for the details on how the reinstatements operate. |

| Item IV. | CODA Access Fund: | $25,000 |
| | Public Relations Fund: | $25,000 |
| | Enforcement Fund: | $25,000 |

The amount stated for the CODA Access Fund is in addition to the Limit of Liability and any applicable reinstatements set forth in Item III above and the maximum amount the INSURER shall pay for such CODA Access Fund.

The  Public Relations Fund and Enforcement Fund are sublimits that are part of, and not in addition to, the Limit of Liability and any applicable reinstatements set forth in Item III above.

| Item V. | POLICY Premium: | $100,500.00 |
| | DISCOVERY PERIOD Premium: | 150% of POLICY Premium |

| Item VI. | Notice to COMPANY: |

Any notice to the COMPANY or, except in accordance with Clause 16 (Authority) of this POLICY, to the INSUREDS, shall be given or made to the individual listed above, if any, or otherwise to the individual designated in the APPLICATION, if any, or otherwise to the signer of the APPLICATION, and shall be given or made in accordance with Clause 15 (Notice) of this POLICY.

| Item VII. | Notice to INSURER: |

Any notice to be given or payment to be made to the INSURER under this POLICY shall be given or made in accordance with Clause 15 (Notice) of this POLICY to:

A.   Notice of CLAIM or WRONGFUL ACT:

Chubb
P.O. Box 5105
Scranton, PA 18505-0518
Fax: 877-746-4641
Toll Free: 1.800.421.2471
Email address for submitting Management Liability Claims,
ChubbClaimsFirstNotice@Chubb.com
Email address for all other correspondence,
WorkViewFLChubbIncoming@chubb.com

B.   All payments or other notices:

Chubb, Financial Lines
Attention: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York, NY 10036

ANY EMAIL NOTICE OF CLAIMS TO THE INSURER SHALL BE VALID ONLY IF SENT TO THE EMAIL ADDRESS LISTED ABOVE AND VERIFIED BY A RETURN RECEIPT FROM SUCH EMAIL ADDRESS.

INFORMATION SUBMITTED TO THE INSURER WHICH IS NOT PROPERLY ADDRESSED TO THE CLAIMS DEPARTMENT SHALL NOT CONSTITUTE A VALID NOTICE OF CLAIM.

| | Carrier | Policy No. | Policy Period | Limits | Attachment |
|---|---|---|---|---|---|
| Primary Policy | Federal Insurance Company | 82480807 | 08/01/2022-08/01/2023 | $10,000,000 | $5,000,000 (SIR) |
| Excess Policies | National Union Fire Insurance Company | 01-436-43-28 | 08/01/2022-08/01/2023 | $10,000,000 | $10,000,000 |
| | Continental Casualty Company | 596711499 | 08/01/2022-08/01/2023 | $10,000,000 | $20,000,000 |
| | Freedom Specialty Insurance Company | XMF2202386 | 08/01/2022-08/01/2023 | $10,000,000 | $30,000,000 |
| | Argonaut Insurance Company (Admitted) | MLX4244146-3 | 08/01/2022-08/01/2023 | $10,000,000 | $40,000,000 |
| | Travelers Casualty and Surety Company of America | 106566983 | 08/01/2022-08/01/2023 | $10,000,000 | $50,000,000 |
| | Endurance Risk Solutions Assurance Co. | FIX10011569105 | 08/01/2022-08/01/2023 | $10,000,000 | $60,000,000 |
| | Starr Indemnity & Liability Coverage | 1000059476221 | 08/01/2022-08/01/2023 | $10,000,000 | $70,000,000 |
| | Markel American Insurance Company | MKLM6EL0008527 | 08/01/2022-08/01/2023 | $10,000,000 | $80,000,000 |
| | Arch Insurance Company | DOX9300529-07 | 08/01/2022-08/01/2023 | $10,000,000 | $90,000,000 |
| | Twin City Fire Insurance Co. | 57 DA 0331021-22 | 08/01/2022-08/01/2023 | $10,000,000 | $100,000,000 |
| | Berkley Insurance Company | BPRO8082373 | 08/01/2022-08/01/2023 | $10,000,000 | $110,000,000 |
| | Zurich American Insurance Company | DOC 3855423-01 | 08/01/2022-08/01/2023 | $10,000,000 | $120,000,000 |
| | Everest National Insurance Company | FL5EX00724-221 | 08/01/2022-08/01/2023 | $10,000,000 | $130,000,000 |
| | Old Republic Professional Liability, Inc. | ORPRO 12 102476 | 08/01/2022-08/01/2023 | $10,000,000 | $140,000,000 |
| | Allianz Global risks US In-surance Company | USF01120122 | 08/01/2022-08/01/2023 | $10,000,000 | $150,000,000 |

IN WITNESS WHEREOF, the INSURER has caused this POLICY to be countersigned by a duly authorized representative of the INSURER.

DATE: 08/29/2022

JOHN J. LUPICA, President
Authorized Representative

## CODA Premier® Directors and Officers Liability Excess DIC Policy

TABLE OF CONTENTS

| Clause | | Page |
|---|---|---|
| 1. | Insuring Clause | 1 |
| 2. | Definitions | 2 |
| 3. | Conduct Exclusion | 7 |
| 4. | Limits Of Liability | 7 |
| 5. | Alternative Dispute Resolution | 8 |
| 6. | Assistance, Cooperation And Consent | 8 |
| 7. | Renewal | 9 |
| 8. | Cancellation | 9 |
| 9. | Changes And Assignments | 10 |
| 10. | Advancement Of DEFENSE COSTS | 10 |
| 11. | Currency | 10 |
| 12. | Headings | 10 |
| 13. | INSUREDS' Reporting Duties | 10 |
| 14. | Other Insurance | 11 |
| 15. | Notice | 12 |
| 16. | Authority | 12 |
| 17. | Non-Rescission | 12 |
| 18. | Spousal Liability | 12 |
| 19. | Subrogation | 12 |
| 20. | Acquisition, Creation Or Disposition Of A SUBSIDIARY | 13 |
| 21. | DISCOVERY PERIOD | 13 |
| 22. | Bankruptcy | 14 |
| 23. | Appeals | 14 |
| 24. | Territory | 14 |
| 25. | Severability | 14 |
| 26. | Liberalization | 15 |
| 27. | State Amendatory Inconsistency | 15 |

CHUBB®

# CODA Premier®
# Directors and Officers Liability
# Excess DIC Policy

Subject to all terms, definitions, conditions, exclusions and limitations of this POLICY, the COMPANY, the INSUREDS, and the INSURER agree as follows:

1. INSURING CLAUSE

(a) The INSURER shall pay on behalf of the INSUREDS any and all NON-INDEMNIFIABLE LOSS that the INSUREDS become legally obligated to pay by reason of any CLAIM first made against the INSUREDS during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, for any WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the end of the POLICY PERIOD by the INSUREDS, but only if:

    1. the insurer(s) of the UNDERLYING INSURANCE:

        i. refuses to indemnify the INSUREDS as required under the terms of the UNDERLYING INSURANCE; or

        ii. fails to indemnify the INSUREDS within 60 days after the INSUREDS request such indemnification; or

        iii. is financially unable to indemnify the INSUREDS; or

        iv. rescinds, voids or cancels, or attempts to rescind, void or cancel, the UNDERLYING INSURANCE; or

        v. as a result of a liquidation or reorganization proceeding commenced by or against the COMPANY pursuant to the U.S. Bankruptcy Code, as amended, or any similar federal, state, foreign or common law ("Code"), fails or refuses to indemnify the INSUREDS because the proceeds of such UNDERLYING INSURANCE are subject to the automatic stay or similar payment prohibition under the Code; or

    2. according to the terms and conditions of the UNDERLYING INSURANCE, the insurer(s) of the UNDERLYING INSURANCE is not liable for such portion of the LOSS; or

    3. the limit(s) of liability or any applicable sublimit(s) of liability of the UNDERLYING INSURANCE has been exhausted by reason of:

        i. the insurer(s) of the UNDERLYING INSURANCE, the INSUREDS or any other party paying thereunder the full amount of such underlying limit(s) of liability or sublimit(s); or

        ii. a provision in the UNDERLYING INSURANCE which exhausts or reduces the limit of liability in the UNDERLYING INSURANCE by reason of any amount paid or payable under another policy issued by the insurer(s) of the UNDERLYING INSURANCE or a subsidiary, associate, affiliate or parent of the insurer(s) of the UNDERLYING INSURANCE.

(b) In the event any UNDERLYING INSURANCE affords broader coverage for an INSURED than is afforded under this POLICY, then notwithstanding anything in this POLICY to the contrary, except:

    Clause 4 (Limits Of Liability), Clause 6 (Assistance, Cooperation And Consent), Clause 8 (Cancellation), Clause 15 (Notice), Clause 16 (Authority), Clause 27 (State Amendatory Inconsistency), and any endorsement to this POLICY,

    this POLICY is amended to follow and be subject to the terms and conditions of such UNDERLYING INSURANCE only in respect of and to the extent of such broader coverage for the INSURED; provided this POLICY shall not cover any claim against the COMPANY or any amounts indemnified, advanced or paid by the COMPANY.

