UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

SVB FINANCIAL GROUP,

Debtor.

NOT FOR PUBLICATION

Case No. 23-10367(mg)
Chapter 11

**MEMORANDUM OPINION AUTHORIZING DEBTOR TO REJECT
EXECUTORY CONTRACTS**

Pending before the Court is the motion (the "Motion," ECF Doc. # 140) of SVB Financial Group (the "Debtor"), as debtor and debtor-in-possession for entry of an order pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6006-1 of the Local Bankruptcy Rules of the Southern District of New York (the "Local Rules"), authorizing the Debtor to reject certain executory contracts (the "Contracts") and unexpired leases of nonresidential real property (each, a "Lease," and collectively, the "Leases") set forth on Exhibit 1 to the proposed order (the "Proposed Order"), which is attached to the Motion as Exhibit A.  The Debtor seeks to have the rejections effective as of the date provided for with respect to each such Contract or Lease listed on Exhibit 1 to the Proposed Order (such date for each Contract or Lease, the "Rejection Date") and to take such action as may be necessary to implement and effectuate the rejection of the Contracts and Leases.  The facts supporting this Motion are set forth in the *Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (ECF Doc. # 21) and *Supplemental Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (ECF Doc. # 43) (the "First Day Declarations").  The objection deadline was May 11, 2023.  No objections were filed.  For the reasons discussed below, the Motion is **GRANTED.**

## I. BACKGROUND

The Debtor and its advisors are currently in the process of collecting, reviewing, and analyzing the contracts and leases to which the Debtor is a party, and during this process the Debtor has considered, among other things, the ongoing value, and projected costs of maintaining such contract and leases, many of which do not relate to the operations of the Debtor or its non-debtor subsidiaries. (Motion ¶ 3.) Accordingly, the Debtor states that it has determined that there is no longer a need for the Contracts or Leases, as (i) the premises of the Leases are not utilized for the Debtor's continuing operations and (ii) the Debtor currently derives no benefit from the Contracts. (*Id.* ¶ 4.)

### A. The Leases

The Leases historically housed employees working solely for the Debtor's former subsidiary Silicon Valley Bank ("SVB"). (*Id.* ¶ 5.) After consulting with First Citizens Bancshares, Inc. ("FCB") (as successor in interest to the relevant businesses of SVB), the Debtor and FCB have determined that the Leases are no longer necessary for the operations of either FCB or the Debtor. Furthermore, FCB (acting through its advisors) has informed the Debtor, and provided the Debtor with a representation, that FCB has fully vacated such leased property (including by removing all materials that are property of FCB and/or the Federal Deposit Insurance Corporation as receiver of SVB, or contain any customer information or personal identifiable information), returned the premises to the conditions required for surrender under the lease and unambiguously surrendered such property to the landlord, including by returning all keys, keycards and other access materials. (*Id.*) Accordingly, based on the representation of FCB, the Leases are in condition to be surrendered to each landlord listed on Exhibit 1 attached to the Motion (each, a "Counterparty"), FCB has vacated the property and the Debtor is able to

confirm the full surrender of each of the premises to the applicable Counterparty as of the Rejection Date. (*Id.*)

By rejecting the Leases as of the Rejection Date, the Debtor avers it will save millions of dollars in total rent and associated obligations under the Leases. (*Id.* ¶ 6.) Moreover, in addition to the Debtor's contractual obligation to pay rent and other associated costs under the Leases, the Debtor could be obligated to pay certain real property taxes, utilities, insurance, and other related charges associated with the Leases. (*Id.*) Accordingly, the Debtor has determined in its business judgment that the costs of continuing the Leases eclipse any marginal benefits that could potentially be achieved from assignments or subleases of the Leases. (*Id.*) To reduce postpetition administrative costs and in the exercise of the Debtor's business judgment, the Debtor states that the rejection of the Leases as of the applicable Rejection Date is in the best interests of the Debtor and its estate. (*Id.*)

### B. Contracts

The Contracts set forth on Exhibit 1 include (i) the Master Services Agreement, dated December 16, 2021, between Modern Health Arizona P.L.L.C. ("Modern Health," a "Counterparty") and SVB Financial Group, and (ii) the Order Form for Master Services Agreement related thereto, dated as of January 1, 2023, between Modern Health and SVB Financial Group. (Motion ¶ 7.) Historically, the Contracts provided employees of the Debtor's affiliates with certain therapy and meditation benefits and related services from Modern Health. The Debtor states that no individuals remain eligible for the benefits under the Contracts, and thus the Contracts provide no benefit to the Debtor. (*Id.*) The Debtor avers that by rejecting the Contracts as of the Rejection Date, the Debtor will save hundreds of thousands of dollars in expenses under the Contracts over the coming months. (*Id.*) As a result, rejection of the

Contracts will prevent the Debtor from needlessly burdening the estate with no attendant benefits.  (*Id.*)

## II.    LEGAL STANDARD

### A. Rejection and Assumption of Leases

In determining whether an executory contract or unexpired lease should be assumed or rejected, courts review the totality of the circumstances and "apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume [or reject] it." *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir.1993) (citation omitted); *see Regen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.)*, 547 F.3d 484, 488 (2d Cir. 2008); *Frostbaum v. Ochs*, 277 B.R. 470, 475 (E.D.N.Y. 2002) (highlighting use of "business judgment" rule in determining whether executory contract should be assumed or rejected (citations omitted)).  This standard highlights the deference given to debtors' decisions with respect to whether to assume or reject a particular executory contract or unexpired lease.  *See COR Route 5 Co, LLC v. Penn Traffic Co.* (*In re Penn Traffic Co.*), 524 F.3d 373, 383 (2d Cir. 2008)(hereinafter COR II) (citation omitted); *COR Route 5 Co, COR Route 5 Co, LLC v. Penn Traffic Co.* (*In re Penn Traffic Co.*), 466 F.3d 75, 76–77 (2d Cir. 2006) (making note of "the deferential standard applied to debtors' business judgments as to whether to assume or reject executory contracts") (hereinafter COR I).

