**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SVB FINANCIAL GROUP,<br><br>Debtor. | **FOR PUBLICATION**<br><br>Case No. 23-10367(MG)<br><br>Chapter 11 |

**MEMORANDUM OPINION AND ORDER DENYING FDIC-R MOTION TO**
**ESTABLISH TAX ESCROW ACCOUNT**

*A P P E A R A N C E S*

REED SMITH LLP
*Counsel for Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank*
599 Lexington Avenue
New York, NY 10022
By:  Kurt F. Gwynne, Esq.
     Casey D. Laffey, Esq.
     Derek J. Baker, Esq.
     Keith M. Aurzada, Esq.

SULLIVAN & CROMWELL LLP
*Counsel for Debtor and Debtor-in-Possession*
125 Broad Street
New York, NY 10004-2498
By:  James L. Bromley, Esq.
     Andrew G. Dietderich, Esq.
     Christian P. Jensen, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Counsel to the Official Committee of Unsecured Creditors*
One Bryant Park
New York, New York 10036
By:  Ira S. Dizengoff, Esq.
     David M. Zensky, Esq.
     Joseph L. Sorkin, Esq.
     Brad M. Kahn, Esq.
     James R. Savin, Esq.

DAVIS POLK & WARDWELL LLP
*Counsel to the Ad Hoc Group of Senior Noteholders*
450 Lexington Avenue
New York, New York 10017
By:    Marshall S. Huebner, Esq.
        Elliot Moskowitz, Esq.
        Angela M. Libby, Esq.
        David Schiff, Esq.
        Aryeh Ethan Falk, Esq.

WHITE & CASE LLP
*Counsel to the Ad Hoc Cross-Holder Group*
1221 Avenue of the Americas
New York, NY 10020
By:    Thomas E Lauria, Esq.
        Brian Pfeiffer, Esq.
        Glenn Kurtz, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the motion of the Federal Deposit Insurance Corporation as Receiver ("FDIC-R") seeking entry of an order to establish an escrow account to hold tax refunds and other monies payable to the consolidated tax group. ("Motion," ECF Doc. # 167.) The consolidated tax group includes the debtor of the above-captioned case ("Debtor" or "SVB"), Silicon Valley Bank (the "Bank"), and other affiliates. The FDIC-R contends that, pursuant to a tax sharing agreement (described below) and by operation of the receivership, these funds substantially or entirely belong to the FDIC-R.

      Four timely objections were filed by the (i) Debtor ("Debtor's Objection," ECF Doc. # 202); (ii) Ad Hoc Cross-Holder Group ("Cross-Holder Group") (the "Cross-Holder Objection, ECF Doc. # 204); (iii) Ad Hoc Group of Senior Noteholders ("Senior Noteholders") (the "Senior Noteholders' Objection," ECF Doc. # 206); and (iv) Official Committee of Unsecured Creditors ("Committee") (the "Committee Objection," ECF Doc. # 205). The declaration of James L. Bromley, counsel to the Debtor, was filed in support of the Debtor's Objection ("Bromley

2

Decl.," ECF Doc. # 203.) The FDIC-R filed a reply ("Reply," ECF Doc. # 231), and a Declaration of Derek J. Baker ("Baker Decl.," ECF Doc. # 232), disputing certain characterizations of the FDIC-R and its behavior made by the Debtor.

For the reasons explained below, the Objections are **SUSTAINED** and the Motion is **DENIED**.

## I. BACKGROUND

**A. The Motion**

The Motion explains that the Debtor historically filed consolidated tax returns on its own behalf and on behalf of the Bank and the Bank's subsidiaries. (Motion ¶ 1.) On January 1, 2016, the Debtor and the Bank entered into the Amended Tax Allocation Agreement (the "Agreement," annexed to the Motion, ECF Doc. # 167-1). The Agreement, among other things, allocates the tax liabilities and refunds between the Debtor and the Bank, and outlines the process by which the Debtor would distribute refunded monies to parties to the Agreement including the Bank. Any tax refund received by the Debtor generated from the tax attributes of the Bank is the property of and is owned by the Bank, and the Debtor must hold such funds in trust for the benefit of the Bank. (*See* Agreement § I.6.)

