**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

SVB FINANCIAL GROUP,

Debtor.

FOR PUBLICATION

Case No. 23-10367(MG)

Chapter 11

## MEMORANDUM OPINION GRANTING MOTION TO ALLOW ADVANCEMENT AND PAYMENT OF INSUREDS' DEFENSE COSTS UNDER D&O POLICIES

*A P P E A R A N C E S*

WILMER CUTLER PICKERING HALE AND DORR LLP
*Counsel for Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John Robinson, and Garen K. Staglin*
7 World Trade Center
250 Greenwich Street
New York, NY 10007
By:    Philip D. Anker, Esq.

ORRICK, HERRINGTON & SUTCLIFFE LLP
*Counsel for Gregory W. Becker*
51 West 52nd Street
New York, NY 10019
By:    Evan Hollander, Esq.
       Michael Trentin, Esq.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Counsel for Daniel J. Beck*
1177 Avenue of the Americas
New York, NY 10036
By:    Alexander Woolverton, Esq.
       Andrew J. Citron, Esq.

SIDLEY AUSTIN LLP
*Counsel for Michelle Draper*
787 Seventh Avenue
New York, NY 10019
By:    Alex R. Rovira, Esq.

AKIN GUMP STRAUSS HAUER & FELD LLP
*Proposed Counsel to the Official Committee of Unsecured Creditors*
One Bryant Park
New York, NY 10036
By:    Ira S. Dizengoff, Esq.
        David M. Zensky, Esq.
        Joseph L. Sorkin, Esq.
        Brad M. Kahn, Esq.
        James R. Savin, Esq.

WHITE & CASE LLP
*Counsel to the Ad Hoc Cross-Holder Group*
1221 Avenue of the Americas
New York, NY 10020
By:    Thomas E Lauria, Esq.
        Brian Pfeiffer, Esq.
        Glenn Kurtz, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. # 147) of sixteen of the

Debtor's current and former directors, Gregory W. Becker, Daniel J. Beck, Eric A. Benhamou,

Elizabeth Burr, Richard D. Daniels, Alison Davis, Roger Dunbar, Joel P. Friedman, Thomas

King, Jeffrey N. Maggioncalda, Beverly Kay Matthews, Mary J. Miller, Kate D. Mitchell, John

Robinson, Garen K. Staglin, and Michelle Draper (together, the "Movants"), for entry of an

order, substantially in the form attached to the Motion as Exhibit A (the "Proposed Order")

modifying the automatic stay, to the extent it applies, and permitting the D&O Insurers (defined

below) to make payments, including the advancement of defense costs, in accordance with

certain directors' and officers' liability insurance policies to, or on behalf of, the Movants in

connection with the Covered Claims (defined below), as well as other insureds (the "Additional

Insureds") who are covered under the directors' and officers' liability policies and who join this

2

Motion by separate joinder.  Attached to the Motion are a proposed order and copies of the
relevant insurance policies.

The Objection deadline was May 11, 2023.  The Official Committee of Unsecured
Creditors (the "Committee") file an objection (the "Objection," ECF Doc. # 201.)  The Ad Hoc
Cross-Holder Group filed a joinder (the "Cross-Holder Joinder," ECF Doc. # 221) to the
Objection.  To date, seventeen additional parties— Michael Vande Krol, John S. Clendening,
John Peters, Philip Cox, Michael Descheneaux, Karen Hon, Laura Cushing, Kim Olsen, Marc
Cadieux, Zain Hunter, Michael Zuckert, Laura Izurieta, Ken Choi , Ben Jones, Michael Kruse,
LeAnn Rogers and Brijesh Rathi (the "Additional Directors and Officers" and, together with the
Initial Directors and Officers, the "Directors and Officers")—each filed a joinder to the Motion
(ECF Doc. ## 157, 160, 162, 164, 169, 173, 175, 177, 186, 188, 197, 209, 227, 228 & 244).  The
Movants also filed a reply (the "Reply," ECF Doc. #  230).  The Court held a hearing on the
Motion on May 17, 2023.  The Court entered an order **GRANTING** the Motion at ECF Doc. #
247 (the "D&O Order") and **OVERRULING** the Committee's Objection to the extent set forth
in the D&O Order.  The Court writes separately here to explain the reasoning for its decision.

