**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SVB FINANCIAL GROUP,<br><br>Debtor.[1] | Chapter 11<br><br>Case No. 23-10367 (MG) |

**STIPULATION AND AGREED ORDER**
**AUTHORIZING PAYMENT OF INSURED LOSSES**
**PURSUANT TO BANKERS PROFESSIONAL LIABILITY INSURANCE POLICY**

SVB Financial Group (the "Debtor") and the Federal Deposit Insurance Corporation in its capacity as Receiver for Silicon Valley Bank ("FDIC-R"), by and through their respective counsel, hereby enter into this stipulation, agreement and proposed order (this "Stipulation") and represent and agree as follows:

**RECITALS**

A.  On March 10, 2023, the California Department of Financial Protection and Innovation closed Silicon Valley Bank ("SVB"), a subsidiary of the Debtor, and appointed the FDIC as receiver for SVB.

B.  On March 17, 2023 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of New York (the "Court") a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

C.  On March 28, 2023, an Official Committee of Unsecured Creditors (the "UCC") was appointed in the Debtor's case.

---

[1] The last four digits of SVB Financial Group's tax identification number are 2278.

D. Prior to the Petition Date, on September 27, 2016, UNICOM Systems, Inc. ("UNICOM") sued SVB and other defendants (the "Bank Group") in the Superior Court of the State of California, County of Los Angeles, in a case captioned *UNICOM Systems, Inc.* v. *Silicon Valley Bank; U.S. Bank National Association; East West Bank; MUFG Union Bank, N.A., OneWest Bank, N.A., et al.*, Case No. PC057316 (the "CA Action"). In the CA Action, UNICOM asserts that the Bank Group breached an April 25, 2015 Amended and Restated Credit Agreement (the "Credit Agreement") by, among other things, refusing to provide funding beginning in April 2016. The Bank Group contends, among other things, that UNICOM breached the Credit Agreement, relieving it of any obligation to advance funds to UNICOM, and the Bank Group seeks to recover remaining amounts owed under the Credit Agreement.

E. Upon its appointment as SVB's receiver, the FDIC-R succeeded to SVB's liabilities, rights, titles, powers, privileges, and assets, including in respect of the litigation with UNICOM. *See* 12 U.S.C. §§ 1821(d)(2)(A) and (B). After its appointment, the FDIC-R substituted into the CA Action in the place and stead of SVB and obtained a stay until June 28, 2023.[2]

F. On April 4, 2023, the FDIC-R removed the CA Action to the United States District Court, Central District of California, Central Division (the "California District Court"), where it has been docketed as Case No. 2:23-cv-02507-WLH-RAO. Thereafter, the parties to the CA Action agreed to an additional 180-day stay while UNICOM exhausts Title 12's administrative claims process and during which the parties intend to engage in good faith efforts to proceed to mediation. This further stay is currently pending before the California District Court.

---

[2] Pillsbury Winthrop Shaw Pittman LLP, with co-counsel Levy, Small & Lalas, represented SVB in the CA Action prior to the FDIC receivership and both firms have since been retained to represent the FDIC-R as SVB's successor in the CA Action.

2

G.    Prior to the Petition Date, the Debtor obtained certain bankers professional liability insurance, specifically, the AXIS Bankers Professional Liability Insurance Policy, policy number MSN 770524/01/2015 (the "AXIS Policy"), with a limit of liability of $5 million. In addition to the AXIS Policy, the Debtor obtained excess layers of coverage from AIG Specialty Insurance Company Excess Policy, policy number 04-932-07-51 ("AIG Excess Policy"), providing $5 million in excess coverage, and Federal Insurance Company Excess Policy, policy number 8237-4137 ("Federal Excess Policy"), providing an additional $5 million in excess coverage. The AXIS Policy, together with the AIG Excess Policy and Federal Excess Policy (together, the "2016 BL Policies") provide $15 million in bankers professional liability coverage.

H.    The 2016 BL Policies are claims-made policies covering the period from December 31, 2015 to August 1, 2017 (the "Policy Period"). Insureds under the 2016 BL Policies include the Debtor and its subsidiaries, including SVB. Copies of the AXIS Policy, AIG Excess Policy and Federal Excess Policy are attached hereto as Exhibit A, B and C, respectively.[3]

I.    Subject to their terms and conditions, the 2016 BL Policies generally cover Loss that the Insured incurs on account of Claims during the Policy Period for (a) a Wrongful Act which takes place before or during the Policy Period in the performance of or the failure to perform Professional Services, and (b) a Wrongful Act that takes place before or during the Policy Period in the performance of Lender Services. *See* Ex. A, Insuring Agreement § I (as amended by Endorsement No. 2).

