**WHITE & CASE LLP**

Thomas E Lauria (admitted *pro hac vice*)
Brian D. Pfeiffer
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-2700
tlauria@whitecase.com
brian.pfeiffer@whitecase.com

Glenn M. Kurtz
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
gkurtz@whitecase.com

*Counsel to the Ad Hoc Cross-Holder Group*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| SVB Financial Group, | ) Case No. 23-10367 (MG) |
| | ) |
| Debtor.[1] | ) |
| | ) |

**<u>*EX PARTE* MOTION OF THE AD HOC CROSS-HOLDER GROUP FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 (A) AUTHORIZING DISCOVERY OF FIRST-CITIZENS BANK AND TRUST COMPANY, AND (B) REQUIRING THE PRODUCTION OF DOCUMENTS ON A NON-CONFIDENTIAL BASIS</u>**

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

The ad hoc group of holders, or investment advisors, sub-advisors, or managers of holders, of certain senior notes and preferred stock issued by the Debtor (the "**Ad Hoc Cross-Holder Group**"),[2] by and through its undersigned counsel, hereby submits this *ex parte* motion (the "**Motion**") for entry of an order pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Ad Hoc Cross-Holder Group to serve requests on First-Citizens Bank and Trust Company ("**First Citizens**"), substantially in the form attached hereto as **Exhibit B**, for the production of documents (the "**Document Requests**"), and (ii) requiring First Citizens to produce the requested documents without any confidentiality designations.  In support of this Motion, the Ad Hoc Cross-Holder Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.      As announced by the Debtor at the June 29 omnibus hearing, the Debtor's ability to use its "substantial tax attributes . . . is magnified by the timing with which a plan of reorganization may go effective" and, thus, the Debtor's "focus is having a plan go effective as close to January 1st of 2024 as possible."  June 29, 2023 Hr'g Tr. at 19:1-6.  At the August 15 omnibus hearing, the Debtor noted that plan discussions among the key creditor constituencies were continuing and reiterated its intention "to file a plan of reorganization and try to move forward to confirm something by the end of this year." Aug. 15, 2023 Hr'g Tr. at 17:17-21.

---

[2]   Information regarding the members of the Ad Hoc Cross-Holder Group and their economic interests in the Debtor is set forth in the *First Amended Verified Statement Pursuant to Bankruptcy Rule 2019* [Dkt. No. 432].

2

2.      In order to meet this ambitious deadline, which could mean the difference between success and failure in the chapter 11 case, the Debtor's creditors and prospective plan sponsors must be able to understand and evaluate the Debtor's assets on the same timeline.  While this is a straightforward exercise with respect to the Debtor's cash deposits, a significant portion of the Debtor's other assets consist of portfolios of (i) direct investments in private companies (the "**Direct Investment Portfolio**") and (ii) warrants (the "**Warrant Portfolio**") to acquire equity in more than three thousand technology, life science and healthcare companies issued in partial consideration for loans obtained from Silicon Valley Bank.  *See* SVB Financial Group, Annual Report (Form 10-K) (Feb. 24, 2023) at 23, 55, 103.  According to its public filings, the Debtor's investment securities, which include the Direct Investment Portfolio and investments in venture capital and private equity funds, debt funds and public equity securities, had a reported book value of approximately $363 million.  *See Supplemental Notes to Monthly Operating Report* [Dkt. No. 580-1].  Additionally, the Debtor disclosed that the Warrant Portfolio and other derivatives had a reported book value of approximately $343 million.  *See id*.

3.      For purposes of developing a plan of reorganization and underwriting a potential new money raise that would recapitalize the Debtor, the Debtor's stakeholders need to independently evaluate and value these securities portfolios.   The reported book value of these key assets is not nearly enough.  As the Debtor noted in its pre-bankruptcy public filings:

> [A] meaningful portion of the aggregate fair value of our total warrant and direct equity investment portfolios may, from time to time, be concentrated in a limited number of warrants and direct equity investments.  Valuation changes in one or more of these warrants or direct investments (or any potential related hedging transactions) may have a material impact on our financial statements and the valuation of our total investment portfolio.  Moreover, because valuations of private companies are inherently uncertain,

AMERICAS 124884935

> may fluctuate over short periods of time and may be based on estimates, our determinations of fair value of private companies may differ materially from the values that would have been used if a ready market for these securities existed.