(c) In addition to the Limit of Liability and any applicable reinstatement(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, CODA Access Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS who are directors of the COMPANY to defend against efforts by other INSUREDS or third parties to seize or attach this POLICY, or otherwise enjoin the INSUREDS who are directors of the COMPANY from gaining access to the limits of liability provided by this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("CODA Access Fund").

(d) As part of and not in addition to the Limit of Liability and any applicable reinstatement(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Public Relations Fund, for reasonable costs, charges, fees and expenses incurred by INSUREDS in connection with using a public relations firm to mitigate the adverse effects to the reputation of an INSURED from (i) an EXTRADITION PROCEEDING against such INSURED, if such EXTRADITION PROCEEDING is covered under this POLICY, or (ii) any negative public statement regarding such INSURED by any ENFORCEMENT AUTHORITY relating to or arising out of a CLAIM covered under this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Public Relations Fund").

(e) As part of and not in addition to the Limit of Liability and any applicable reinstatement(s) set forth in Item III of the Declarations, the INSURER shall pay a maximum of the amount set forth in Item IV of the Declarations, Enforcement Fund, for reasonable costs, charges, fees and expenses (including but not limited to a premium for a bond) incurred by INSUREDS:

1. to oppose any efforts by any ENFORCEMENT AUTHORITY to seize or otherwise enjoin the personal assets or real property of an INSURED in connection with a CLAIM covered under this POLICY, or to revoke, overturn or set aside a court order in or relating to a CLAIM covered under this POLICY which in any way impairs the use of such assets or property; or

2. to seek the release of an INSURED from any arrest, detainment or incarceration by an ENFORCEMENT AUTHORITY in or relating to a CLAIM covered under this POLICY,

if such costs, charges, fees and expenses relate to a WRONGFUL ACT by such INSURED and are not otherwise covered under this POLICY; provided the UNDERLYING INSURANCE and/or COMPANY fails, refuses or is financially unable to indemnify, advance or pay such costs, charges, fees and expenses ("Enforcement Fund").

2. DEFINITIONS

(a) "APPLICATION" shall mean:

1. All underwriting data submitted by the COMPANY or the INSUREDS to the INSURER during the 12 months preceding inception of this POLICY; and

2. all publicly available documents filed by the COMPANY with the U.S. Securities and Exchange Commission during the 12 months preceding inception of this POLICY.

All such applications and materials are deemed attached to and incorporated into this POLICY.

(b) "CLAIM" shall mean:

1. any written demand, or any civil, criminal, arbitration, judicial, administrative, or regulatory proceeding, for monetary damages or non-monetary or injunctive relief, or any investigation, including a Wells Notice, against any INSURED for a WRONGFUL ACT, including any appeal therefrom;

2. an EXTRADITION PROCEEDING;

3. the arrest, detainment or incarceration for more than 24 hours of any INSURED by an ENFORCEMENT AUTHORITY in connection with a WRONGFUL ACT, if reported to the INSURER at the option of the INSURED(S) pursuant to Clause 13(c) (INSUREDS' Reporting Duties);

4.  a written notice, as described in Clause 13(b) (INSUREDS' Reporting Duties), to the INSURER by the INSUREDS and/or the COMPANY describing  circumstances that may reasonably be expected to give rise to a CLAIM, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(b) (INSUREDS' Reporting Duties);

5.  a PRELIMINARY INVESTIGATION, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties); and

6.  any written demand that an INSURED toll or waive a statute of limitations or other defense based on timeliness with respect to a potential or threatened claim against the INSURED for a WRONGFUL ACT, if reported to the INSURER at the option of the INSUREDS pursuant to Clause 13(c) (INSUREDS' Reporting Duties).

(c)  "COMPANY" shall mean:

1.  the company named in Item I of the Declarations;

2.  any company that, prior to the inception of the POLICY PERIOD, merged into or consolidated with the company named in Item I of the Declarations and was not the surviving entity;

3.  any SUBSIDIARY;

4.  any SUBSIDIARY if covered in accordance with Clause 20(a) (Acquisition, Creation Or Disposition Of A SUBSIDIARY) below;

5.  any foundation, charitable trust or political action committee controlled or exclusively sponsored by one or more organizations described in 1 through 4 above; and

6.  any organization described in 1 through 5 above as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

(d)  "DEFENSE COSTS" shall mean that portion of LOSS consisting of reasonable costs, charges, fees (including but not limited to legal fees and experts' fees) and expenses incurred in the defense, investigation or appeal of a CLAIM, whether or not such CLAIM is ultimately settled or adjudicated, including but not limited to:

1.  defending or appealing an EXTRADITION PROCEEDING;

2.  the premium for appeal, attachment or similar bonds, including a bail bond if such is available for an EXTRADITION PROCEEDING in the country at issue, but the INSURER shall be under no obligation to provide a bond;

3.  reasonable fees and expenses incurred by the INSUREDS to defend or investigate a CLAIM pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections;

4.  reasonable fees and expenses incurred by the INSUREDS at the INSURER'S request to assist the INSURER in investigating the CLAIM; and

5.  costs assessed against the INSUREDS.

In no event shall DEFENSE COSTS include wages, salaries, fees, benefits or office expenses of INSUREDS or employees of the COMPANY.

(e)  "DISCOVERY PERIOD" shall mean the continuation of the reporting period of this POLICY for the time periods set forth in Clause 21(a)-(c) (Extended Discovery Period, Insolvency Discovery Period and FORMER INSURED Discovery Period) in respect of any CLAIMS first made against an INSURED during such extended reporting period after the end of the POLICY PERIOD, but only if such CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD.

(f)  "DOMESTIC PARTNER" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the COMPANY.

(g) "ENFORCEMENT AUTHORITY" shall mean any law enforcement or other governmental enforcement official or authority, or the enforcement unit of any self-regulatory organization.

(h) "EXTRADITION PROCEEDING" shall mean any formal process by which an INSURED located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer a WRONGFUL ACT.

(i) "FORMER INSURED" shall mean a director or officer of the company named in Item I of the Declarations who, prior to the expiration of the POLICY PERIOD, has ceased to hold any position as an INSURED.

(j) "INDEPENDENT DIRECTORS" shall mean one or more past, present or future directors or MANAGERS of the COMPANY who are not and have never been an officer or employee of any COMPANY.

(k) "INSUREDS" shall mean one or more of the following:

1. all natural persons who were, now are, or shall be:

   i. duly elected or appointed directors (including shadow and de facto directors), trustees, governors, officers, management committee members, MANAGERS, in-house general counsel, or comptrollers of the COMPANY;

   ii. serving as a representative of an entity that serves as a director of the COMPANY;

   iii. prospective directors of the COMPANY named as such in any listing particulars, prospectus or similar offering document;

   iv. defined as insureds, insured persons, outside entity directors or outside entity insured persons or the equivalent in the UNDERLYING INSURANCE;

   v. directors of investor relations, directors of human resources, risk managers or other managers serving in a functionally equivalent or comparable position with the COMPANY; or

   vi. with respect to any COMPANY chartered outside the United States,  natural person(s) serving in a position with such COMPANY which is functionally equivalent or comparable to any position described in i through v above;

2. all other natural persons not described in 1 above who were, now are, or shall be full-time or part-time, seasonal or temporary employees of the COMPANY, provided coverage for such other persons shall apply only if and while:

   i. the COMPANY agrees to advance DEFENSE COSTS and indemnify such other persons with respect to the CLAIM to the same extent as the COMPANY agrees to advance DEFENSE COSTS for and indemnify the persons described in 1 above; or

   ii. the CLAIM is:

      (A) by securities holders of the COMPANY in their capacity as such, including without limitation any shareholder derivative or securities class action lawsuit; or

      (B) made and continuously maintained against a person described in 1 above;

3. all natural persons who were, now are, or shall be serving as directors, officers, trustees, governors, or the equivalent thereof, for any OUTSIDE ENTITY if:

   i. such activity is part of their duties regularly assigned by the COMPANY; or

   ii. such activity is at the specific direction or request of the COMPANY; or

   iii. such persons are a member of a class of persons so directed to serve by the COMPANY; and

4. the estates, heirs, legal representatives or assigns of deceased INSUREDS and the legal representatives or assigns of INSUREDS in the event of their incompetency, insolvency or bankruptcy.

(l) "INSURER" shall mean the insurance company indicated in the Declarations.