As the Second Circuit explained, a central purpose of section 365 is to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations.   COR II, 524 F.3d at 382; *see In re Globe Metallurgical*, 312 B.R. 34, 38 (Bankr. S.D.N.Y. 2004) (explaining that section 365 was created to provide a debtor with the opportunity to reject burdensome contracts); *see In re Child World, Inc.*, 142 B.R. 87, 88–89 (Bankr. S.D.N.Y. 1992)

4

(granting motion to reject where debtor established doing so was in the debtor's best business interest and a sound exercise of its best business judgment).

### B. Rejection *Nunc Pro Tunc* to the Rejection Date

Section 365(a) of the Bankruptcy Code does not directly address whether a bankruptcy court may grant an order providing for retroactive rejection of contracts or leases, and the Second Circuit has declined to decide whether approval of retroactive rejection is within the equitable authority of a bankruptcy court. *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (noting that section 365 "does not state that rejection cannot be applied retroactively, or that there are restrictions as to the manner in which the court can approve rejection."); *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 607 (2d Cir. 2007) (declining to answer whether a bankruptcy court has equitable authority to make its rejection order retroactive).

Nonetheless, courts in this district and elsewhere have held that a bankruptcy court may authorize retroactive rejection where the balance of equities favors granting such relief. *See BP Energy Co. v. Bethlehem Steel Corp.*, No. 02 CIV. 6419 (NRB), 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); In *re Jamesway Corp.*, 179 B.R. at 38 ("[A] court can, where appropriate, approve rejection retroactively."); *see also In re Thinking Machines Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (concluding that in the section 365 context, "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation.").

5

### III.   DISCUSSION AND RECCOMENDATION

**A. Rejection of the Leases and Contracts is Proper**

The Debtor has articulated a sound business justification for rejecting the Leases and Contracts. As to the Leases, neither the Debtor nor FCB has any use for the Leases and rejecting the Leases will save the Debtor millions of dollars in rent. (Motion ¶ 17–18.) The Debtor has also determined, in the exercise of its business judgment, that any benefit to be derived from further attempts to assign these leases or to identify a potential party to acquire the Leases would likely be substantially outweighed by the cost of maintaining the Leases and a hindrance to the Debtor's efforts in this Chapter 11 Case. (*Id.* ¶18.) As to the Contracts, since no employees are eligible for the benefits provided pursuant to the contract, it is sound exercise of the Debtor's business judgment to reject these contracts and save the Debtor the unnecessary expenses. (*See id.* ¶ 7.)

The Court defers to the Debtor's business judgment. The Debtor has demonstrated that the rejection will be beneficial to the Estate in reducing potential administrative costs and will not be burdensome to the Estate since the Debtor has already surrendered the Leases and because the Contracts provide no benefit to the Debtor's employees. *Orion Pictures Corp. v. Showtime Networks*, 4 F.3d at 1099 (citation omitted) (stating that "courts review the totality of the circumstances" and "apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate to assume [or reject] it.").

6

### B. Deeming the Contracts and Leases Rejected *Nunc Pro Tunc* to, and Effective as of, the Rejection Date is Appropriate

As an initial matter what the Debtor is asking for here is a modest retroactive Rejection. The Debtor asks that the Leases and Contracts be deemed rejected as of the date the Motion was filed (April 28, 2023) rather than the date of the hearing on the Motion (May 17, 2023). (*See* Motion, Exhibit 1, List of Contract and Leases). Courts in this district and elsewhere have held that a bankruptcy court may authorize retroactive rejection where the balance of equities favors granting such relief. *See BP Energy Co. v. Bethlehem Steel Corp.*, 2002 WL 31548723, at *3 ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.").

In considering the balance of equities, a bankruptcy court may consider the costs that a delayed rejection date would otherwise impose on a debtor and the timing of the debtor's surrender of leased premises. *See In re Jamesway Corp.*, 179 B.R. at 38 (considering the fact that the landlord's actions delayed the court's order); *see also In re Adelphia Bus. Solutions*, 482 F.3d at 608-09 ("The Bankruptcy Court also properly considered that [the debtor] had vacated the premises and thereby provided [the landlord] with the opportunity to lease the premises to another tenant."). Here, the equities favor the rejection of the Contracts and Leases *nunc pro tunc* to, and effective as of, the Rejection Date. Without a retroactive date of rejection, the Debtor will be potentially forced to incur unnecessary administrative costs for Contracts and the Leases that do not provide any benefits to the Debtor and its estate. (Motion ¶ 22.) On the other hand, no Contract or Lease Counterparty is harmed by rejection of the Contracts and Leases *nunc pro tunc* to the Rejection Date because they are each on notice as of the filing of the Motion, in the case of the Leases, the leased premises have been unambiguously surrendered, and each Counterparty can, as of that date, start preparing for rejection and mitigating damages. (*Id.*) The

Counterparties will also be entitled to file a claim for damages arising from the Debtor's rejection of the Contracts and Leases. (*Id.*)

### IV. CONCLUSION

For the reasons explained above, the Motion is **GRANTED**. A separate Order granting the relief will be entered.

Dated:   May 17, 2023
        New York, New York

                            *Martin Glenn*
                          MARTIN GLENN
                Chief United States Bankruptcy Judge