According to the Motion, tax refunds have been issued to the Debtor as the agent for the consolidated tax group. (Motion ¶ 6.) The refunds include (i) a tax refund check from the United States Internal Revenue Service ("IRS") in the amount of $336.01, (ii) a tax refund check from the IRS in the amount of $4,569,339.98, (iii) a tax refund check from the state of Illinois in the amount of $4,824,228.06, (iv) a tax refund check from the state of Rhode Island in the amount of $1,350,312.10, and (v) a tax refund check from the city of Portland in the amount of $8,000.00 (collectively, the "Current Refunds"). (*Id.*)

3

At the hearing on the matter, the FDIC-R stated that it possesses three of the five checks and First Citizens Bank—the purchaser of the Silicon Valley Bridge Bank—possesses the remaining two checks. The FDIC-R also believes that tax returns relating to pre-petition activities of the Debtor and Bank will result in additional tax refunds from the IRS and/or state and local taxing authorities (the "Future Refunds" and, together with the Current Refunds, the "Tax Refunds"). (*Id.* ¶ 7.)

The FDIC-R believes that some or all the Tax Refunds are generated from tax attributes of the Bank and, therefore, belong to the Bank under the express terms of the Agreement. (*Id.* ¶ 8.) Then, by operation of law as receiver for the Bank, the FDIC-R contends that the Tax Refunds are property of the FDIC-R. The FDIC-R states that it advised the Debtor of its position and attempted to cooperatively establish an escrow account to maintain the Tax Refunds until the Debtor and FDIC-R could agree on the appropriate allocation of the funds. (*Id.* ¶ 9.) After several attempts to communicate with the Debtor about this matter, the FDIC-R represents that it received no response.

The FDIC-R requests authority to establish an escrow account to deposit the Tax Refunds. The FDIC-R anticipates negotiations with SVB regarding the distribution of such funds and, if necessary, returning to the Court to resolve disagreements over the allocation of the funds. (*Id.* ¶¶ 13–14.) Thus, at this juncture the FDIC-R is not asking the Court to resolve ownership of the Tax Refunds.

B. **The Debtor's Objection**

The Debtor represents that the Tax Refunds comprise the following five checks totaling $10,752,216.15:

| Taxing Authority | Payee Entity | Amount |
|---|---|---|
| 2021 Illinois | Silicon Valley Bancshares & Subsidiaries | $4,824,228.06 |
| 2021 Rhode Island | SVB Financial Group | $1,350,312.10 |
| 2021 Portland Income Tax | SVB Financial Group & Subsidiaries | $8,000.00 |
| 2021 IRS Form 1042 | Silicon Valley Bank | $336.01 |
| 2018 IRS | SVB Financial Group | $4,569,339.98 |

(Debtor's Objection ¶ 24.)

The Debtor disputes the FDIC-R's representation that the Debtor refused to respond to the FDIC-R's attempts to cooperatively communicate about the escrow account. The Debtor states that upon first learning of the Tax Refunds, the Debtor's counsel emailed the FDIC-R's counsel about this most recent instance of obstructionism, explaining that FDIC-R's instruction to First Citizens Bank constituted a violation of the automatic stay imposed by section 362 of the Bankruptcy Code and requesting that FDIC-R reverse the instruction immediately. (Motion ¶ 22; *see also* Bromley Decl. ¶ 7.) Two days later, on April 21, 2023, the FDIC-R's counsel responded and refused to comply with the Debtor's demand. (Bromley Decl. ¶ 8.)

The Debtor asserts that the FDIC-R is wrongfully withholding and/or instructing First Citizens Bank to wrongfully withhold the tax refund checks in violation of the automatic stay and other rights of a debtor imposed by the Bankruptcy Code, and criminal law regarding mail. (Debtor's Objection ¶¶ 3–4.) The Debtor includes a photocopy of one of the checks at issue, which is clearly made out to "SVB Financial Group." (*Id.* ¶ 4.) SVB states that check, like

5

others, was addressed to the Debtor and should have been promptly forwarded to the Debtor unopened. (*Id.* ¶ 21.) Instead, the Debtor learned that First Citizens Bank informed FDIC-R about the contents of the Debtor's mail and the existence of the check, and that FDIC-R instructed First Citizens Bank to withhold this mail (including the check itself) from the Debtor. (*Id.*) The Debtor asserts that the FDIC-R improperly, and illegally, opened or authorized First Citizens Bank to open and take possession of the checks. (*Id.* ¶ 4.)

First, the Debtor argues that the Tax Refunds constitute property of the Debtor's estate under section 541(a) of the Bankruptcy Code. (*Id.* ¶ 9.) Second, with respect to the Agreement, the Debtor notes that it has neither assumed nor rejected the contract in this proceeding. But *if* the Debtor assumes the Agreement, the Debtor contends that the procedures for allocating and distributing tax refunds under the agreement require the monies to first go to the Debtor and be possessed by the Debtor. (*Id.* ¶ 10.) Third, the Debtor contends that the FDIC-R's possession of the Tax Refunds and interference with First Citizens Bank constitutes a violation of the automatic stay imposed by the Bankruptcy Code by exercising impermissible control over property of the Debtor's estate. (*Id.* ¶ 36.) Finally, the Debtor argues that the Motion is procedurally improper. To the extent the FIDC-R seeks injunctive relief directing the disposition of tax refunds to an escrow account, the Debtor submits this relief is available only through an adversary proceeding. (*Id.* ¶ 12.)