## I.    BACKGROUND

### A.  D& O Insurance Policies

In the ordinary course of its business, the Debtor obtained directors and officers liability
insurance policies to, *inter alia*, protect its directors and officers.  Specifically, the Debtor
maintains a primary Directors & Officers and Entity Securities Liability Insurance policy.  This
primary policy was issued by Federal Insurance Company, as primary insurer ("Primary
Insurer"), with an aggregate coverage limit of $10 million (the "Primary Policy").  A copy of the
Primary Policy is attached to the Motion as Exhibit B.  (Motion ¶ 9.)  In addition to the $10

3

million of coverage under the Primary Policy, the Debtor obtained excess layers of D&O

insurance in an aggregate amount of $200 million (including $50 million of Side A DIC

coverage)[1] from certain insurers (collectively, with the Primary Insurer, the "D&O Insurers") for

total insurance coverage of $210 million, pursuant to the following policies (collectively, the

"D&O Policies" and each a "Policy"):

|  | **Coverage** | **Insurer(s)** | **Policy Number** |
|---|---|---|---|
| 1. | D&O – Primary ($10 million) | Federal Insurance Company/Chubb | 8248-0807 |
| 2. | D&O – $10 million excess $10 million | National Union Fire Insurance Company of Pittsburgh, PA | 01-436-43-28 |
| 3. | D&O – $10 million excess $20 million | Continental Casualty Company/CAN | 596711499 |
| 4. | D&O – $10 million excess $30 million | Freedom Specialty Insurance Company | XMF2202386 |
| 5. | D&O – $10 million excess $40 million | Argonaut Insurance Company | MLX4244146-3 |
| 6. | D&O – $10 million excess $50 million | Travelers Casualty and Surety Company of America | 106566983 |
| 7. | D&O – $10 million excess $60 million | Endurance Risk Solutions Assurance Company | FIX10011569105 |

---

[1]     The Side A DIC Policies do not provide any insurance coverage to the Debtor itself. The Side A DIC
Policies provide protection exclusively for the directors and officers, including in situations where the Debtor fails to
comply with its retention obligations under the Primary Policy and where any of the insurers lower in the tower
become insolvent or are unwilling or unable to comply with their obligations to pay a covered claim. A copy of the
policy that provides the first layer of Side A DIC coverage (the "Lead Side A DIC Policy") is attached to the Motion
as Exhibit C.

| 8. | D&O – $10 million excess $70 | Starr Indemnity & Liability Company | 1000059476221 |
|---|---|---|---|
| 9. | D&O – $10 million excess $80 million | Markel American Insurance Company | MKLM6EL0008527 |
| 10. | D&O – $10 million excess $90 million | Arch Insurance Company | DOX9300529-07 |
| 11. | D&O – $10 million excess $100 million | Twin City Fire Insurance Company | 57 DA 0331021-22 |
| 12. | D&O – $10 million excess $110 million | Berkley Insurance Company | BPRO8082373 |
| 13. | D&O – $10 million excess $120 million | Zurich American Insurance Company | DOC 3855423-01 |
| 14. | D&O – $10 million excess $130 million | Everest National Insurance Company | FL5EX00724-221 |
| 15. | D&O – $10 million excess $140 million | Old Republic Insurance Company | ORPRO 12 102476 |
| 16. | D&O – $10 million excess $150 million | Allianz Insurance Company | USF01120122 |
| 17. | Lead Side A DIC – $10 million excess $160 million | ACE American Insurance Company/Chubb | G23684639 009 |
| 18. | Side A DIC – $10 million excess $170 million | National Union Fire Insurance Company of Pittsburgh, Pa. | 01-450-84-30 |
| 19. | Side A DIC – $10 million excess $180 million | Continental Casualty Company | 596479695 |
| 20. | Side A DIC – $10 million excess $190 million | Freedom Specialty Insurance Company | XMF2200515 |
| 21. | Side A DIC – $10 million excess $200 million | Axis Insurance Company | P-001-000167503-03 |

(Motion ¶ 10.)

The D&O Policies are "claims-made" policies covering the period from August 1, 2022,

through August 1, 2023 (the "Covered Period"). (*Id.* ¶ 11.) The D&O Policies, generally, cover

losses that directors and officers incur on account of claims during the policy period and provide

for advancement of defense costs in connection with such claims and with governmental

investigations. (*See generally* Motion, Ex. B, Primary Policy; *see also id.*, Ex. C, Lead Side A

DIC Policy.) The D&O Policies thus ensure that directors and officers will be protected from the

financial burden associated with their involvement in, and defense against, covered legal

proceedings. (*Id.* (citing Ex. B, Primary Policy § VII (as amended by Endorsement/Rider No.

31).)