J.    The 2016 BL Policies thus provide protection to SVB and the Debtor as Insureds from the financial burdens associated with their involvement in, and defense against, covered legal proceedings such as the CA Action. *See* Ex. A, §§ III(F), (H), (L), (P); Policy Declarations Item 1.

---

[3] Capitalized terms used but not otherwise defined herein have the meanings given in the 2016 BL Policies.

3

K.     During the 2015–2016 Policy Period, the insurers to the 2016 BL Policies ("Insurers") received from SVB timely notice of a claim relating to the CA Action under the 2016 BL Policies.

L.     The CA Action has required SVB, and will continue to require the FDIC-R, to incur legal fees and related expenses that are covered by the 2016 BL Policies.

M.     Apart from the claim asserted by SVB with respect to the CA Action, there are no open or pending claims on the 2016 BL Policies, and the time to assert new claims for the Policy Period has passed. *See* Ex. A, Policy Declarations Item 2. Additionally, no payments have been made under the 2016 BL Policies.

N.     Prior to making any payments on account of a claim for Defense Costs or otherwise incurred by SVB (or now the FDIC-R), the Insurers have requested, and the FDIC-R has agreed to seek, an order of the Court confirming (but not directing) that such payments can be made.

O.     In light of the foregoing, the Debtor and the FDIC-R (the "Parties") hereby stipulate that the 2016 BL Policies may be used for payment of outstanding, current and future Defense Costs or otherwise insured Loss incurred by SVB and the FDIC-R in the CA Action.

P.     The UCC does not object to the relief requested in this Stipulation.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and between the Parties, through their undersigned counsel, and upon approval by this Court it shall be **SO ORDERED:**

1.     The foregoing Recitals are incorporated herein by reference.

2.     Pursuant to section 105(a) of the Bankruptcy Code and subject to the terms of this Stipulation, the Insurers are hereby authorized, without further order of the Court, to pay incurred

or to-be incurred Defense Costs of SVB and the FDIC-R or other insured Loss in accordance with and subject to the terms and conditions of the 2016 BL Policies.

3. To the extent applicable or necessary (which the FDIC-R does not admit or concede), the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the Insurers to effectuate the provisions of this Stipulation.

4. The Parties and Insurers are authorized and empowered to take all actions necessary to implement the relief requested in this Stipulation.

5. Nothing in this Stipulation shall constitute or be deemed to constitute a finding, representation, admission, or determination as to the existence of coverage or the applicability of any insurance policies, including, without limitation, the 2016 BL Policies, or otherwise impact in any way any other issue or dispute in the Debtor's chapter 11 case.

6. This Stipulation shall be binding on (i) the Debtor and any trustee or examiner that may be appointed in the pending chapter 11 case, and their respective successors and assigns, and (ii) the trustee in the event that the above-captioned case is converted to a case under chapter 7 of the Bankruptcy Code.

7. This Stipulation contains the entire agreement between the Parties with respect to the subject matter hereof, and may only be modified in writing, signed by the Parties or their duly appointed agents.

8. This Stipulation may be executed in one or more counterparts, by facsimile, electronic transmission or otherwise, each of which shall be deemed an original, and all of which, when taken together, shall constitute one and the same document.

9. This Stipulation shall be effective immediately upon approval by the Court.

**STIPULATED AND AGREED TO BY**:

    SULLIVAN & CROMWELL LLP

    */s/ James L. Bromley*
    James L. Bromley
    Andrew G. Dietderich
    Christian P. Jensen
    125 Broad Street
    New York, NY 10004
    Telephone: (212) 558-4000
    Facsimile: (212) 558-3588
    E-mail: bromleyj@sullcrom.com
           dietdericha@sullcrom.com
           jensenc@sullcrom.com

    *Counsel to the Debtor*

    PILLSBURY WINTHROP SHAW PITTMAN LLP

    */s/ Andrew M. Troop*
    Andrew M. Troop
    31 West 52nd Street
    New York, NY 10019
    Telephone: (212) 858-1660
    Facsimile: (212) 973-7435
    Email: andrew.troop@pillsburylaw.com

    *California Litigation Counsel for the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank*

**IT IS SO ORDERED.**

Dated:  August 22, 2023
        New York, New York

                      **/s/ Martin Glenn**
                      MARTIN GLENN
              Chief United States Bankruptcy Judge

**EXHIBIT A**

**AXIS Policy**

# **EXHIBIT B**

**AIG Excess Policy**

# **EXHIBIT C**

**Federal Excess Policy**