*See* SVB Financial Group, Annual Report (Form 10-K) (Feb. 24, 2023) at 23–24.

4.    The volatility of the investment portfolios described in the Debtor's annual report is evident in their historic performance.  On the Warrant Portfolio, for example, the Debtor reported gains of $148 million in 2022, $560 million in 2021, and $237 million in 2020.  *See id.* at 55.  Given the "boom or bust" nature of many of the companies in the technology/venture capital industry, warrants in a single company or small group of companies can materially alter the Debtor's financial landscape.  In 2022, more than half the value of the Debtor's portfolio of warrants in 3,234 companies was concentrated in the top 65 companies.  *See id.*  And in 2021, the Debtor reported a gain of $116 million—more than 20% of the Debtor's total gains on warrant assets for the year—relating to the exercise of warrants issued by a **single company**, the cryptocurrency platform Coinbase.  *See id.*

5.    Given the volatile nature of these assets and the disproportionate impact that a small group of companies often has on the portfolios, to evaluate the Debtor's balance sheet, stakeholders cannot merely rely on reported book value but rather need to diligence the assets to understand the identity of the top issuers and basic economic terms of the direct investment and warrant securities.

6.    First Citizens, which acquired the Debtor's records that were previously held by Silicon Valley Bank, has provided this information at issue, belonging to the Debtor, on a confidential basis to the Debtor, who in turn has provided it on a professionals'-eyes-only basis to certain of the stakeholders' restructuring professionals, including the advisors to the Ad Hoc

4

Cross-Holder Group. In addition, some of the information at issue (*i.e.*, the names of the issuing companies) was filed under seal in connection with the Debtor's professional retention applications. *See Notice of Filing of Amended Confidential Parties in Interest Related to the Debtor's Professional Retention Applications* [Dkt. No. 455].

7.     Prior to filing this Motion, the Ad Hoc Cross-Holder Group requested that First Citizens agree to provide the Debtor's information sought in the Document Requests on a non-confidential basis. First Citizens objected to the disclosure of the Debtor's warrant information on a non-confidential basis to stakeholders, citing concerns that the disclosure could allow its competitors to assess a portion of its loan portfolio by revealing the names of warrant issuers who had also obtained loans from Silicon Valley Bank. Putting aside that the information at issue relates solely to assets of the Debtor, the information is in large part already in the public domain. Specifically, upon information and belief, Silicon Valley Bank and First Citizens (as assignee) have publicly filed Uniform Commercial Code financing statements for the vast majority of the loans that First Citizens asserts need to be protected from public disclosure. First Citizens also objected to the disclosure of the Debtor's information about the Direct Investment Portfolio on a non-confidential basis, citing concerns that some of the companies in the Direct Investment Portfolio may also have deposits at First Citizens (or otherwise constitute a customer of the bank).

8.     All of the information that the Ad Hoc Cross-Holder Group seeks is the Debtor's information about the Debtor's assets and should not be subject to confidentiality restrictions. *First*, while the warrants were originally issued in connection with loans made by Silicon Valley Bank (as a part of the bank's fees), these warrants were severed at issuance and sold to the Debtor in the ordinary course of the Debtor's pre-bank failure business. Thus, the warrants are solely

5

assets of the Debtor.  *Second*, the Direct Investment Portfolio consists of the Debtor's direct investments in private companies.  As such, First Citizens has no legitimate basis to demand that information related to either the Warrant Portfolio or the  Direct Investment Portfolio should be sealed or deemed confidential.  The Debtor has made no request for confidentiality for its information at issue.

9.      By this Motion, the Ad Hoc Cross-Holder Group seeks to compel disclosure of the names of all of the issuers in the Direct Investment Portfolio and 50 of the issuers in the Warrant Portfolio,[3] together with basic economic information about the related securities. With respect to the Direct Investment Portfolio, the Ad Hoc Cross-Holder Group requests the following basic economic information: with respect to each portfolio company, (i) the amount and exact date of each equity investment by the Debtor in such company; and (ii) the proportion of such company's equity that is owned by the Debtor, on a class by class basis.