(m) "LOSS" shall mean any and all amounts that the INSUREDS are legally obligated to pay by reason of a CLAIM made against the INSUREDS for any WRONGFUL ACT, and shall include but not be limited to:

1. compensatory, exemplary, punitive and multiple damages, judgments, settlements, pre-judgment and post-judgment interest;

2. DEFENSE COSTS;

3. reasonable costs, charges, fees and expenses (including the premium or origination fee for a loan or bond) solely to facilitate the return of amounts incurred and required to be repaid by the chief executive officer or chief financial officer of the company named in Item I of the Declarations pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or any INSURED pursuant to Sections 210 or 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, or any rules or regulations pursuant to such Sections. Such amounts do not include the payment, return, reimbursement, disgorgement or restitution of any such amounts requested or required to be repaid by such persons pursuant to such Section 304(a) or Sections 210 or 954;

4. reasonable costs, charges, fees and expenses incurred in connection with the CODA Access Fund, the Public Relations Fund and the Enforcement Fund as set forth in Clause 1(c) – (e) respectively; and

5. U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS.

Provided, however, LOSS shall not include:

i. taxes, other than:

(A) taxes imposed upon a COMPANY for which the INSUREDS are legally liable solely by reason of the COMPANY's insolvency, or

(B) taxes, including national insurance contributions, imposed upon an INSURED solely by reason of the INSURER's payment of LOSS incurred by such INSURED;

ii. fines or penalties imposed by law, other than:

(A) punitive, exemplary, or multiple damages.  The insurability of punitive, exemplary and multiple damages shall be governed by the law of the applicable jurisdiction that most favors coverage for such punitive, exemplary and multiple damages.  If the INSUREDS present to the INSURER a written opinion from legal counsel that such punitive, exemplary or multiple damages are insurable under such applicable law, the INSURER shall not challenge that determination; and

(B) civil fines or penalties assessed against an INSURED for a violation of any federal, state, local or foreign law, if such violation is neither intentional nor willful, including without limitation any such violation of the Foreign Corrupt Practices Act at 15 U.S.C. § 78dd-2(g)(2)(B) or 15 U.S.C. § 78ff(c)(2)(B), any similar provisions of the United Kingdom Bribery Act 2010, and the United States Federal Food, Drug and Cosmetic Act.

Subparagraphs (i) and (ii) immediately above shall not apply to DEFENSE COSTS.

iii. matters that may be deemed uninsurable under the law pursuant to which this POLICY shall be construed. The INSURER shall not assert that any LOSS incurred by an INSURED is uninsurable due to the INSURED's actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933 or state equivalents thereof, as amended.

(n) "MANAGERS" shall mean any one or more natural persons who were, now are or shall be:

1. managers, members of the board of managers or functionally equivalent or comparable executives of a COMPANY that is a limited liability company; or

2. general partners, managing partners or functionally equivalent or comparable executives of a COMPANY that is a partnership;

including without limitation any such natural persons serving in a management position in such limited

liability company or partnership in accordance with such organization's operating agreement or partnership agreement.

(o) "NON-INDEMNIFIABLE LOSS" shall mean LOSS for which the COMPANY or, with respect to INSUREDS described in Clause 2(k)(3) above, the OUTSIDE ENTITY, refuses to indemnify or advance DEFENSE COSTS or other LOSS as required or permitted, or is financially unable to indemnify, or fails to indemnify within 60 days after the INSUREDS request such indemnification; and the INSUREDS comply with Clause 19 (Subrogation) below.

(p) "OUTSIDE ENTITY" shall mean any not-for-profit or for-profit organization.

(q) "POLICY" shall mean this insurance policy, including the APPLICATION, the Declarations, and any endorsements hereto issued by the INSURER.

(r) "POLICY PERIOD" shall mean the period of time stated in Item II of the Declarations. If this POLICY is cancelled in accordance with Clause 8(b) (Cancellation) below, the POLICY PERIOD shall end upon the effective date of such cancellation.

(s) "PRELIMINARY INVESTIGATION" shall mean a request or demand for an INSURED to appear at a meeting, deposition or interview, or produce documents, relating to the business of the COMPANY, whether or not a WRONGFUL ACT is alleged, where such request or demand is:

1. by any ENFORCEMENT AUTHORITY; or

2. by or on behalf of the COMPANY, the COMPANY'S board of directors (or similar management body), or any committee of the COMPANY'S board of directors (or similar management body) arising out of a request or demand set forth in 1 immediately above; or which is part of the COMPANY'S investigation and evaluation of a SHAREHOLDER DERIVATIVE DEMAND.  For the purpose of this subparagraph 2, a SHAREHOLDER DERIVATIVE DEMAND means a written demand on the board of directors (or similar management body) by one or more shareholders of the COMPANY to assert a CLAIM on behalf of the COMPANY against one or more INSUREDS for a WRONGFUL ACT.

PRELIMINARY INVESTIGATION shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulated entity conducted in the normal review or compliance process of the COMPANY by an ENFORCEMENT AUTHORITY.

(t) "SUBSIDIARY" shall mean any entity which the company named in Item I of the Declarations and/or one or more other SUBSIDIARIES, directly or indirectly, in any combination:

1. owns interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the board of directors if such entity is a corporation, the management committee members or members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity; or

2. has the right, pursuant to written contract or the by-laws, charter, operating agreement, partnership agreement or similar documents of a COMPANY, to elect, appoint or designate a majority of the board of directors if such entity is a corporation, the management committee members or the members of the management board if such entity is a joint venture, limited liability company, or partnership, or functionally equivalent or comparable executives of such entity,

on or before the inception date of the POLICY; provided, however, a partnership shall be a SUBSIDIARY only if such partnership is specifically included as a SUBSIDIARY by an endorsement to this POLICY and such partnership agrees to indemnify its INSUREDS to the fullest extent permitted by law.

(u) "UNDERLYING INSURANCE" shall mean the directors and officers liability insurance policies scheduled in Item VIII of the Declarations.

(v) "U.K. CORPORATE MANSLAUGHTER ACT DEFENSE COSTS" shall mean DEFENSE COSTS incurred by an INSURED that result solely from the investigation, adjustment, defense and/or appeal of a claim against a COMPANY for a violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007, or any similar statute in any jurisdiction.

(w) "WRONGFUL ACT" shall mean:

1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty by the INSUREDS while acting, individually or collectively, in their capacities as INSUREDS, or

2. any other matter claimed against them by reason of their serving in such capacities, provided this subparagraph 2 shall not apply with respect to any INSUREDS of a COMPANY that is a partnership.

All such errors, misstatements, misleading statements, acts, omissions, neglects or breaches of duty actually or allegedly caused, committed, or attempted by or claimed against one or more of the INSUREDS arising out of or relating to the same or series of related facts, circumstances, situations, transactions or events shall be deemed to be a single WRONGFUL ACT.

3. CONDUCT EXCLUSION

(a) The INSURER shall not be liable to make any payment for LOSS in connection with that portion of any CLAIM based upon or attributable to the INSUREDS having:

1. gained any personal financial profit or financial remuneration to which they were not legally entitled, or

2. committed any deliberate fraud or deliberate criminal act,

if a final and non-appealable adjudication in an underlying proceeding (which shall not include a proceeding brought by or against the INSURER) adverse to such INSUREDS establishes that such INSUREDS gained any such personal financial profit or financial remuneration, or committed such deliberate fraud or deliberate criminal act.  However, this exclusion shall not apply to DEFENSE COSTS, INDEPENDENT DIRECTORS, any employment-related CLAIM or, with respect to subparagraph 1 immediately above, any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

(b) For purposes of this exclusion, "final and non-appealable adjudication" means when:

1. the last court, tribunal, executive, legislative or regulatory agency, body or entity with jurisdiction over the CLAIM denies any further appeal, recourse or other relief from any adverse finding, judgment or decree; or

2. the INSURED has waived or abandoned all rights of appeal from any adverse finding, judgment or decree with respect to the CLAIM; or

3. the time for filing, asserting or pleading any appeal from any adverse finding, judgment or decree has lapsed or is otherwise exhausted.

(c) Any fact pertaining to or any act, omission, knowledge, intent or WRONGFUL ACT of any INSURED or the COMPANY shall not be imputed to any other INSURED for the purpose of determining the application of this exclusion.

(d) For acts or omissions which are deemed to be a criminal violation in a jurisdiction outside of the United States and such acts or omissions would not be deemed to be a criminal violation if such acts or omissions took place in a jurisdiction inside of the United States, the imposition of a criminal sanction or fine in such jurisdiction outside the United States will not, by itself, be conclusive proof that a deliberate fraudulent or deliberate criminal act occurred for purposes of this exclusion.

4. LIMITS OF LIABILITY

The maximum aggregate liability of the INSURER under this POLICY for all LOSS arising out of each CLAIM and all CLAIMS first made during the POLICY PERIOD and, if elected, the DISCOVERY PERIOD shall be the Limit of Liability set forth in Item III of the Declarations, subject to the following:

(a) In the event the Limit of Liability of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated in the amount set forth in Item III of the Declarations, FIRST REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by INSUREDS as defined in Clause 2(k)(1), Definitions. Such FIRST REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or any other CLAIM based upon, arising out of  or

related in any way to such CLAIM, and such FIRST REINSTATED LIMIT OF LIABILITY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability.