### C. Ad Hoc Group and Committee Objections

The Cross-Holder Objection substantially joins in the Debtor's Objection. The Cross-Holder Group notes that the automatic stay applies to all entities including the FDIC. (Cross-Holder Objection ¶ 9.) Referencing amendments that Congress made to certain provisions of the

Bankruptcy Code to comport with the FDIC's statutory regime,[1] the Cross-Holder Group observes that the application of the automatic stay remained untouched. (*Id.* ¶ 9.)

The Senior Noteholders Objection likewise echoes the Debtor's Objection, and highlights the lack of legal support for the relief the FDIC-R seeks and the procedural defects the Motion suffers. (Senior Noteholders' Objection at 4.) The Committee Objection similarly emphasizes that the FDIC-R willfully violated the automatic stay, intercepted mail clearly addressed to the Debtor, and ignored the procedural requirement to request this kind of injunctive relief through an adversary proceeding. (Committee Objection ¶ 1.)

### D. The FDIC-R Reply

The FDIC-R's Reply reiterates its argument that it has an ownership interest in the Tax Refunds to the extent that they are based on the Bank's tax attributes. (Reply ¶¶ 10–13.) Additionally, the Reply asserts that the Agreement does not require the FDIC-R to deliver the Tax Refunds to the Debtor, and therefore, it argues, any assertions that the FDIC-R violated the automatic stay are meritless. (*Id.* ¶¶ 16–19.)

## II. LEGAL STANDARD

The Court has broad authority under section 105 of the Bankruptcy Code to "issue any order, process, or judgement that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). The Debtor's estate includes "all legal or equitable interests" in property. 11 U.S.C. § 541(a)(1). Section 541(d) of the Bankruptcy Code makes clear that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the

---

[1] In 1989, Congress amended the Federal Deposit Insurance Act through the Financial Institutions Reform, Recovery, and Enforcement Act and, in 1990, Congress amended the Bankruptcy Code to recognize a debtor's commitment to maintain the capital of an insured depository institution and delineate the priority of any resulting FDIC claim. *See* 11 U.S.C. §§ 365(o), 507(a)(9).

debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

With respect to leases or executory contracts, a contract "control[s] the members' rights" under it until such time as the Debtor assumes or rejects the agreement under section 365 of the Bankruptcy Code. *In re First Cent. Fin. Corp.*, 269 B.R. 481, 490 (Bankr. E.D.N.Y. 2001), *subsequently aff'd*, 377 F.3d 209 (2d Cir. 2004).

### III. DISCUSSION

Pursuant to the Banks and Banking provisions of the United States Code, the FDIC-R, as receiver, succeeds to "all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A)(ii). Here, the insured depository institution is the Silicon Valley Bank, and the FDIC-R as receiver succeeded to the rights of the Bank under the Agreement. Under the Agreement, "any tax refund attributable to income earned, taxes paid, and losses incurred by Bank is the property of and owned by Bank, and shall be held in trust by [SVB] for the benefit of Bank." (Agreement § I.6.) The Agreement clearly states that "[n]othing in this agreement is intended to be or should be construed to provide [SVB] with an ownership interest in a tax refund that is attributable to income earned, taxes paid, and losses incurred by Bank." (*Id.*)

The FDIC-R points to this language in support of its argument that the Tax Refunds, to the extent of attribution to income earned, taxes paid, and losses incurred by the Bank, belong to the FDIC-R. (*See, e.g.,* Motion ¶ 3; Reply ¶ 8 (citing the Agreement and stating that "[p]ursuant to the [Agreement], to the extent the Current Refunds are attributable to SVB's tax attributes, the Current Refunds are 'property of' and 'owned' by the FDIC-R").) However, the FDIC-R ignores the provision of the Agreement that provides the process by which tax refund monies are

8

distributed to the Bank. The Agreement explains that "[i]f Bank would be entitled to a refund of Federal corporate income tax if filed a separate Federal income tax return, [SVB] shall pay to Bank that sum which shall result from the calculation required by paragraph II." (Agreement § III.3.)

If the Bank (and now, the FDIC-R) is entitled to a refund, *the Debtor* must calculate the amount owed under the Agreement and pay it to the Bank. The FDIC-R offers no explanation why this Court should recognize the FDIC-R's purported ownership interest in the Tax Refunds while ignoring the process by which the FDIC-R is to receive its share of any refund. The following section of the Agreement makes clear that no other method of payment is permitted other than that provided in the previous two sections. (*Id.* § III.4.) The FDIC-R's request that the Tax Refunds be placed in an escrow account overrides the terms of the Agreement—the same Agreement the FDIC-R relies on to assert its ownership rights.