Certain of these D&O Policies—those listed in the first sixteen (16) rows of the chart

above—provide Side A, Side B, and Side C coverage (the "ABC Policies"). (*Id.* ¶ 12.) Relevant

here, the D&O Policies' Side A coverage provides protection directly to directors and officers

where the Debtor has not indemnified, or will not indemnify, the directors and/or officers. (*Id.*)

Side B coverage generally allows for the Debtor to receive reimbursement when it indemnifies a

director or officer for costs associated with covered claims or governmental investigations. (*Id.*)

Side C coverage generally applies to any loss suffered by the Debtor from securities claims made

against it in its own right. (*Id.*) Even though the ABC Policies provide Side A, Side B, and Side

C coverage, the ABC Policies include "Priority of Payments" provisions. (*See* Motion, Ex. B,

Primary Policy § XI.) The "Priority of Payments" provision in the Primary Policy provides as

follows:

> A) It is understood and agreed that any coverage provided under this Policy
> is principally intended to protect and benefit the Insured Persons.
> Accordingly, in the event that: (1) Loss for which an Insured Person has
> not been paid or indemnified; and (2) any other Loss, are concurrently
> due under this Policy, then the Loss described in (1) above shall be paid
> first.

> B) Except as otherwise provided in Subsection (A) above, the Company may pay covered Loss as it becomes due under this Policy without regard to the potential for other future payment obligations under this Policy.

(*See id.*)

Moreover, in addition to Side A coverage, the D&O Policies identified in rows seventeen (17) through twenty-one (21) in the above chart (the "Side A DIC Policies"), provide coverage solely to directors and officers, including in instances where the Debtor and the insurers lower in the tower fail to indemnify such directors and officers. (*Id.* ¶ 13.) In that case, the Side A DIC Policies, like the ABC Policies, (a) provide coverage, *inter alia*, for defense costs and other losses incurred by directors and officers as a result of claims, enforcement actions, and investigations, and (b) require defense costs to be advanced on a current basis. (*See* Motion, Ex. C, Lead Side A DIC Policy §§ 1, 10; *see also id*.,. Ex. B, Primary Policy § 1; *Id.*, Ex. B, Primary Policy § VII (as amended by Endorsement/Rider No. 31).)

## B. The Movants and Covered Claims

The Movants are or were directors and/or officers of the Debtor. Mr. Becker was the Chief Executive Officer, and Mr. Beck was the Chief Financial Officer, of the Debtor. (*Id.*¶ 14.) Mr. Benhamou, Ms. Burr, Mr. Daniels, Ms. Davis, Mr. Friedman, Mr. King, Mr. Maggioncalda, Ms. Matthews, Ms. Miller, Ms. Mitchell, and Mr. Staglin were, as of the Petition Date and today, outside directors of the Debtor. (*Id.*) Mr. Dunbar and Mr. Robinson are former outside directors of the Debtor. Ms. Draper was the Chief Marketing and Strategy Officer of the Debtor. (*Id.*)

To date, a total of seven putative securities class actions, five in the United States District Court for the Northern District of California and two in the Superior Court of the State of

7

California for the County of Santa Clara,[2] have been filed against certain of the Movants and, in

certain of the actions, the Debtor: *Vanipenta v. SVB Financial* Group, et al., Case No. 3:23-CV-

01097-JD (N.D. Cal. Filed March 13, 2023) ("Vanipenta"); *Snook v. SVB Financial Group, et*

*al.*, Case No. 3:23-CV-01173-VC (N.D. Cal. Filed March 15, 2023) ("Snook"); *Siddiqui v.*

*Becker and Beck*, Case No. 4:23-CV-01228-HSG (N.D. Cal. Filed March 17, 2023) ("Siddiqui");

*City of Hialeah Employees' Retirement System et al. v. Becker, et al.*, Case No. 3:23-CV-01697-

AMO (N.D. Cal. Filed April 7, 2023) ("City of Hialeah"); *International Union of Operating*

*Engineers Local 132 Pension Fund v. SVB Financial Group, et al.*, Case No. 3:23-CV-01962-

TLT (N.D. Cal. Filed April 24, 2023) ("International Union"); *Stevenson and Howard v. Becker,*

*Beck, et al.,* Case No. 23-CV-413949 (Cal. Super. Ct. Filed April 10, 2023) ("Stevenson"), and

*Rossi v. Becker, Beck, et al.*, Case No. 23-CV-414120 (Cal. Super. Ct. Filed April 14, 2023)

("Rossi") (together, the "Securities Class Actions").  The Vanipenta and Snook actions were

filed prior to the Petition Date.  The Siddiqui action was filed on the Petition Date.  (*Id.*)  The

remaining Securities Class Actions were filed after the Petition Date.  (*Id.*)  Messrs. Becker and

Beck are defendants in all the Securities Class Actions.  Certain of the other Movants are

defendants in the City of Hialeah, Stevenson, and Rossi actions.  (*Id.*)  The Debtor remains a

defendant in the Vanipenta and International Union actions.  (*Id.*)

The plaintiffs in the Securities Class Actions allege violations of the Securities Act of

1933 (the "Securities Act") and the Securities and Exchange Act of 1934 (the "Exchange Act")

based on alleged materially false or misleading statements and/or omissions of material facts by

the Debtor and certain of Movants in connection with the Debtor's securities filings.  (*Id.* ¶ 16.)

---

[2]      At the hearing counsel for the Movants informed the Court that the two state court cases had been removed
to federal court.

The Movants anticipate that additional similar lawsuits or claims may be asserted against them in the future. (*Id.*)

In addition, certain non-public regulatory investigations concerning the events leading to Silicon Valley Bank's receivership and the role of the Debtor's executives and directors, including the Movants and Additional Insureds, have been commenced (the "Regulatory Investigations," and, together with the Securities Class Actions and any other claims, investigations, and causes of action, whether currently pending or brought in the future, to which Movants and Additional Insureds are or may be entitled to coverage under the D&O Policies, for defense costs, any judgment or settlement, or otherwise, the "Covered Claims"). (*Id.* ¶ 17.)

### C. Events Leading to This Motion

The Debtor has informed the Movants that, as a debtor in chapter 11, it cannot advance any defense costs to or on behalf of the Movants or on behalf of the Additional Insureds with respect to the Covered Claims. (*Id.* ¶ 18.) As a result, the Movants and Additional Insureds seek payment directly from the D&O Policies to cover the expenses they incur in responding to the Covered Claims. (*Id.*) The Movants have submitted claim notices to the D&O Insurers through the insurance broker. (*Id.*) The D&O Insurers have advised that they require an order from this Court authorizing the D&O Insurers to advance defense costs under the D&O Policies. (*Id.*)

### D. The Committee's Objection

The Committee argues that the proceeds of the ABC Policies are property of the Debtor's estate and that uncontrolled payment of defense costs has the potential to severely diminish available proceeds that would otherwise inure to the benefit of the Debtor's estate. (*See* Objection ¶ 4.) The Committee argues that the potential for depletion of the ABC Policies is particularly acute because the ABC Policies are "wasting policies," meaning that any amounts

advanced to the Directors and Officers on account of their defense costs in connection with the

Securities Class Actions will directly reduce the amount of coverages available to the Debtor's

estate under the ABC Policies. (*Id.* ¶ 3.) The Committee argues that given there are over a

dozen law firms seeking release of insurance funds, this could result in the Debtor's estate being

left without any coverage in the event that there are claims against the Debtor's estate that result

in losses that would otherwise be covered under Side C of the ABC Policies. (*Id.* ¶¶ 3, 5.) As a

result, they argue that the Court should not modify the automatic stay because it would interfere

with the Chapter 11 Case. (*Id.* ¶ 26.)

The Committee states that it is currently investigating potential claims against Officers

and Directors and that modifying the stay now would reduce the amounts available under these

Policies for the Debtor to fund judgments against the Directors and Officers. (*Id.*) If the Court

does decide to modify the automatic stay to permit Directors and Officer to access proceeds from

the Policies, the Committee asks that the Court put in place safeguards including: 1) limiting the

amount of the proceeds that may be advanced to the Directors and Officers on account of their

reasonable, documented and actual defense costs; 2) establishing a "soft cap" on the advance of

defense costs under an insurance policy; and 3) requiring the Directors and Officer provide the

Debtor and Committee with monthly reports including (i) the total amount advanced or paid

during the monthly period; (ii) the total amount advanced or paid to date under each Policy; and

(iii) the remaining available limits under each Policy. (*Id.* ¶¶ 31–32.)

### E.  Cross-Holder Joinder

The Cross Holder Joinder joins in the Committee's request that the Motion be denied

because of the risk of depletion of the D&O Policies. (Cross Holder Joinder ¶ 1.) They argue

that the Movants have not established cause to lift the stay with respect to the Policies, which are

10

property of the Estate.  (*Id.* ¶ 2.)  In the event the Court modifies the automatic stay to permit the

Directors and Officers to obtain payment of their defense costs they ask the Court to impose

conditions including reasonable caps and reporting obligations.  (*Id.*)

### F.  The Reply

In their Reply, the Movants make two concessions in response to the Objection: they

agree to (i) provide quarterly reporting to the Debtor and Committee disclosing the aggregate

amount of defense costs paid under the D&O Policies and (ii) seek further relief from this Court

before utilizing policy proceeds to pay any settlement of claims.  (Reply ¶ 4.)  They argue that

the Committee's additional request that the Court set a "soft cap" on the amount of proceeds the

Movants can use is unwarranted.  (*Id.* ¶ 17.)  They also argue that the insurers will closely

monitor the fees and expenses incurred by counsel and that there is no legal basis under which

such a cap is proper.  (*Id.* ¶¶ 16–18.)

## II.    <u>LEGAL STANDARD</u>

"It is well-settled that a debtor's liability insurance is considered property of the estate."

*In re MF Glob. Holdings Ltd.*, 469 B.R. 177, 190 (Bankr. S.D.N.Y. 2012), *subsequently*

*dismissed sub nom. Sapere Wealth Mgt. LLC v. MF Glob. Holdings Ltd.*, 566 F. App'x 81 (2d

Cir. 2014).  "However, the courts are in disagreement over whether the proceeds of a liability

insurance policy are property of the estate."  *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr.

D. Del. 2010) (quoting *In re Allied Digital Techs. Corp.*, 306 B.R. 505, 509 (Bankr. D. Del.

2004)).  Courts that have addressed whether the proceeds of a liability insurance policy are

property of the estate are guided by the language and scope of the specific policies at issue.  *See*

*In re Downey Fin. Corp.*, 428 B.R. at 603; *In re Medex Reg'l Labs.,* LLC, 314 B.R. 716, 720

(Bankr. E.D. Tenn. 2004) ("In making its determination, the court must analyze the facts of each

particular case, focusing primarily upon the terms of the actual policy itself.") (internal quotation marks omitted); *In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002) ("Whether the proceeds of a D & O liability insurance policy is (*sic*) property of the estate must be analyzed in light of the facts of each case.").

When an insurance policy only provides direct coverage to a debtor, courts generally rule that the proceeds are property of the estate. *See In re Allied Digital Techs. Corp.*, 306 B.R. at 512. However, when an insurance policy provides exclusive coverage to directors and officers, courts have generally held that the proceeds are not property of the estate. *Id.* at 510; *see also La. World Exposition, Inc. v. Fed. Ins. Co. (In re La. World Exposition, Inc.)*, 832 F.2d 1391, 1399 (5th Cir. 1987) (holding that the debtor has no ownership interest in proceeds of an insurance policy where the obligation of the insurance company is only to the directors and officers).

In cases where liability insurance policies provide direct coverage to both directors and officers and debtors, courts have held that "the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution." *In re Downey Fin. Corp.*, 428 B.R. at 603 (citing *In re Allied Digital Techs. Corp.*, 306 B.R. at 512).

If the Court finds that an insurance policy or its proceeds are property of the estate the parties seeking access to the funds must establish "cause" to modify the automatic stay. *See* 11 U.S.C. § 362(d). In evaluating whether cause exists, courts in the Second Circuit analyze the following factors:

    i.    whether relief would result in a partial or complete resolution of the issues;
    ii.    the lack of any connection with or interference with the bankruptcy case;
    iii.    whether the other proceeding involves the debtor as a fiduciary;

    iv.    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

    v.    whether the debtor's insurer has assumed full responsibility for defending the action;

    vi.    whether the action primarily involves third parties;

    vii.    whether litigation in another forum would prejudice the interests of other creditors;

    viii.    whether the judgment claim arising from the other action is subject to equitable subordination;

    ix.    whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

    x.    the interests of judicial economy and the expeditious and economical resolution of litigation;

    xi.    whether the parties are ready for trial in the other proceeding; and

    xii.    the impact of the stay on the parties and the balance of harms.

*In re Sonnax Indus.*, Inc., 907 F.2d 1280, 1286 (2d Cir. 1990); *In re New York Medical Grp.*, PC, 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001).

    Not all of the *Sonnax* Factors are relevant in every case, and "cause" is a flexible concept that must be determined on a case-by-case basis. *Spencer v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999)).

### III.    <u>DISCUSSION</u>

    The issue here is to what extent the Directors and Officers can access proceeds of the D&O Policies to fund their defenses in covered actions, notwithstanding the fact that under some of the policies the Debtor is also an insured party. The Court concludes that with respect to the ABC Policies,[3] regardless of whether the stay applies to the policies, there is cause to lift the stay

---

[3]    With respect to the Side A DIC Policies, which solely provide coverage to directors and officers and not to the Debtor, the Court concludes these policies are not property of the estate. *See In re Allied Digital Techs. Corp.*, 306 B.R. at 512 (holding that where an insurance policy provides exclusive coverage to directors and officers, courts have generally held that the proceeds are not property of the estate). The Committee's Objection does not argue otherwise and only argues that release of the ABC Policies would implicate the automatic stay. (Objection ¶ 3.) Because the Side A DIC Policies are the lowest on the policy tower, however, this holding does not answer the more pressing question of whether the Directors and Officers can access the shared ABC Policies. (*See* Motion ¶ 10.)

to allow the Directors and Officers to access proceeds of these policies.  The Court also adopts

the Movants' proposed oversight suggestions.

### A. Regardless of Whether the ABC Policies are Property of the Estate, Cause Exists to Modify the Stay to Allow Access to Insurance Proceeds

This Court has previously held, in the context of directors and officers seeking to access

insurance policies that are shared with a debtor, that if there is cause to lift the stay, the Court

need not determine whether such shared policies are property of the estate.  *See In re MF Glob.*

*Holdings Ltd.*, 469 B.R. at 187 ("Because the Court concludes that reasonable defense costs

should be paid on behalf of the Individual Insureds whether or not the policy proceeds are

property of the estates, the Court need not resolve at this time the issue whether policy proceeds

are property of the estates." ).  Here, too the Court need not decide whether the ABC Policies are

property of the estate, because even if they are property of the estate, there is cause to lift the

stay.

In determining cause here, the Movants submits that the second and twelfth factors are

relevant.  The Court agrees.

### 1.   Second *Sonnax* Factor (Interference with Bankruptcy Case)

As to the second factor (the lack of any connection with or interference with the

bankruptcy case), the Court agrees with the Movants that granting the requested relief will not

result in substantial interference with the bankruptcy case.  (*See* Motion ¶ 30.)  The advancement

of defense costs is critical to the Movants' ability to present defenses to the Covered Claims.

(*See id.*)  In fact, granting the requested relief should reduce the Covered Claims' potential

interference with the bankruptcy case because the Debtor's estate will benefit from a vigorous

defense of the Covered Claims.  *See In re MF Glob. Holdings Ltd.*, 469 B.R. at 194 (finding that

14

estate will benefit from vigorous defense by the insureds).  Moreover, many of the Movants

remain directors of, or consultants to, the Debtor.  (Motion ¶ 30.)  The Movants reasonably argue

that absent the assurance that the D&O Policies are protecting them in the various lawsuits and

investigations, their attention may be diverted from the Debtor's operations to the detriment of

the estate.  (*Id.*)

The Committee argues that modifying the stay to allow the Movants access to the

insurance policies will interfere with the case because in the event that the Debtor is forced to

defend against claims asserted by any other parties that result in Side C losses, there may be no

Side C coverage left, thereby by burdening the Debtor's estate with potentially significant losses

to the estate.  (Objection ¶ 26).  This is of particular concern to the Committee because there are

fourteen different law firms that have filed or joined in the Motion, such that any depletion of the

Proceeds of the Policies would be substantial.  (*Id.*)  But the Committee does not mention

anywhere in their objection that the Policies contain a "priority of payment provision," which

provides that if payments are due to both the Debtor and the Directors & Officers at the same

time, the Directors & Officers should be paid first.  (*See* Motion, Ex. B, Primary Policy § XI.)

Courts have routinely found that where such priority of payments provisions are present,

the insureds are entitled to access the proceeds, notwithstanding the fact that the debtor also has

an interest in the proceeds of the policy.  *See In re TierOne Corp.*, 2012 WL 4513554, at *3

(Bankr. D. Neb. Oct. 2, 2012) ("The directors and officers have a right to make claims under the

policies and to receive payment of the policy proceeds to the exclusion of the bankruptcy estate

since they are the insureds that are first in line."); *see also In re MF Glob. Holdings Ltd.,* 515

B.R. 193, 203–04 (Bankr. S.D.N.Y. 2014) ("Even if [debtors] had a contractual claim to the

D&O Proceeds, that claim would be subject to the D&O Policies' priority of payment

provision."); *In re World Health Alternatives, Inc.*, 369 B.R. at 810 (insurance proceeds not

property of estate where the policy contained a priority of payment provision and the debtor was

entitled only to coverage for amounts it was required to indemnify, and no indemnification

claims had yet been made). Thus, even if it is true that the Directors' and Officers' will deplete

the policy, they are entitled to use the proceeds first. The Directors' and Officers' use of the

funds will not interfere with the bankruptcy estate, as even if the Debtor eventually seeks

coverage under the ABC Policies, the Debtor is last in line for the insurance proceeds.

Accordingly, the second *Sonnax* factor weighs towards lifting the stay.

> 2. The Twelfth *Sonnax* Factor (the Impact of the Stay on the parties and the
> balance of harms)

The Court agrees with the Movants that the balance of harms favors lifting the stay.

Here, the harm in denying the Movants access is imminent and significant since there are current

lawsuits pending for which the Movants require access to defense funds. (*See* Motion ¶ 15.)

Courts have routinely found that the need for defense costs is a harm that justifies lifting the stay.

*See, e.g.*, *In re MF Glob. Holdings Ltd.*, 469 B.R. at 196; *Allied Digital*, 306 B.R. at 514; *In re

Laminate Kingdom, LLC*, Case No., 07010279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar.

13, 2008) ("[N]umerous courts have granted relief from the automatic stay to permit the

advancement of defense costs to a debtor's officers and directors – even though the insurance

policies also provided direct coverage to the debtor."); *see also In re Valeritas Holdings, Inc.*,

Case No. 20-10290, ECF No. 578 (Bankr. D. Del. Nov. 22, 2022); *In re Garrett Motion Inc.*,

Case No. 20-12212, ECF No. 1114 (Bankr. S.D.N.Y. (April 16, 2021); *In re Sears Holdings

Corp.*, No. 18-23538, ECF No. 5382 (Bankr. S.D.N.Y. Oct. 16, 2019); *In re Relativity Fashion,*

*LLC*, No. 18-11358, ECF No. 604 (Bankr. S.D.N.Y. Nov. 19, 2018); *In re Enron Corp.*, No. 01-16034, 2002 WL 1008240, at *1 (Bankr.S.D.N.Y. May 17, 2002).

        In contrast, the potential harm to the Debtor—that insurance proceeds the Debtor need in the future will depleted—at this point is merely speculative. *See In re Beach First Nat'l Bancshares, Inc.*, 451 B.R. 406, 411 (Bankr. D.S.C. 2011) ("Movants cannot now be prevented from using the Policy for its intended purpose simply because Debtor wishes to save the policy limit for any potential claims of its own.").  The Securities Class Actions, and related claims, against the Debtor are stayed under section 362 of the Bankruptcy Code, and thus the Debtor does not appear to have a present need for the proceeds of the D&O Policies.  (Motion ¶ 32.) Further, as noted repeatedly, the Debtor's right to proceeds under the policies is expressly subordinated to the right of the directors and officers to coverage.  (*See id.*, Ex. B, Primary Policy § XI.)  This Court has held that such speculative harm does not outweigh the present need of directors and officers for access to insurance proceeds.  *See In Re MF Glob. Holdings Ltd.*, 469 B.R. at 192 ("[T]he Specialty Policies provide coverage to the Individual Insureds who have a present need for payment of their defense costs.  Currently, the Individual Insureds' need far outweighs the Debtors' hypothetical or speculative need for coverage.")  Finally, the Movants correctly point out that to the extent the Debtor ends up having direct liability for securities claims which would require use of Side C policies, such claims would be subordinated pursuant to Section 510(b) of the Bankruptcy Code.  (Reply ¶ 6.)

        The Committee argues that the Court should consider that the "directors are not blameless individuals merely seeking to defend against frivolous litigation" but that "the mismanagement by the Directors and Officers helped lead to the collapse of the Bank." (Objection ¶ 30.)  But directors' and officers' insurance is "[i]n essence and at its core . . . a

17

safeguard of officer and director interests and not a vehicle for corporate protection." *Ochs v. Lipson (In re First Central Financial Corp.)*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999). Even if it is true that the Directors and Officers do have liability, that is precisely why such insurance exists. *See id.* The Committee cites no legal authority for the proposition that Directors and Officers need to be "blameless" to access insurance that is specifically intended to cover their defense costs and liability in these situations.

Nor does the Committee's assertion that the policies at issue are "wasting polices"—a policy where any proceeds used for defense deplete the proceeds that can be used to settle judgments—change the Court's conclusion that there is cause to the lift the stay. (*See* Objection ¶ 23.) The Committee cites several cases for the proposition that where a policy is a "wasting policy" courts have found that the policy is property of the estate. (Objection ¶ 23 (citing *In re MF Glob. Holdings Ltd.*, 469 B.R. at 190–91 (stating that the proceeds of a policy are property of the estate where the policy provides coverage to both the debtor and directors and officers); *In re SN Liquidation, Inc. v. Icon Int'l, Inc. (In re SN Liquidation, Inc.)*, 388 B.R. 579, 584 (Bankr. D. Del. 2008) (holding that proceeds of a policy were property of the estate where policy provided coverage to debtor and directors and officers and depletion of proceeds from payment of defense costs would adversely affect the debtor's estate); *Metro. Mortg. & Secs. Co., Inc. v. Cauvel (In re Metro. Mortg. & Sec. Co.*), 325 B.R. 851, 855-56 (Bankr. E.D. Wash. 2005) (finding "wasting" policies were property of estates even where the debtors were not yet entitled to recovery on the proceeds); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 420 (Bankr. E.D. Pa. 1995) (holding that where "[p]roceeds available for the [d]ebtor's liability exposure are not segregated from the [p]roceeds available to the directors and officers," the debtor had "a sufficient interest in the [p]roceeds as a whole to bring them into the estate").

18

As an initial matter, here the Court finds that even if the ABC Policies are "wasting policies" that are property of the estate, an issue which the Court does not reach, there is cause to lift the stay.  Further, critically, none of these cases appear to include a policy with a payment priority clause.  Because here the Movants are entitled to have their claim paid first, the fact that this the policy is a "wasting policy" has no import.  (*See* Motion, Ex. B, Primary Policy § XI.) Accordingly, the balance of harms favors lifting the stay.

### B.  The Court Adopts the Movants' Proposed Requirements of Reporting and Settlement Approval, but Declines to Impose a "Soft Cap"

In their Reply, the Movants included a revised proposed order, which adds the requirement of quarterly aggregate reporting of fees and expenses paid by the D&O Policies as well as the requirement to get court approval before paying out a settlement using insurance proceeds.  (Reply ¶ 4.)  These requirements are reasonable, and the Court adopts them.  This type of aggregate quarterly reporting also aligns with the type recently approved in other large Chapter 11 cases.  *See In re Genesis Global HoldCo, LLC*, Case No. 23-10063, ECF No. 300 (Bankr. S.D.N.Y. May 9, 2023); *see also In re Sears Holdings Corp.*, No. 18-23538, ECF No. 5382 (Bankr. S.D.N.Y. Oct. 16, 2019).

The Reply thus adopts two out of the three of the Committee's suggested oversight conditions.  The Reply, however, does not adopt the Committee's third suggestion of a "soft cap."  (*See* Objection ¶ 31.)  The Court likewise declines to impose a "soft cap."

The Movants correctly note that courts have found that insurance companies provide a check on the fees and expenses of counsel to the officers and directors.  *See In re Beach First Nat. Bancshares, Inc.*, 451 B.R. at 411 (granting relief from the automatic stay and requiring the

insurer, who would be reviewing fees under its normal business practice, to notify the trustee of the amount of fees being paid).

But more importantly, the Movants rightly point out that there is no legal basis for imposing a "soft cap." The Movants acknowledge that ten years ago this Court ordered a soft cap of $30 million in its initial *MF Global* opinion in 2012, but that case involved both D&O and errors and omissions ("E&O") policies. (Reply ¶ 17 (citing *See MF Glob. Holdings, Ltd.,* 469 B.R. at 191, 197).) In *MF Global*, the SIPA Trustee had asserted a claim for coverage under the E&O policies and, unlike the D&O Policies in this case, the E&O policies had no priority of payment provision and unquestionably provided coverage for the estate for substantial claims that had been asserted against it by commodities customers. *See MF Glob. Holdings, Ltd.,* 469 B.R. at 191, 197.

But here the facts are distinguishable. This case involves only D&O policies, some of which (the Side A DIC Policies) do not provide any theoretical coverage to the Debtor, and the rest of which provide only Side B and Side C coverage, which are not likely to be utilized and which in any event are subordinate to the coverage provided to the directors and officers. Notably, in this Court's subsequent *MF Global* opinion in 2014, the Court found that a cap was no longer necessary, including because the insureds were only seeking coverage under the D&O policies, and not the E & O policies. *In re MF Glob. Holdings Ltd*., 515 B.R. at 196 ("By limiting their requests to the D & O Policies, the Individual Insureds have advanced compelling arguments that the proceeds should not be subject to further bankruptcy court oversight or limitation."). Likewise, a cap is not appropriate under the facts and circumstances of this case.

The Committee argues that in the absence of a "soft cap" the "floodgates" will open, and the officers and directors will deplete the available insurance proceeds. (Objection ¶ 29.) But

20

the priority of payment provision means that the Directors and Officers are entitled to have their

claims paid first.  Further, because of the oversight of the insurance companies, the quarterly

reporting, and the need for Court approval to settle a claim with policy funds, the Court is

satisfied that that there is enough oversight to prevent a wasteful depletion of the funds.[4]

## IV.    CONCLUSION

For the reasons discussed herein, the Court **GRANTS** the Motion as modified by the

Reply and **OVERRULES** the Objection to the extent set forth in the D&O Order.


Dated:    May 22, 2023
          New York, New York


                          _____
                               *Martin Glenn*
                               MARTIN GLENN
                    Chief United States Bankruptcy Judge

---

[4] While such oversight is of *practical* use here, given that the Movants have agreed to these conditions and that the oversight will obviate some of the Committee's objections, the Court notes that the Committee has not set forth any argument that such oversight is *legally* required in these circumstances.