10.      With respect to the Warrant Portfolio, the Ad Hoc Cross-Holder Group requests the following basic economic information: with respect to each warrant, (i) the class of equity security, number of shares, and percentage of outstanding equity of such portfolio company that such warrant entitles the Debtor to acquire; (ii) the strike price (and currency) of such warrant; and (iii) the expiration date of such warrant.  While this basic Debtor information should be made available on a non-confidential basis for each of the warrants, the Ad Hoc Cross-Holder Group proposed to limit its request to a certain number of the most significant warrant positions, as determined by the Ad Hoc Cross-Holder Group's financial advisor—at least initially to avoid

---

[3]    The Ad Hoc Cross-Holder Group reserves all rights to seek discovery in the future with respect to additional issuers and warrant positions.

AMERICAS 124884935

motion practice. To date, the Ad Hoc Cross-Holder Group and First Citizens have not been able to reach agreement.

11.    The Ad Hoc Cross-Holder Group respectfully requests that the Court grant the Motion and direct First Citizens to produce all the information in the Document Requests without confidentiality designations.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

13.    Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

14.    The bases for the relief requested herein are section 105 of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1.

## RELIEF REQUESTED

15.    The Ad Hoc Cross-Holder Group respectfully requests that the Court enter an order substantially in the form of the proposed order attached hereto as **Exhibit A** (i)  authorizing the Ad Hoc Cross-Holder Group to serve requests on First Citizens, substantially in the form attached hereto as **Exhibit B**, for the production of documents, and (ii) requiring First Citizens to produce the requested documents without any confidentiality designations.

## BASIS FOR RELIEF

**A.    The Court Should Authorize the Document Requests**

16.    Bankruptcy Rule 2004 provides that, upon the motion of any party in interest, the Court may authorize the examination of any entity relating "to the acts, conduct, or property or to the liabilities and financial conditions of the debtor, or to any matter which may affect the

AMERICAS 124884935

administration of the debtor's estate." Fed. R. Bankr. P. 2004(b); *see also* 11 U.S.C. § 105(a)

("The court may issue any order, process, or judgment that is necessary or appropriate to carry out

the provisions of this title."). In a chapter 11 case, "the examination may also relate to the

operation of any business and the desirability of its continuance, the source of any money or

property acquired or to be acquired by the debtor for purposes of consummating a plan and the

consideration given or offered therefor, and any other matter relevant to the case or to the

formulation of a plan." Fed. R. Bankr. P. 2004(b).

17.    The purpose of Bankruptcy Rule 2004 is to "assist a party in interest in determining

the nature and extent of the bankruptcy estate, revealing assets, examining transactions and

assessing whether wrongdoing has occurred." *In re Recoton Corp.*, 307 B.R. 751, 755 (Bankr.

S.D.N.Y. 2004). It is well-settled that the scope of Bankruptcy Rule 2004 discovery "is broader

than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a

'fishing expedition.'" *In re Hughes*, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (quoting *In re

Ionosphere Clubs, Inc.*, 156 B.R. 414, 432 (S.D.N.Y. 1993)).

18.    Third parties are subject to Bankruptcy Rule 2004 examination "if they possess

knowledge of the debtor's acts, conduct, or financial affairs which relate to the bankruptcy

proceedings." *In re Brown*, Case No. 18-10617-JLG, 2018 Bankr. LEXIS 3138, at *10 (Bankr.

S.D.N.Y. Oct. 11, 2018); *see also In re Transmar Commodity Grp.*, Case No. 16-13625-JLG, 2018

Bankr. LEXIS 2473, at *27 (Bankr. S.D.N.Y. Aug. 27, 2018) (same); *In re Recoton Corp.*, 307

B.R. at 755 ("Any third party who has a relationship with a debtor may be made subject to a Rule

2004 investigation.").

19.     The decision to grant a Bankruptcy Rule 2004 request lies within the sound discretion of the court.  *See, e.g.*, *In re Gawker Media LLC*, Case No. 16-11700 (SMB), 2017 Bankr. LEXIS 1798, at *16 (Bankr. S.D.N.Y. June 28, 2017).  A party seeking authorization to conduct a Bankruptcy Rule 2004 examination bears the burden of establishing good cause, which may be found where "the proposed examination 'is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice.'" *Id.* (quoting *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004)).  In evaluating a Bankruptcy Rule 2004 request, "the Court must 'balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.'" *Id.* (quoting *In re Drexel Burnham Lambert Group*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991)).

20.     The information sought by the Document Requests fits squarely within Bankruptcy Rule 2004.  As is evident from the Debtor's public filings, the Warrant Portfolio and the Direct Investment Portfolio each represent a significant percentage of the assets on the Debtor's balance sheet.  *See Supplemental Notes to Monthly Operating Report* [Dkt. No. 580-1]; *see also In re Recoton Corp.*, 307 B.R. at 755 (describing Bankruptcy Rule 2004 as a tool to allow a party in interest to better understand a debtor's assets).  Moreover, given the volatility of the types of companies at issue, these securities present unique challenges to stakeholders' ability to understand and evaluate the portfolios.  An understanding of the issuers of the securities and the requested economic information will unquestionably assist creditors in their efforts to evaluate the portfolios and the Debtor's "financial condition," as well as in connection with the formulation of a plan of reorganization.  *See* Fed. R. Bankr. P. 2004(b).

AMERICAS 124884935

21.     In addition, an analysis of the competing interests of the parties demonstrates that good cause exists to grant the Motion.  The bankruptcy process is premised on transparency, and nowhere is that concept more important than when dealing with the assets of a debtor's estate. *See, e.g.*, 11 U.S.C. §§ 704(a)(7), 1106(a)(1), and 1107(a) (requiring a debtor in possession to furnish information concerning the estate to parties in interest); *In re Robert Landau Assocs., Inc.*, 50 B.R. 670, 677 (Bankr. S.D.N.Y. 1985) ("The policy of open inspection, established in the Code itself through section 704(7), . . . is fundamental to the operation of the bankruptcy system . . . ." (internal quotation marks and citation omitted)).  The Document Requests are limited and targeted to  provide creditors and potential plan sponsors with basic due diligence on material assets of the Debtor and, thus, will advance discussions around a plan of reorganization.

22.     On the other hand, the burdens imposed on First Citizens by the Document Requests will be minimal.  The requested information has already been identified and segregated by First Citizens in connection with the production of documents to the Debtor.  Accordingly, any burden associated with the physical production of these materials to creditors will be *de minimis*. Denying the Motion will also cause "injustice" to the Ad Hoc Cross-Holder Group and other stakeholders.  *See In re Gawker*, 2017 Bankr. LEXIS 1798, at *16 (quoting *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004)).  First Citizens extracted a substantial windfall at the expense of the Debtor and its stakeholders when it acquired Silicon Valley Bank's assets at a steep discount, as reflected in its increase of aggregate market capitalization from approximately $8.5 billion to approximately $13 billion upon announcement of the transaction, to approximately $19.4 billion today.  The Ad Hoc Cross-Holder Group merely seeks to obtain information on a non-confidential

basis to better assess the viability of certain reorganization options in light of the First Citizens

transaction and related events.

**B.     The Court Should Order the Production of Documents on a Non-Confidential Basis**

23.     The information sought in the Document Requests should be made available to

creditors on a non-confidential basis.  In withholding its consent to this Motion, First Citizens

argued that the requested information concerning the Warrant Portfolio is confidential because its

disclosure could allow First Citizens' competitors to assess a portion of its loan portfolio by

revealing the names of warrant issuers who had also obtained loans from Silicon Valley Bank.

First Citizens also argued that the requested information concerning the Direct Investment

Portfolio is confidential to the extent it encompasses portfolio companies that may also  be

customers of First Citizens.  These arguments fail for several reasons.

24.     *First*, the Document Requests only seeks information concerning the *Debtor's*

assets—not First Citizens'.  The Warrant Portfolio consists of warrants that, historically, were

issued by companies in payment of bank fees in connection with loans made by Silicon Valley

Bank.  The bank then sold the warrants to the Debtor in the ordinary course and kept the loans.

Thus, the warrant securities are separate and distinct assets from the loans and are owned solely

by the Debtor.  The Direct Investment Portfolio consists of investments made directly by the

Debtor, including through the exercise of warrants.  Accordingly, First Citizens has no economic

or other interest in the Warrant Portfolio or the Direct Investment Portfolio and no basis to prevent

the Debtor from disclosing its own information about its own material assets.  *See, e.g., In re*

*Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) ("There is a strong presumption

AMERICAS 124884935

in favor of public access to bankruptcy proceedings and records. During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl.").

25.     *Second*, whatever First Citizens' purpose is in seeking to keep the requested information secret,  First Citizens cannot establish that such information is a "trade secret or other confidential research, development, or commercial information" entitled to protection under applicable Federal Rules of Civil Procedure and Bankruptcy Rules. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (Bankruptcy Rule 9016) (authorizing the court to quash or modify a subpoena that requires disclosure of "a trade secret or other confidential research, development, or commercial information"); Bankruptcy Rule 9018 (authorizing the court to protect "any entity in respect of a trade secret or other confidential research, development, or commercial information").

26.     Initially, First Citizens cannot have a proprietary interest in the *Debtor's* documents.  Additionally, the Document Requests do not seek any details on the loans issued by Silicon Valley Bank and, thus, disclosure of such information would not give an unfair advantage or be of any use to First Citizens' competitors or otherwise cause First Citizens any economic harm. *See In re Motors Liquidation Co.*, 561 B.R. 36, 43 (Bankr. S.D.N.Y. 2016) (defining confidential commercial information as information that is "so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit the entity's competitors").

27.     First Citizens' general assertion of speculative harm that might arise if the public is able to infer the identity of entities who previously obtained loans from Silicon Valley Bank is not enough to deprive the Debtor's creditors of basic information concerning the Debtor's material assets. *See In re Purdue Pharma L.P.*, 632 B.R. 34, 39 (Bankr. S.D.N.Y. 2021) (courts "must be

careful not to extend the term [commercial information] to readily to any disclosure that would allegedly cause harm"); *see also Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 697 (D. Nev. 1994) (interpreting "commercial information" as "information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained"). Indeed, any member of the public can identify the secured borrowers of Silicon Valley Bank or First Citizens by searching for the banks' Uniform Commercial Code financing statements.

28.     Accordingly, the Court should order that the requested information be provided to the Ad Hoc Cross-Holder Group free from confidentiality restrictions.

## NOTICE

29.     The Ad Hoc Cross-Holder Group is proceeding with this Motion on an *ex parte* basis and submits that no notice should be required. Nevertheless, the Ad Hoc Cross-Holder Group has provided advance notice to counsel to the Debtor and First Citizens.

## NO PRIOR REQUEST

30.     No prior request for relief sought in this Motion has been made.

## RESERVATION OF RIGHTS

31.     The Ad Hoc Cross-Holder Group reserves its rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this Motion, to seek additional discovery, add additional parties, or to raise additional grounds for granting this Motion (during any hearing on the Motion or otherwise).

AMERICAS 124884935

## **CONCLUSION**

WHEREFORE, the Ad Hoc Cross-Holder Group respectfully requests that the Court (a) enter an order, substantially in the form attached hereto as **Exhibit A**, and (b) grant such other and further relief as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

AMERICAS 124884935

Dated: October 13, 2023
      New York, New York

Respectfully submitted,

By:  <u>/s/ *Brian D. Pfeiffer*</u>

Thomas E Lauria (admitted *pro hac vice*)
Brian D. Pfeiffer
**WHITE & CASE LLP**
200 South Biscayne Boulevard, Suite 4900
Miami, FL 33131
Telephone:  (305) 371-2700
Facsimile: (305) 358-2700
tlauria@whitecase.com
brian.pfeiffer@whitecase.com

-and-

Glenn M. Kurtz
**WHITE & CASE LLP**
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
gkurtz@whitecase.com

*Counsel to the Ad Hoc Cross-Holder Group*

AMERICAS 124884935

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| SVB Financial Group, | ) | Case No. 23-10367 (MG) |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

### ORDER GRANTING *EX PARTE* MOTION OF THE AD HOC CROSS-HOLDER GROUP FOR ENTRY OF AN ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 (A) AUTHORIZING DISCOVERY OF FIRST-CITIZENS BANK AND TRUST COMPANY, AND (B) REQUIRING THE PRODUCTION OF DOCUMENTS ON A NON-CONFIDENTIAL BASIS

Upon the motion (the "**Motion**")[2] of the Ad Hoc Cross-Holder Group for entry of an order

(the "**Order**") pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy**

**Code**") and Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

(i) authorizing the Ad Hoc Cross-Holder Group to serve requests for the production of documents

on First-Citizens Bank and Trust Company ("**First Citizens**"), and (ii) requiring First Citizens to

produce the requested documents without any confidentiality designations, as more fully set forth

in the Motion; and this Court having jurisdiction to consider and decide the Motion pursuant to 28

U.S.C. §§ 157 and 1334; and venue of this Chapter 11 Case and the Motion in this district being

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant

to 28 U.S.C. § 157(b); and, after due deliberation, the Court having determined that the relief

requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

parties in interest; and it appearing that no notice of the relief sought in the Motion is necessary; and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Ad Hoc Cross-Holder Group is authorized, pursuant to Bankruptcy Rule 2004, to serve the Document Requests on First Citizens.

3.      First Citizens is directed to produce all documents responsive to the Document Requests, without any confidentiality designations, no later than fourteen (14) calendar days from the date of service.

4.      The Ad Hoc Cross-Holder Group's rights are reserved to request additional discovery and/or examination, including, without limitation, requests based on any information that may be revealed as a result of discovery authorized pursuant to this Order.

5.      The Ad Hoc Cross-Holder Group is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

6.      The terms and conditions of this Order shall be effective and enforceable immediately upon its entry.

7.      The Court retains jurisdiction to resolve any disputes arising under or related to this Order, including any discovery disputes that may arise between or among the parties, and to interpret, implement, and enforce the provisions of this Order.

**IT IS SO ORDERED**.

Dated: _____, 2023
        New York, New York

                                        _____
                                        HONORABLE MARTIN GLENN
                                        UNITED STATES BANKRUPTCY JUDGE

AMERICAS 124884935

# **EXHIBIT B**

**Requests for Production**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| SVB Financial Group, | ) Case No. 23-10367 (MG) |
| | ) |
| Debtor.[1] | ) |
| | ) |

### AD HOC CROSS-HOLDER GROUP'S REQUESTS FOR THE PRODUCTION OF DOCUMENTS BY FIRST-CITIZENS BANK AND TRUST COMPANY

Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the Ad Hoc Cross-Holder Group submits the following requests for the production of documents to First-Citizens Bank and Trust Company ("**First Citizens**"). The Ad Hoc Cross-Holder Group requests that First Citizens produce any responsive documents, without any confidentiality designations, within fourteen (14) days or at such other time and place as may be ordered by the Court or agreed to by the parties. The Ad Hoc Cross-Holder Group reserves the rights to serve additional document requests at a later time.

### DEFINITIONS

These Requests incorporate the definitions and rules of construction set forth in Local Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as required by Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York. For purposes of the definitions, instructions, and requests herein, the words set forth below shall be defined as follows:

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

1.      "Debtor" means (a) SVB Financial Group and (b) the debtor-in-possession in the above-captioned chapter 11 case.

2.      "Direct Investment Company" means any private portfolio company (excluding venture capital funds, private equity funds, and debt funds) in which the Debtor holds a direct equity interest, including, without limitation, any common, preferred, or other ownership interest.

3.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Local Civil Rule 26.3 and includes, for the avoidance of doubt, all communications, messages, analyses, opinions, summaries, notes, tables, charts, ledgers, and other physical or electronic records, whether in draft or final form, executed or unexecuted, and each non-identical copy or otherwise, regardless of origin or location, in Your actual or constructive possession, custody or control.

4.      "Requests" means the requests for Documents and information set forth herein.

5.      "Warrant" means any equity warrant in which the Debtor has an ownership interest.

6.      "Warrant Portfolio Company" means any public or private company in which the Debtor is entitled to acquire an equity interest, including, without limitation, any common, preferred, or other ownership interest, under a Warrant.

7.      "Warrant Portfolio List" means a list of up to 50 Warrant Portfolio Companies compiled by the Ad Hoc Cross-Holder Group advisors and provided to First Citizens contemporaneously with these Requests.

8.      "You" and "Your" means First-Citizens Bank and Trust Company, including any subsidiary, parent, or other affiliate of First-Citizens Bank and Trust Company, and any persons acting on its behalf or at its direction.

AMERICAS 124935029

## **INSTRUCTIONS**

1.      These instructions incorporate by reference the requirements and duties of the Federal Rules of Bankruptcy Procedure, Federal Rules of Civil Procedure, and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York.

2.      Each Request shall be deemed to be continuing in nature. If at any time additional Documents responsive to the Requests come into Your possession, custody, or control or are brought to Your attention, prompt supplementation of Your response to these Requests is required.

3.      You are requested to produce, without any confidentiality designations, all Documents and information requested herein that are within Your possession, custody, or control or in the possession, custody, or control of Your current and former officers, directors, agents, employees, representatives, affiliated or associated companies, professionals, or any other person or entity acting or purporting to act on Your behalf. If You cannot or will not gather and produce Documents or other information from any of the foregoing sources or custodians, You are requested to advise the undersigned counsel immediately.

4.      Documents should be produced in the manner they are kept in the ordinary course of business.  In producing Documents, all Documents that are attached to each other, or segregated or separated from other Documents, when originally located, should be produced as is.

5.      All Documents shall be produced in TIFF format images with searchable text files. All Documents shall be produced with all metadata. Documents created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning shall be produced in their native format and TIFF format.

3

6.      All Documents and Communications produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the Document. With respect to Documents produced in native format, name the produced native file with the Bates number on the first page of the corresponding TIFF production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

7.      If the response to any Request consists, in whole or in part, of an objection on the basis of or including burden, then provide those Documents that can be produced without undue burden. For such Documents that are too burdensome to produce, describe the process or method required to obtain said Documents, the quantity and location of the Documents involved, and the estimated costs of the search.

8.      Pursuant to applicable rules, where You assert a claim of privilege in objecting to a Request and withhold a responsive Document on this basis, You must provide a privilege log in such format as may be agreed to by the parties or ordered by the Court in the above-captioned chapter 11 case.

9.      If a Document contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material. If a party asserts a privilege to part of the material contained in a Document, the party asserting the privilege must clearly indicate the portions as to which it claims the privilege. When a Document has been redacted or altered in any fashion, You must provide a redaction log setting forth (a) the nature of the privilege being claimed or the other purposed basis for the redaction or alteration, (b) the type of Document being redacted if not otherwise apparent,

4

(c) the general subject matter of the Document or information being redacted, (d) the date of the Document, and (e) such other information sufficient to identify the Document, including, where appropriate, the author of the Document, the title or subject line of the Document, and the addressee of the Document.

10.    If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s), provide all information not covered by the objection(s), and state the specific basis of the objection(s).

11.    Except where otherwise specified, the Requests seek Documents dated, created, or otherwise obtained on or after January 1, 2020, through the present.

12.    By serving these Requests, the Ad Hoc Cross-Holder Group expressly reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

## **DOCUMENTS REQUESTED**

1.    Documents sufficient to show (a) the name of each Direct Investment Company, and (b) with respect to each Direct Investment Company, (i) the amount and exact date of each equity investment by the Debtor in such Direct Investment Company, and (ii) the proportion of such Direct Investment Company's equity that is owned by the Debtor, on a class by class basis.

2.    Documents sufficient to show (a) the name of each Warrant Portfolio Company on the Warrant Portfolio List, and (b) with respect to each Warrant issued by each such Warrant Portfolio Company, (i) the class of equity security, number of shares, and percentage of outstanding equity of such Warrant Portfolio Company that such Warrant entitles the Debtor to acquire, (ii) the strike price (and currency) of such Warrant, and (iii) the expiration date of such Warrant.

AMERICAS 124935029

Dated: October [●], 2023
      New York, New York

                                Respectfully submitted,

By:  /s/ _____

      Thomas E Lauria (admitted *pro hac vice*)
      Brian D. Pfeiffer
      **WHITE & CASE LLP**
      200 South Biscayne Boulevard, Suite 4900
      Miami, FL 33131
      Telephone:  (305) 371-2700
      Facsimile: (305) 358-2700
      tlauria@whitecase.com
      brian.pfeiffer@whitecase.com

      -and-

      Glenn M. Kurtz
      **WHITE & CASE LLP**
      1221 Avenue of the Americas
      New York, NY 10020
      Telephone: (212) 819-8200
      Facsimile:  (212) 354-8113
      gkurtz@whitecase.com

      *Counsel to the Ad Hoc Cross-Holder Group*

AMERICAS 124935029