(b)  In the event the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY is exhausted, this POLICY's Limit of Liability shall be reinstated a second time in the amount set forth in Item III of the Declarations, SECOND REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by duly elected or appointed directors (including shadow and de facto directors) of the company named in Item I of the Declarations. Such SECOND REINSTATED LIMIT OF LIABILITY shall not apply to any CLAIM for which there has been any payment of LOSS under the Limit of Liability of this POLICY or the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY or any other CLAIM based upon, arising out of or related in any way to such CLAIMS, and such SECOND REINSTATED LIMIT OF LIABILITY of this POLICY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability.

(c)  Upon exhaustion of the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, for the POLICY PERIOD by reason of payment of LOSS by the INSURER, the INSURER shall have no further obligations or liabilities under this POLICY with respect to such applicable limit (or sublimit) of liability for the POLICY PERIOD.

(d)  With respect to exhaustion for purposes of the FIRST REINSTATED LIMIT OF LIABILITY and the SECOND REINSTATED LIMIT OF LIABILITY, the limits of liability under any UNDERLYING INSURANCE and any insurance policies excess of this POLICY shall be reduced or exhausted by payments by an insurer, an INSURED and/or a third party.

(e)  DEFENSE COSTS shall be part of and not in addition to the Limit of Liability and, if applicable, the FIRST REINSTATED LIMIT OF LIABILITY, SECOND REINSTATED LIMIT OF LIABILITY, CODA Access Fund, Public Relations Fund and/or Enforcement Fund, as stated in Items III and IV of the Declarations, and payment by the INSURER of DEFENSE COSTS shall reduce such applicable limit of liability for the POLICY PERIOD.

(f)  Multiple demands, suits or proceedings arising out of the same WRONGFUL ACT shall be deemed to be a single CLAIM, which shall be treated as a CLAIM first made during the policy period in which the first of such multiple demands, suits or proceedings is made against any INSURED or in which notice of circumstances relating thereto is first given in accordance with Clause 13(b) (INSUREDS' Reporting Duties) below, whichever occurs first.

5.  ALTERNATIVE DISPUTE RESOLUTION

Only if requested by the INSUREDS, the INSURER shall submit any dispute, controversy or claim arising out of or relating to this POLICY or the breach, termination or invalidity thereof to non-binding mediation and/or to non-binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot agree on the arbitration rules and procedures, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules. The arbitration panel shall consist of one arbitrator selected by the INSUREDS, one arbitrator selected by the INSURER, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

In the event that the INSUREDS prevail in an arbitration proceeding, then the INSURER shall pay to such INSUREDS the attorneys' fees, expert fees and other necessary out of pocket costs and expenses reasonably incurred by the such INSUREDS in the arbitration proceeding and shall pay the fees and expenses of the arbitration panel, such payment to be in addition to and not part of any applicable Limit Of Liability under this POLICY. In the event the INSURER prevails in an arbitration proceeding, then such fees and expenses of the INSURER and the arbitration panel shall be paid as may be ordered by the arbitration panel within its sole discretion.

6.  ASSISTANCE, COOPERATION AND CONSENT

The INSUREDS shall provide to the INSURER all information, assistance and cooperation which the INSURER may reasonably request, and the INSUREDS shall use diligence and prudence in the investigation,

defense, negotiation of settlement and settlement of any CLAIM.  In the event of a CLAIM, the INSUREDS shall do nothing that could prejudice the INSURER'S position or its potential or actual rights of recovery with respect to such CLAIM.

The INSURER has no duty to defend any CLAIM and shall not be called upon to assume charge of the investigation, settlement or defense of any CLAIM.  However, the INSURER shall have the right, but not the duty, and shall be given the opportunity to fully and effectively associate with the INSUREDS, and shall be consulted in advance, regarding the control, investigation, defense, negotiation of settlement and settlement of any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY.

The INSUREDS shall not offer to settle or settle, assume any obligation, admit any liability or stipulate to any judgment with respect to any CLAIM that is reasonably likely to be covered in whole or in part by, or that is reasonably likely to cause liability to attach under, this POLICY without the INSURER'S prior written consent, which shall not be unreasonably withheld or delayed.  The INSURER shall not be liable for or as a result of any offer to settle, settlement, assumed obligation, admission of liability or stipulated judgment to which it has not given its prior written consent.

The INSURER is entitled to pay LOSS as it becomes due and payable by the INSUREDS, without considering the potential for other future LOSS.

The failure of any INSURED or the COMPANY to comply with his or her obligations under this Clause shall not impair the rights of any other INSURED under this POLICY.

The INSURER shall fulfill its obligations in accordance with the terms and conditions of this POLICY notwithstanding the issuance of any insurance by another member of the Chubb Group.

7. RENEWAL

Except in the event this POLICY is cancelled in whole or in part in accordance with Clause 8 (Cancellation) below, on the expiration date of this POLICY, upon delivery of the renewal application or submission and payment of the premium, this POLICY shall be renewed to a date one year beyond the expiration date of this POLICY, unless written notice is given by the INSURER to the COMPANY, or by the COMPANY to the INSURER, that such POLICY extension is not desired. Such written notice must be given at least 30 days prior to the expiration date of this POLICY.

The premium charged on renewal of this POLICY shall be determined by the underwriting guidelines and rating plan of the INSURER in force at such expiration date. If during the POLICY PERIOD the INSURER announces amendments to this standard policy form, which amendments are generally applicable to all similar policies issued by the INSURER, such amendments shall be applicable to any applicable renewal.

8. CANCELLATION

This POLICY shall not be subject to cancellation except as follows:

(a)  In the event during the POLICY PERIOD:

1. the company named in Item I of the Declarations shall merge into or consolidate with another organization in which the company named in Item I of the Declarations is not the surviving entity, or

2. any person or entity or group of persons and/or entities acting in concert shall acquire securities or voting rights which results in ownership or voting control by such person or entity or group of persons or entities of more than 50% of the outstanding securities representing the present right to vote for election of directors or MANAGERS or functionally equivalent or comparable executives of the company named in Item I of the Declarations,

this POLICY shall remain in force until the later of:

i.  the termination of the POLICY PERIOD, or

ii.  any subsequent date to which the INSURER may agree by endorsement,

but only with respect to CLAIMS for WRONGFUL ACTS actually or allegedly taking place before the effective date of said merger, consolidation or acquisition. If the POLICY remains in force beyond the

period of time stated in Item II of the Declarations by reason of this Clause 8(a), the Limit of Liability for such extension is part of and not in addition to the Limit of Liability applicable to the POLICY PERIOD. All premiums paid or due at the time of said merger, consolidation or acquisition shall be fully earned and in no respect refundable.

(b) This POLICY may be cancelled by the INSURER for nonpayment of premium by sending notice, in accordance with Clause 15 (Notice) below, to the company named in Item I of the Declarations stating when, not less than 10 days thereafter, the cancellation shall be effective. The effective date of cancellation stated in the notice shall become the end of the POLICY PERIOD. All premiums paid or due for this POLICY shall be fully earned at the time of said end of the POLICY PERIOD.

(c) If this POLICY is terminated by the company identified in Item I of the Declarations, the INSURER shall refund the premium computed at the customary short rate.  If this POLICY is terminated by the INSURER, the INSURER shall refund the unearned premium computed pro rata. However, this POLICY may be cancelled by the company named in Item I of the Declarations because of a downgrade of the financial strength rating of the INSURER of this POLICY, as established by A.M. Best, below A-, within 30 days of such downgrade.  In such event, the INSURER shall:

1. refund the unearned premium computed pro rata, if the INSUREDS have not, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY; or

2. refund the unearned premium computed at the customary short rate, if the INSUREDS have, prior to such termination, provided to the INSURER notice of a CLAIM or notice of facts or circumstances which may reasonably give rise to a future CLAIM covered under this POLICY.

9. CHANGES AND ASSIGNMENTS

The terms and conditions of this POLICY shall not be waived or changed, nor shall an assignment of interest under this POLICY be binding, except by an endorsement to this POLICY issued by the INSURER.

10. ADVANCEMENT OF DEFENSE COSTS

Except in those instances when the INSURER has denied liability for the CLAIM because of the application of one or more coverage issues, if the COMPANY fails, refuses or is financially or  legally unable to advance DEFENSE COSTS, and if the insurer(s) of the UNDERLYING INSURANCE fails or refuses to advance such costs as described in Clause 1(a) (Insuring Clause) above, the INSURER shall, upon request and if proper documentation accompanies the request, advance on behalf of the INSUREDS, or any of them, such DEFENSE COSTS on a current basis, but no later than 60 days after the receipt by the INSURER of such properly documented DEFENSE COSTS invoices.  In the event that the INSURER so advances DEFENSE COSTS and it is finally established that the INSURER has no liability hereunder for such DEFENSE COSTS, the INSUREDS on whose behalf such advances have been made and the COMPANY, to the fullest extent legally permitted, agree to repay to the INSURER, severally according to their respective interests, all such advanced DEFENSE COSTS.

11. CURRENCY

All premium, limits, retentions, and other amounts referenced in this POLICY are expressed, and all LOSS is payable, in the currency of the United States of America.  If judgment is rendered, settlement is denominated or another element of LOSS under this POLICY is stated in a currency other than United States of America dollars, payment under this POLICY shall be made in United States of America dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of LOSS is due, respectively, or if not published on such date, the next date of publication of *The Wall Street Journal*.

12. HEADINGS

The descriptions in the headings and sub-headings of this POLICY are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

13. INSUREDS' REPORTING DUTIES

(a) The INSUREDS and/or the COMPANY shall give written notice to the INSURER of any of the following as

soon as practicable after the in-house general counsel or risk manager of the company named in Item I of the Declarations first learns thereof:

1. any CLAIM described in Clause 2(b)(1) or (2), Definitions, above;

2. any event described in Clause 8(a) (Cancellation) above;

3. any material change in the terms or conditions of the UNDERLYING INSURANCE occurring during the POLICY PERIOD or the DISCOVERY PERIOD (if elected pursuant to Clause 21 below); or

4. any nonrenewal or cancellation of the UNDERLYING INSURANCE occurring during the POLICY PERIOD or the DISCOVERY PERIOD (if elected pursuant to Clause 21 below).

If the INSUREDS and/or the COMPANY fail to provide notice of any such CLAIM to the INSURER as specified in 1 immediately above, the INSURER shall not be entitled to deny coverage for the CLAIM based solely upon late notice unless the INSURER can demonstrate its interests were materially prejudiced by reason of such late notice.

If the INSURED provides notice of events specified in subparts 3 and 4 above, any additional premium reasonably required by the INSURER as a result of such events shall be paid as soon as practicable after notice of such additional premium by the INSURER.

(b) If, during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, but in no event later than 60 days after the termination of the POLICY PERIOD, or if elected the DISCOVERY PERIOD, the INSUREDS first become aware of any circumstances that may reasonably be expected to give rise to a CLAIM described in Clause 2(b)(1) or (2) above being made against the INSUREDS, as set forth in Clause 2(b)(4), and if the INSUREDS or the COMPANY give written notice to the INSURER of such circumstances and the reasons for anticipating such a CLAIM, with particulars as to dates and persons involved, the nature of the WRONGFUL ACT, the alleged injury, the names of the claimants, and the manner in which the INSUREDS or the COMPANY first became aware of the circumstances; then such notice of circumstances shall be a CLAIM under this POLICY and any LOSS incurred by an INSURED solely in connection with his or her response to such circumstances shall be covered, subject to the other terms, conditions and limitations of this POLICY.  Any other CLAIM which arises out of such circumstances shall be deemed to have been first made at the time such written notice of circumstances was received by the INSURER.  However, if the INSUREDS elect not to report such circumstances, then any subsequent CLAIM which arises out of the circumstances shall be subject to the reporting requirements set forth in 13(a) above, and coverage for such subsequent CLAIM will not be denied because of the INSUREDS' failure to report the circumstances pursuant to this Clause 13(b).

(c) Any arrest, detainment or incarceration, PRELIMINARY INVESTIGATION, or demand described in subparts 3, 5 or 6 of Clause 2(b), Definitions, shall be a CLAIM under this POLICY only if during the POLICY PERIOD, the COMPANY or the INSUREDS, in their sole option, report such circumstance, PRELIMINARY INVESTIGATION, or demand to the INSURER as a CLAIM.

(d) No coverage is afforded for any LOSS incurred in connection with any circumstance, PRELIMINARY INVESTIGATION, or demand described in Clause 2(b)(3), (4), (5) or (6), Definitions, prior to the time written notice as described in (b) or (c) above is given to the INSURER.

(e) The time when a CLAIM shall be made for purposes of determining the application of Clause 1 (Insuring Clause) above shall be (i) with respect to a CLAIM described in Clause 2(b)(1), (2), (3) and (6) above, the date on which the CLAIM is first made against the INSURED, and (ii) with respect to a CLAIM described in Clause 2(b)(4) and (5) above, the date on which notice of such CLAIM is given to the INSURER.

14. OTHER INSURANCE

If any LOSS covered under this POLICY is covered under any other valid and collectible insurance, then this POLICY shall cover the LOSS, subject to its terms and conditions, only to the extent that the amount of the LOSS is in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is UNDERLYING INSURANCE or is written only as specific excess insurance over the Limit of Liability provided by this POLICY.  Such insurance as is provided by this POLICY shall apply as primary to any personal "umbrella" excess liability insurance purchased by an INSURED.

If LOSS covered under this POLICY is also covered under but not paid by such other valid and collectible insurance, this POLICY will respond on behalf of the INSUREDS without regard to such other insurance, subject to the terms, conditions and limitations of this POLICY and without prejudice to the INSURER's right to recover LOSS paid under this POLICY from the issuers of such other insurance.

15.  NOTICE

All notices under any provision of this POLICY shall be in writing and given by prepaid express courier or email properly addressed to the appropriate party at the respective addresses as shown in Items VI and VII of the Declarations, and notice so given shall be deemed to be received and effective upon actual receipt thereof by the party or one day following the date such notice is sent, whichever is earlier, subject to proof of transmittal. Notice to the INSURER of any CLAIM shall be directed to the attention of the INSURER's claims department.  All other notices to the INSURER shall be directed to the attention of the INSURER's underwriting department.

16.  AUTHORITY

By acceptance of this POLICY, the company named in Item I of the Declarations and the INSUREDS agree that the INSURER may treat the company named in Item I of the Declarations as the authorized representative of INSUREDS with respect to all matters under this POLICY, including, but not limited to, the giving and receiving of notice of CLAIM or cancellation or desire not to extend the POLICY or election of the DISCOVERY PERIOD, the payment of premiums, the receiving of LOSS payments and any return premiums that may become due under this POLICY, the requesting, receiving, and acceptance of any endorsement to this POLICY, and the submission of a dispute to arbitration.

The INSUREDS agree that said company shall represent them but, for purposes of the investigation, defense, settlement, or appeal of any CLAIM, all similarly situated INSUREDS who are named as defendants in the CLAIM may, upon notice to the INSURER, replace said company with another agent to represent them with respect to the CLAIM, including giving and receiving of notice of CLAIM and other correspondence, the receiving of LOSS payments, and the submission of a dispute to arbitration.

17.  NON-RESCISSION

Coverage under this POLICY shall not be rescinded or voided by the INSURER in whole or in part for any reason.

18.  SPOUSAL LIABILITY

If a CLAIM against an INSURED includes a claim against the INSURED's lawful spouse or DOMESTIC PARTNER solely by reason of (a) such spouse's or DOMESTIC PARTNER's status as a spouse or DOMESTIC PARTNER of the INSURED; or (b) such spouse's or DOMESTIC PARTNER's ownership interest in property which the claimant seeks as recovery for alleged WRONGFUL ACTS of the INSURED, all loss which such spouse or DOMESTIC PARTNER becomes legally obligated to pay by reason of such CLAIM shall be treated for purposes of this POLICY as LOSS which the INSURED becomes legally obligated to pay by reason of the CLAIM made against the INSURED.  Such spousal or DOMESTIC PARTNER loss shall be covered under this POLICY only if and to the extent such loss would be covered if incurred by the INSURED.

The coverage extension afforded by this Clause 18 does not apply to the extent such CLAIM alleges a wrongful act or omission by the INSURED's spouse or DOMESTIC PARTNER.

19.  SUBROGATION

(a)  Inasmuch as this POLICY is excess insurance, the INSUREDS' right of recovery against any person or organization cannot be exclusively subrogated to the INSURER. It is therefore understood and agreed that in case of any payment hereunder, the INSURER will act in concert with all other interests concerned (including the INSUREDS'), in the exercise of such rights of recovery. The apportioning of any amounts that may be so recovered shall follow the principle that any interest (including the INSUREDS') that has paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by it; the INSURER is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including the INSUREDS') of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned (including the INSUREDS'), in the proportion of their

respective recoveries as finally settled. If there should be no recovery in proceedings instituted solely on the initiative of the INSURER, the expenses thereof shall be borne by the INSURER.

(b) The INSUREDS shall execute all papers reasonably required and shall take all reasonable actions that may be necessary to secure the rights of the INSURER, including the execution of such documents necessary to enable the INSURER effectively to bring suit in the name of the INSUREDS, including but not limited to an action against the COMPANY or the insurer(s) of the UNDERLYING INSURANCE for nonpayment of indemnity due and owing to the INSUREDS by the COMPANY or the insurer(s), respectively.

(c) In no event shall the INSURER exercise its right of subrogation against an INSURED unless and to the extent Clause 3, Conduct Exclusion, applies to such INSURED.

(d) Payment by the INSURER under Insuring Clause 1(a)(1)(v) above ("Bankruptcy Payment") is not intended to be a payment in satisfaction of the obligations under the UNDERLYING INSURANCE, but, rather, an advance of funds subject to repayment as provided in this Clause 19.  Subject to reinstatement pursuant to  subparagraph (e) immediately below, all Bankruptcy Payments shall reduce and/or exhaust the limits of liability of this POLICY to the same extent as any payment of LOSS by the INSURER to the INSUREDS hereunder.  In the event of any Bankruptcy Payment, INSUREDS hereby assign to the INSURER all their rights under the UNDERLYING INSURANCE to obtain payment of the amounts of the Bankruptcy Payment.

(e) Any recoveries by the INSURER pursuant to this Clause 19 of LOSS paid under this POLICY shall be the sole property of the INSURER, but an amount equal to the amount of such recoveries, minus all costs incurred by the INSURER to obtain such recoveries, shall reinstate, in such amount and as of the date each recovery is received by the INSURER, the limits of liability of this POLICY that were eroded or exhausted by such payment.

20. ACQUISITION, CREATION OR DISPOSITION OF A SUBSIDIARY

(a) If, during the POLICY PERIOD, the COMPANY acquires interests in or rights with respect to another organization, or creates another organization, which as a result of such acquisition or creation becomes a SUBSIDIARY, or acquires any organization by merger into or consolidation with the COMPANY, and if, as a result of such acquisition or creation, such organization's INSUREDS are included as insureds under the primary policy of UNDERLYING INSURANCE, then such organization's insureds shall also be included as INSUREDS under this POLICY but only with respect to CLAIMS for WRONGFUL ACTS taking place after such acquisition or creation, unless the INSURER agrees to provide coverage by endorsement for WRONGFUL ACTS taking place prior to such acquisition or creation.

(b) Coverage shall not apply to directors, MANAGERS, officers and employees of any subsidiary, including a SUBSIDIARY as defined in Clause 2 (Definitions) above, for CLAIMS for WRONGFUL ACTS actually or allegedly taking place subsequent to the date that the SUBSIDIARY ceases to be a SUBSIDIARY.

21. DISCOVERY PERIOD

(a) If the INSURER or the company identified in Item I of the Declarations elects not to renew this POLICY, then the company identified in Item I of the Declarations and the INSUREDS shall have the right, upon payment of an additional premium set forth in Item V of the Declarations, to a continuation of the reporting period of this POLICY in respect of any CLAIMS first made against an INSURED during the one-year period after the end of the POLICY PERIOD, but only if the CLAIMS are based on WRONGFUL ACTS alleged to have been committed prior to the end of the POLICY PERIOD ("Extended Discovery Period").  Such CLAIMS shall be deemed to have been made during the POLICY PERIOD, provided that notification of each such CLAIM is in accordance with Clause 13 (INSURED's Reporting Duties) above.  The right to elect the Extended Discovery Period shall terminate, however, unless written notice of such election together with the additional premium is received by the INSURER within 60 days after the end of the POLICY PERIOD.  Any premium paid for the Extended Discovery Period is not refundable.

(b) If nonrenewal of this POLICY follows the commencement during the POLICY PERIOD of a liquidation or reorganization proceeding described in Clause 22 below, then any DISCOVERY PERIOD elected by the COMPANY  or  the  INSUREDS  shall  be  six years  from  the  date  of  such  nonrenewal  ("Insolvency Discovery Period")  for  CLAIMS  first  made  during  such  Insolvency  Discovery  Period  based  on  WRONGFUL ACTS

alleged to have occurred prior to such nonrenewal.  No additional premium shall be required for the Insolvency Discovery Period.

(c)  In the event the COMPANY does not renew this POLICY, FORMER INSUREDS shall receive, instead of the DISCOVERY PERIOD set forth in paragraph (a) or (b) above, a discovery period of unlimited duration from the effective date of such nonrenewal ("FORMER INSURED Discovery Period") for CLAIMS first made against the FORMER INSURED during such FORMER INSURED Discovery Period based on WRONGFUL ACTS alleged to have occurred prior to such nonrenewal.  No additional premium shall be required for the FORMER INSURED Discovery Period.  The FORMER INSURED Discovery Period shall not apply to any INSURED who ceased to serve as an INSURED on account of an event described in Clause 8(a)1 or Clause 8(a)2.

(d)  The offer by the INSURER of renewal at a premium different from the premiums for the expiring POLICY PERIOD shall not constitute an election by the INSURER not to renew this POLICY.

(e)  The Limit of Liability provided during any DISCOVERY PERIOD is part of and not in addition to the Limit of Liability provided during the POLICY PERIOD, and there shall be no separate or additional Limit of Liability for the DISCOVERY PERIOD.

## 22.  BANKRUPTCY

In the event a liquidation or reorganization proceeding is commenced by or against the COMPANY or any INSURED, pursuant to the United States Bankruptcy Code, as amended, or any similar state, local, or foreign law, such proceeding shall not relieve the INSURER of its obligations nor deprive the INSURER of its rights or defenses under this POLICY.  In the event of such liquidation or reorganization proceeding the COMPANY and the INSUREDS hereby: (i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts by the INSURER, the COMPANY or any INSURED to obtain relief from any such stay or payment prohibition.

In the event the COMPANY becomes a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country and the aggregate LOSS due under this POLICY exceeds the remaining available Limit of Liability, the INSURER shall:

(a)  first pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted prior to the COMPANY becoming a debtor-in–possession or such equivalent status, then

(b)  with respect to whatever remaining amount of the Limit of Liability is available after payment under (a) above, pay such LOSS allocable to WRONGFUL ACTS that are actually or allegedly caused, committed, or attempted after the COMPANY became a debtor-in-possession or equivalent status under the United States Bankruptcy Code or the law of any other country.

## 23.  APPEALS

In the event the INSUREDS or the insurer(s) of the UNDERLYING INSURANCE elect not to appeal a judgment, the INSURER may elect to make such appeal at its own expense, and shall be liable for any increased award, taxable costs and disbursements and any additional interest incidental to such appeal, to the extent such payments are not covered by other valid and collectible insurance.

## 24.  TERRITORY

This POLICY shall apply to any WRONGFUL ACT taking place, LOSS incurred or CLAIM made against any INSURED anywhere in the world.

## 25.  SEVERABILITY

The APPLICATION for coverage shall be construed as a separate APPLICATION for coverage by each INSURED. With respect to the declarations and statements contained in such APPLICATION for coverage, no statement in the APPLICATION or knowledge possessed by any one INSURED shall be imputed to any other INSURED for the purpose of determining the availability of coverage with respect to CLAIMS made against any other INSURED.  Any fact pertaining to, or any act, omission, knowledge, or intent of any INSURED or COMPANY shall not be imputed to any other INSURED with respect to coverage under this POLICY.

26. LIBERALIZATION

Where legally permissible, for LOSS from that portion of any CLAIM maintained in a FOREIGN JURISDICTION or to which the law of a FOREIGN JURISDICTION is applied, the INSURER shall apply to such CLAIM those terms and conditions (and related provisions) of the FOREIGN POLICY in such FOREIGN JURISDICTION that are more favorable to such INSURED than the terms and conditions of this POLICY. However, this paragraph shall not apply to any provision of this POLICY or the FOREIGN POLICY addressing limits of liability (primary, excess or sublimits), other insurance, non-renewal, duty to defend, defense within or without limits, taxes, conformance to law or excess liability coverage, any claims made coverage provisions, arbitration and any endorsement to this POLICY that excludes or limits coverage for specific events or litigation or that specifically states that it will have worldwide effect.

For the purpose of this Clause:

FOREIGN JURISDICTION means any jurisdiction, other than the United States or any of its territories or possessions.

FOREIGN POLICY means the INSURER'S or any other member company of the Chubb Group of Companies' ("Chubb") standard directors' and officers' liability policy (including all mandatory endorsements, if any) approved by Chubb to be sold within a FOREIGN JURISDICTION that provides difference-in-conditions coverage for non-indemnifiable loss of a natural person insured substantially similar to the coverage afforded under this POLICY. If more than one such policy exists, then "FOREIGN POLICY" means the standard policy most recently registered in the local language of the FOREIGN JURISDICTION, or if no such policy has been registered, then the policy most recently registered in that FOREIGN JURISDICTION.

27. STATE AMENDATORY INCONSISTENCY

If there is an inconsistency between a state amendatory endorsement attached to this POLICY and any other term or condition of this POLICY, the INSURER shall apply, where permitted by law, those terms and conditions either of such state amendatory endorsement or the POLICY form which are more favorable to the INSURED's coverage.



## SIGNATURES

| Named Insured **SVB Financial Group** | | | Endorsement Number **1** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G23684639 009** | Policy Period **08/01/2022 to 08/01/2023** | Effective Date of Endorsement **08/01/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

THE ONLY COMPANY APPLICABLE TO THIS POLICY IS THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

JULIET SCHWEIDEL, Secretary                JOHN J. LUPICA, President

Authorized Representative

CC-1K11j (03/21)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| | |
|---|---|
| Named Insured<br>**SVB Financial Group** | Endorsement Number<br>**2** |

| Policy Symbol<br>**DOX** | Policy Number<br>**G23684639 009** | Policy Period<br>**08/01/2022  to  08/01/2023** | Effective Date of Endorsement<br>**08/01/2022** |
|---|---|---|---|

| |
|---|
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** |

## Amendatory Endorsement - California

IF THERE IS ANY CONFLICT BETWEEN THE POLICY, OTHER ENDORSEMENTS TO THE POLICY AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

It is agreed that:

1.  Clause 2 (Definitions), subpart (m), the definition of LOSS, is amended by adding the following:

    Notwithstanding anything to the contrary in this definition, punitive and exemplary damages awarded in California shall not be insurable.

2.  The following clause is added to the POLICY:

    - **NONRENEWAL**

    If the INSURER elects not to renew this POLICY, it will mail written notice of nonrenewal by certified mail to the company identified in Item I of the Declarations, and by first-class mail to the agent or broker of record, at the last mailing addresses known to the INSURER.  Notice of nonrenewal will state the reason(s) for nonrenewal and will be mailed at least 60 days, but not more than 120 days, before the end of the POLICY PERIOD.  Proof of mailing will be sufficient proof of notice.

    The INSURER is not required to send notice of nonrenewal if:

    1.  the transfer of, or renewal of, a POLICY without a change in its terms or conditions or the rate on which the premium is based between the INSURER and another insurer which are members of the same insurance group;

    2.  the POLICY has been extended for 90 days or less and the notice required in the first paragraph above has been given prior to the extension;

    3.  the COMPANY has obtained replacement or has agreed, in writing, within 60 days of the termination of the POLICY, to obtain that coverage;

    4.  the POLICY is for a period of no more than 60 days and the COMPANY is notified at the time of issuance that it may not be renewed;

    5.  the COMPANY requests a change in the terms or conditions or risks covered by the POLICY within 60 days prior to the end of the POLICY PERIOD; or

    6.  the INSURER has made a written offer to the COMPANY, within the time period specified in the first paragraph above, to renew the POLICY under changed terms or conditions or at a changed premium rate, when the increase exceeds 25%.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**CHUBB**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **SVB Financial Group** | | | **3** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DOX** | **G23684639 009** | **08/01/2022  to  08/01/2023** | **08/01/2022** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

## Prior or Pending Proceeding Exclusion Endorsement

It is agreed that the following Clause is added:

- PRIOR OR PENDING PROCEEDING EXCLUSION
  The INSURER shall not be liable to make any payment for LOSS in connection with that portion of any CLAIM based on or attributable to any prior or pending litigation or administrative or regulatory proceeding filed on or before 07/01/2014, or the same or substantially the same WRONGFUL ACT, fact, circumstance or situation underlying or alleged therein.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **SVB Financial Group** | | | **4** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DOX** | **G23684639 009** | **08/01/2022  to  08/01/2023** | **08/01/2022** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

## INDEPENDENT COVERAGE REVIEW

It is agreed that the following Clause is added:

- INDEPENDENT COVERAGE REVIEW

  In the event of a CLAIM under both this POLICY and either the primary policy of UNDERLYING INSURANCE issued by the INSURER, any subsidiary or affiliate of The Chubb Corporation, or any member company of the Ace Group of Companies, the INSUREDS may, within 30 days of receipt of an initial coverage letter from the INSURER evaluating coverage for such CLAIM, request that such evaluation of coverage for such CLAIM be reviewed by a neutral arbiter for the sole purpose of providing an independent written coverage position. The adjustment of such CLAIM by the INSURER shall be in accordance with the independent coverage position provided by the neutral arbiter, and the CLAIM review and independent coverage position provided by the neutral arbiter shall be paid for by the INSURER. The neutral arbiter and the process for rendering such evaluation of coverage shall be mutually agreed upon by the INSUREDS and the INSURER, and if no agreement on the choice of such neutral arbiter and/or process can be agreed upon, Clause 5 of the POLICY shall apply.  In the event of an agreed upon neutral arbiter and process for rendering an evaluation of coverage, those provisions of the POLICY applicable to the processing and administration of the CLAIM, including Clauses 6 and 10,  shall continue to apply.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**SVB Financial Group** | | | Endorsement Number<br>**5** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G23684639 009** | Policy Period<br>**08/01/2022  to  08/01/2023** | Effective Date of Endorsement<br>**08/01/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Limit of Liability – Reinstatements

It is agreed Clause 4, Limits Of Liability, sections (a) and (b), are deleted in their entirety and following is inserted:

(a)  In the event the Limit of Liability of this POLICY set forth in Item III.A of the Declarations ("Initial Limit Of Liability") is exhausted by one or more CLAIMS, this POLICY's Limit of Liability shall be reinstated in the amount set forth in Item III.B of the Declarations, FIRST REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by INSUREDS as defined in Clause 2(k)(1), Definitions.  However, with respect to any CLAIM (or any other CLAIM based upon, arising out of or related in any way to such CLAIM) for which there has already been payment of LOSS under the Initial Limit Of Liability, then the total limit of liability for all LOSS paid with respect to such CLAIM under such Initial Limit Of Liability and the FIRST REINSTATED LIMIT OF LIABILITY, combined, shall be the lesser of the Initial Limit of Liability or the FIRST REINSTATED LIMIT OF LIABILITY.  Such FIRST REINSTATED LIMIT OF LIABILITY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability, even if part of the LOSS for a CLAIM was paid under the Initial Limit Of Liability.

(b)  In the event the FIRST REINSTATED LIMIT OF LIABILITY of this POLICY is exhausted by one or more CLAIMS, this POLICY's Limit of Liability shall be reinstated a second time in the amount set forth in Item III.C of the Declarations, SECOND REINSTATED LIMIT OF LIABILITY, solely for LOSS incurred by duly elected or appointed directors (including shadow and de facto directors) of the company named in Item I of the Declarations.  However, with respect to any CLAIM (or any other CLAIM based upon, arising out of or related in any way to such CLAIM) for which there has already been payment of LOSS under the Initial Limit of Liability and/or the FIRST REINSTATED LIMIT OF LIABILITY, then the total limit of liability for all LOSS paid with respect to such CLAIM under such Initial Limit of Liability, FIRST REINSTATED LIMIT OF LIABILITY and the SECOND REINSTATED LIMIT OF LIABILITY, combined, shall be the lesser of the Initial Limit of Liability, FIRST REINSTATED LIMIT OF LIABILITY or the SECOND REINSTATED LIMIT OF LIABILITY.  Such SECOND REINSTATED LIMIT OF LIABILITY of this POLICY shall be excess of amounts payable under all other insurance policies that are specifically excess of this POLICY and all UNDERLYING INSURANCE providing a similar reinstated limit of liability, even if part of the LOSS for a CLAIM was paid under the Initial Limit Of Liability or the FIRST REINSTATED LIMIT OF LIABILITY.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**SVB Financial Group** | | | | Endorsement Number<br>**6** |
|---|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G23684639 009** | Policy Period<br>**08/01/2022  to  08/01/2023** | | Effective Date of Endorsement<br>**08/01/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | | |

### Assistance, Cooperation and Consent Clause Amended
### Prejudice of Insurer's Position or Rights – Reasonable Person

It is agreed that the last sentence of the first paragraph of Clause 6, Assistance, Cooperation And Consent, is deleted in its entirety and the following is inserted:

> In the event of a CLAIM, the INSUREDS shall do nothing that a reasonable person would believe may prejudice the INSURER'S position or its potential or actual rights of recovery with respect to such CLAIM.

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative



## CHANGES AND ASSIGNMENTS - AMENDED

| Named Insured<br>**SVB Financial Group** | | | Endorsement Number<br>**7** |
|---|---|---|---|
| Policy Symbol<br>**DOX** | Policy Number<br>**G23684639 009** | Policy Period<br>**08/01/2022 to 08/01/2023** | Effective Date of Endorsement<br>**08/01/2022** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is agreed that Clause 9, CHANGES AND ASSIGNMENTS, is amended to add the following:

If the terms or conditions of the Primary Policy set forth in Item VIII. of the Declarations ("PRIMARY POLICY") are changed in any manner or differ in any respect from the binder for such PRIMARY POLICY, the Company shall have 30 days after receipt of the PRIMARY POLICY containing such changes to provide written objection to such changes. If such written objection is provided, such changes shall not apply to this POLICY and no coverage related to such changes shall apply. If such written objection is not provided within the time frame captioned above, such changes shall apply.


All other terms, conditions and limitations of this Policy shall remain unchanged


_____
Authorized Representative



## MISCELLANEOUS ENHANCEMENTS

| Named Insured **SVB Financial Group** | | | Endorsement Number **8** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G23684639 009** | Policy Period **08/01/2022  to  08/01/2023** | Effective Date of Endorsement **08/01/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

It is agreed that:

1. Clause 2, DEFINITIONS, Section (b), CLAIM, paragraph 1, is deleted in its entirety and the following is inserted:

   1. any written demand, or any civil, criminal, arbitration, mediation, judicial, administrative, or regulatory proceeding, for monetary damages or non-monetary or injunctive relief, or any investigation, including without limitation a Wells Notice or target letter, against any INSURED for a WRONGFUL ACT, including any appeal therefrom;

2. Clause 2, DEFINITIONS, Section (d), DEFENSE COSTS, is amended to add the following after the last paragraph:

   In the event than an actual conflict of interest exists in the defense of the INSUREDS, such INSUREDS shall be entitled to separate counsel.

   In the event that an attorney representing an INSURED with respect to a CLAIM which could give rise to a criminal sanction ("COUNSEL") concludes that narrative descriptions within Counsel's invoices could prejudice the INSURED, then the INSURER will accept reasonably generalized descriptions of COUNSEL'S charges.

3. Clause 2, DEFINITIONS, Section (k), INSUREDS, paragraph (1)(i), is deleted in its entirety and the following is inserted:

   i. duly elected or appointed directors (including shadow and de facto directors), trustees, governors, officers, management committee members, MANAGERS, in-house general counsel, or comptrollers of the COMPANY, including those directors and officers acting in the capacity of a **Selling Insured Person** with respect to any securities of the Company to the extent that such directors and officers are indemnified by the COMPANY;

4. Clause 2, DEFINITIONS, Section (m) LOSS, paragraph 1. is amended to add the following at the end thereof:

   to the extent such damages are insurable under the internal laws of the applicable jurisdiction that most favors coverage for such damages, including but not limited to any jurisdiction that has a substantial relationship to the involved INSUREDS or the CLAIM giving rise to such damages.

5. Clause 2, DEFINITIONS, Section (m) LOSS, is amended by deleting paragraph (i).

6. Clause 2, DEFINITIONS, Section (m) LOSS, is amended by adding:

   6. taxes, including national insurance contributions, for which the INSUREDS are legally liable to pay by reason of :

   (A) taxes imposed upon a COMPANY which are unpaid; or

   (B) the INSURER'S payment of LOSS incurred by such INSURED.

7. Clause 2, DEFINITIONS, Section (w) WRONGFUL ACT, is amended to add the following at the end thereof:

   **Wrongful Act** also means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by a **Selling Insured Person** in his or her capacity as such with respect to the sale of any securities of the COMPANY within the meaning of Section

12(2) of the Securities Act of 1933, as amended.

8. The definition of **Selling Insured Person** is added as follows:

**Selling Insured Person** means an INSURED who is acting in the capacity of a selling shareholder with respect to the sale of any securities of the COMPANY, but only if and to the extent that such **Selling Insured Person** is indemnified by the COMPANY.

9. Clause 19, SUBROGATION, Section (c) is deleted in its entirety and the following it inserted:

(c)  In no event shall the INSURER exercise its right of subrogation against an INSURED.

10. Clause 22, BANKRUPTCY. The first paragraph is deleted and replaced with:

In the event a liquidation or reorganization proceeding is commenced by or against the COMPANY or any INSURED, pursuant to the United States Bankruptcy Code, as amended, or any similar state, local, or foreign law, such proceeding shall not relieve the INSURER of its obligations nor deprive the INSURER of its rights or defenses under this POLICY. In the event of such liquidation or reorganization proceeding the COMPANY, INSURER and the INSUREDS hereby: (i) waive and release any automatic stay or similar payment prohibition which may apply in such proceeding to this POLICY or its proceeds under such Bankruptcy Code or law; and (ii) agree not to oppose or object to any efforts by the INSURER, the COMPANY or any INSURED to obtain relief from any such stay or payment prohibition.

11. Clause 3, CONDUCT EXCLUSION, is amended as follows:

1.  Section (a), is deleted in its entirety and the following is inserted:

(a)  The INSURER shall not be liable to make any payment for LOSS in connection with that portion of any CLAIM based upon or attributable to the INSUREDS having:

(1)  gained any personal financial profit or financial remuneration to which they were not legally entitled, or

(2)  committed any deliberate fraud or deliberate criminal act,

if a final and non-appealable adjudication in the underlying proceeding (which shall not include a proceeding brought by or against the INSURER) adverse to such INSUREDS establishes that such INSUREDS gained any such personal financial profit or financial remuneration, or committed such deliberate fraud or deliberate criminal act. However, this exclusion shall not apply to DEFENSE COSTS, INDEPENDENT DIRECTORS, any employment-related CLAIM or, with respect to subparagraph 1 immediately above, any actual or alleged violation of Section 11, 12 or 15 of the Securities Act of 1933, as amended.

2.  Section (b) is deleted in its entirety.

12. Clause 6., ASSISTANCE COOPERATION AND CONSENT, paragraph 3, is amended by deleting the last sentence and inserting the following:

Provided however, the INSURED shall have no obligation to obtain the INSURER's consent prior to (i) entering into a plea agreement or deferred prosecution agreement with an ENFORCEMENT AUTHORITY resolving a pending criminal charge or potential criminal charge, or (ii) disclosing to an ENFORCEMENT AUTHORITY or to the COMPANY that a breach of law or regulation may have occurred.

13. Clause 13, INSUREDS' REPORTING DUTIES, Section (b) is deleted in its entirety and the following it inserted:

(b)  If, during the POLICY PERIOD or, if elected, the DISCOVERY PERIOD, but in no event later than 60 days after the termination of the POLICY PERIOD, or if elected the DISCOVERY PERIOD, the INSUREDS first become aware of any circumstances that may reasonably be expected to give rise to a CLAIM described in Clause 2(b)(1) or (2) above being made against the INSUREDS, as set forth in Clause 2(b)(4), and if the INSUREDS or the COMPANY give written notice to the INSURER of such circumstances and the reasons for anticipating such a CLAIM, with particulars as to dates and persons involved, the nature of the WRONGFUL ACT, and the manner in which the INSUREDS or the COMPANY first became aware of the circumstances; then such notice of circumstances shall be a CLAIM under this POLICY and any LOSS incurred by an INSURED solely in connection with his or her response to such circumstances shall be

covered, subject to the other terms, conditions and limitations of this POLICY. Any other CLAIM which arises out of such circumstances shall be deemed to have been first made at the time such written notice of circumstances was received by the INSURER. However, if the INSUREDS elect not to report such circumstances, then any subsequent CLAIM which arises out of the circumstances shall be subject to the reporting requirements set forth in 13(a) above, and coverage for such subsequent CLAIM will not be denied because of the INSUREDS' failure to report the circumstances pursuant to this Clause 13(b).

14. Clause 10, ADVANCEMENT, Section (b) is amended by adding the following clause after the first sentence:

Provided that if an INSURED in such CLAIM invokes his or her fifth amendment privilege, the INSURER shall only require a reasonable amount of detail with respect to such invoices consistent with protecting such privilege on behalf of the INSURED

All other terms and conditions of this POLICY remain unchanged.

_____
Authorized Representative

# TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **SVB Financial Group** | | | **9** |

| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
|---|---|---|---|
| **DOX** | **G23684639 009** | **08/01/2022  to  08/01/2023** | **08/01/2022** |

| Issued By (Name of Insurance Company) |
|---|
| **ACE American Insurance Company** |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or similar laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

_____
Authorized Agent

PF-46422  (07/15)                                                                                          Page 1 of 1



# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured **SVB Financial Group** | | | Endorsement Number **10** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G23684639 009** | Policy Period **08/01/2022 to 08/01/2023** | Effective Date of Endorsement **08/01/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals; 80% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

COVERAGE OF "ACTS OF TERRORISM" AS DEFINED BY THE REAUTHORIZATION ACT WILL BE PROVIDED FOR THE PERIOD FROM THE EFFECTIVE DATE OF YOUR NEW OR RENEWAL POLICY THROUGH THE EARLIER OF THE POLICY EXPIRATION DATE OR DECEMBER 31, 2027. EFFECTIVE DECEMBER 31, 2027 THE TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT EXPIRES.

Terrorism Risk Insurance Act premium: $0.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **SVB Financial Group** | | | Endorsement Number **11** |
|---|---|---|---|
| Policy Symbol **DOX** | Policy Number **G23684639 009** | Policy Period **08/01/2022 to 08/01/2023** | Effective Date of Endorsement **08/01/2022** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

## Cap On Losses From Certified Acts Of Terrorism

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any "loss" that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

_____
Authorized Representative

CHUBB®

# U.S. Treasury Department's Office
# Of Foreign Assets Control ("OFAC")
# Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.



**Chubb Producer Compensation
Practices & Policies**

Chubb believes that policyholders should have access to information about Chubb's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.chubbproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.