Next, the FDIC-R cites section 541 of the Bankruptcy Code in support of its argument that it has an ownership interest in the Tax Refunds. (*See, e.g.,* Motion ¶¶ 15–16; Reply ¶ 28 (citing section 541 and asserting that "the Bankruptcy Code make clear that the FDIC-R has the equitable interest in all such refunds that were generated from SVB's tax attributes").) Courts have held that the fact that a debtor lacks an equitable interest in some portion of property does not undermine the debtor's right to have that property turned over as part of the debtor's estate. *See In re Operation Open City, Inc.*, 148 B.R. 184, 192 (Bankr. S.D.N.Y. 1992), *aff'd*, 170 B.R. 818 (S.D.N.Y. 1994) ("[R]egardless of whether the Debtor is entitled to all legal and equitable rights in the Disputed Funds or merely holds the Funds in trust for the benefit of unpaid subcontractors, the Disputed Funds are property of the Debtor's estate."); *Yaquinto* v. *Greer*, 81 B.R. 870, 874–78 (N.D. Tex. 1988) (finding that check payable to the debtor was included in the

9

bankruptcy estate and resulting funds were subject to turnover even if the identity of the party ultimately entitled to the funds was in dispute). Although both parties spend significant time discussing ownership and right to possession, whether the FDIC-R is the proper owner of a portion of, or the entirety of, the Tax Refund is not actually the disputed issue here—rather, it is the process by which the FDIC-R is to receive those funds that the Debtor challenges.

Finally, to the extent the mail and associated checks belong to the Debtor's estate, the FDIC-R interfered with property of the estate by instructing First Citizen's Bank not to forward the Debtor's mail. *Small Bus. Admin. v. Rinehart*, 887 F.2d 165, 168 (8th Cir. 1989) ("[A] governmental agency violates the automatic stay when it 'holds' or 'freezes' payments the debtor is otherwise entitled to receive."). The FDIC-R, in its Reply, argues that nothing in the Agreement requires the Bank or any other party to deliver possession of the Tax Refunds. (Reply ¶ 14.) Instead, the FDIC-R contends that the provision giving SVB the authority to hold tax refunds for the benefit of the Bank applies only if SVB receives a tax refund. (*Id.*) In other words, if SVB does not receive the refund, it is not entitled to possession of the refund. This argument is incredulous because at least four of the five checks were purportedly payable to SVB Financial Group.[2] (Debtor's Objection ¶ 24.) The FDIC-R cannot justify allegedly opening mail clearly addressed to the Debtor (or instructing First Citizens Bank to do so), and then withholding checks that were payable to the Debtor and should have been received by the Debtor under the Agreement.

---

[2] The Debtor and the FDIC-R apparently disagree about the payee of certain checks. The Debtor states that the check issued from the 2021 Portland Income Tax was made payable to "SVB Financial Group & Subsidiaries." (Debtor's Objection ¶ 23.) The FDIC-R states that this check was made payable to "SVB Financial Group Subs." (Reply ¶ 7.) If the parties can't resolve this disagreement, the Court will do so.

The FDIC-R is entitled to file a claim against the Debtor for any portion of the refunds it is entitled to receive under the Agreement. But neither the Agreement nor the Bankruptcy Code entitle the FDIC-R to withhold checks payable to the Debtor and its subsidiaries on the theory that the monies ultimately belong to the FDIC-R, nor do they weigh in favor of establishing an escrow account when it is not clear yet whether the Debtor disputes the amount owed to the FDIC-R in the first instance.

The FDIC-R and First Citizens Bank are ORDERED to turn over tax refunds checks made payable to SVB Financial Group[3] by 12:00 p.m. ET on Friday, May 19, 2023. The Debtor shall proceed with the allocation and distribution of Tax Refunds pursuant to the process provided in the Agreement.

The Debtor and the FDIC-R shall also, within a reasonable period of time following entry of this order, create a protocol specifically addressing management of tax refund checks received by the parties in the future. This protocol shall include a requirement that the Debtor, the FDIC-R, and First Citizens Bank share photocopies with the other parties of any tax refund check that is received.

---

[3] One check in the amount of $4,824,228.06 is payable to "Silicon Valley Bancshares & Subsidiaries." The Debtor's counsel represented at the hearing that the former name of the Debtor was Silicon Valley Bancshares. Assuming the representation is correct, that check should be turned over to the Debtor as well.

### IV. CONCLUSION

For the reasons explained above, the Objections are **SUSTAINED** and the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated:   May 17, 2023
        New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge