Hearing Date: **April 9, 2024 at 10:00 a.m. ET**
Objection Deadline: **April 2, 2024 at 4:00 p.m. ET**

James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | Case No. 23-10367 (MG) |
| Debtor. | |

**NOTICE OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO SELL SVB INDIA BY (A) SELLING PARTNERSHIP INTERESTS IN SVB INDIA FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) CAUSING NON-DEBTOR SUBSIDIARY TO SELL PARTNERSHIP INTERESTS IN SVB INDIA; (II) APPROVING THE DEBTOR'S ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF <u>CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF</u>**

    **PLEASE TAKE NOTICE** that on the date hereof, SVB Financial Group, as

debtor and debtor-in-possession (the "<u>Debtor</u>"), filed the *Debtor's Motion for Entry of an Order*

*(I) Authorizing the Debtor to Sell SVB India by (A) Selling Partnership Interests in SVB India*

*Free and Clear of All Liens, Claims, Interests and Encumbrances and (B) Causing Non-Debtor*

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

*Subsidiary to Sell Partnership Interests in SVB India; (II) Approving the Debtor's Entry Into, and Performance Under, the Purchase and Sale Agreement; (III) Authorizing Assumption and Assignment of Certain Contracts; and (IV) Granting Related Relief* (the "Motion")[2].

**PLEASE TAKE FURTHER NOTICE** that the undersigned counsel will present the Motion to the Honorable Martin Glenn, United States Bankruptcy Court for the Southern District of New York (the "Court") at a hearing to be held on **April 9, 2024 at 10:00 a.m. (Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections (the "Objections") to the relief requested in the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York and shall be filed with the Court in accordance with the customary practices of the Court and General Order M-399. Objections must be filed and received no later than **April 2, 2024 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline") and must be served on the following parties: (a) counsel to the Debtor, Sullivan & Cromwell LLP, 125 Broad Street, New York, NY 10004, Attn: Christian P. Jensen (jensenc@sullcrom.com); (b) counsel to the Official Committee of Unsecured Creditors, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Attn: Ira S. Dizengoff (idizengoff@akingump.com) and Brad M. Kahn (bkahn@akingump.com) and 2001 K Street NW, Washington, DC 20006, Attn: James R. Savin (jsavin@akingump.com); (c) counsel to William K. Harrington, the United States Trustee for Region 2, U.S. Department of Justice, Office of the U.S. Trustee, Alexander Hamilton U.S. Custom House, One Bowling Green, Room 534, New York, New York 10004, Attn: Andrea B. Schwartz, Esq.

---

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

(andrea.b.schwartz@usdoj.gov) and Annie Wells, Esq. (annie.wells@usdoj.gov); (d) counsel to

First Citizens Global I, Inc., First Citizens Global II, Inc. and First Citizens BancShares, Inc., the

buyers and guarantor under the Purchase Agreement, Robinson, Bradshaw & Hinson, P.A., 101

North Tryon Street, Suite 1900, Charlotte, NC 28246, Attn: Andrew W.J. Tarr

(atarr@robinsonbradshaw.com); (e) the non-Debtor counterparties to all executory contracts that

the Debtor proposes to assume or assume and assign in connection with the Sale Transaction and

(f) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule

2002.

**PLEASE TAKE FURTHER NOTICE** that only those Objections that are

timely filed, served and received will be considered at the Hearing.  Failure to file a timely

Objection may result in the entry of an order granting the relief requested in the Motion without

further notice.  Failure to attend the Hearing in person or by counsel may result in relief being

granted or denied upon default.  In the event that no Objection to the Motion is timely filed and

served, the relief requested in the Motion may be granted without a hearing before the Court.

**PLEASE TAKE FURTHER NOTICE** that any party failing to timely file

**and serve an Objection on or before the Objection Deadline in accordance with this notice**

**shall be forever barred from asserting any objection to the Motion, including with respect**

**to the sale of the Debtor's assets free and clear of any liens, claims, encumbrances and**

**other interests.**

<div style="border:1px solid black; padding:10px">

### NO SUCCESSOR OR TRANSFEREE LIABILITY

**PLEASE TAKE FURTHER NOTICE** that the proposed Order provides that neither
Buyer will have responsibility for any successor liability, including the following:

Neither Buyer is a "successor" to, continuation of or alter ego of, the Debtor, its estate
or SVB Global by reason of any theory of law or equity.  Except for any Permitted Restriction,
neither Buyer shall assume or be deemed to assume, or in any way be responsible for, any
liability or obligation of any of the Debtor, its estate or SVB Global, or any of the Debtor's or

</div>

SVB Global's predecessors or affiliates with respect to the Interests or otherwise; provided that, for the avoidance of doubt, the foregoing shall not discharge or otherwise modify any existing Liability of SVB India.  The purchase of the Interests by Buyers will not cause either Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtor, SVB Global or their respective businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line or other law, rule, regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's or SVB Global's liability under such law, rule or regulation or doctrine, whether now known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans and receivables among the Debtor and its affiliates, and any taxes, arising, accruing or payable under, out of, in connection with or in any way relating to the cancellation of debt of the Debtor, SVB Global or their Affiliates, or in any way relating to the ownership of any of the Interests prior to the Closing Date, other than any Permitted Restriction.

All capitalized terms used in this section but otherwise not defined herein shall have the meanings set forth in the proposed Order.  The summary descriptions in this notice are qualified in their entirety by the terms of the proposed Sale Order (including, without limitation, Paragraphs P and 22 (no successor liability) and 23–25 (prohibition on actions against Buyers) thereof), and, to the extent of any inconsistencies between the Order and the summary descriptions in this notice, the Order shall control in all respects.

**PLEASE TAKE FURTHER NOTICE** that this notice is subject to the fuller terms and conditions of the Motion and the Order, and the Debtor encourages parties-in-interest to review such documents in their entirety.  Copies of the Motion and the Order may be obtained from the Court's website, https://ecf.nysb.uscourts.gov, for a nominal fee, or obtained free of charge by accessing the website of the Debtor's claims and noticing agent, https://restructuring.ra.kroll.com/svbfg/.

Dated: March 19, 2024
      New York, New York

_/s/ James L. Bromley_

James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:     bromleyj@sullcrom.com
              dietdericha@sullcrom.com
              jensenc@sullcrom.com

_Counsel to the Debtor_

**Hearing Date:  April 9, 2024 at 10:00 a.m. ET**
**Objection Deadline:  April 2, 2024 at 4:00 p.m. ET**

James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Counsel to the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| SVB FINANCIAL GROUP,[1] | : | Case No. 23-10367 (MG) |
| Debtor. | : | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO SELL SVB INDIA BY (A) SELLING PARTNERSHIP INTERESTS IN SVB INDIA FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND (B) CAUSING NON-DEBTOR SUBSIDIARY TO SELL PARTNERSHIP INTERESTS IN SVB INDIA; (II) APPROVING THE DEBTOR'S ENTRY INTO, AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

SVB Financial Group, as debtor and debtor-in-possession (the "Debtor"), hereby submits this motion (this "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), sections 105(a), 362, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), rules 2002, 4001(a), 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1]    The last four digits of SVB Financial Group's tax identification number are 2278.

rule 2002-1, 6004-1, 6006-1, 9006-1 and 9013-1 of the Local Rules for the United States

Bankruptcy Court for the Southern District of New York (the "Local Rules"), and the *Guidelines*

*for the Conduct of Asset Sales*, adopted by General Order M-331, dated September 5, 2006, as

amended by General Order M-383, dated November 18, 2009, and as updated on June 17, 2013

(the "Sale Guidelines"), (a) authorizing the Debtor to sell SVB India (as defined below) by

(i) causing its direct, non-debtor subsidiary, SVB Global Financial, Inc. ("SVB Global" and,

together with the Debtor, "Sellers"), to sell 98.12% of the issued and outstanding limited liability

partnership interests (the "Global Interests") of non-debtor SVB Global Services India LLP

("SVB India") to First Citizens Global I, Inc., a Delaware corporation ("Global I") and

(ii) selling 1.88% of the issued and outstanding limited liability partnership interests (the "Debtor

Interests" and, together with the Global Interests, the "Interests") of SVB India to First Citizens

Global II, Inc., a Delaware corporation ("Global II", and together with Global I, "Buyers"), free

and clear of any liens, claims, interests and encumbrances, all on the terms and subject to the

conditions set forth in the Purchase Agreement (as defined below) (together with all other

transactions contemplated by the Purchase Agreement, the "Sale Transaction"), (b) authorizing

and approving the Debtor's entry into, and performance under, the Purchase and Sale Agreement

(together with any schedules and exhibits thereto, the "Purchase Agreement"), dated as of

March 18, 2024, by and among the Debtor, SVB Global, SVB India, Buyers and First Citizens

BancShares, Inc., solely in its capacity as guarantor pursuant to certain sections therein ("First

Citizens Parent", and together with Buyers, the "Buyer Group"), a copy of which is attached

hereto as Exhibit B, (c) authorizing and approving the assumption and assignment of certain

executory contracts, and (d) granting related relief.  In support of the Motion, the Debtor submits

the declaration of William C. Kosturos attached hereto as Exhibit C (the "Kosturos

Declaration"). Certain facts supporting this Motion are set forth in the filed *Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [D.I. 21] and *Supplemental Declaration of William C. Kosturos in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* [D.I. 43] (the "First Day Declarations"). In further support of the Motion, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The Debtor seeks authority to sell SVB India, including all the partnership interests in SVB India owned by the Debtor and its wholly-owned subsidiary, SVB Global, for $21.8 million in cash, subject to certain adjustments as of the closing date and a holdback of $2 million for the Indemnity Escrow Funds and $3 million for the Repatriation Funds Escrow Fund (the "Purchase Price"). SVB India, a wholly-owned subsidiary of the Debtor, was established in 2019 as an IT and operations services provider for the Debtor and its Affiliates based in Bangalore, India. Prior to the commencement of this Chapter 11 Case (as defined below), SVB India developed technology projects and services, and engaged in development and support for core functional areas of the Debtor including technology, human resources, finance and loan operations.

2. On March 10, 2023, the California Department of Financial Protection and Innovation closed Silicon Valley Bank and appointed the Federal Deposit Insurance Corporation as the receiver (the "FDIC-R") of Silicon Valley Bank. The FDIC-R subsequently transferred all deposits and substantially all assets of Silicon Valley Bank to a newly created, FDIC-R-operated bridge bank, Silicon Valley Bridge Bank, National Association ("Bridge Bank"). On March 27, 2023, First Citizens Parent, the holding company of First-Citizens Bank & Trust Company ("First-Citizens"), announced that First-Citizens had entered into an agreement with the FDIC-R to purchase a substantial portion of Bridge Bank's assets and all deposit account liabilities.

-3-

3.      Before Silicon Valley Bank was placed in to FDIC receivership, SVB India provided services to Silicon Valley Bank globally, including Silicon Valley Bank UK Limited (acquired by HSBC UK Bank in March 2023) and the international branches of Silicon Valley Bank (which currently remain with the FDIC-R).

4.      In the months after Silicon Valley Bank was placed into the FDIC receivership and the commencement of this Chapter 11 Case, SVB India experienced significant workforce attrition as a number of its employees, who are highly specialized and in demand in India, resigned amid the uncertainty surrounding SVB India's future trajectory.  SVB India continued to provide back-office functions to Bridge Bank, and later to First-Citizens as the purchaser of legacy Silicon Valley Bank assets.

5.      In the few months after First-Citizens acquired legacy Silicon Valley Bank assets, SVB India wound down the services to HSBC UK Bank and the international branches of Silicon Valley Bank.  Since the Petition Date, SVB India has provided some services to the Debtor and its foreign subsidiaries, albeit on a significantly reduced basis because the Debtor has since transitioned to new internal support, and the Debtor's foreign subsidiaries are, with one exception, no longer active and in the process of being wound-down and liquidated.  After the proposed sale of SVB India contemplated herein, SVB India will support the Debtor's foreign subsidiaries for a very short transition period with the expectation that the Debtor will find replacement sources for this limited support.

6.      In June 2023, following its acquisition of certain assets of Bridge Bank, First-Citizens expressed to the Debtor its interest in purchasing SVB India to achieve synergies with the Silicon Valley Bank business that SVB India had serviced and that continued to account for a substantial majority of SVB India's operations.  Over the following months, the Debtor

engaged in conversations with First-Citizens about a potential sale of SVB India and also

reached out to and held discussions with other potential strategic buyers in an effort to obtain a

higher or otherwise better offer for SVB India.  The Debtor, however, did not receive any

indications of interest from those other parties.

7.      In August 2023, the Buyer Group submitted an offer to purchase SVB

India.  In the subsequent several months, the Debtor engaged in arm's-length, good-faith

negotiations with the Buyer Group regarding the terms of a sale of SVB India, as documented in

the Purchase Agreement.  The Debtor, in consultation with the restructuring committee of its

Board of Directors (the "Restructuring Committee"), considered the Buyer Group's seriousness

of interest in acquiring, and financial capacity to acquire, SVB India, the Buyer Group's

positioning as the most logical acquiror for a business that currently predominantly services the

Buyer Group and its affiliates, the Purchase Price offered and strategic alternatives for SVB

India.  Ultimately, the Debtor, in the exercise of its business judgment and upon the approval and

recommendation of the Restructuring Committee, concluded that the Sale Transaction would

maximize the value of SVB India for the Debtor's estate.

## Background

8.      On March 17, 2023, the Debtor filed with the Court a voluntary petition

for relief under the Bankruptcy Code (this "Chapter 11 Case").  The Debtor continues to operate

its businesses and manage its properties as debtor-in-possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  On March 28, 2023, William K. Harrington, the United States

Trustee for Region 2 (the "U.S. Trustee"), appointed an Official Committee of Unsecured

Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code [D.I. 72].

9.      Additional factual background relating to the Debtor's businesses and the

commencement of this Chapter 11 Case is set forth in the First Day Declarations.

## Overview of the Purchase Agreement

10.     On March 18, 2024, Sellers, SVB India and the Buyer Group executed the

Purchase Agreement, which contains the following material terms:[2]

| | |
|---|---|
| **Parties** | <u>Sellers</u>:  SVB Global Financial, Inc. and SVB Financial Group<br><br><u>Buyers</u>:  First Citizens Global I, Inc. and First Citizens Global II, Inc.<br><br><u>Guarantor</u>:  First Citizens BancShares, Inc.<br><br>***See* Purchase Agreement, Preamble** |
| **Purchase Price** | The Purchase Price consists of (a) an amount in cash equal to $433,962.26, as the aggregate consideration for all of the Debtor Interests and (b) an amount in cash equal to $21,366,037.74 *minus* an amount up to $8,944,165 for any amounts outstanding owed by the Debtor and its Affiliates to First-Citizens and its Affiliates contemplated by that certain invoice attached to the Purchase Agreement as Schedule 2.2(d), $3,000,000 of which is to be placed in escrow in accordance with the Purchase Agreement.  The aggregated consideration is allocated between each Seller pro rata based on the partnership interests of SVB India held by such Seller.<br><br>***See* Purchase Agreement, § 2.2** |
| **SVB India** | Assets of Sellers to be sold pursuant to the Purchase Agreement consist of the Global Interests and the Debtor Interests.<br><br>***See* Purchase Agreement, §§ 2.1** |
| **Assumption and Assignment of Executory Contracts** | At the Closing, the Debtor will assume and assign to any of SVB India, First Citizens Parent, First-Citizens, Global I or Global II, as designated by Buyers (each such assignee, a "<u>Designated Assignee</u>"), and such Designated Assignee(s) will accept assignment of, the entirety of Sellers' right, title and interest in and to and obligations under each contract listed on Section 2.4(a) of the Disclosure Schedules as of the Closing (each such contract, an "<u>Assumed Contract</u>").<br><br>At Closing, Buyers will promptly pay all the amount required to be paid with respect to each Assumed Contract to cure all monetary defaults under such Assumed Contract, if any, as determined by the Bankruptcy Court, to the extent required by Section 365(b) of the Bankruptcy Code and otherwise satisfy all requirements to assign such Assumed Contract imposed by section 365(f) of the Bankruptcy Code (the actual amount of such costs with respect to such Assumed Contract, as applicable, the "<u>Cure Costs</u>"), which will not be the obligation, liability or responsibility of the Debtor, and Buyers will have delivered evidence of Buyers' ability |

---

[2]     This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement shall govern in all respects.  Capitalized terms used in this summary but not defined herein are to be given the meanings ascribed to them in the Purchase Agreement.

| | |
|---|---|
| | to comply with Section 365 of the Bankruptcy Code, including adequate assurance of future performance, in connection with the assumption and assignment of the Assumed Contracts.<br><br>*See* **Purchase Agreement, §§ 2.4** |
| **Escrow Fund** | Buyers, Sellers and the Escrow Agent will enter into an Escrow Agreement at the Closing, pursuant to which Global I will deposit $2,000,000 of the Purchase Price into the designated escrow account, to be held until the six-month anniversary of the Closing Date, unless any claims are then pending, in which case an amount equal to the aggregate dollar amount of such claims shall be retained by the Escrow Agent in the Indemnity Escrow Fund until such claims are no longer pending, as funds to compensate Buyer Indemnified Parties for amounts due and owing in accordance with Article X and Article XI of the Purchase Agreement.<br><br>Global I will pay, on behalf of the Debtor, $3,000,000 to the Escrow Agent by wire transfer of immediately available funds (the "Repatriation Funds Escrow Fund") to be kept in a segregated account for the payment of the Debtor's repatriation obligations under a fully executed Bilateral Advance Pricing Agreement approved by Buyers as required in Section 6.3 of the Purchase Agreement. The Repatriation Funds Escrow Fund will be released in accordance with the Escrow Agreement.<br><br>*See* **Purchase Agreement, §§ 2.2(e) and 10.10** |
| **Set-off of Intercompany Indebtedness** | At the Closing, the Indebtedness owed to SVB India by the Debtor as of the Closing will be offset against the amount outstanding as of the Closing owed to the Debtor by SVB India that is unable to be paid until receipt of the RBI Approval.<br><br>*See* **Purchase Agreement, § 6.7(e)(vi)** |
| **Closing Date** | The closing of the Transactions will take place by remote communication, commencing at 10:00 a.m. New York time on the fifth (5th) Business Day following the satisfaction or waiver of all conditions to the obligations of the Parties to consummate the Transactions to be performed on the Closing Date (other than conditions that by their nature are to be satisfied at the Closing) (the "Closing") or such other date as the Parties may mutually determine (the "Closing Date").<br><br>*See* **Purchase Agreement, § 2.1(b)** |
| **Conditions to Closing** | In addition to customary closing conditions, the consummation of the Sale Transaction is subject to, among other things, (a) the entry of a Sale Order by the Bankruptcy Court approving the Transactions and the Sale Order having become a Final Order, being in full force and effect and not subject to a stay and (b) preliminary approval issued by the Unit Approval Committee formed for the special economic zones established under the SEZ Act and rules framed under it in the state of Karnataka, India for the transfer of Global Interests from SVB Global to Global I and Debtor Interests from the Debtor to Global II as contemplated under the Purchase Agreement.<br><br>*See* **Purchase Agreement, Article VII** |

| | |
|---|---|
| **Release** | Subject to Section 10.4(f) of the Purchase Agreement, and except for claims for indemnification against a manager or employee of SVB India for gross negligence, each Seller agrees not to make, directly or indirectly, and waives, any claim for indemnification against SVB India by reason of the fact that such Seller was a partner, member, trustee, manager, director, officer, employee or agent of SVB India or was serving at the request of SVB India as a partner, member, trustee, manager, director, officer, employee or agent of another entity with respect to any Proceeding brought by any Buyer, SVB India, or otherwise against such Seller or any Affiliate thereof (whether such Proceeding is pursuant to the Purchase Agreement or otherwise). |
| | Subject to Section 10.4(f) of the Purchase agreement, effective as of the Closing, each Seller, on its own behalf and on behalf of its respective beneficiaries, Related Persons, estate, successors and assigns (collectively, the "Seller Releasors") , will release Buyers, First Citizens Parent, First-Citizens and SVB India (and their respective Affiliates and Related Persons, and each of their respective employees, directors, partners, members, managers, shareholders, officers, agents, attorneys, representatives, predecessors, successors, related entities, assigns and the like and any Person acting by, through, under or in concert with any of them) from any and all Losses and Proceedings, in any such case, arising from or substantially relating to the management or operation of SVB India prior to the Closing Date; except for Losses arising from and after the Execution Date directly related to a breach of the Purchase Agreement by Buyers. The foregoing releases only relate to the management or operations of SVB India and do not relate to the management or operations of the Debtor, Silicon Valley Bank, Silicon Valley Bridge Bank, N.A. or First-Citizens or their respective former or current Affiliates (other than SVB India). |
| | *See* **Purchase Agreement, § 10.5** |
| **Indemnification by Sellers** | After the Closing and subject to the terms and conditions of Article X of the Purchase Agreement, each Seller, jointly and severally, will indemnify each Buyer, SVB India and their respective Affiliates and their respective Representatives (collectively, the "Buyer Indemnified Parties") from and against, and pay and reimburse Buyer Indemnified Parties for, all Losses incurred by the Buyer Indemnified Parties, relating to or arising from: (a) any breach of, or inaccuracy in, any representation or warranty made by any Seller or SVB India in the Purchase Agreement, any Transaction Document or any certificate delivered by any Seller or SVB India pursuant to the Purchase Agreement or any Transaction Document; (b) any failure to perform any pre-Closing covenant or agreement of SVB India or any covenant or agreement of any Seller in the Purchase Agreement or any Transaction Document; (c) Tax Litigation; and (d) any Company Transaction Expenses. |
| | Sellers will have no Liability with respect to the matters described in clause (a) or (b) above unless and until the total of all Losses with respect to such matters exceeds $250,000 (the "Basket"), at which point Sellers will be obligated to indemnify the Buyer Indemnified Parties for all Losses that exceed the Basket; provided, however, that any claim relating |

|  | to any Fundamental Representation will not be subject to the Basket. Sellers will have no Liability with regards to Section 4.15 (Tax) of the Purchase Agreement, except to the extent of Losses relating to or arising from Willful Breach of such sections. |
|  | The maximum aggregate amount to which the Buyer Indemnified Parties shall be entitled to Losses under clause (a) above shall not exceed $2,000,000 (the "Cap"); provided, however, that any claim relating to any Fundamental Representation will not be subject to or counted towards the Cap. |
|  | For the avoidance of doubt, from and following the Plan Effective Date, (i) any obligation of the Sellers in Article X of the Purchase Agreement will be the obligation of the Liquidating Trust, and (ii) none of the Debtor, NewCo or SVB Global will have any indemnification obligations under the Purchase Agreement from and after the Plan Effective Date. |
|  | *See* **Purchase Agreement, Article X** |
| **Indemnification by Buyers** | From and after the Closing and subject to the terms and conditions of Article X of the Purchase Agreement, each Buyer, jointly and severally, will indemnify and hold harmless the Sellers and their respective Affiliates and their respective Representatives ("Seller Indemnified Parties") from, and pay and reimburse the Seller Indemnified Parties for, all Losses suffered or incurred by, or imposed on, the Seller Indemnified Parties, directly or indirectly, relating to or arising from (a) any breach or inaccuracy of any representation or warranty made by a Buyer in the Purchase Agreement, any Transaction Document or any certificate delivered by any Buyer pursuant to the Purchase Agreement or any Transaction Document; or (b) any failure to perform any covenant or agreement of a Buyer in the Purchase Agreement or any Transaction Document; provided that Seller Indemnified Parties' right to indemnification under clause (a) is subject to the Basket and the Cap, except with respect to certain specified representations and warranties. |
|  | *See* **Purchase Agreement, Article X** |
| **Administrative Expense Priority for Buyer Indemnified Parties** | Any claim payable by the Debtor to a Buyer Indemnified Party in accordance with the terms of Article X of the Purchase Agreement is an allowed claim with administrative priority against the Debtor under sections 503(b) and 507(a)(2) under the Bankruptcy Code and will be so classified in any Chapter 11 plan proposed by the Debtor. |
|  | *See* **Purchase Agreement, § 10.11** |
| **Liquidating Trust as Successor to Sellers** | Without the consent of Buyers or First-Citizens Parent, from and following the Plan Effective Date, Sellers' obligations and rights will be assigned to the Liquidating Trust and/or NewCo in accordance with Section 12.4 of the Purchase Agreement, provided that Sellers will not assign or otherwise transfer ownership of, or title to, the Interests to any Person prior to the Closing. |
|  | *See* **Purchase Agreement, § 12.4** |
| **Notice of Acquisition Proposals** | If prior to the Closing or termination of the Purchase Agreement, any Seller Party receives any submissions or proposals or offers from any |

| | |
|---|---|
| | Person other than Buyers relating to any sale of SVB India or the Business howsoever structured, whether as an acquisition or purchase of all or any part of the equity securities of any Seller Party that is not an individual or any material part of the Business, or SVB India's assets or properties (other than the sale or other disposition of such assets or properties in the Ordinary Course and not in violation of the Purchase Agreement) or the sale or issuance of any equity securities of any Seller Party that is not an individual, or any merger, combination, reorganization or consolidation of SVB India or any Seller that is not an individual, in each other case, that is not otherwise contemplated by the terms of the Purchase Agreement or any inquiry regarding any such proposal from any Person, the Seller Parties or their respective Affiliates will promptly give notice thereof to Buyers and shall provide reasonable detail regarding the nature of such proposal or inquiry and such Seller Parties' (as applicable) response thereto.<br><br>***See*** **Purchase Agreement, § 6.5** |
| **Fiduciary Out** | The Purchase Agreement may be terminated by Sellers if the Restructuring Committee determines in good faith, and on the advice of counsel, that proceeding with the Transactions or failing to terminate the Purchase Agreement would be inconsistent with such committee's fiduciary duties.<br><br>***See*** **Purchase Agreement, § 8.1(c)** |
| **Guaranty** | First Citizens Parent guarantees to Seller Parties the full and prompt payment of all amounts due and payable by Global I and Global II under or in connection with the Purchase Agreement in accordance with the terms thereof.<br><br>***See*** **Purchase Agreement, § 12.16** |

## Extraordinary Provisions Under the Sale Guidelines

11.     The Purchase Agreement contains the following items that may be considered an "Extraordinary Provision" under the Sale Guidelines:

a.     <u>Private Sale/No Competitive Bidding</u>.  The Purchase Agreement does not contemplate any further auction or competitive bidding process with respect to the sale of SVB India.  As described in more detail herein and in the Kosturos Declaration, the Debtor believes that a private sale provides the best opportunity to maximize value for the Debtor's estate.  Further, as described in more detail below, the Debtor believes that the purchase price is fair and reasonable and any further marketing process would not yield material benefits.  The Debtor has conducted extensive negotiations with the Buyer Group.  The Debtor believes that the risks inherent to introducing potential alternative purchasers through an auction at this stage outweigh the certainty provided by the sale embodied in the Purchase Agreement.  The Debtor believes that proposing an alternative buyer would significantly impair the

Debtor's ability to sell SVB India in a timely manner and could result in loss of value to the Debtor's estate.

b.   <u>No Good Faith Deposit</u>.  No good faith deposit is being required of Buyers.

c.   <u>Requested Findings as to Successor Liability</u>.  The proposed Order includes certain findings that SVB India is being sold free of successor or similar liability.  *See* Order ¶¶ P, 12.  In light of the form and manner of the notice of this Motion (the "<u>Notice</u>"), including that the Notice contains an express disclosure regarding successor liability findings in the Sale Order, the Debtor believes affected parties will have sufficient notice of the sale and, therefore, inclusion of successor liability findings in the Sale Order is appropriate and reasonable, especially balanced against the Sale Transaction's benefits to the Debtor's estate.

d.   <u>Relief from Bankruptcy Rule 6004(h)</u>.  The Debtor seeks waiver of the 14-day stay provided in Bankruptcy Rule 6004(h) on the grounds set forth below.

## **Jurisdiction**

12.   The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the Southern District of New York, dated January 31, 2012.  Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the relief requested herein are sections 105(a), 362, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(a), 6004, 6006, 9007, 9008 and 9014, Local Rules 2002-1, 6004-1, 6006-1, 9006-1 and 9013-1 and the Sale Guidelines.

## **Relief Requested**

13.   By this Motion, the Debtor seeks entry of the Order, substantially in the form attached hereto as <u>Exhibit A</u>, (a) authorizing the Debtor to sell SVB India by (i) causing SVB Global to sell the Global Interests to Global I and (ii) selling the Debtor Interests to Global II free and clear of any liens, claims, interests and encumbrances, all on the terms and subject to the conditions set forth in the Purchase Agreement; (b) authorizing and approving the Debtor's

entry into, and performance under, the Purchase Agreement; (c) authorizing and approving the

assumption and assignment of the Assumed Contracts; and (d) granting related relief.

## Basis for Relief

I.    **The Court Should Approve the Sale Transaction and the Debtor's Entry into the Purchase Agreement Under 11 U.S.C. § 363(b).**

14.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that

"[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 363 does not provide a

standard establishing when it is appropriate for bankruptcy courts to authorize such a sale of a

debtor's assets.  Courts, however, have held that such a sale may be authorized under section

363(b) of the Bankruptcy Code if the Court finds a sound business purpose for the sale.  *See In re

Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) ("[T]here must be some articulated

business justification, other than appeasement of major creditors, for using, selling or leasing

property out of the ordinary course of business before the bankruptcy judge may order such

disposition under section 363(b).").

15.    In evaluating whether a sale under section 363(b) is justified by a sound

business purpose, courts consider a variety of factors which essentially amount to a business

judgment test.  *See In re Glob. Crossing Ltd.*, 295 B.R. 726, 744 (Bankr. S.D.N.Y. 2003) (citing

*Dai-Ichi Kangyo Bank, Ltd.* v. *Montgomery Ward Holding Corp. (In re Montgomery Ward

Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999)); *Official Comm. of Subordinated

Bondholders* v. *Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y.

1992) (holding that Delaware's business judgment rule principles have "vitality by analogy" in

chapter 11).  The business judgment rule "is a presumption that in making a business decision

the directors of a corporation acted on an informed basis, in good faith and in the honest belief

-12-

that the action taken was in the best interests of the company." *In re Integrated Res.*, 147 B.R. at 656 (quoting *Smith* v. *Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

16.    Additionally, courts consider the following factors in determining whether a proposed sale satisfies the requirements of section 363(b):  (a) whether adequate and reasonable notice of the sale was provided to interested parties; (b) whether the sale contemplates a fair and reasonable price; and (c) whether the purchaser is proceeding in good faith. *See In re Boston Generating, LLC*, 440 B.R. 302, 330 (Bankr. S.D.N.Y. 2010); *In re Gen. Motors Corp.*, 407 B.R. 463, 493–94 (Bankr. S.D.N.Y. 2009).

A.    A Sound Business Justification Exists for the Sale Transaction.

17.    The assessment of whether there are sufficient business reasons to justify a particular sale depends on the "facts and circumstances" of each case. *In re Allard*, No. 18-14092 (MG), 2019 Bankr. LEXIS 2924, at *10 (Bankr. S.D.N.Y. Sept. 20, 2019).  Factors for a bankruptcy court to consider include, without limitation:  "the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value." *In re Lionel*, 722 F.2d at 1071.

18.    Moreover, Bankruptcy Rule 6004(f)(1) permits a debtor to conduct private sales or sales without an auction and courts in this district have held that a debtor may conduct a private sale when a good business reason exists. *See, e.g.*, *In re Voyager Digital Holdings, Inc.*, No. 22-10943 (MEW) (Aug. 16, 2022), D.I., 300 (approving the private sale of equity interests in a cryptocurrency payment processing company); *In re LSC Commc'ns, Inc.*, No. 20-10950

(SHL) (Oct. 20, 2020), D.I. 901 (approving the private sale of a manufacturing facility); *In re The McClatchy Company*, No. 20-10418 (MEW) (May 18, 2020), D.I. 458 (approving the private sale of real property); *In re Internap Technology Solutions Inc.*, No. 20-22393 (RDD) (May 5, 2020), D.I. 194 (approving the private sale of a data center and associated assets).

19.     In its sound business judgment, the Debtor has determined that consummating the Sale Transaction on a private basis pursuant to the Purchase Agreement is appropriate in light of the facts and circumstances of this Chapter 11 Case and is in the best interest of its estate and all parties-in-interest.  *See* Kosturos Declaration ¶ 3.  A public auction would require the Debtor to incur substantial additional costs, and the Debtor does not believe an auction would result in additional value sufficient to justify the incurrence of such costs.  *See* Kosturos Declaration ¶ 3.  Further, the proposed Sale Transaction would best preserve the value of SVB India as a going concern.  *See* Kosturos Declaration ¶ 3.  As such, the Debtor submits that a good business reason exists for conducting a private sale under the circumstances and that the proposed Sale Transaction is justified by a sound business purpose.

B.    Adequate and Reasonable Notice of the Sale Transaction Was Provided to Interested Parties.

20.     Notice of this Motion has been provided to the following parties:  (a) the U.S. Trustee; (b) counsel to the Committee; (c) the Securities and Exchange Commission; (d) all taxing authorities having jurisdiction over SVB India; (e) the United States Department of Justice; (f) the United States Attorney for the Southern District of New York; (g) the Federal Deposit Insurance Corporation; (h) the Board of Governors of the Federal Reserve System; (i) all persons and entities known by the Debtor to have expressed interest to the Debtor in acquiring all or a material portion of SVB India during the past 12 months; (j) all persons and entities known by the Debtor to have asserted any lien, claim, interest or encumbrance on, in, to or against SVB

-14-

India for whom identifying information and addresses are available to the Debtor); (k) any other applicable governmental entities or self-regulatory organizations; (l) the parties identified on the Debtor's list of 30 largest unsecured creditors; (m) the non-Debtor counterparties to all executory contracts that the Debtor proposes to assume or assume and assign in connection with the Sale Transaction; and (n) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties").  The Debtor submits that all parties with an interest in the Sale Transaction have been given adequate notice and that no other or further notice need be provided.

C.   The Sale Transaction Will Produce a Fair and Reasonable Purchase Price for SVB India.

21.    The Purchase Price represents a fair and reasonable value for SVB India. A court-approved auction process is not required under the Bankruptcy Code, Bankruptcy Rules or Local Rules.  *See, e.g.*, *In re The Great Atl. & Pac. Tea Co., Inc.*, 544 B.R. 43, 49‒50 (Bankr. S.D.N.Y. 2016) ("[T]here is no rule that . . . asset sales are . . . conditioned on [a requirement to be subject to a formal auction], which does not appear in the Bankruptcy Code or Bankruptcy Rules.  The [Sale Guidelines] . . . stat[e] that . . . the Court does not express a preference for public sales over private sales as a means to maximize the sale price.") (internal citations and quotations omitted).

22.    The Debtor submits that the terms of the Purchase Agreement and the Purchase Price are fair and reasonable.  The Debtor was faced with unique circumstances where SVB India, a back-office support center which primarily provides customized services for Silicon Valley Bank, was not sold together with Silicon Valley Bank to First-Citizens in the transaction arranged by the FDIC-R.  The Debtor's subsequent outreach to strategic buyers other than First-Citizens did not generate other offers for SVB India.  The Debtor determined based on

-15-

its consideration of strategic alternatives for SVB India in consultation with A&M that the

Purchase Price represented a fair and reasonable price for SVB India, especially in light of the

Buyer Group's serious interest in acquiring SVB India based on potential synergies with the

Buyer Group and its affiliates.  The Debtor does not believe that there is a reasonable likelihood

that any materially improved offer could be obtained through a more extensive or public sale

process at this time.

    D.  <u>The Parties Have Acted in Good Faith and Buyers Should Be Entitled to the Good
Faith Protections of Section 363(m) of the Bankruptcy Code</u>.

    23.  Section 363(m) of the Bankruptcy Code protects a good faith purchaser's

interest in property purchased from the debtor notwithstanding that authorization of the sale

conducted under section 363(b) is later reversed or modified on appeal.  Specifically, section

363(m) provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or not
> such entity knew of the pendency of the appeal, unless such
> authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m).

    24.  Section 363(m) "furthers the policy of finality in bankruptcy sales" and

"assists bankruptcy courts in maximizing the price for assets sold in such proceedings," *United

States* v. *Salerno*, 932 F.2d 117, 123 (2d Cir. 1991), by providing that "good faith transfers of

property will not be affected by the reversal or modification on appeal of an unstayed order,

whether or not the transferee knew of the pendency of the appeal," *Allstate Ins. Co.* v. *Hughes*,

174 B.R. 884, 888 (S.D.N.Y. 1994).  While the Bankruptcy Code does not define "good faith,"

the Second Circuit has held that a purchaser's good faith is shown by the integrity of such

purchaser's conduct during the course of the sale proceedings and that where there is a lack of

-16-

such integrity, a good faith finding may not be made.  *See, e.g.*, *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (holding that a "purchaser's good faith is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders'") (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)) (citations omitted); *see also Parker* v. *Motors Liquidation Co. (In re Motors Liquidation Co.)*, 430 B.R. 65, 78 (S.D.N.Y. 2010) (applying the standard for a good faith purchaser set forth in *In re Gucci*).

25.     The Debtor submits that the terms and conditions of the Purchase Agreement have been negotiated at arm's length without any indication of fraud or collusion between Sellers and Buyers.  Neither Buyer is an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code, and the Debtor believes that neither Buyer has engaged in any conduct that would indicate or constitute a lack of good faith.  *See* Kosturos Declaration ¶ 11.  Accordingly, the Debtor requests the finding that each Buyer is a good faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

## II.     The Sale of the Debtor Interests Should Be Free and Clear of Liens, Claims, Interests and Encumbrances Under Section 363(f) of the Bankruptcy Code.

26.     The Debtor also requests authorization to sell the Debtor Interests free and clear of all Encumbrances, other than any transfer restriction under applicable federal or state securities Laws, or Indian securities Laws (any such restriction, a "Permitted Restriction"), in accordance with section 363(f) of the Bankruptcy Code, with any such Encumbrances attaching to the proceeds of the sale of the Debtor Interests.

27.     The sale of estate property free and clear of any interest is governed by section 363(f) of the Bankruptcy Code, which provides:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1)    applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)    such entity consents;

(3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)    such interest is in bona fide dispute; or

(5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

28.    Section 363(f) of the Bankruptcy Code is drafted in the disjunctive: approval of a proposed sale of assets free and clear of interests requires only that one of the five requirements be satisfied with respect to each such interest.  *See In re Borders Grp., Inc.*, 453 B.R. 477, 483–84 (Bankr. S.D.N.Y. 2011); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[I]f any of the five conditions of § 363(f) are met, the [debtor] has the authority to conduct the sale free and clear of all liens.").

29.    The Debtor submits that the proposed sale of the Debtor Interests satisfies one or more of the requirements of section 363(f) of the Bankruptcy Code.  All parties-in-interest will have sufficient opportunity to object to the relief requested in this Motion, and parties that do not object or withdraw their objections to the Sale Transaction or to this Motion should be deemed to have consented to the Motion and the Sale Transaction within the meaning of section 363(f)(2) of the Bankruptcy Code.  *In re Borders Grp., Inc.*, 453 B.R. at 484 ("Under section 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens."); *In re Elliot*, 94 B.R. at 345–46.  With respect to any party that objects to the proposed sale of the Debtor Interests and does not withdraw such objection, the Debtor expects

-18-

that it will be able to satisfy one or more of the other conditions set forth in section 363(f).

30.    A sale of the Debtor Interests free and clear of liens, claims, interests and encumbrances is necessary to maximize the value of SVB India.  Not selling the Debtor Interests free and clear of all Encumbrances (other than any Permitted Restriction) would adversely impact the Debtor's efforts to maximize the value of its estate.  Buyers would not have entered into the Purchase Agreement and would not consummate the Sale Transaction if the Debtor Interests were not sold to Buyers free and clear of all Encumbrances (other than any Permitted Restriction).  *See* Kosturos Declaration ¶ 12.

31.    Furthermore, any Encumbrances on, in, to or against the Debtor Interests existing immediately prior to the Closing (other than any Permitted Restriction) will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party-in-interest.  The Debtor submits that holders of any such Encumbrances will be sufficiently protected by the availability of the proceeds of the sale of the Debtor Interests to satisfy their liens, claims, interests and encumbrances.  Accordingly, the Debtor submits that the sale of the Debtor Interests free and clear of Encumbrances (other than any Permitted Restriction) is in the best interests of the Debtor's estate and stakeholders.

### III.    The Assumption and Assignment of the Assumed Contracts Should Be Approved.

32.    Section 365 of the Bankruptcy Code provides that a debtor-in-possession may generally assume and assign any executory contract of the debtor, subject to approval of the court, if it:  (a) cures, or provides adequate assurance that it (or its assignee) will promptly cure, the applicable defaults and (b) provides adequate assurance of future performance under such contract, including by its assignee.  11 U.S.C. § 365.  Courts employ the business judgment

standard in determining whether to approve a debtor's decision to assume or reject an executory

contract. *See, e.g.*, *Mission Prod. Holdings* v. *Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019)

(noting that a bankruptcy court will generally approve a debtor's choice to assume or reject an

executory contract under the deferential business judgment rule) (citation omitted); *NLRB* v.

*Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *Orion Pictures Corp.* v. *Showtime Networks (In

re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) ("[A] bankruptcy court reviewing a

. . . debtor-in-possession's decision to assume or reject an executory contract should . . . apply its

best 'business judgment' to determine if it would be beneficial or burdensome to the estate to

assume it.") (citation omitted).

33.    The "business judgment" standard is not a strict standard; it requires only

a showing that either assumption or rejection of the executory contract will benefit the debtor's

estate. *See Orion Pictures*, 4 F.3d at 1098–99; *In re Balco Equities, Inc.*, 323 B.R. 85, 99

(Bankr. S.D.N.Y. 2005) ("In determining whether the debtor has employed reasonable business

discretion, the court for the most part must only determine that the rejection will likely benefit

the estate.") (quoting *In re G Survivor Corp.*, 171 B.R. 755, 758 (Bankr. S.D.N.Y. 1994), *aff'd*,

187 B.R. 111 (S.D.N.Y. 1995)); *see also In re Genco Shipping & Trading Ltd.*, 509 B.R. 455,

463 (Bankr. S.D.N.Y. 2014) ("A court will generally not second-guess a debtor's business

judgment regarding whether the assumption or rejection of a contract will benefit the debtor's

estate.") (citations omitted).  Debtors are afforded significant discretion when requesting to

assume or reject an executory contract. *See, e.g.*, *Androse Assocs. of Allaire, LLC* v. *Great Atl.

& Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, 472 B.R. 666, 673 (S.D.N.Y. 2012)

(concluding that courts may approve a debtor's lease assumption decision "[a]s long as

assumption of a lease appears to enhance a debtor's estate" and the debtor's decision is not

"clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code")
(citation omitted).

34.    Assuming and assigning the Assumed Contracts to the Designated
Assignee(s) is an appropriate exercise of the Debtor's business judgment.  Upon consummation
of the Sale Transaction, the Assumed Contracts will no longer have any value to the Debtor.  By
assuming and assigning the Assumed Contracts to the Designated Assignee(s), the Debtor will be
able to maximize the value to its estate from the Sale Transaction while avoiding any damages
claims that would arise from the rejection of the Assumed Contracts.  The Debtor therefore
submits that the assumption and assignment of the Assumed Contracts to the Designated
Assignee(s) is an appropriate exercise of the Debtor's business judgment and should be
approved.

35.    The consummation of the Sale Transaction will be contingent upon the
Debtor's compliance with the requirements of section 365 of the Bankruptcy Code.
Section 365(b)(1) requires that any outstanding defaults under the contracts to be assumed be
cured or that the debtor provide adequate assurance that such defaults will be promptly cured.  11
U.S.C. § 365(b)(1).  Pursuant to Section 2.4 of the Purchase Agreement, Buyers will, at or prior
to the Closing, cure any and all defaults under the Assumed Contracts so that such Assumed
Contracts may be assigned by the Debtor to the Designated Assignee(s) .

36.    Additionally, section 365(f)(2) of the Bankruptcy Code provides that
"[t]he trustee [or debtor-in-possession] may assign an executory contract or unexpired lease of
the debtor only if . . . adequate assurance of future performance by the assignee of such contract
or lease is provided, whether or not there has been a default in such contract or lease."  11 U.S.C.
§ 365(f)(2).  Courts in this district have held that "[a]dequate assurance of future performance are

-21-

not words of art, but are to be given practical, pragmatic construction." *In re U.L. Radio Corp.*,
19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). "What constitutes 'adequate assurance' is to be
determined by factual conditions." *Id.* (citations omitted). The chief concern is "the assignee's
ability to satisfy [its proposed] financial obligations." *Id.* Adequate assurance does not,
however, require "'an absolute guarantee of performance'; rather, 'it must simply appear that the
[payments] will be paid and other . . . obligations met. . . . The emphasis is on protection.'" *In re
Great Atl. & Pac. Tea Co.*, 472 B.R. at 674–75 (citing *In re M. Fine Lumber Co.*, 383 B.R. 565,
573 (Bankr. E.D.N.Y. 2008)). Courts have found that adequate assurance of future performance
may be provided by evidencing the assignee's financial resources, its willingness to devote
sufficient funding to give the assignee a strong likelihood of succeeding and experience of its
management in operating a business similar to that of the assignee. *See In re Bygaph, Inc.*, 56
B.R. 596, 605–06 (Bankr. S.D.N.Y. 1986); s*ee also In re Bronx-Westchester Mack Corp.*, 20
B.R. 139, 143 (Bankr. S.D.N.Y. 1982) (determining that the assignee's financial status and
assumption of the debtor's ongoing obligations constituted adequate assurance of future
performance).

     37.    As set forth above, the Buyer Group is well-situated to consummate the
Sale Transaction and have provided adequate assurance of future performance under the
Assumed Contracts. First Citizens Parent, as the guarantor of performance of Buyers'
obligations under the Purchase Agreement, is one of the top 20 U.S. financial institutions with
over $200 billion in assets following First-Citizens' acquisition of certain assets and liabilities of
Silicon Valley Bank on March 27, 2023. As of May 10, 2023, First Citizens Parent had over
$214 billion in assets and $195 billion in liabilities. As one of the largest financial institutions in
the U.S., First Citizens Parent is well-capitalized. The Buyer Group's strong financial position,

coupled with its long operating history, is more than sufficient to constitute adequate assurance

of future performance under section 365 of the Bankruptcy Code.

38.     In addition, to facilitate the assumption and assignment of the Assumed

Contracts, the Debtor further requests that the Court find that all applicable anti-assignment

provisions, whether such provisions expressly prohibit or have the effect of restricting or limiting

assignment of such contract or lease, to be unenforceable and prohibited pursuant to section

365(f) of the Bankruptcy Code.  Section 365(f)(1) provides in part that, "notwithstanding a

provision in an executory contract or unexpired lease of the debtor, or in applicable law, that

prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign

such contract or lease . . . ."  11 U.S.C. § 365(f)(1).  Section 365(f)(3) further provides that:

> Notwithstanding a provision in an executory contract or unexpired
> lease of the debtor, or in applicable law that terminates or modifies,
> or permits a party other than the debtor to terminate or modify, such
> contract or lease or a right or obligation under such contract or lease
> on account of an assignment of such contract or lease, such contract,
> lease, right, or obligation may not be terminated or modified under
> such provision because of the assumption or assignment of such
> contract or lease by the trustee.

11 U.S.C. § 365(f)(3).

39.     Based on the foregoing, the Debtor's assumption and assignment of the

Assumed Contracts in connection with the Sale Transaction satisfies the requirements under

section 365 of the Bankruptcy Code and should be approved.

### Bankruptcy Rules 4001(a)(3), 6004(a), 6004(h) and 6006(d)

40.     The Debtor requests that the Court (a) find that the notice of the Motion is

adequate under Bankruptcy Rule 6004(a) under the circumstances and (b) waive the 14-day stay

under Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d).  The proposed Sale Transaction

should be consummated as soon as practicable to allow the Debtor to maximize the value of SVB

India, reduce closing uncertainty and expeditiously recover value for its estate and stakeholders.

Accordingly, the Debtor requests that the Order be effective immediately upon entry and that the

14-day stay imposed by Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d) be waived.

### Notice

41.    Notice of this Motion has been provided to the Sale Notice Parties.  The

Debtor submits that, in light of the nature of the relief requested, no other or further notice need

be provided.

### Conclusion

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests

that the Court (a) enter the Order and (b) grant such other and further relief as is just and proper.

Dated: March 19, 2024
     New York, New York

*/s/ James L. Bromley*
James L. Bromley
Andrew G. Dietderich
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:        bromleyj@sullcrom.com
              dietdericha@sullcrom.com
              jensenc@sullcrom.com


*Counsel to the Debtor*

**<u>EXHIBIT A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____ x
                                        :
In re                                   :     Chapter 11
                                        :
                                        :     Case No. 23-10367 (MG)
SVB FINANCIAL GROUP,[1]                 :
                                        :
                    Debtor.             :
                                        :
_____ x

**ORDER (I) AUTHORIZING THE DEBTOR TO SELL SVB INDIA BY**
**(A) SELLING PARTNERSHIP INTERESTS IN SVB INDIA FREE AND CLEAR**
**OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND**
**(B) CAUSING NON-DEBTOR SUBSIDIARY TO SELL PARTNERSHIP**
**INTERESTS IN SVB INDIA; (II) APPROVING THE DEBTOR'S ENTRY INTO,**
**AND PERFORMANCE UNDER, THE PURCHASE AND SALE AGREEMENT;**
**(III) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN**
**CONTRACTS; AND (IV) GRANTING RELATED RELIEF**

Upon the motion [D.I. ●] (the "Motion")[2] of SVB Financial Group, as debtor and debtor-

in-possession (the "Debtor"), for entry of an order (this "Sale Order") (a) authorizing the Debtor

to sell SVB India by (i) causing its direct, non-debtor subsidiary, SVB Global Financial, Inc.

("SVB Global"), to sell 98.12% of the issued and outstanding limited liability partnership interests

of non-debtor SVB Global Services India LLP ("SVB India") to First Citizens Global I, Inc., a

Delaware corporation ("Global I"), and (ii) selling 1.88% of the issued and outstanding limited

liability partnership interests of SVB India to First Citizens Global II, Inc., a Delaware corporation

("Global II" and, together with Global I, "Buyers") free and clear of any liens, claims, interests

and encumbrances, all on the terms and subject to conditions set forth in the Purchase Agreement

(as defined below) (together with all other transactions contemplated by the Purchase Agreement,

---

[1]     The last four digits of SVB Financial Group's tax identification number are 2278.

[2]     Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion or
        the Purchase Agreement (as defined below), as applicable.

the "Sale Transaction"), (b) authorizing and approving the Debtor's entry into, and performance under, the Purchase and Sale Agreement, dated as of March 18, 2024, by and among the Debtor, SVB Global, SVB India, Buyers and First Citizens BancShares, Inc. ("First Citizens Parent", and together with Buyers, the "Buyer Group") a copy of which is attached as Exhibit B to the Motion (together with any schedules and exhibits thereto, the "Purchase Agreement"), (c) authorizing and approving the assumption and assignment of certain executory contracts, and (d) granting related relief; and the Debtor having determined that Global I, together with Global II, each an acquisition vehicle formed by First Citizens Parent, submitted the highest or otherwise best offer for SVB India; and a hearing on the sale of SVB India (the "Sale Hearing") having been held on April 9, 2024, to review and consider (a) the Motion and all relief requested therein and related thereto, (b) the Purchase Agreement, (c) the declaration of William C. Kosturos filed at D.I. [●] in support of this Sale Order and (d) any objections thereto that were not resolved prior to the start of the Sale Hearing; and upon the record of the Sale Hearing and all of the proceedings had before this Court; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference M-431* from the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.); and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion and the relief requested therein has been provided in accordance with the Bankruptcy Rules and the Local Rules, and that, except as otherwise expressly ordered herein, no other or further notice is necessary; and objections (if any) to the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    <u>Jurisdiction</u>.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    <u>Statutory and Rule Predicates</u>.  The statutory and other legal predicates for the relief requested in the Motion and for the approvals and authorizations set forth herein are sections 105(a), 362, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(a), 6004, 6006, 9007, 9008 and 9014, Local Rules 2002-1, 6004-1, 6006-1, 9006-1 and 9013-1 and the *Guidelines for the Conduct of Asset Sales*, adopted by General Order M-331, dated September 5, 2006, as amended by General Order M-383, dated November 18, 2009, and as updated on June 17, 2013 (the "<u>Sale Guidelines</u>").

C.    <u>Final Order</u>.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d), and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein and authorizes the immediate closing of the Sale Transaction contemplated hereby without regard to any stay or delay in its implementation.

D.    <u>Sale Notice</u>.  As shown by the affidavits of service filed with this Court and the representations or proffers made on the record at the Sale Hearing, the Debtor has provided due, good, proper, timely, reasonable, adequate, appropriate and sufficient notice of, and sufficient

---

[3]    The findings of fact and the conclusions of law stated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

opportunity to object to, the Motion and the relief requested therein, the Sale Hearing, the Sale

Transaction, the Purchase Agreement, and the proposed entry of this Sale Order, all in compliance

with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local

Rules.    Such notice was timely, proper, adequate, appropriate and sufficient under the

circumstances of this Chapter 11 Case and complied with the orders of this Court and no other or

further notice is necessary or shall be required.

E.    <u>Opportunity to Object</u>.  A fair and reasonable opportunity to object to and

be heard regarding the relief requested in the Motion and granted by this Sale Order, including,

but not limited to, the Sale Transaction and the Purchase Agreement, has been afforded to all

interested parties, including, but not limited to, the Sale Notice Parties.

F.    <u>Good Faith of Buyers and the Buyer Group; No Collusion</u>.  Buyers are not

"insiders" of the Debtor within the meaning of section 101(31) of the Bankruptcy Code. The Sale

Transaction, including the Purchase Agreement, was negotiated, proposed and entered into by the

Debtor, SVB Global, SVB India and the Buyer Group without collusion, in good faith, and from

arm's-length bargaining positions, and is substantively and procedurally fair to all parties.  The

Debtor's decision to (a) enter into (and cause SVB Global to enter into) the Purchase Agreement,

(b) seek entry of this Sale Order and (c) proceed to consummate (and cause SVB Global to proceed

to consummate) the Sale Transaction was made by the Restructuring Committee of its Board, each

member of which is (x) an independent director and (y) disinterested with respect to the Sale

Transaction.

G.    None of the Buyer Group has acted in a collusive manner, and the purchase

price was not controlled by any agreement among bidders.  Among other things, the Buyer Group

(a) recognized that the Debtor is free to deal with any other party interested in acquiring SVB India;

and (b) disclosed all material payments to be made by the Buyer Group to the Debtor and SVB Global and any other agreements or arrangements entered into by the Buyer Group and the Debtor or SVB Global in connection with the Sale Transaction. Buyers are purchasing SVB India in good faith and for reasonably equivalent value and are good-faith buyers within the meaning of section 363(m) of the Bankruptcy Code. Buyers are therefore entitled to all of the protections afforded under section 363(m), have proceeded in good faith in all respects in connection with this proceeding, and would not have entered into the Purchase Agreement and would not consummate the Sale Transaction if Buyers were not granted all of the protections afforded under section 363(m) of the Bankruptcy Code.

H.    None of the Debtor, SVB Global, SVB India or the Buyer Group has engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or otherwise violated section 363(n) of the Bankruptcy Code by any action or inaction.

I.    <u>Highest or Otherwise Best Offer</u>. The Debtor and its advisors appropriately and fairly engaged in a good-faith process to solicit offers for SVB India. The offer to purchase SVB India made by Buyers, on the terms and subject to the conditions set forth in the Purchase Agreement: (a) was made in good faith; (b) is the highest or otherwise best offer obtained for SVB India and will provide a greater recovery for the Debtor's estate than would be provided by any other reasonably available alternative; (c) is for fair, adequate and sufficient consideration that constitutes reasonably equivalent value for SVB India being conveyed to Buyers; (d) is fair and reasonable; (e) is in the best interests of the Debtor's estate and its creditors; and (f) would not have been made by Buyers absent the protections afforded to Buyers by this Sale Order.

J.     The Debtor's determination that the Sale Transaction, pursuant to the Purchase Agreement, provides the highest or otherwise best offer for SVB India, and its related decisions to sell the Debtor Interests, and cause SVB Global to sell the Global Interests, constitutes a reasonable, good-faith exercise of the Debtor's business judgment.  The facts and circumstances described in the Motion and the additional evidence adduced in connection with the Sale Hearing demonstrate the Debtor has articulated sound business reasons for consummating and causing SVB Global to consummate the Sale Transaction and for selling and causing the sale of SVB India outside of a chapter 11 plan.  It is a reasonable, good-faith exercise of the Debtor's business judgment to execute, deliver and consummate, and to cause SVB Global to execute, deliver and consummate, the Purchase Agreement and the related or ancillary agreements thereto or contemplated thereby, including the Assignment and License Agreement (as defined in the Purchase Agreement) (such ancillary agreements, the "Ancillary Agreements") and the Sale Transaction, as authorized by this Sale Order.

K.     No *Sub Rosa* Plan.  The Sale Transaction, the Purchase Agreement and the other transactions contemplated thereby do not constitute a *sub rosa* chapter 11 plan.  The Sale Transaction neither impermissibly restructures the rights of the Debtor's creditors nor dictates the terms of any chapter 11 plan for the Debtor.

L.     Fair Consideration.  The consideration provided by Buyers to the Debtor and SVB Global in exchange for the sale of SVB India pursuant to the Purchase Agreement (a) is fair and reasonable, (b) constitutes the highest or otherwise best offer for SVB India and (c) constitutes the provision of reasonably equivalent value, fair saleable value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act or any similar law (including

common law) of the United States, any state, territory or possession of the United States, including the District of Columbia, or any foreign jurisdiction (collectively, "Fraudulent Transfer Laws") to each of the Debtor and SVB Global.  No other person or entity or group of entities has offered to purchase SVB India for higher or otherwise better value to SVB Global and the Debtor's estate than Buyers.  Approval of the Purchase Agreement and the consummation of the Sale Transaction contemplated thereby is in the best interests of the Debtor, its estate and its creditors.

M.      The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under any Fraudulent Transfer Laws.  None of the Debtor, SVB Global, SVB India or the Buyer Group are entering into the Purchase Agreement or undertaking the Sale Transaction fraudulently for the purpose of any applicable Fraudulent Transfer Laws.

N.      Corporate Power and Authority.  The Debtor and SVB Global have, to the extent necessary and applicable, (a) all requisite corporate or similar power and authority to execute and deliver the Purchase Agreement, the Ancillary Agreements and all other documents contemplated thereby, (b) all requisite corporate or similar power and authority as a corporation or other legal entity necessary to consummate the transactions contemplated by the Purchase Agreement and the Ancillary Agreements and (c) taken all organizational and similar action necessary to authorize and approve the Purchase Agreement and the consummation of the Sale Transaction.  The Sale Transaction contemplated by the Purchase Agreement has been duly and validly authorized by all necessary corporate or other applicable action.  No consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor and SVB Global to consummate the Sale Transaction.

O.    <u>Title to Assets</u>.  The Debtor Interests constitute property of the Debtor's

estate and rights, title and interests thereto are currently vested solely in the Debtor's estate

pursuant to, and within the meaning of, section 541(a) of the Bankruptcy Code, and no other person

or entity has any ownership right, title or interest in the Debtor Interests.  The transfer of the

Debtor's rights, title and interests to the Debtor Interests to Global II on the terms and subject to

the conditions of the Purchase Agreement and this Sale Order will be, as of the Closing (as defined

in the Purchase Agreement), a legal, valid and effective transfer of such rights, title and interests

in the Debtor Interests, which transfer vests or will vest Global II with all rights, title and interests

of the Debtor to the Debtor Interests free and clear of all Encumbrances (as defined in the Purchase

Agreement), other than any transfer restriction under any applicable United States' federal or state

securities Laws, or Indian securities Laws (any such transfer restriction, a "<u>Permitted Restriction</u>").

P.    <u>No Merger; No Successor Liability</u>.  Neither Buyer is a successor to or a

mere continuation of the Debtor or its estate or SVB Global and there is no continuity of enterprise

or common identity between Buyers, on the one hand, and the Debtor or SVB Global, on the other

hand.  Neither Buyer is holding itself out to the public as a successor to or a continuation of the

Debtor, its estate or SVB Global.  Neither Buyer is a successor to the Debtor, its estate or SVB

Global by reason of any theory of law or equity, and the Sale Transaction does not amount to a

consolidation, succession, merger or de facto merger of Buyers, on the one hand, and the Debtor

or SVB Global, on the other hand.  The transfer of the Interests to Buyers, except as otherwise

explicitly set forth in the Purchase Agreement, does not, and will not, subject Buyers to any

liability whatsoever, with respect to the Debtor, SVB Global or the operation of their respective

businesses prior to the Closing or by reason of such transfer, including under the laws of the United

States, any state, territory or possession thereof, or the District of Columbia, or any foreign

jurisdiction, based, in whole or in part, directly or indirectly, on any, or any theory of, successor, vicarious, antitrust, environmental, revenue, pension, ERISA, tax, labor (including any WARN Act), employment or benefits, de facto merger, business continuation, substantial continuity, alter ego, derivative, transferee, veil piercing, escheat, continuity of enterprise, mere continuation, product line or products liability or law, or other applicable law, rule or regulation (including filing requirements under any such law, rule or regulation), or theory of liability, whether legal, equitable or otherwise.

Q.    <u>Satisfaction of Section 363(f) Standards</u>.    With respect to the Debtor Interests, the conditions of section 363(f) of the Bankruptcy Code have been satisfied in full, and upon entry of this Sale Order, the Debtor is authorized to transfer all of its right, title and interest in and to the Debtor Interests free and clear of all Encumbrances (other than any Permitted Restriction).

R.    The Debtor may sell the Debtor Interests free and clear of all Encumbrances (other than any Permitted Restriction) because, in each case, one or more of the standards set forth in section 363(f)(l)–(5) of the Bankruptcy Code has been satisfied.  Holders of Encumbrances against the Debtor, its estate or the Debtor Interests who did not timely object, or who withdrew their objections, to the Sale Transaction or the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code (other than with respect to any Permitted Restriction). All other holders of Encumbrances (other than with respect to any Permitted Restriction) against the Debtor, its estate or the Debtor Interests are adequately protected by having their Encumbrances, if any, in each instance against the Debtor, its estate or the Debtor Interests, attach to the net cash proceeds of the Sale Transaction ultimately attributable to the Debtor Interests in which such holder alleges an Encumbrance, in the same order of priority, with the same validity,

force and effect that such Encumbrances had prior to the Sale Transaction, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

S.    Buyers would not have entered into the Purchase Agreement and would not consummate the Sale Transaction if the sale of the Debtor Interests were not free and clear of all Encumbrances (other than any Permitted Restriction). Buyers will not consummate the Sale Transaction unless this Court expressly orders that none of Buyers, First Citizens Parent, or the Debtor Interests will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or in equity, or by payment, setoff, recoupment, or otherwise, directly or indirectly, any Encumbrances asserted or assertable now or in the future against the Debtor Interests, other than any Permitted Restriction. The total consideration to be provided under the Purchase Agreement reflects Buyers' reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363 of the Bankruptcy Code, with title to, interest in and possession of the Debtor Interests free and clear of all Encumbrances other than any Permitted Restriction.

T.    <u>Assumption and Assignment of the Assumed Contracts</u>. The Debtor and the Designated Assignees have satisfied, to the extent necessary, the requirements of section 365 of the Bankruptcy Code, including subsections 365(b)(1)(A), 365(b)(1)(B) and 365(f), in connection with the assumption and assignment of the Assumed Contracts. The Designated Assignees have demonstrated adequate assurance of future performance with respect to the Assumed Contracts pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The assumption and assignment of the Assumed Contracts pursuant to the terms of this Sale Order is in the best interests of the Debtor and its estate, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. The Designated Assignees shall, to the extent necessary, provide compensation or adequate assurance of compensation, which amount will be

paid to non-Debtor counterparties to the Assumed Contracts for any actual pecuniary loss to any such party resulting from a default prior to the date of assumption and assignment with respect to the Assumed Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. Except where an Assumed Contract is subject to an unresolved objection to the assumption and assignment of such Assumed Contract, payment of the Cure Costs, if any, as set forth herein and the Designated Assignee's promise to perform the obligations under such Assumed Contract after the Closing Date shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Assumed Contracts are assignable notwithstanding any provisions contained therein to the contrary.

U.       Except as otherwise set forth herein, any objections to the assumption and assignment of any of the Assumed Contracts to the Designated Assignees are hereby overruled. Any objections to the Cure Costs are resolved as set forth herein. To the extent that any counterparty failed to timely object to its Cure Cost or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Cost and the assignment of its Assumed Contract to the respective Designated Assignee.

V.       Waiver of Bankruptcy Rule 4001(a)(3), 6004(h) and 6006(d). Good and sufficient reasons for approval of the Purchase Agreement and the Sale Transaction have been articulated. The relief requested in the Motion, with respect to the sale of SVB India, is in the best interests of the Debtor, its estate and its creditors. The Debtor has demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale Transaction other than in the ordinary course of business, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code before, and outside of, a chapter 11 plan, in that, among other

things, the immediate consummation of the Sale Transaction is necessary and appropriate to maximize the value of the Debtor's estate. Accordingly, there is cause to lift the stay contemplated by Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d) with respect to the Sale Transaction. To maximize the value of SVB India and preserve the viability of the Business, it is essential that the Sale Transaction be consummated as soon as possible and, in any case, within the time constraints set forth in the Purchase Agreement. Time is of the essence in consummating the Sale Transaction and the Debtor, SVB Global, SVB India and the Buyer Group intend to close the Sale Transaction as soon as practicable. Given all of the circumstances of this Chapter 11 Case and the adequacy and fair value of the consideration under the Purchase Agreement, the proposed Sale Transaction constitutes a reasonable and sound exercise of the Debtor's business judgment and should be approved.

W.    The Purchase Agreement is a valid and binding contract among the Debtor, SVB Global, SVB India and the Buyer Group and shall be enforceable according to its terms. The consummation of the Sale Transaction is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f) and 363(m), to the extent applicable, and all of the applicable requirements of such sections have been complied with in respect of the Sale Transaction.

X.    <u>Personally Identifiable Information</u>. The Sale Transaction does not involve the sale of any personally identifiable information, as that term is defined in section 101(41A) of the Bankruptcy Code, with respect to which the Debtor, in connection with offering a product or service, disclosed to an individual a policy prohibiting the transfer of such personally identifiable information. Thus, the appointment of a consumer privacy ombudsman pursuant to

section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

    Y. <u>Legal and Factual Bases</u>.  The legal and factual bases set forth in the Motion and the evidence adduced in connection with the Sale Hearing establish just cause for the relief granted herein.  Entry of this Sale Order is in the best interests of the Debtor, its estate and its creditors.

    IT IS HEREBY ORDERED THAT:

**A.** **<u>General Provisions</u>**

    1. The Motion is GRANTED as set forth herein.

    2. All objections, responses, reservations of rights or requests for any continuances concerning the Motion or the relief requested therein with respect to the Purchase Agreement, the Sale Transaction, the entry of this Sale Order or the relief granted herein are resolved in accordance with the terms of this Sale Order or as set forth in the record of the Sale Hearing.  To the extent any such objections, responses, reservations of rights or requests for continuances were not otherwise withdrawn, waived, settled or resolved, any such objections, responses, reservations of rights and requests for continuances are hereby overruled and denied on the merits with prejudice.  All interested parties that failed to timely object are deemed to have consented to the relief granted herein for all purposes.

    3. Notice of the Motion, the Purchase Agreement, the Sale Transaction, including the sale of the Debtor Interests free and clear of all Encumbrances (other than any Permitted Restriction), and the Sale Hearing was fair, equitable, proper and sufficient under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(a), 6004 and 6006, Local Rules 2002-1, 6004-1, 6006-1, 9006-1 and 9013-1 and the Sale Guidelines.

**B.** **Approval of the Purchase Agreement**

4.      The Purchase Agreement and all ancillary documents (including all Ancillary Agreements), and all of the terms and conditions thereof, are hereby authorized and approved in all respects.  The failure to specifically include or make reference to any particular provision of the Purchase Agreement or any Ancillary Agreement in this Sale Order shall not impair the effectiveness of such provision, it being the intent of this Court that the Purchase Agreement, all Ancillary Agreements, and the Sale Transaction are authorized and approved in their entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase Agreement and any Ancillary Agreements, on the one hand, and this Sale Order, on the other hand.

5.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, to the extent applicable, the Debtor is authorized and empowered on behalf of itself and SVB Global to, or to cause SVB Global and its subsidiaries to, take any and all actions necessary or appropriate to (a) consummate the Sale Transaction to Buyers pursuant to and in accordance with the terms and subject to the conditions of the Purchase Agreement and this Sale Order, (b) close the Sale Transaction as contemplated in the Purchase Agreement and this Sale Order and (c) execute and deliver, perform under, consummate and implement the Purchase Agreement and the Ancillary Agreements.  Buyers shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement or any Ancillary Agreement.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order, including Section 6.7(e)(vi) of the Purchase Agreement; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto.

6.     The covenants and agreements of the Debtor and SVB Global in the Purchase Agreement shall be binding upon the successors and assigns of the Debtor and SVB Global in accordance with Section 12.4 of the Purchase Agreement, including the Liquidating Trust and NewCo, as applicable.

7.     This Sale Order shall be binding in all respects upon the Debtor, its estate, all creditors of, and holders of equity interests in, the Debtor, any holders of Encumbrances in, against or on all or any portion of the Debtor Interests (whether known or unknown), SVB Global, Buyers and all successors and assigns of Buyers with respect to SVB India and any trustees, if any, subsequently appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code of this Chapter 11 Case.

## C.     <u>Consummation of the Sale Transaction</u>

8.     Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtor is authorized to transfer all of its rights, title and interests in the Debtor Interests to Global II at the Closing, on the terms and subject to the conditions of the Purchase Agreement, and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, title and interests in the Debtor Interests and shall vest Global II with all of the Debtor's rights, title and interests in the Debtor Interests and, upon the Debtor's receipt of the SVBFG Interests Purchase Price (as defined in the Purchase Agreement), on the terms and subject to the conditions of the Purchase Agreement, shall be free and clear of all Encumbrances (other than any Permitted Restriction) and successor or successor-in-interest liability asserted against the Debtor Interests, with all such Encumbrances to attach to the net proceeds ultimately attributable to the property against or in which such Encumbrances are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, which such Encumbrances now have against the Debtor Interests, subject to any rights, claims and defenses the Debtor or its estate, as

applicable, may possess with respect thereto.  The provisions of this Sale Order authorizing and approving the transfer of the Debtor Interests free and clear of any Encumbrances (other than any Permitted Restriction) shall be self-executing, and neither the Debtor nor Global II shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Sale Order.

9.       The Debtor is further authorized to cause SVB Global to transfer all of its rights, title and interests in the Global Interests, and assign all of its rights, title and interests in the Global Interests, to Global I at the Closing, in accordance with the terms of the Purchase Agreement, and such transfer shall constitute a legal, valid, binding and effective transfer of such rights, title and interests in the Global Interests and shall vest Global I with all of SVB Global's rights, title and interests in the Global Interests.

10.      A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other Encumbrances of record, to the extent set forth herein.

11.      If any person or entity which has filed statements or other documents or agreements evidencing Encumbrances, in, against or on all or any portion of the Debtor Interests shall not have delivered to the Debtor prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all liens or interests, including any Encumbrances (other than any Permitted Restriction), which the person or entity has or may assert with respect to all or any portion of the Debtor Interests, the Debtor, Global II and each of their respective officers, employees and agents are hereby authorized

and empowered to execute and file such statements, instruments, releases and other documents on

behalf of such person or entity with respect to the Debtor Interests.

12.    This Sale Order is and shall be effective as a determination that, as of the

Closing, any Encumbrances (other than any Permitted Restriction) of any kind or nature

whatsoever existing as to the Debtor Interests prior to the Closing shall have been unconditionally

released, discharged and terminated from the Debtor Interests, and that the conveyances described

herein have been effected.  This Sale Order is and shall be binding upon and govern the acts of all

persons and entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials and all other

persons and entities who may be required by operation of law, the duties of their office or contract,

to accept, file, register or otherwise record or release any documents or instruments, or who may

be required to report or insure any title or state of title in or to any lease; and each of the foregoing

persons and entities is hereby directed to accept for filing any and all of the documents and

instruments necessary and appropriate to consummate the Sale Transaction.

## D.    <u>Assumption and Assignment of Contracts</u>

13.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and

subject to and conditioned upon the Closing, and payment of all Cure Costs, if any, the Debtor's

assumption and assignment to the Designated Assignees of the Assumed Contracts is hereby

approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto

are hereby deemed satisfied.

14.    The Debtor is hereby authorized and directed in accordance with sections

105(a), 363 and 365 of the Bankruptcy Code to (a) assume and assign to the Designated Assignees,

effective upon the Closing of the Sale Transaction, the Assumed Contracts, free and clear of all

liens, claims, interests and encumbrances of any kind or nature whatsoever, including all

Encumbrances, and (b) execute and deliver to the Designated Assignees such documents or other

instruments as the Designated Assignees deem may be necessary to assign and transfer the

Assumed Contracts to the Designated Assignees.

15.    With respect to the Assumed Contracts: (a) each Assumed Contract is an

executory contract or unexpired lease of nonresidential real property under section 365 of the

Bankruptcy Code; (b) the Debtor may assume each of the Assumed Contracts in accordance with

section 365 of the Bankruptcy Code; (c) the Debtor may assign each Assumed Contract in

accordance with sections 363 and 365 of the Bankruptcy Code and any provisions in any Assumed

Contract that prohibit or condition the assignment of such Assumed Contract or allow the party to

such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or

extension, or modify any term or condition upon the assignment of such Assumed Contract,

constitute unenforceable anti-assignment provisions which are deemed void and of no force and

effect solely with respect to the Sale Transaction; (d) upon payment of any Cure Cost, all

requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the

assignment to and assumption of each Assumed Contract have been satisfied by the respective

Designated Assignee; (e) the Assumed Contracts shall be transferred and assigned to, and

following the Closing, remain in full force and effect for the benefit of, the Designated Assignees,

notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or

conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code,

upon the Closing and the payment of the applicable Cure Cost, the Debtor shall be relieved from

any further liability with respect to the Assumed Contracts after such assignment to and

assumption by the Designated Assignees and (g) upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Designated Assignees shall be fully and irrevocably vested in all rights, titles and interests of the Debtor in each Assumed Contract, free and clear of any Encumbrances.

16.     The Debtor is authorized to enter into any amendment of an Assumed Contract on terms acceptable to the respective Designated Assignee and agreed to by the counterparty to such Assumed Contract in connection with the assumption and assignment of such Assumed Contract, and the assumption and assignment of the Assumed Contracts authorized by this Sale Order shall be of the Assumed Contracts, as so amended or modified.

17.     All defaults or other obligations of the Debtor under the Assumed Contracts arising or that have become due and not paid prior to the Closing that are required to be cured by section 365(b)(1) of the Bankruptcy Code (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured by the Designated Assignees at or before the Closing through the payment of the Cure Costs, if any.  To the extent that any counterparty to an Assumed Contract did not object to its Cure Cost or adequate assurance of future performance, such counterparty is deemed to have consented to such Cure Cost and the assumption and assignment of such Assumed Contract from the Debtor to the respective Designated Assignee.  The Designated Assignees shall enjoy all of the Debtor's rights, benefits, and privileges under their respective Assumed Contracts as of the Closing without the necessity to obtain any non-Debtor parties' written consent to the assumption or assignment thereof, except to the extent expressly contemplated in the Purchase Agreement.  To the extent any counterparty to an Assumed Contract failed to timely object to a Cure Cost, such Cure Costs shall

be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to or denying the validity and finality of the Cure Cost at any time.

18.     Upon the Debtor's assumption and assignment of the Assumed Contracts to the Designated Assignees under the provisions of this Sale Order and any additional orders of this Court and payment of any Cure Costs, no default shall exist under any Assumed Contract, and no counterparty to any Assumed Contract shall be permitted to (a) declare a default by the respective Designated Assignee under such Assumed Contract or (b) otherwise take action against the respective Designated Assignee, in each case, as a result of the Debtor's financial condition, bankruptcy or failure to perform any of their obligations under such Assumed Contract.  Each non-Debtor party to an Assumed Contract hereby is also forever barred, estopped and permanently enjoined from (i) asserting against the respective Designated Assignee, the Debtor or its estate, or its property, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing, or, against the respective Designated Assignee, the Debtor or its estate, or its property, any counterclaim, unexercised set-off or any other claim asserted or assertable against the Debtor and (ii) imposing or charging against the respective Designated Assignee any rent accelerations, assignment fees, increases or any other fees as a result of the Debtor's assumption and assignments to the respective Designated Assignee of such Assumed Contract.  The validity of such assumption and assignment of the Assumed Contracts shall not be affected by any dispute between the Debtor and the counterparties to the Assumed Contracts and any disputes regarding the Cure Costs of any Assumed Contract.

19.     Upon assignment of the Assumed Contracts to the Designated Assignees, the Debtor and its estate shall have no further liabilities or obligations with respect to any Assumed

Contract and all holders of such claims are forever barred and estopped from asserting such claims against the Debtor, its successors or assigns, or its and their property, assets or estates.

20.    The failure of the Debtor or any Designated Assignee to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtor's and such Designated Assignee's rights to enforce every term and condition of such Assumed Contract.

21.    In the event that the Sale Transaction does not close, none of the Assumed Contracts shall be assumed or assigned by virtue of this Sale Order, and they shall remain subject to further rejection, assumption and/or assignment in this Chapter 11 Case.

**E.    No Successor Liability**

22.    Neither Buyer is a "successor" to, continuation of or alter ego of, the Debtor, its estate or SVB Global by reason of any theory of law or equity.  Except for any Permitted Restriction, neither Buyer shall assume or be deemed to assume, or in any way be responsible for, any liability or obligation of any of the Debtor, its estate or SVB Global, or any of the Debtor's or SVB Global's predecessors or affiliates with respect to the Interests or otherwise; provided that, for the avoidance of doubt, the foregoing shall not discharge or otherwise modify any existing Liability (as defined in the Purchase Agreement) of SVB India.  The purchase of the Interests by Buyers will not cause either Buyer to be deemed a successor to, combination of, or alter ego of, in any respect, any of the Debtor, SVB Global or their respective businesses, or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, antitrust, environmental, labor law (including any WARN Act), employment or benefits law, de facto merger, business continuation, substantial continuity, successor, vicarious, alter ego, derivative or transferee liability, veil piercing, escheat, continuity of enterprise, mere continuation, product line or other law, rule, regulation (including filing requirements under any

such laws, rules or regulations), or under any products liability law or doctrine with respect to the

Debtor's or SVB Global's liability under such law, rule or regulation or doctrine, whether now

known or unknown, now existing or hereafter arising, whether fixed or contingent, whether

asserted or unasserted, whether legal or equitable, whether matured or unmatured, whether

contingent or noncontingent, whether liquidated or unliquidated, whether arising prior to or

subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or

otherwise, including, but not limited to, liabilities on account of warranties, intercompany loans

and receivables among the Debtor and its affiliates, and any taxes, arising, accruing or payable

under, out of, in connection with or in any way relating to the cancellation of debt of the Debtor,

SVB Global or their Affiliates, or in any way relating to the ownership of any of the Interests prior

to the Closing Date, other than any Permitted Restriction.

**F.    <u>Prohibition of Actions Against Buyers</u>**

23.    Except as expressly provided for in this Sale Order or the Purchase

Agreement, Buyers shall not have any liability or other obligation or responsibility of the Debtor

or any of its predecessors or Affiliates (as defined in the Purchase Agreement) arising, accruing or

payable under, out of, in connection with, or in any way relating to the Debtor Interests prior to

the Closing, including any Encumbrances that may become due or owing after the Closing Date

but that arise out of or relate to any act, omission, circumstance, breach, default or other event

occurring prior to the Closing Date.  For the avoidance of doubt, nothing herein shall discharge or

otherwise modify any existing Liability of SVB India.

24.    Except as expressly otherwise set forth in the Purchase Agreement and this

Sale Order, all persons and entities, including, but not limited to, all debt holders, equity security

holders, governmental, tax and regulatory authorities, lenders, trade creditors, employees,

litigation claimants and other creditors, holding Encumbrances against or in all or any portion of

the Debtor Interests hereby are forever barred, estopped and permanently enjoined from asserting

against Buyers, First Citizens Parent, their Affiliates, their successors or assigns, their property or

the Debtor Interests, such persons' or entities' Encumbrances in and to the Debtor Interests,

including, without limitation, the following actions with respect to such persons' or entities'

Encumbrances: (a) commencing or continuing in any manner any action or other proceeding

against Buyers or First Citizens Parent, their Affiliates, their successors or assigns or their assets

or properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award,

decree or order against Buyers, First Citizens Parent, their Affiliates, their successors or assigns or

their assets or properties; (c) creating, perfecting or enforcing any Encumbrances against Buyers,

First Citizens Parent, their Affiliates, their successors or assigns or their assets or properties;

(d) asserting any unexercised setoff or right of subrogation against any obligation due Buyers, First

Citizens Parent, their Affiliates, their successors or assigns or their assets or properties;

(e) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Sale Order, or the agreements or actions contemplated or

taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any

license, permit or authorization with respect to the Debtor Interests, subject to paragraph 28 below.

As of the Closing, each creditor is authorized and directed to execute such documents and take all

other actions as may be necessary to release any Encumbrances (other than any Permitted

Restriction) in or on the Debtor Interests, as provided for herein, as such Encumbrances may have

been recorded or may otherwise exist.

25.     All persons and entities are hereby forever prohibited and enjoined from

taking any action that would adversely affect or interfere with (a) the ability of the Debtor to sell

and transfer (or to cause SVB Global to sell and transfer) SVB India to Buyers and (b) the ability

of Buyers to acquire SVB India, in each case, in accordance with the terms of the Purchase Agreement and this Sale Order.

26.     Buyers have given substantial consideration under the Purchase Agreement for the benefit of the Debtor and its estate and SVB Global.  The consideration given by Buyers shall constitute valid and valuable consideration for the sale of (a) the Debtor Interests free and clear of all Encumbrances (other than any Permitted Restriction) and (b) SVB India.  The consideration provided by Buyers for SVB India under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

27.     Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to solely as the post-sale owner or operator of property after the date of this Sale Order.  In addition, nothing in this Sale Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Sale Order.  Notwithstanding the foregoing, nothing in this paragraph 27 shall (a) be interpreted to deem Buyers the successor to the Debtor or SVB Global under any state or federal law successor-liability doctrine with respect to any liabilities under police and regulatory statutes, laws or regulations; (b) be construed as a waiver by any party, including Buyers, of any applicable rights or defenses; or (c) be construed to create for any governmental entity any substantive right that does not already exist under law.

28.     Further, nothing in this Sale Order or Purchase Agreement authorizes the transfer or assignment of any governmental license, permit, registration, authorization or approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law as appropriate.

29.     Any claim payable by the Debtor to a Buyer Indemnified Party (as defined in the Purchase Agreement) in accordance with the terms of Article X of the Purchase Agreement shall be an allowed claim against the Debtor in this Chapter 11 Case granted administrative claim status pursuant to sections 503(b) and 507(a)(2) of the Bankruptcy Code.

30.     The Indemnity Escrow Fund (as defined in the Purchase Agreement) and the Repatriation Funds Escrow Fund (as defined in the Purchase Agreement) shall not constitute property of the Debtor unless and until released to the Debtor by the Escrow Agent (as defined in the Purchase Agreement) in accordance with the terms of the Purchase Agreement and the Escrow Agreement (as defined in the Purchase Agreement).

31.     The consideration provided by Buyers to the Debtor and SVB Global pursuant to the Purchase Agreement for SVB India (as detailed in Section 2.2 of the Purchase Agreement) constitutes reasonably equivalent value, fair saleable value and fair consideration for the Interests under the Fraudulent Transfer Laws.

32.     Buyers are undertaking the Sale Transaction without collusion and in good faith, within the meanings of sections 363(m) and (n) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale Transaction shall not affect the validity of the Sale Transaction, unless such authorization and such Sale Transaction are duly stayed pending such appeal.  Each Buyer is a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

33.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) this Chapter 11 Case, (b) any subsequent chapter 7 cases into which this Chapter 11 Case may be converted or (c) any related proceeding subsequent to entry of this

Sale Order shall conflict with or derogate from the provisions of the Purchase Agreement, the Ancillary Agreements or the terms of this Sale Order. In the event there is a conflict between this Sale Order and the Purchase Agreement or any Ancillary Agreement, this Sale Order shall control and govern. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in this Chapter 11 Case, the terms of this Sale Order shall control.

34. Notwithstanding the provisions of Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d) or any applicable provisions of the Local Rules, this Sale Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply, and the Debtor, SVB Global, SVB India and the Buyer Group are authorized and empowered to close the Sale Transaction immediately upon entry of this Sale Order.

35. The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court; provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate or any of the Debtor's creditors.

36. Pursuant to the terms of and subject to the conditions contained in Section 9.8 of the Purchase Agreement, following the Closing, the Debtor, SVB Global or the Debtor's trustee in bankruptcy and, in each case, any of their respective Representatives (as defined in the Purchase Agreement) shall have reasonable access to the Pre-Closing Records (as defined in the Purchase Agreement) for a Permitted Purpose (as defined in the Purchase Agreement) and in accordance with Section 9.8 of the Purchase Agreement, and Buyers shall cause SVB India to

retain a copy of the Pre-Closing Records for the time period set forth in Section 9.8 of the Purchase Agreement.

37.    This Court shall retain exclusive jurisdiction to, among other things, interpret, implement and enforce the terms and provisions of this Sale Order, the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith (including the Ancillary Agreements) to which the Debtor is a party or which has been assigned by the Debtor to a member of the Buyer Group or SVB India, and all of the transactions contemplated thereby, including, but not limited to, retaining jurisdiction to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale Transaction or the proceeds thereof.

38.    The Purchase Agreement shall be in full force and effect, regardless of the Debtor's lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

39.    No bulk sales law, bulk transfer law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes (as defined in the Purchase Agreement)) shall apply to the Sale Transaction or this Sale Order.

40.    The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the Sale Transaction.

41.    The Buyer Group are parties in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Sale Order and the Sale Transaction.

42.     Nothing in this Sale Order shall be deemed to waive, release, extinguish or estop the Debtor or its estate from asserting, or otherwise impair or diminish, any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any assets of the Debtor that are not the Interests or the Assumed Contracts.

43.     From time to time, as and when requested by another party to the Purchase Agreement, all parties to the Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as the requesting party may reasonably deem necessary or desirable to consummate the Sale Transaction, on the terms and subject to the conditions of the Purchase Agreement.

44.     All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

**IT IS SO ORDERED:**

Dated: _____
       New York, New York
                                        _____
                                        MARTIN GLENN
                                        Chief United States Bankruptcy Judge

# EXHIBIT B

**Purchase Agreement**

*Execution Version*

**PURCHASE AND SALE AGREEMENT**

**by and among**

**FIRST CITIZENS GLOBAL I, INC.,**

**FIRST CITIZENS GLOBAL II, INC.,**

**FIRST CITIZENS BANCSHARES, INC.,**

**SVB GLOBAL FINANCIAL, INC.,**

**SVB FINANCIAL GROUP,**

**and**

**SVB GLOBAL SERVICES INDIA LLP**

**March 18, 2024**

**TABLE OF CONTENTS**

Page

RECITALS ............................................................................................................................. 1

ARTICLE I DEFINITIONS ................................................................................................... 1

ARTICLE II SALE OF INTERESTS; CLOSING ................................................................ 15
    **2.1**       Sale of the Interests; Closing ........................................................... 15
    **2.2**       Transaction Consideration; Closing Payments ................................ 19
    **2.3**       Withholding ...................................................................................... 20
    **2.4**       Assumption and Assignment of Certain Contracts .......................... 20

ARTICLE III REPRESENTATIONS AND WARRANTIES REGARDING THE SELLERS ................ 22
    **3.1**       Organization and Authority ............................................................. 22
    **3.2**       Title ................................................................................................. 22
    **3.3**       No Conflicts .................................................................................... 23
    **3.4**       Government Approvals ..................................................................... 23
    **3.5**       Litigation ......................................................................................... 23
    **3.6**       No Brokers' Fees ............................................................................. 23
    **3.7**       Tax ................................................................................................... 23
    **3.8**       Indebtedness Owed to SVB India .................................................... 24
    **3.9**       No Other Representations or Warranties .......................................... 24

ARTICLE IV REPRESENTATIONS AND WARRANTIES REGARDING SVB INDIA ................... 24
    **4.1**       Organization; Qualification and Limited Liability Partnership Power ................ 24
    **4.2**       Authority ......................................................................................... 24
    **4.3**       Capitalization .................................................................................. 24
    **4.4**       No Conflicts .................................................................................... 25
    **4.5**       Government Approvals ..................................................................... 25
    **4.6**       Financial Statements ....................................................................... 25
    **4.7**       Absence of Certain Changes ........................................................... 25
    **4.8**       No Undisclosed Liabilities ............................................................. 27
    **4.9**       Title to and Sufficiency of Assets .................................................... 27
    **4.10**     Accounts Receivable ....................................................................... 27
    **4.11**     Real Property .................................................................................. 27
    **4.12**     Contracts ......................................................................................... 27
    **4.13**     Intellectual Property ....................................................................... 29
    **4.14**     Privacy and Data Security .............................................................. 30
    **4.15**     Tax ................................................................................................... 31
    **4.16**     Legal Compliance .......................................................................... 33
    **4.17**     Litigation ......................................................................................... 33
    **4.18**     Environmental ................................................................................. 33
    **4.19**     Employees ....................................................................................... 34
    **4.20**     Employee Benefits .......................................................................... 35
    **4.21**     Customers and Suppliers ................................................................. 36
    **4.22**     Transactions with Related Persons .................................................. 36
    **4.23**     Insurance ......................................................................................... 36
    **4.24**     Bank Accounts ................................................................................ 36
    **4.25**     Controls and Procedures ................................................................. 36
    **4.26**     No Brokers' Fees ............................................................................. 37
    **4.27**     No Acceleration of Rights and Benefits .......................................... 37

ARTICLE V REPRESENTATIONS AND WARRANTIES REGARDING THE BUYERS .................. 38
    5.1    Organization and Authority..................................................................................38
    5.2    No Conflicts ........................................................................................................38
    5.3    Government Approvals ........................................................................................38
    5.4    Litigation ............................................................................................................38
    5.5    Available Funds ..................................................................................................39
    5.6    No Brokers' Fees.................................................................................................39
    5.7    No Other Representations or Warranties ............................................................39

ARTICLE VI PRE-CLOSING COVENANTS ...................................................................................39
    6.1    Performance ........................................................................................................39
    6.2    Approvals and Consents......................................................................................39
    6.3    Operation of Business ........................................................................................40
    6.4    Pre-Closing Access ............................................................................................41
    6.5    Exclusivity..........................................................................................................41
    6.6    Confidentiality ....................................................................................................41
    6.7    Sale Order...........................................................................................................42
    6.8    Assumption and Assignment of Certain Assets .................................................43
    6.9    RBI Approval Application Review ......................................................................44

ARTICLE VII CLOSING CONDITIONS ..........................................................................................44
    7.1    Conditions to Each Party's Obligations.............................................................44
    7.2    Conditions to the Buyers' Obligations...............................................................44
    7.3    Conditions to the Sellers' Obligations...............................................................45
    7.4    Frustration of Closing Conditions ......................................................................45

ARTICLE VIII TERMINATION ........................................................................................................45
    8.1    Methods of Termination .....................................................................................45
    8.2    Effect of Termination .........................................................................................46

ARTICLE IX POST-CLOSING COVENANTS .................................................................................47
    9.1    Litigation Support ..............................................................................................47
    9.2    Tax Litigation .....................................................................................................47
    9.3    Confidentiality ....................................................................................................47
    9.4    Seller Undertakings ............................................................................................48
    9.5    Subsequent Actions and Post-Closing Filings ...................................................49
    9.6    Assistance with Financial Reporting..................................................................49
    9.7    Insurance Matters ...............................................................................................49
    9.8    Post-Closing Access...........................................................................................49
    9.9    Employee Matters ..............................................................................................50
    9.10    Post-Closing Services.........................................................................................50
    9.11    RBI Approval; Payment of SVB Financial Payable ..........................................51
    9.12    Bilateral Advance Pricing Agreement................................................................51

ARTICLE X INDEMNIFICATION.....................................................................................................51
    10.1    Indemnification by the Sellers............................................................................51
    10.2    Indemnification by the Buyers ...........................................................................52
    10.3    Survival and Time Limitations...........................................................................52
    10.4    Limitations on Indemnification...........................................................................52
    10.5    Claims Against SVB India; Release....................................................................53
    10.6    Indemnification Procedures; Third-Party Claims...............................................54
    10.7    Duty to Mitigate .................................................................................................56
    10.8    Other Indemnification Matters ...........................................................................56

**10.9**    Exclusive Remedy...................................................................................56
**10.10**  Escrow Arrangements............................................................................57
**10.11**  Administrative Expense Priority for Buyer Indemnified Parties ...........57
**10.12**  Assumption of Indemnification Obligations by Liquidating Trust .........57

ARTICLE XI TAX MATTERS.........................................................................57
**11.1**    Intentionally Omitted ............................................................................57
**11.2**    Tax Periods Ending on or Before the Closing Date ..............................57
**11.3**    Additional Tax Covenants.....................................................................58
**11.4**    Cooperation on Tax Matters..................................................................58
**11.5**    Certain Taxes .......................................................................................59
**11.6**    Tax Sharing Agreements .......................................................................59

ARTICLE XII MISCELLANEOUS ..................................................................59
**12.1**    Further Assurances................................................................................59
**12.2**    No Third-Party Beneficiaries ................................................................59
**12.3**    Entire Agreement .................................................................................59
**12.4**    Successors and Assigns.........................................................................59
**12.5**    Counterparts .........................................................................................60
**12.6**    Notices..................................................................................................60
**12.7**    Jurisdiction; Service of Process............................................................61
**12.8**    Governing Law......................................................................................62
**12.9**    Amendments and Waivers .....................................................................62
**12.10**  Severability ..........................................................................................62
**12.11**  Expenses...............................................................................................62
**12.12**  Construction .........................................................................................62
**12.13**  Specific Performance ...........................................................................63
**12.14**  No Recourse .........................................................................................63
**12.15**  No Limitation on Liquidation, Dissolution or Wind Down ...................63
**12.16**  Parent Guarantee ..................................................................................63

## EXHIBITS

Exhibit A       Form of Assignment and License Agreement
Exhibit B       Form of Escrow Agreement
Exhibit C       Form of Sale Order
Exhibit D       Form of Seventh Supplementary Deed
Exhibit E       Form of Sixth Supplementary Deed
Exhibit F       Form of Interest Assignment Agreement
Exhibit G      Form of Resignation Letter

4888-4564-6483 v.12.3

## PURCHASE AND SALE AGREEMENT

This Purchase and Sale Agreement (this "**Agreement**") is entered into as of March 18, 2024 (the "**Execution Date**"), by and among First Citizens Global I, Inc., a Delaware corporation, ("**Global I**"), First Citizens Global II, Inc., a Delaware corporation, ("**Global II**" and together with Global I, the "**Buyers**", and each, individually, a "**Buyer**"), First Citizens BancShares, Inc., solely in its capacity as guarantor pursuant to Section 12.16 ("**Parent**"), SVB Global Financial, Inc., a Delaware corporation ("**SVB Global**"), SVB Financial Group, a Delaware corporation ("**SVB Financial**" and along with SVB Global, the "**Sellers**" and each individually a "**Seller**"), and SVB Global Services India LLP ("**SVB India**"). Sellers and, solely with respect to pre-Closing covenants, representations, warranties and agreements, SVB India are sometimes referred to collectively herein as the "**Seller Parties**" and each, individually, as a "**Seller Party**."

## RECITALS

WHEREAS, the Sellers, collectively, are the legal and beneficial owners of 100% of the issued and outstanding partnership interests of SVB India (the "**Interests**");

WHEREAS, SVB Global is the sole legal and beneficial owner of 98.12% of the Interests (the "**Global Interests**"), and SVB Financial is the sole legal and beneficial owner of 1.88% of the Interests (the "**SVBFG Interests**");

WHEREAS, SVB Global is a wholly-owned subsidiary of SVB Financial;

WHEREAS, on March 17, 2023, SVB Financial commenced a voluntary proceeding under Chapter 11 of the Bankruptcy Code by filing a petition for relief in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") under the caption *In re SVB Financial Group* (Case No. 23-10367 (MG)) (the "**Bankruptcy Proceeding**"); and

WHEREAS, SVB Global desires to sell and convey all of the Global Interests to Global I, and Global I desires to purchase the Global Interests from SVB Global, and SVB Financial desires to sell and convey all of the SVBFG Interests to Global II, and Global II desires to purchase the SVBFG Interests from SVB Financial, in each case, in a sale authorized by the Bankruptcy Court pursuant to, inter alia, Sections 105, 363 and 365 of the Bankruptcy Code to the extent applicable, in accordance with the other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), upon the terms and conditions set forth in this Agreement and subject to entry of the Sale Order.

NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements set forth in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## ARTICLE I
## DEFINITIONS

"**Accounts Receivable**" means all trade and other accounts receivable owing to SVB India.

"**Acquisition Proposal**" is defined in Section 6.5.

"**Active Employees**" means all employees employed by SVB India, including employees on temporary leave of absence, including family medical leave, military leave, disability leave, sick leave or furlough.

"**Affiliate**" means, with respect to a specified Person, any other Person that directly or indirectly controls, is controlled by or is under common control with, the specified Person. The term "control" means (a) the possession, directly or indirectly, of the power to vote 10% or more of the securities or other Equity Interests of a Person having ordinary voting power, (b) the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, by Contract or otherwise or (c) being a director, officer, manager, executor, trustee or fiduciary (or their equivalents) of a Person or a Person that controls such Person; provided that, from and following the Plan Effective Date, none of SVB Financial, NewCo or SVB Global shall be an Affiliate of the Liquidating Trust for all purposes under this Agreement.

"**Affiliated Group**" means an affiliated group as defined in Code § 1504 (or any analogous combined, consolidated or unitary group under state, local or foreign income Tax Law).

"**Agreed Amount**" is defined in Section 10.6(b).

"**Agreement**" is defined in the opening paragraph.

"**Apostille**" is defined in Section 2.1(c)(x).

"**Apostille Convention**" is defined Section 2.1(c)(x).

"**Assignment and License Agreement**" means the Assignment and License Agreement dated as of the Closing Date, by and between First-Citizens, SVB Capital and the Sellers, substantially in the form attached hereto as <u>Exhibit A</u>.

"**Assignment Notice**" is defined in Section 2.4(b).

"**Assumed Contract Assumption and Assignment Motion**" is defined in Section 2.4(e).

"**Assumed Contracts**" is defined in Section 2.4(a).

"**Balance Sheet**" means the balance sheet of SVB India as of March 31, 2023, including the notes thereto, a copy of which is included in Section 4.6 of the Disclosure Schedules.

"**Balance Sheet Date**" means the date of the Balance Sheet.

"**Bank Accounts**" is defined in Section 4.24.

"**Bankruptcy and Equity Exception**" is defined in Section 3.1.

"**Bankruptcy Code**" means Title 11 of the United States Code.

"**Bankruptcy Court**" is defined in the recitals.

"**Bankruptcy Proceeding**" is defined in the recitals.

"**Bankruptcy Rules**" is defined in the recitals.

"**Basket**" is defined in Section 10.4(a).

"**Big Four Accounting Firms**" mean Ernst & Young, KPMG, Deloitte or PricewaterhouseCoopers or their respective associated firms in India.

"**Bilateral Advance Pricing Agreement**" is defined in Section 11.4.

"**Books and Records**" means any and all data, books, records, files, documents, instruments, papers, correspondence that can be reasonably and practically provided, journals, deeds, licenses, Permits, correspondence, applications, notices, and approvals of Governmental Body, computer files and programs, studies and reports, annual operating plans, budgets, monthly operating reports, operating logs, purchase orders, safety and maintenance manuals, incident reports, records, drawings, specifications, quality documentation and reports, environmental records, training records, procedures and similar items of SVB India, in each case: (a) in all formats in which they are reasonably and practically available, including electronic, where applicable; and (b) in the possession or control of Sellers.

"**Burdensome Condition**" is defined in Section 6.2(b).

"**Business**" means the performance of administrative services or functions by SVB India for banks and financial institutions and all other activities performed by SVB India as of the Execution Date.

"**Business Day**" means any day that is not a Saturday, Sunday or any other day on which banks are required or authorized by Law to be closed in New York, New York, or Raleigh, North Carolina.

"**Business Property**" is defined in Section 9.4.

"**Buyer**" and "**Buyers**" are defined in the opening paragraph.

"**Buyer Indemnified Parties**" is defined in Section 10.1.

"**Cap**" is defined in Section 10.4(b).

"**Change of Control Payments**" means payments which become due or are otherwise required to be made as a result of or in connection with the Closing, the Transactions, or as a result of any change of control.

"**Claim Notice**" is defined in Section 10.6(b).

"**Claimed Amount**" is defined in Section 10.6(b).

"**Closing**" is defined in Section 2.1(b).

"**Closing Date**" is defined in Section 2.1(b).

"**Closing Date Indebtedness Schedule**" is defined in Section 2.2(c).

"**Closing Statements**" is defined in Section 2.2(c).

"**CLRA**" is defined in Section 4.20(e).

"**Code**" means the Internal Revenue Code of 1986, as amended.

"**Company Privacy and Data Security Policies**" means each external and internal, past or present privacy policy, notice or statement of SVB India relating to privacy, data security, data breach or the collection, interception, obtainment, compilation, creation, retention, storage, security, disclosure, transfer, disposal, use, or other processing of any Personal Information, including, without limitation, required by any applicable Laws.

"**Company Transaction Expense Schedule**" is defined in Section 2.2(c).

"**Company Transaction Expenses**" means, without duplication, (a) out-of-pocket expenses relating to the Transactions incurred by or on behalf of SVB India or subject to reimbursement by SVB India in connection with the Transactions, whether or not invoiced, (b) fees, expenses and disbursements payable by SVB India to financial advisors, investment bankers, brokers, finders, legal counsel, accountants, auditors, tax advisors, environmental consultants and other advisors or service providers of SVB India in connection with the Transactions or any prior sale process, (c) the Change of Control Payments and (d) one-half (1/2) of the costs under the Escrow Agreement.

"**Confidential Information**" means (a) all information, knowledge and data of SVB India or any of its Affiliates to the extent related to SVB India, (b) all information, knowledge and data provided by the Sellers or SVB India or any of their respective Affiliates to the Buyers or any of their respective affiliates or representatives in connection with the Transactions and (c) all analyses, compilations, forecasts, studies, interpretations, summaries, notes, data and other documents and materials (in any form or medium of communication, whether written, oral or electronic), whether prepared by the Sellers, SVB India or their respective Affiliates or representatives or others, which contain, reflect or are generated from or based upon, in whole or in part, the information referred to in clauses (a) and (b), other than any such information that (i) is generally known to the public prior to the Buyer's receipt thereof from the Sellers or any of their Affiliates or (ii) is or becomes part of the public domain through no fault of the Sellers or their Affiliates or representatives.

"**Consent**" means any consent, notice, filing, declaration, registration, approval, authorization, permission or waiver.

"**Consultant**" is defined in Section 4.19(a).

"**Contested Amount**" is defined in Section 10.6(b).

"**Continuing Employees**" is defined in Section 9.9(a).

"**Contract**" means any contract, obligation, understanding, commitment, settlement, lease, license, purchase order, plan, arrangement, bid or other agreement, whether written or oral and whether express or implied, together with all amendments and other modifications thereto.

"**Contract Assignment Order**" is defined in Section 2.4(a).

"**Cure Costs**" is defined in Section 2.4(d).

"**Data Protection Obligations**" is defined in Section 4.14(a).

"**Disclosure Schedules**" means, collectively, the disclosure schedules of even date herewith delivered by (i) the Sellers to the Buyers and (ii) the Buyers to the Sellers, in each case, immediately prior to the execution and delivery of this Agreement.

4

"**Discovered Asset Notice**" is defined in Section 6.8(b).

"**Encumbrance**" means any lien, mortgage, pledge, encumbrance, charge, security interest, adverse or other claim, community property interest, condition, equitable interest, option, warrant, right of first refusal, easement, profit, license, servitude, right of way, covenant, zoning or other restriction of any kind or nature in each case held by a third party, including, for the avoidance of doubt, any disqualification under the (Indian) Limited Liability Partnership Act, 2008 on account of the Bankruptcy Proceeding (in case of the SVBFG Interests).

"**Environmental Law**" means any Law (including binding case law) relating to the environment, health or safety, including any Law relating to the presence, use, production, generation, handling, management, transportation, treatment, storage, disposal, distribution, labeling, testing, processing, discharge, release, threatened release, control or cleanup of any material, substance or waste regulated by any Governmental Body.

"**Equity Interest**" means (a) any capital stock, partnership, membership, limited liability company/partnership, joint venture or other ownership or equity interest, participation or securities (whether voting or non-voting, whether preferred, common or otherwise), and (b) any option, warrant, security or other right (including Indebtedness securities or other evidence of Indebtedness) directly or indirectly convertible into or exercisable or exchangeable for, or otherwise to acquire directly or indirectly, any capital stock, partnership, membership, limited liability company, joint venture or other ownership or equity interest, participation or security described in clause (a) above.

"**Escrow Agent**" means Citibank, N.A.

"**Escrow Agreement**" means the escrow agreement dated as of the Closing Date by and among the Buyers, the Sellers and the Escrow Agent, in substantially the form attached hereto as Exhibit B.

"**ESIC Act**" is defined in Section 4.20(b).

"**Exchange Act**" is defined in Section 4.25(b).

"**Excluded Marks**" means all Trademarks that include any of the following, and any variations or derivations thereof: (i) "Silicon Valley Bank"; (ii) "SVB"; and (iii) the chevron logo.

"**Excluded Net Names**" means all Net Names that include any of the following, and any variations or derivations thereof: (i) "Silicon Valley Bank" and (ii) "SVB".

"**Execution Date**" is defined in the opening paragraph.

"**FDIC**" means the Federal Deposit Insurance Corporation.

"**Federal Reserve**" means the Board of Governors of the Federal Reserve System.

"**FEMA**" means the (Indian) Foreign Exchange Management Act, 1999, as amended from time to time, and shall include the rules, regulations, directions, notification and clarifications issued thereunder from time to time.

"**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter that has not been reversed, stayed, modified, or amended, as entered on the docket in the Bankruptcy Proceeding or the docket of any other court of competent

jurisdiction, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing will have been denied, resulted in no stay pending appeal of such order, or has otherwise been dismissed with prejudice.

"**Financial Statements**" is defined in Section 4.6.

"**First-Citizens**" means First-Citizens Bank & Trust Company, a North Carolina chartered commercial bank.

"**Fundamental Representations**" is defined in Section 10.3.

"**GAAP**" means accounting principles generally accepted in the United States.

"**GDPR**" has the meaning set forth in the definition of "Information Privacy and Security Laws" below.

"**Global Closing Cash Consideration**" is defined in Section 2.2(a).

"**Global I**" is defined in the opening paragraph.

"**Global II**" is defined in the opening paragraph.

"**Global Interests**" is defined in the recitals.

"**Global Interests India Filings**" is defined in Section 2.1(c)(xiv).

"**Global Interests Purchase Price**" is defined in Section 2.2(a).

"**Governmental Body**" means the United States of America or any other nation, any multinational or supra-national government authority, any state or other political subdivision thereof, or any entity exercising executive, legislative, judicial (quasi-judicial), regulatory or administrative functions of government, including any court, agency, department, board, commission or instrumentality of India, in each case, having jurisdiction over SVB India or the Person, and any arbitrator or arbitration body (whether public or private), including, without limitation, the Federal Reserve, the FDIC, the NCCOB, the Indian Registrar of Companies, Reserve Bank of India, and the Development Commissioner of the special economic zones in India appointed under the provisions of SEZ Act.

"**Gratuity Act**" is defined in Section 4.20(d).

"**Guaranteed Obligations**" is defined in Section 12.16.

"**Inadvertently Omitted Debtor Contract**" is defined in Section 2.4(b).

"**Incoming Designated Partners**" mean persons nominated by the applicable Buyer to be appointed as their nominee and the designated partners of SVB India in the place and stead of the Outgoing Designated Partners.

6

"**Indebtedness**" means, as to any Person at any time, without duplication, (a) obligations of such Person for borrowed money (including checks in float and "negative" cash); (b) obligations of such Person evidenced by bonds, notes, debentures or other similar instruments; (c) obligations of such Person to pay the deferred purchase price of assets, securities, property or services (including all obligations under noncompete, consulting or similar arrangements, earnout payments and seller notes), except trade accounts payable of such Person arising in the Ordinary Course that are not past due by more than ninety (90) days or that are being contested in good faith by appropriate Proceedings diligently pursued and for which adequate reserves have been established on the financial statements of such Person; (d) capital, capitalized or finance lease obligations of such Person classified as such in the Financial Statements or in accordance with GAAP taking into account SVB India's accounting practices consistently applied; (e) accounts payable, accrued expenses and other Liabilities of such Person, whether short-term or long-term, with respect to capital expenditures; (f) obligations secured by an Encumbrance existing on any property or asset owned by such Person; (g) reimbursement obligations of such Person relating to letters of credit, bankers' acceptances, surety or other bonds or similar instruments; (h) Liabilities of such Person relating to unfunded, long-term cash incentive bonus arrangements or any unfunded vested benefits under any Employee Benefit Plan (including the employer portion of any applicable statutory bonus, superannuation fund or severance payment); (i) intercompany indebtedness obligations of such Person to holders of its Equity Interests or to its Affiliates; (j) any declared but unpaid distributions or dividends owed to the Sellers or any of their Affiliates; (k) indebtedness or other obligations of others guaranteed (whether directly or indirectly) by such Person or having the economic effect of a guarantee related to clauses (a) through (j); (l) any unforgiven obligations under any government loan assistance program; (m) payment obligations accrued or that, at such time of determination, are or have become payable to any holder of any indebtedness of the types described in clauses (a) through (l) of this definition in connection with seeking or receiving any Consent, modification or amendment to any material provision of any such indebtedness or by reason of any default or alleged default of any such indebtedness; and (n) principal, interest (including default interest), premiums, penalties (including prepayment and early termination penalties and default penalties or judgments), breakage fees and other amounts owing at Closing in respect of the items described in the foregoing clauses (a) through (l).

"**Indemnified Party**" is defined in Section 10.6(a).

"**Indemnifying Party**" is defined in Section 10.6(a).

"**Indemnity Escrow Fund**" is defined in Section 2.2(e)(i).

"**Indemnity Escrow Period**" is defined in Section 2.2(e)(i).

"**Information Privacy and Security Laws**" means all applicable Laws relating to the privacy, security or processing of Personal Information (including Laws of jurisdictions where Personal Information was collected or where data subjects reside or are domiciled), including, to the extent applicable to SVB India or the services provided by SVB India, the USA PATRIOT Act, Title V Gramm-Leach-Bliley Act, the Health Insurance Portability and Accountability Act of 1996, Regulation 2016/679 of the European Parliament and of the Council on the protection of natural persons with regard Processing of Personal Information (General Data Protection Regulation) and any member state law implementing the same, including the corresponding laws of the United Kingdom (including the UK GDPR and Data Protection Act 2018) (collectively, "**GDPR**"), the Privacy and Electronic Communications Directive 2002/58/EC and the EECC Directive 2018/1972 (all including any implementing legislation in any member state of the European Union or United Kingdom), the California Consumer Privacy Act, as amended and its promulgating regulations, data breach notification Laws, consumer protection Laws, Laws concerning requirements for website and mobile application privacy policies and practices, Social Security number protection Laws, data security Laws and Laws concerning email, text message or telephone

communications, the Federal Trade Commission Act, the Controlling the Assault of Non-Solicited Pornography and Marketing Act, the Telephone Consumer Protection Act and all equivalent state Laws, self-regulatory obligations including the Payment Card Industry Data Security Standard, the (Indian) Information Technology Act, 2000, and rules and regulations framed under it, including without limitation the Information Technology (Reasonable security practices and procedures and sensitive personal data or information) Rules, 2011 (each as updated, amended, superseded, or replaced from time to time) and all other similar international, federal, state, provincial, and local Laws.

"**Insurance Policies**" is defined in Section 4.23.

"**Intellectual Property**" means, in any jurisdiction throughout the world: (a) inventions (whether patentable or unpatentable and whether or not reduced to practice), improvements thereto, and patents, patent applications and patent disclosures, together with reissuances, continuations, continuations-in-part, revisions, extensions and reexaminations thereof; (b) trademarks, service marks, trade dress, logos, trade names and corporate names, together with translations, adaptations, derivations and combinations thereof and including goodwill associated therewith, and applications, registrations and renewals in connection therewith (collectively, "**Trademarks**"); (c) published and unpublished copyrightable works, copyrights and applications, registrations and renewals in connection therewith; (d) mask works and applications, registrations and renewals in connection therewith; (e) trade secrets and confidential business information (including ideas, research and development, know-how, formulas, compositions, manufacturing and production processes and techniques, technical data, designs, drawings, specifications, customer and supplier lists, pricing and cost information, and business and marketing plans and proposals) (collectively, "**Trade Secrets**"); (f) computer software (including firmware and other software embedded in hardware devices), software code (including source code and executable or object code), subroutines, and interfaces, including APIs, algorithms, data, and related documentation; (g) Internet websites, Internet domain names, social media handles, social media accounts, and keywords ("**Net Names**"); (h) other proprietary or moral rights, rights of integrity or attribution, and rights of publicity; (i) copies and tangible embodiments (in whatever form or medium) of any of the foregoing; and (j) remedies against infringement or misappropriation thereof and rights to the protection or enforcement of any interest therein.

"**Interest Assignment Agreements**" is defined in Section 2.1(c)(i).

"**Interests**" is defined in the recitals.

"**Interim Balance Sheet**" is defined in Section 4.6.

"**Interim Balance Sheet Date**" means the date of the Interim Balance Sheet.

"**IRS**" means the U.S. Internal Revenue Service.

"**Knowledge of the Buyers**" means Doug Witte has actual knowledge, or should have had actual knowledge of such fact or other matter after reasonable due inquiry concerning the fact or matter at issue.

"**Knowledge of Sellers**" means William Kosturos, Nick Grossi, Andreas Papadatos or Rafael Petrone has actual knowledge, or should have had actual knowledge of such fact or other matter after reasonable due inquiry concerning the fact or matter at issue.

"**Knowledge of SVB India**" means that (a) William Kosturos, Nick Grossi, Andreas Papadatos or Rafael Petrone has actual knowledge, or (b) Muralidhar Achuta, Ankit Garg, Pranav Sharma or Rakesh Nair have actual knowledge, or should have had actual knowledge of such fact or other matter after reasonable due inquiry concerning the fact or matter at issue; provided, however, that such due inquiry shall

not require Muralidhar Achuta, Ankit Garg, Pranav Sharma or Rakesh Nair to conduct (or have conducted) or inquire about any Intellectual Property searches or analyses (including clearance or prior art searches or analyses with respect to validity or non-infringement) or obtain any new legal opinions (including freedom to operate opinions) with respect to information technology assets or Personal Information.

"**Law**" means any federal, provincial, municipal, state, local, supranational, foreign or other law, statute, ordinance, regulation, rule, award, determination, ruling, judgment, writ, injunction, act, decree code, regulatory or administrative guidance or interpretation, Order, constitution, treaty, principle of common law or other restriction of any Governmental Body.

"**Lease**" is defined in Section 4.11(b).

"**Lease Agreement Unit 1**" means the Lease Agreements dated December 19, 2023 executed by and between SVB India and ANSR Global Corporation Private Limited and registered with sub-registrar of assurances under serial number 8542 of 2023-2024.

"**Lease Agreement Unit 2**" means the Lease Agreements dated November 29, 2021 executed by and between SVB India and ANSR Global Corporation Private Limited registered with the sub-registrar of assurances under serial number 2330 of 2021- 2022.

"**Leased Real Property**" is defined in Section 4.11.

"**Liability**" means any liability, obligation or commitment of any kind or nature, whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due.

"**Liquidating Trust**" has the meaning set forth in the Plan of Reorganization.

"**LLP Agreement**" means a limited liability partnership agreement dated July 13, 2018, as amended by first supplementary deed of limited liability partnership dated March 25, 2019, second supplementary deed of limited liability partnership dated August 7, 2019, third supplementary deed of limited liability partnership dated July 20, 2020, fourth supplementary deed of limited liability partnership dated January 26, 2023 and fifth supplementary deed of limited liability partnership dated November 15, 2023, executed by and between SVB Global and SVB Financial, recording the terms governing their relationship as partners of SVB India.

"**Local Rules**" is defined in the recitals.

"**Loss**" means any loss, claim, demand, damage, penalty, fine, cost, settlement payment, Liability, expense (including costs of investigation), fee, court costs or reasonable attorneys' fees and expenses; provided, however, that Loss shall not include punitive damages (other than those required to be paid to a third party pursuant to a Third-Party Claim).

"**Major Customer**" is defined in Section 4.21.

"**Major Supplier**" is defined in Section 4.21.

"**Material Adverse Effect**" means any event, circumstance, development, change, occurrence or effect that has, or would be reasonably expected to have, individually or in the aggregate, a material adverse effect on the financial condition, assets, liabilities, condition (financial or otherwise), operation or results of operations of SVB India, taken individually and as a whole; provided, however, that no event,

circumstance, development, change, occurrence or effect, to the extent resulting from, arising out of, or relating to any of the following shall be deemed to constitute or shall be taken into account in determining whether there has been a Material Adverse Effect or whether a Material Adverse Effect would reasonably be expected to occur: (i) any changes in (a) the United States or global economy or economic conditions generally or the capital or financial markets generally, (b) political conditions generally of the United States or any other country or jurisdiction in which the Business operates or (c) conditions generally applicable to businesses in the same or similar industries as the Business, (ii) any changes or prospective changes in GAAP or in any Laws, policies, mandates, guidelines or other requirements of any Governmental Body generally applicable to the Business or in the interpretation thereof, in each case, after the date hereof, (iii) any hostilities, act of war, sabotage, terrorism or military actions, or any escalation or worsening of any such hostilities, act of war, sabotage, terrorism or military actions (in each case, anywhere in the world), (iv) earthquakes, hurricanes, floods or other natural disasters or man-made disaster or act of God, (v) the existence, continuation or worsening of any epidemic, pandemic or disease outbreak, in each case, anywhere in the world, (vi) any failure by the Business to achieve any earnings or other financial projections or forecasts, in each case, after the date hereof (provided that, to the extent subject of any of the foregoing clauses (i) through (v) above, the underlying cause of such failure may be taken into account to determine whether a Material Adverse Effect has occurred), (vii) the negotiation, announcement, execution, pendency or performance of this Agreement, the Transaction Documents or the Transactions or the Bankruptcy Proceeding or (viii) the fact that SVB Financial is operating as a debtor-in-possession under the Bankruptcy Court; provided, however, that any event, circumstance, development, change, occurrence or effect referred to in clauses (i) through (vi) immediately above shall be taken into account into determining whether a Material Adverse Effect has occurred or would reasonably be expected to occur to the extent that such event, circumstance, development, change, occurrence or effect has a disproportionate effect on the Business compared to other participants in the industries or geographies in which the Business operates.

"**Material Contracts**" is defined in Section 4.12(a).

"**NCCOB**" means the North Carolina Office of the Commissioner of Banks.

"**Net Names**" has the meaning set forth in the definition of "Intellectual Property" above.

"**NewCo**" means any NewCo entity, as defined in the Plan of Reorganization.

"**Non-Recourse Party**" means any of either Buyers' direct or indirect former, current and future equityholders, controlling persons, directors, officers, employees, agents, representatives, Affiliates, members, managers, general or limited partners, or assignees (and any direct or indirect former, current or future equity holder, debt holder, controlling person, director, officer, employee, agent, representative, Affiliate, member, manager, general or limited partner, or assignee of any of the foregoing); provided, however, that Parent is not a Non-Recourse Party.

"**Order**" means any order, award, decision, injunction, judgment, ruling, decree, charge, writ, subpoena or verdict entered, issued, made or rendered by any Governmental Body or arbitrator.

"**Ordinary Course**" means the ordinary course of business of SVB India consistent with past practice.

"**Organizational Documents**" means (a) any certificate or articles of incorporation, articles of organization, bylaws or limited liability company/partnership agreement, (b) any documents comparable to those described in clause (a) as may be applicable pursuant to any Law and (c) any amendment or modification to any of the foregoing.

4888-4564-6483 v.12.3

"**Outgoing Designated Partners**" mean Andreas Papadatos and Muralidhar Achuta, the present designated partners of SVB India nominated by the Sellers.

"**Parent**" is defined in the opening paragraph.

"**Parent Guarantee**" is defined in Section 12.16.

"**Party**" means each of the Seller Parties and the Buyers and "**Parties**" means the Buyers and the Seller Parties.

"**Permit**" means any permit, license, authorization, allowance or Consent issued by any Governmental Body or pursuant to any Law that is required to the Person receiving such license, authorization, allowance or Consent to operate its business in the Ordinary Course.

"**Permitted Encumbrance**" means (a) any mechanic's, materialmen's or similar common law or statutory lien incurred in the Ordinary Course for monies not yet due, (b) any lien for Taxes not delinquent (for clarity, any lien related to Tax Litigation is not a Permitted Encumbrance), (c) any mortgage or other Encumbrance incurred, created, assumed or permitted to exist and arising by, through or under a landlord or owner of the Leased Real Property, (d) any easement, covenant, zoning or other restriction on the Leased Real Property that, together with all other Permitted Encumbrances, does not prohibit or impair the current use, occupancy, value or marketability of title of the property subject thereto, or (e) any Encumbrance that will be terminated at or prior to the Closing in accordance with this Agreement.

"**Permitted Purpose**" is defined in Section 9.3(b).

"**Person**" means any individual, corporation, limited liability company, partnership, company, sole proprietorship, joint venture, trust, estate, association, organization, Union, Governmental Body or other entity.

"**Personal Information**" means (a) any information that can reasonably be used to identify an identified or identifiable individual or device, including: a natural person's name, street address, telephone number, e-mail address, photograph, identification number, health or medical insurance number, Social Security number, government-issued identifier or tax identification number, driver's license number, passport number, credit card number, bank information, Internet protocol address, device identifier, customer or account number, or health or medical information or any other information associated with an identifiable natural person or used or intended to be used to directly or indirectly identify, contact, or locate an individual or device; and (b) "personal data," "personal information," "personally identifiable information," "protected health information," or similar term as defined under applicable Law.

"**PB Act**" is defined in Section 4.20(c).

"**PF Act**" is defined in Section 4.20(a).

"**Plan Effective Date**" means the Effective Date of the Plan of Reorganization, as defined therein.

"**Plan of Reorganization**" means SVB Financial's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as confirmed by the Bankruptcy Court and as amended or supplemented from time to time.

"**Post-Closing Service Period**" is defined in Section 9.10.

"**Pre-Closing Records**" is defined in Section 9.8.

"**Pre-Closing Tax Period**" is all taxable periods ending on or before the Closing Date.

"**Pre-Closing Tax Return**" is defined in Section 11.2.

"**Proceeding**" means any proceeding, charge, complaint, claim, demand, notice, action, suit, litigation, hearing, appeal, audit, investigation, grievance, arbitration or mediation (in each case, whether civil, criminal, administrative, investigative or informal) commenced, conducted, heard or pending by or before any court (trial or appellate), Governmental Body, arbitrator or mediator.

"**Processing**" or "**Processed**" or "**Process**" means any operation performed on Personal Information, including the collection, creation, receipt, access, use, handling, compilation, analysis, monitoring, maintenance, storage, transmission, transfer, protection, disclosure, destruction or disposal of Personal Information.

"**Related Person**" means (a) with respect to a specified individual, any member of such individual's Family and any Affiliate of any member of such individual's Family, and (b) with respect to a specified Person other than an individual, any Affiliate of such Person and any member of the Family of any such Affiliates that are individuals. The "Family" of a specified individual means the individual, such individual's spouse and former spouses, any other individual who is related to the specified individual or such individual's spouse or former spouse within the third degree and any other individual who resides with the specified individual.

"**Repatriation Funds Escrow Fund**" is defined in Section 2.2(e)(iii).

"**Representative**" means, with respect to a particular Person, any manager, director, officer, employee, agent, consultant, advisor or other representative of such Person, including legal counsel, accountants and financial advisors.

"**RBI Approval**" means the approval from the Reserve Bank of India under the relevant provisions of FEMA for the payment of SVB Financial Payable.

"**Response Notice**" is defined in Section 10.6(b).

"**Sale Order**" means the Final Order of the Bankruptcy Court approving the Transactions with SVB Financial contemplated under the Transaction Documents, and ordering that the SVBFG Interests be transferred to Global II free and clear of all Encumbrances, other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws, shall be substantially in the form attached hereto as <u>Exhibit C</u>, subject to such changes otherwise reasonably acceptable to the Sellers and the Buyers.

"**Sarbanes-Oxley Act**" is defined in Section 4.25(b).

"**Security Incident**" is defined in Section 4.14(e).

"**Seller**" and "**Sellers**" is defined in the opening paragraph.

"**Seller Indemnified Parties**" is defined in Section 10.2.

"**Seller Party**" and "**Seller Parties**" is defined in the opening paragraph.

"**Seller Receiving Party**" is defined in Section 9.8.

"**Sellers Releasors**" is defined in Section 10.5(b).

"**Seventh Supplementary Deed**" means a duly stamped seventh supplementary deed to the LLP Agreement as amended by the Sixth Supplementary Deed (in substantially the form attached hereto as Exhibit D) to be effective on or about two (2) Business Days after the Closing Date, recording the transfer of SVBFG Interests from SVB Financial to Global II, consequent change of partner and nominee designated partner of SVB India and related provisions of the LLP Agreement read together with the Sixth Supplementary Deed.

"**SEZ Act**" means the (Indian) Special Economic Zone Act, 2005 as amended from time to time and includes rules, regulations, directions, instructions and circulars issued under it by the relevant Governmental Body.

"**SEZ Approval**" means the final approval issued by the Unit Approval Committee formed for the special economic zones established under the SEZ Act and rules framed under it in the state of Karnataka, India as per Instruction No. 109 dated October 18, 2021, issued by (Indian) Ministry of Commerce and Industry, Department of Commerce (SEZ Section), for the transfer of Global Interests from SVB Global to Global I and SVBFG Interests from SVB Financial to Global II as contemplated under this Agreement.

"**SEZ In-Principle Approval**" means the preliminary approval issued by the Unit Approval Committee formed for the special economic zones established under the SEZ Act and rules framed under it in the state of Karnataka, India for the transfer of Global Interests from SVB Global to Global I and SVBFG Interests from SVB Financial to Global II as contemplated under this Agreement.

"**Sixth Supplementary Deed**" means a duly stamped sixth supplementary deed to the LLP Agreement (in substantially the form attached hereto as Exhibit E), recording the transfer of Global Interests from SVB Global to Global I, consequent change of partner and nominee designated partner of SVB India and related provisions of the LLP Agreement.

"**Straddle Period**" is any taxable period that begins before and ends after the Closing Date.

"**Subsidiary**" means any corporation or other entity with respect to which any entity and its other Subsidiaries collectively owns, directly or indirectly, at least 50% of the Equity Interest or have the power, directly or indirectly, to elect a majority of the members of the board of directors or comparable governing body; provided that, from and following the Plan Effective Date, none of SVB Financial, NewCo or SVB Global shall be a Subsidiary of the Liquidating Trust for all purposes under this Agreement.

"**Supplementary Deeds**" is defined in Section 2.1(c)(x).

"**SVB Capital**" means SVB Capital Management, LLC, a Delaware limited liability company.

"**SVB Financial**" is defined in the opening paragraph.

"**SVB Financial Payable**" means the approximately $1,540,976.56 outstanding as of January 31, 2024 owed to SVB Financial by SVB India that is unable to be paid until receipt of the RBI Approval, and which shall be offset by the Indebtedness owed to SVB India by SVB Financial as of the Closing.

"**SVB Global**" is defined in the opening paragraph.

4888-4564-6483 v.12.3

"**SVB India**" is defined in the opening paragraph.

"**SVB Services**" is defined in Section 9.10.

"**SVBFG Interests**" is defined in the recitals.

"**SVBFG Interests India Filings**" is defined in Section 2.1(c)(xv).

"**SVBFG Interests Purchase Price**" is defined in Section 2.2(b).

"**Systems**" is defined in Section 4.13(h).

"**Tax**" means any U.S. federal, state, local or non-U.S. taxes, assessments and other governmental charges or other income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Code § 59A), natural resources, customs duties, franchise, profits, withholding, payroll, social security charges (including health, unemployment, workers' compensation and pension insurance), disability, real property, personal property, abandoned property, unclaimed property, escheatment, sales, use, transfer, registration, value added, general service, alternative or add-on minimum, estimated or other tax of any kind whatsoever, however denominated or computed, and including any interest, penalty or addition thereto.

"**Tax Litigation**" means the appeal bearing reference number ITA 6814/MUM/2017 filed by SVB Financial before the Income Tax Appellate Tribunal, Mumbai Bench, Mumbai relating to the order dated October 28, 2016 passed by the transfer pricing officer under Section 92CA(3) of the (India) Income Tax Act, 1961 and draft assessment order dated November 16, 2016 passed by the assessing officer under Section 143(3) read with Section 144C(1) of the (India) Income Tax Act, 1961, any and all Proceedings, subsequent appeals, claims or actions relating to or arising therefrom and/or any Order passed thereunder including any recovery proceedings, demands, claims, interest or penalty related proceedings or similar actions against SVB Financial and/or the Buyers.

"**Tax Litigation Claim**" is defined in Section 9.2.

"**Tax Litigation Claim Notice**" is defined in Section 9.2.

"**Tax Return**" means any return, declaration, report, claim for refund or information return or other document or statement relating to Taxes, including any form, election, schedule or attachment thereto and including any amendment or supplement thereof.

"**Tax Sharing Agreement**" means any tax sharing, tax allocation, tax indemnification or similar agreement or arrangement, other than any agreement or arrangement the primary purpose of which does not relate to Taxes (including, without limitation, commercial, employment, leasing and financing agreements entered into in the Ordinary Course).

"**Termination Date**" is defined in Section 8.1(d)(i).

"**Third-Party Claim**" is defined in Section 10.6(c).

"**Trade Secrets**" has the meaning set forth in the definition of "Intellectual Property".

"**Trademarks**" has the meaning set forth in the definition of "Intellectual Property".

"**Transaction Consideration**" is defined in Section 2.2(b).

14

"**Transaction Documents**" means this Agreement, the Interest Assignment Agreements, the Escrow Agreement, the Sixth Supplementary Deed, the Seventh Supplementary Deed, the Assignment and License Agreement, and all other written agreements, documents and certificates contemplated by any of the foregoing documents.

"**Transactions**" means the transactions contemplated by the Transaction Documents.

"**Transfer Taxes**" is defined in Section 11.5.

"**Treasury Regulations**" means the Treasury regulations promulgated under the Code.

"**Union**" is defined in Section 4.19(b).

"**Willful Breach**" means a breach of any representation, warranty, covenant or other agreement set forth in this Agreement that is a consequence of an act or failure to act by a party with the actual knowledge that the taking of such act or failure to act would cause a breach.

"**Withholding Tax Computation**" means a signed memorandum issued by any one of the Big Four Accounting Firms on a reliance basis and in the form and manner acceptable to the Buyers stating the aggregate amount of capital gains tax on the sale of Interests, which shall include: (a) the manner of computation of capital gains arising on the sale of Interests; (b) details of supporting documents referred by the issuing accounting firm to arrive at the cost and transfer expenses; (c) analysis in relation to characterization of gains; and (d) withholding tax obligation in the hands of Global I and Global II on purchase of the Interests.

"**Withholding Tax Supporting Documents**" means (a) a self-certified copy of Permanent Account Number card issued by Indian income tax authority in accordance with the relevant provisions of (Indian) Income Tax Act, 1961; (b) Tax residency certificates issued by the relevant authority in the country of residence; (c) a Form 10F under rule 21AB of the (Indian) Income Tax Rules 1962; (d) a certificate in Form 15CB from an independent Chartered Accountant under rule 37BB of the (Indian) Income Tax Rules, 1962; and (e) such other information as may be required by the Buyers to complete and file Form 15CA under rule 37BB of the (Indian) Income Tax Rules, 1962 or other applicable Law.

## ARTICLE II
## SALE OF INTERESTS; CLOSING

**2.1    Sale of the Interests; Closing**

(a)    At the Closing and upon all of the terms and subject to all of the conditions of this Agreement, including the Sale Order, SVB Global shall sell, transfer, assign and convey to Global I, and Global I shall purchase and accept from SVB Global, the Global Interests, free and clear of all Encumbrances, other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws, in exchange for the consideration specified and calculated in accordance with Section 2.2. Further, at the Closing, SVB Financial shall sell, transfer, assign and convey to Global II, and Global II shall purchase and accept from SVB Financial, the SVBFG Interests, free and clear of all Encumbrances, other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws, in exchange for the consideration specified and calculated in accordance with Section 2.2.

(b)    The closing of the Transactions will take place by remote communication, commencing at 10:00 a.m. New York time on the fifth (5th) Business Day following the satisfaction or waiver of all

4888-4564-6483 v.12.3

conditions to the obligations of the Parties to consummate the Transactions to be performed on the Closing Date (other than conditions that by their nature are to be satisfied at the Closing) (the "**Closing**") or such other date as the Parties may mutually determine (the "**Closing Date**").

(c)    <u>Seller Parties Deliverables</u>. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Seller Parties (as applicable) shall deliver to the Buyers (as applicable):

(i)    assignments of the Global Interests and SVBFG Interests (such assignment of SVBFG Interests to be effective from the effective date of transfer/assignment specified in the Seventh Supplementary Deed) free and clear of any Encumbrances, other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws, in substantially the form attached hereto as <u>Exhibit F</u>, for transfer to Global I and Global II respectively ("**Interest Assignment Agreements**");

(ii)    the Escrow Agreement, duly executed by the Sellers;

(iii)    acknowledgement of receipt of the registered Lease Agreement Unit 1 and Lease Agreement Unit 2 issued by the Development Commissioner, Cochin Special Economic Zone;

(iv)    signed notice of withdrawal of each Seller as the partner of SVB India and signed resignation of each Outgoing Designated Partner from any position held by such Outgoing Designated Partner as designated partner, nominee partner, officer, director or manager of SVB India, only to the extent each such person is a designated partner of SVB India immediately prior the Closing, in substantially the form attached hereto as <u>Exhibit G</u>, duly executed by applicable employees thereto;

(v)    evidence to the reasonable satisfaction of the Buyers of the following:

(A)    to the extent the RBI Approval is received by Sellers and/or SVB India prior to the Closing, evidence of (x) the RBI Approval received and (y) to the extent paid prior to the Closing, payment of the SVB Financial Payable by SVB India (or an Affiliate of SVB India on its behalf to the extent permitted under the RBI approval) to SVB Financial;

(B)    each Consent listed in Sections 3.3, 3.4, 4.4 and 4.5 and in the corresponding Sections of the Disclosure Schedules has been obtained at or prior to Closing and shall be free of any material term, condition, restriction, imposed Liability or other material provision imposed on any Buyer;

(C)    termination of each Contract listed on Section 4.12(a)(xiv) of the Disclosure Schedules; and

(D)    assignment of each Assumed Contract;

(vi)    a certificate of an authorized officer of SVB India, in form and substance reasonably satisfactory to the Buyers, certifying that (A) attached thereto is a true, correct and complete copy of (1) the Organizational Documents of SVB India, (2) resolutions duly adopted by the board of managers and partners of SVB India dated as of the Execution Date authorizing the performance of the Transactions and the execution and delivery of the Transaction Documents to which SVB India is a party and (3) a certificate of existence or equivalent as of a recent date of SVB India from the authorized officer of SVB India, and (B) the resolutions referenced in subsection (A)(2) are still in effect;

16

4888-4564-6483 v.12.3

(vii)    a certificate of an authorized officer of each Seller, in form and substance reasonably satisfactory to the Buyers, certifying that (A) attached thereto is a true, correct and complete copy of (1) the Organizational Documents of such Seller, (2) resolutions duly adopted by the board of directors (or designated committee thereof) and/or shareholders, as applicable, of such Seller dated as of the Execution Date authorizing the performance of the Transactions and the execution and delivery of the Transaction Documents to which such Seller is a party and (3) a certificate of existence or good standing as of a recent date of such Seller from the Secretary of State of Delaware, and (B) the resolutions referenced in subsection (A)(2) are still in effect;

(viii)    a certificate of an authorized officer of each Seller Party, in form and substance reasonably satisfactory to the Buyers, as required by Section 7.2(a);

(ix)    an IRS Form W-9, Request for Taxpayer Identification Number and Certification, completed and duly executed by each Seller, certifying that such Seller is a U.S. citizen or other U.S. person;

(x)    resolutions duly adopted by the board of directors (or designated committee thereof) and/or shareholders, as applicable, of each Seller (in form and substance mutually agreed by the Sellers and the Buyers) which resolutions (i) have been certified by an officer of each Seller, with any such officer's certification duly authenticated by an authority designated by the state in which the resolutions are executed ("**Apostille**") in accordance with the Convention Abolishing the Requirement of Legalization for Foreign Public Documents adopted at the Hague on October 5, 1961 ("**Apostille Convention**"), dated prior to the date of execution of the Sixth Supplementary Deed and the Seventh Supplementary Deed (collectively the "**Supplementary Deeds**"), and (ii) authorize the execution and delivery of the Supplementary Deeds, resignation of the Sellers as the partners of SVB India, resignation of the Outgoing Designated Partners and related ancillary matters;

(xi)    Sixth Supplementary Deed, duly executed by the Sellers and duly authenticated by Apostille in accordance with the Apostille Convention;

(xii)    Seventh Supplementary Deed, duly executed by the Sellers, to be effective on or about two (2) Business Days following the Closing and duly authenticated by Apostille in accordance with the Apostille Convention;

(xiii)    Assignment and License Agreement, duly executed by SVB Capital and the Sellers;

(xiv)    LLP Form 3 and LLP Form 4 filed with the relevant (Indian) Registrar of Companies in accordance with the relevant rule(s) of the (Indian) Limited Liability Partnership Rules, 2009 (as amended from to time) to report the change of partner, designated partner of SVB India and the LLP Agreement, as amended by the Sixth Supplementary Deed pursuant to the transfer of Global Interests from SVB Global to Global I upon receipt of consideration for the same in accordance with Section 2.2, together with all supporting documents affixed thereto and the payment receipts issued in respect thereof ("**Global Interests India Filings**");

(xv)    duly filled LLP Form 3 and LLP Form 4 to be filed as per Section 9.5 with the relevant (Indian) Registrar of Companies in accordance with the relevant rule(s) of the (Indian) Limited Liability Partnership Rules, 2009 (as amended from to time) to report the change of partner, designated partner of SVB India and the LLP Agreement, as amended by the Seventh Supplementary Deed pursuant to the transfer of SVBFG Interests from SVB Financial to Global II

17

upon receipt of consideration for the same in accordance with Section 2.2 ("**SVBFG Interests India Filings**"), together with all supporting documents required from the Sellers and the Outgoing Designated Partners to be affixed thereto; and

(xvi)    final Withholding Tax Computation (as approved by the Buyers) and Withholding Tax Support Documents from each of the Sellers.

(d)    <u>Buyers Closing Deliverables</u>. Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, the Buyers (as applicable) shall deliver to the Seller Parties (as applicable):

(i)    a counterpart signature page to each Interest Assignment Agreement, duly executed by the Buyers;

(ii)    a counterpart signature page to the Escrow Agreement, duly executed by the Buyers;

(iii)    a certificate of an authorized officer of each of the Buyers, in form and substance reasonably satisfactory to the Sellers, as required by Section 7.3(a);

(iv)    resolutions duly adopted by the board of directors (or designated committee thereof) and/or shareholders, as applicable, of each Buyer (in form and substance mutually agreed by the Sellers and the Buyers) and duly authenticated by Apostille in accordance with the Apostille Convention, dated prior to the date of execution of the Supplementary Deeds by the Buyers, authorizing the execution and delivery of the Supplementary Deeds, consent to act as the partners of SVB India, nominating the Incoming Designated Partners and related ancillary matters;

(v)    consent letter to act as the designated partner of SVB India, duly executed by each of the Incoming Designated Partner (in form and substance mutually agreed by the Sellers and the Buyers) and duly authenticated by Apostille in accordance with the Apostille Convention to the extent the consent letter is executed outside India;

(vi)    a counterpart signature page to the Sixth Supplementary Deed, duly executed by Global I and duly authenticated by Apostille in accordance with the Apostille Convention to the extent executed by Global I outside India;

(vii)    a counterpart signature page to the Seventh Supplementary Deed, duly executed by Global I and Global II and duly authenticated by Apostille in accordance with the Apostille Convention to the extent executed by Global I and/or Global II outside India, to be effective on or about two (2) Business Days following the Closing;

(viii)    a counterpart signature page to the Assignment and License Agreement, duly executed by First-Citizens;

(ix)    a certificate of an authorized officer of each Buyer, in form and substance reasonably satisfactory to the Sellers, certifying that (A) attached thereto is a true, correct and complete copy of (1) the Organizational Documents of such Buyer, (2) resolutions duly adopted by the board of directors and shareholders of such Buyer dated as of the Execution Date authorizing the performance of the Transactions and the execution and delivery of the Transaction Documents to which such Buyer is a party and (3) a certificate of existence or good standing as of a recent date of such Buyer from the Secretary of State of Delaware, and (B) the resolutions referenced in subsection (A)(2) are still in effect; and

18

(x)     the Transaction Consideration to be allocated to the Sellers in accordance with Section 2.2.

**2.2     Transaction Consideration; Closing Payments.**

(a)     The aggregate consideration owed by Buyers to SVB Global for all of the Global Interests transferred by SVB Global at the Closing will be $21,366,037.74 (the "**Global Interests Purchase Price**"), as adjusted pursuant to Section 2.2(d) (the "**Global Closing Cash Consideration**").

(b)     The aggregate consideration owed by Buyers to SVB Financial for all of the SVBFG Interests transferred by SVB Financial at the Closing will be $433,962.26 (the "**SVBFG Interests Purchase Price**", together with the Global Closing Cash Consideration, the "**Transaction Consideration**").

(c)     No later than three (3) Business Days prior to the Closing Date, the Sellers will deliver to the Buyers (i) an estimated balance sheet of SVB India as of the Closing Date ("**Closing Date Balance Sheet**") and (ii) a schedule reflecting the amount of all Company Transaction Expenses (the "**Company Transaction Expense Schedule**" and, collectively with the Closing Date Balance Sheet, the "**Closing Statements**"). The Sellers shall afford, and shall cause SVB India to afford, the Buyers and their Representatives reasonable opportunity to review the Closing Statements, including supporting detail and the work papers related thereto, including by providing the Buyers and their Representatives with reasonable access to the accountants and other Representatives of the Sellers or SVB India who assisted in the preparation of such Closing Statements.

(d)     The Global Closing Cash Consideration will be an amount equal to (i) the Global Interests Purchase Price *minus* (ii) up to $8,944,165 for any amounts outstanding owed by SVB Financial and its Affiliates to First-Citizens and its Affiliates contemplated by that certain invoice attached hereto as Schedule 2.2(d), a portion of which ($3,000,000) is to be placed in escrow in accordance with Section 2.2(e)(iii) below.

(e)     The Global Closing Cash Consideration in respect of all of the Global Interests shall be paid at the Closing subject to and in accordance with the terms and conditions set forth in this Agreement. Subject to the terms and conditions of this Agreement, at the Closing, out of the Global Closing Cash Consideration:

(i)     Global I will deduct the withholding Tax applicable on Global Interests Purchase Price as per (Indian) Income Tax Act, 1961 and specified in the Withholding Tax Computation;

(ii)     Global I will pay $2,000,000 to the Escrow Agent by wire transfer of immediately available funds (the "**Indemnity Escrow Fund**"), such amount to be kept in a segregated account and held until the six (6) month anniversary of the Closing Date unless any claims are then pending, in which case an amount equal to the aggregate dollar amount of such claims shall be retained by the Escrow Agent in the Indemnity Escrow Fund until such claims are no longer pending (the "**Indemnity Escrow Period**"). The Indemnity Escrow Fund will be distributed in accordance with the terms of, the Escrow Agreement and this Agreement; provided, however, that upon the expiration of the Indemnity Escrow Period, any funds then remaining in the Indemnity Escrow Fund that are not subject to any outstanding claims shall be distributed to an account designated by SVB Global, no later than two (2) Business Days following such expiration;

(iii)     Global I will pay, on behalf of SVB Financial, $3,000,000 to the Escrow Agent by wire transfer of immediately available funds (the "**Repatriation Funds Escrow Fund**") to be kept

19

in a segregated account for the payment of SVB Financial's repatriation obligations under a fully executed Bilateral Advance Pricing Agreement approved by Buyers as required in Section 6.3. The Repatriation Funds Escrow Fund shall be released in accordance with the Escrow Agreement;

(iv)    Global I will pay (on behalf of Sellers) the estimated Company Transaction Expenses set forth in Company Transaction Expense Schedule; and

(v)    Subject to Section 2.3, Global I will pay the remaining amount of the Global Closing Cash Consideration to SVB Global by wire transfer of immediately available funds to the account(s) specified by SVB Global in writing to the Buyers prior to the Closing.

(f)    The SVBFG Interests Purchase Price with respect to all of the SVBFG Interests shall be paid at the Closing to SVB Financial, subject to the deduction of withholding Tax applicable on SVBFG Interests Purchase Price as per (Indian) Income Tax Act, 1961 and specified in the Withholding Tax Computation, by wire transfer of immediately available funds to the account specified by the Sellers in writing to the Buyers prior to the Closing.

2.3    **Withholding.** Notwithstanding anything to the contrary in this Agreement, to the extent required by the Code or other applicable Law, the Buyers, the Escrow Agent and any other applicable withholding agent shall be permitted to deduct and withhold from the Transaction Consideration, and pay over to the applicable Governmental Bodies, the amount of any Taxes per the Withholding Tax Computation and Withholding Tax Supporting Documents for each Seller, drafts of which shall be delivered to the Buyers no later than ten (10) Business Days prior to the Closing for the Buyers review and approval. Any amounts so deducted or withheld shall be treated as if paid to the applicable Seller. If either of the Buyers reasonably believes it is required to withhold and deduct from the payment of any amounts payable to any Seller hereunder any amount in addition to the amount determined as per the draft Withholding Tax Computation, such Buyer shall notify such Seller as promptly as practicable after becoming aware of such requirement to withhold such additional Tax and deduct, and in any case, within five (5) Business Days after its required delivery of the draft Withholding Tax Computation and prior to making the deduction or withholding under Applicable Law. The Parties agree to reasonably cooperate and use commercially reasonable efforts to mitigate or eliminate any such withholding. The final Withholding Tax Computation (and related Withholding Tax Supporting Documents) from the Sellers (that has been approved by Buyers) will be a closing deliverable as provided in Section 2.1(c) above.

Each Buyer shall deposit the withholding Tax amount with the relevant Governmental Body on or before the prescribed due date for such deposit under the (Indian) Income Tax Act, 1961 or other applicable Law. Each Buyer shall deliver evidence of depositing such Taxes to the relevant Seller, within five (5) days of the expiry of the prescribed due date for such deposit. Each Buyer shall undertake all applicable withholding tax compliances in the prescribed manner under the (Indian) Income Tax Act, 1961 or other applicable Law, including filing of prescribed withholding tax return(s) and issuing a withholding tax certificate to the relevant Seller, to enable the relevant Seller to claim a credit of the Taxes withheld by such Buyer under the (Indian) Income Tax Act, 1961.

2.4    **Assumption and Assignment of Certain Contracts**.

(a)    To the fullest extent permitted by the Bankruptcy Code and subject to the provisions of this Section 2.4(a), Section 365 of the Bankruptcy Code, and applicable Order(s) of the Bankruptcy Court authorizing the assumption and assignment of such Contracts, at the Closing, SVB Financial shall assume and assign to any of SVB India, Parent, First-Citizens, Global I or Global II (as designated by Buyers), and such party or parties shall accept assignment of, the entirety of the Sellers' right, title and interest in and to and obligations under each Contract listed on Section 2.4(a) of the Disclosure Schedules as of the Closing

4888-4564-6483 v.12.3

with respect to which an Order has been entered by the Bankruptcy Court (which may be the Sale Order) authorizing the assumption and assignment of such Contract (such Contracts collectively, the "**Assumed Contracts**" and such Order or Orders, the "**Contract Assignment Order**").

(b)    If, at any time during the period beginning upon the Execution Date and prior to the Closing Date, the Buyers become aware of any Contract of SVB Financial used by or for the benefit of SVB India and not initially included on Section 2.4(a) of the Disclosure Schedules as an Assumed Contract (an "**Inadvertently Omitted Debtor Contract**"), the Buyers may provide written notice to SVB Financial of the existence of such Contract (an "**Assignment Notice**"). After receipt of an Assignment Notice, the Parties shall consult in good faith to determine whether such Contract is used by or for the benefit of SVB India.

(i)    If, after good faith consultation, (A) the Parties agree a Contract subject to an Assignment Notice is used by or for the benefit of SVB India and (B) such Contract is not necessary to the reorganization of SVB Financial (as determined by SVB Financial in its sole discretion), SVB Financial shall provide to the Buyers SVB Financial's reasonable, good-faith estimate of the Cure Costs (as defined below) for such Inadvertently Omitted Debtor Contract, which amounts shall be subject to the Buyers' reasonable consent. Upon the Buyers' receipt of SVB Financial's reasonable, good-faith estimate of the Cure Costs for an Inadvertently Omitted Debtor Contract, delivered in accordance with the immediately preceding sentence, Schedule 2.4(a) shall automatically be deemed to be amended to include such Contract as an Assumed Contract without any adjustment to the Transaction Consideration, and SVB Financial shall give notice to the other parties to any such Contract pursuant to the requirements of the Bankruptcy Code.

(ii)    If, after good faith consultation, (A) the Parties disagree that a Contract subject to an Assignment Notice is used by or for the benefit of SVB India or (B) such Contract is necessary to the reorganization of SVB Financial (as determined by SVB Financial in its sole discretion), the Parties shall work in good faith and use commercially reasonable efforts to insure that SVB India is able to continue to use such goods and services in the operation of its Business, including, without limitation, entry into a subcontract for those goods and services used by SVB India until such time as Buyers are able to procure replacement contracts for such goods or services.

(c)    Until the entry of the applicable Contract Assignment Order, the Buyers may, in their sole discretion, remove any Assumed Contract from Section 2.4(a) of the Disclosure Schedules, by providing written notice of such removal to SVB Financial, in which case Section 2.4(a) of the Disclosure Schedules shall automatically be deemed amended to remove such Contract as an Assumed Contract without any adjustment to the Transaction Consideration, and SVB Financial shall give notice of such removal promptly following receipt of Buyers' notice, to the other parties of any such Contract.

(d)    Section 2.4(d) of the Disclosure Schedules sets forth with respect to each Assumed Contract SVB Financial's good-faith estimate of the amount required to be paid with respect to each such Assumed Contract to cure all monetary defaults under such Assumed Contract to the extent required by Section 365(b) of the Bankruptcy Code and otherwise satisfy all requirements to assign such Assumed Contract imposed by Section 365(f) of the Bankruptcy Code (the actual amount of such costs with respect to the Assumed Contract, as applicable, the "**Cure Costs**"), which amounts shall be subject to the Buyers' reasonable consent. At Closing, the Buyers shall promptly pay all Cure Costs, if any, as determined by the Bankruptcy Court, in respect of the Assumed Contracts, which shall not be the obligation, liability or responsibility of SVB Financial, and the Buyers shall have delivered evidence of the Buyers' ability to comply with Section 365 of the Bankruptcy Code, including adequate assurance of future performance, in connection with the assumption and assignment of the Assumed Contracts; provided that if the Bankruptcy Court determines, pursuant to an Order that has become a Final Order, that the Cure Costs with respect to

21

any Contract of SVB Financial designated as an Assumed Contract are materially greater than SVB Financial's good-faith estimate thereof, the Buyers may rescind their designation of such Contract as an Assumed Contract by delivering notice thereof to SVB Financial not more than thirty (30) days following the date such Order becomes a Final Order.

(e)    SVB Financial and the Buyers shall take commercially reasonable actions in order to determine the Cure Costs for each Assumed Contract. SVB Financial shall take commercially reasonable actions in order to otherwise effect the assumption and assignment to SVB India of each Assumed Contract, including, to the extent applicable, by filing with the Bankruptcy Court one or more motions, each in form and substance reasonably acceptable to the Buyers, seeking authorization to assume and assign each Assumed Contract to SVB India on the terms and conditions set forth herein pursuant to Section 365 of the Bankruptcy Code (each such motion, an "**Assumed Contract Assumption and Assignment Motion**"), and providing timely and proper notice of the Assumed Contract Assumption and Assignment Motion to each applicable counterparty to such Contracts. SVB Financial shall file and serve each Assumed Contract Assumption and Assignment Motion as soon as reasonably practicable, but, in any event, not more than ten (10) Business Days following the designation of the applicable Contract as an Assumed Contract pursuant to the terms of this Section 2.4, and schedule a hearing on such Assumed Contract Assumption and Assignment Motion on the earliest available hearing date consistent with the applicable notice requirements set forth in the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES REGARDING THE SELLERS

The Sellers, jointly and severally, represent and warrant, as of the Execution Date and as of the Closing Date, as follows:

**3.1**    **Organization and Authority**. Each Seller is a corporation duly formed, validly existing and in good standing under the Laws of the jurisdiction of its formation. Subject to entry of the Sale Order and, with respect to an Assumed Contract, any Contract Assignment Order, each Seller has full corporate power and authority to execute and deliver this Agreement and the other Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder. Subject to entry of the Sale Order and, with respect to an Assumed Contract, any Contract Assignment Order, the execution, delivery and performance by each Seller of this Agreement and of each Transaction Document to which such Seller is a party and the consummation by each Seller of the Transactions, have been duly authorized and approved by all requisite corporate action of each Seller, and no other corporate action on the part of each Seller is necessary to authorize the execution and delivery and performance by such Seller under this Agreement or the other Transaction Documents and the consummation by such Seller of the Transactions. This Agreement has been duly executed and delivered by each Seller and each other Transaction Document to which such Seller is a party will be at Closing, duly executed and delivered by such Seller, and assuming due authorization, execution and delivery thereof by the other parties hereto and thereto, will constitute a legal, valid and binding obligation of such Seller, enforceable against such Seller in accordance with its terms, except that such enforceability (i) may be limited by applicable bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and other similar Laws of general application affecting or relating to the enforcement of creditors' rights generally and (ii) is subject to general principles of equity, whether considered in a proceeding at law or in equity (the "**Bankruptcy and Equity Exception**").

**3.2**    **Title**. Each Seller owns of record and beneficially, and has good and valid title to, its Interests, free and clear of any Encumbrance (other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws). Each Seller is legally authorized under the Laws of India to own and transfer its Interests. Each Seller has full and exclusive power, right and authority to vote all of its Interests and is not a party to (a) any option, warrant, purchase right, right of first

22

refusal, call, put or other Contract (other than this Agreement) that could require such Seller to sell, transfer or otherwise dispose of any of its Interests or (b) any voting trust, proxy or other Contract relating to the voting of any of its Interests. Upon delivery of its Interests to its applicable Buyer in accordance with this Agreement and upon the receipt by such Seller of the Global Closing Cash Consideration or the SVBFG Interests Purchase Price, as applicable, the entire legal and beneficial interest in the Interests owned by such Seller and good, valid and marketable title to such Interests will pass to the applicable Buyer, free and clear of all Encumbrances, other than transfer restrictions of general applicability imposed by United States' federal or state securities Laws, or Indian securities Laws.

     **3.3**    **No Conflicts**. Neither the execution and delivery of this Agreement, the consummation of the Transactions nor the performance by the Sellers of their obligations hereunder will, directly or indirectly, with or without notice or lapse of time, (a) violate any Law to which such Seller or any Interest is subject; (b) violate, conflict with, result in a breach of, constitute a default under, result in the acceleration of or give any Person the right to accelerate the maturity or performance of, or to cancel, terminate, modify or exercise any remedy under, any Contract to which such Seller is a party or by which such Seller is bound or to which any Interest is subject or the performance of which is guaranteed by such Seller or (c) result in the imposition of any Encumbrance on any Interest (except, in the case of clause (b), for any such breach, violation, conflict, default, acceleration, right or imposition that would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or impair the consummation of the Transactions). Except as set forth on Sections 3.3 and 3.4 of the Disclosures Schedules, no Seller need to notify, make any filing with, or obtain any Consent of, any Person in order to perform the Transactions, except as would not reasonably be likely to prevent, materially delay or materially impair the consummation of the Transactions or be material in any respect to SVB India.

     **3.4**    **Government Approvals**. Except for the approvals and filings set forth in Section 3.4 of the Disclosure Schedules, no Consents or approvals of, or notices to, filings, declarations or registrations with, any Governmental Body are necessary for the execution and delivery of this Agreement and the Transaction Documents by the Sellers and the consummation by the Sellers of the Transactions.

     **3.5**    **Litigation**. Except as set forth on Section 3.5 of the Disclosure Schedules, there is no Proceeding pending or, to the Knowledge of Sellers, threatened or anticipated against any Seller relating to or affecting the Transactions or otherwise relating to or affecting the Interests.

     **3.6**    **No Brokers' Fees**. No investment banker, broker, finder or intermediary or other Person is or will be entitled to any investment banking, brokerage, finder's, financial advisory or similar fee or commission in connection with this Agreement or the Transactions as a result of any arrangement made by any Seller or its Affiliates. There are no fees, expenses and disbursements of any Seller to financial advisors, investment bankers, brokers, finders, legal counsel, accountants, auditors, tax advisors, environmental consultants and other advisors or service providers of any Seller in connection with the Transactions, or any prior sale process that are owed by SVB India or of which SVB India is or will become liable.

     **3.7**    **Tax**. To the Knowledge of Sellers, each Seller holds and has held the Interests as a capital asset (and not as a stock in trade) in their books of accounts. To the Knowledge of Sellers, SVB Global does not have a permanent establishment in India within the meaning of Article 5 of the tax treaty between India and the U.S. To the Knowledge of Sellers, SVB Global has not taken any Tax registration in India, or taken or failed to take, any action that could result in it having taxable presence in India and it is not and never was or required to be subject to income Tax, or any other type of Tax in India. To the Knowledge of Sellers, neither Seller (as its collective sole and exclusive shareholders and holding company) is required to make any filing with, or obtain any Consent of, or notify, any Tax authority or Tax related Governmental Body in India in order to sell, transfer, assign and convey or otherwise deal with the Global Interests to Global I as contemplated under this Agreement.

**3.8     Indebtedness Owed to SVB India**. There is no Indebtedness owed by any Seller or any Related Person or Affiliate of any Seller to SVB India, other than the following amounts as of the date hereof: (a) the amounts of pre-petition Indebtedness that is subject to the Bankruptcy Proceeding set forth on Section 3.8 of the Disclosure Schedules, and (b) Indebtedness incurred in the Ordinary Course.

**3.9     No Other Representations or Warranties**. Except for the representations and warranties contained in this ARTICLE III and ARTICLE IV, neither Seller nor any other Person on behalf of such Seller makes any other express or implied representation or warranty with respect to such Seller or SVB India or with respect to other information provided by such Seller to the Buyers, and each Seller disclaims any other representations or warranties, whether made by such Seller or any other Person.

<div align="center">

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES REGARDING SVB INDIA**

</div>

Each of the Seller Parties represents and warrants as of the Execution Date and as of the Closing Date, as follows:

**4.1     Organization; Qualification and Limited Liability Partnership Power**. SVB India is a limited liability partnership duly formed, validly existing and in good standing under the Laws of the jurisdiction of its formation. SVB India is duly qualified to do business and is in good standing under the Laws of each jurisdiction where such qualification is required. Section 4.1 of the Disclosure Schedules sets forth SVB India's jurisdiction of formation and the other jurisdictions in which it is qualified to do business and its partners, managers, designated partners and officers. SVB India has full limited liability partnership power and authority to conduct the businesses in which it is engaged, to own and use the properties and assets that it purports to own or use and to perform its obligations under this Agreement, each other Transaction Document and otherwise. The Seller Parties have made available to the Buyers correct and complete copies of the Organizational Documents of SVB India, as amended.

**4.2     Authority**. SVB India has full limited liability partnership power and authority to execute and deliver this Agreement and the other Transaction Documents and to perform its obligations hereunder and thereunder. The execution, delivery and performance of this Agreement by SVB India, and the consummation by SVB India of the Transactions, have been duly authorized and approved by all requisite limited liability partnership action on its part, and no other limited liability partnership action on the part of SVB India is necessary to authorize the execution and delivery and performance by SVB India under this Agreement or the other Transaction Documents and the consummation by SVB India of the Transactions. This Agreement has been duly executed and delivered by SVB India and each other Transaction Document to which SVB India is a party will be, when delivered by the Sellers at Closing, duly executed and delivered by SVB India, and assuming due authorization, execution and delivery hereof and thereof by the other Parties, constitutes a legal, valid and binding obligation of SVB India, enforceable against SVB India in accordance with its terms, subject to the Bankruptcy and Equity Exception.

**4.3     Capitalization**. The entire authorized Equity Interests of SVB India consist solely of the Interests set forth on Section 4.3 of the Disclosure Schedules, all of which Interests are outstanding and owned, beneficially and of record, by the Sellers as listed therein. There are no other issued or outstanding Equity Interests of SVB India other than the Interests. All of the Interests have been duly authorized and are validly issued, fully paid and nonassessable. There are no outstanding securities convertible or exchangeable into the Interests or any options, warrants, purchase rights, subscription rights, preemptive rights, conversion rights, exchange rights, calls, puts, rights of first refusal or other Contracts that could require SVB India to issue, sell or otherwise cause to become outstanding or to acquire, repurchase or redeem Equity Interests of SVB India. There are no authorized or outstanding stock or unit appreciation rights, phantom stock or unit plans, profit participation rights or similar rights with respect to SVB India.

<div align="center">24</div>

To the Knowledge of SVB India, SVB India has not violated any securities Law in connection with the offer, sale or issuance of any of its Equity Interests or other equity or debt securities. There are no voting trusts, proxies or other Contracts relating to the voting of the Equity Interests of SVB India. There are no accrued or unpaid distributions with respect to any Interest. SVB India does not control directly or indirectly or have any direct or indirect Equity Interest in any Person. SVB India does not have, and has never had, any Subsidiaries.

**4.4    No Conflicts**. Neither the execution and delivery of this Agreement nor the performance of the Transactions by SVB India will, directly or indirectly, with or without notice or lapse of time, assuming that each of the notices, filings, declarations, registrations, Consents, authorizations and approvals referred to in Sections 3.3 and 3.4 and 4.4 and 4.5 of the Disclosure Schedules are obtained (and any condition precedent to any such Consent, authorization or approval has been satisfied) (a) violate any Law to which SVB India or any asset owned or used by SVB India is subject; (b) violate any Permit of SVB India or give any Governmental Body the right to terminate, revoke, suspend or modify any Permit of SVB India; (c) violate any Organizational Document of SVB India; (d) violate, conflict with, result in a breach of, constitute a default under, result in the acceleration of or give any Person the right to accelerate the maturity or performance of, or to cancel, terminate, modify or exercise any remedy under, any Contract to which SVB India is a party or by which SVB India is bound or to which any asset of SVB India is subject or under which SVB India has any rights or the performance of which is guaranteed by SVB India; or (e) result in the imposition of any Encumbrance upon any asset owned or used by SVB India (except, in the case of clauses (b), (d) and (e), for any such breach, violation, conflict, default, acceleration, right or imposition, that would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or impair the consummation of the Transactions or be material in any respect to SVB India). Except as set forth on Section 4.4 of the Disclosure Schedules, SVB India does not need to notify, make any filing with or obtain any Consent of any Person in order to perform the Transactions, except as would not reasonably be likely to (i) prevent, materially delay or materially impair the consummation of the Transactions or (ii) be material in any respect to SVB India.

**4.5    Government Approvals**. Except for the approvals and filings set forth in Sections 3.4 and 4.5 of the Disclosure Schedules, no Consents or approvals of, or notices to, filings, declarations or registrations with, any Governmental Body are necessary for the execution and delivery of this Agreement and the Transaction Documents by SVB India and the consummation by SVB India of the Transactions, except those the failure to make or obtain would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India or prevent, materially delay or impair the consummation of the Transactions.

**4.6    Financial Statements**. Attached to Section 4.6(i) of the Disclosure Schedules are the following financial statements (collectively, the "**Financial Statements**"): (i) the audited balance sheets of SVB India as of March 31, 2023, 2022 and 2021 and statements of profit and loss and cash flows for each of the fiscal years then ended and (ii) an unaudited balance sheet (the "**Interim Balance Sheet**") of SVB India as of December 31, 2023, and a statement of profit and loss for the twelve-month period then ended. The Financial Statements have been prepared in accordance with GAAP applied on a consistent basis throughout the periods covered thereby and present fairly the financial condition of SVB India as of and for their respective dates; provided, however, that the interim financial statements described in clause (ii) above are subject to normal, recurring year-end adjustments (which will not be, individually or in the aggregate, materially adverse) and lack notes (which, if presented, would not differ materially from the notes accompanying the Balance Sheet). Except as set forth on Section 4.6(ii) of the Disclosure Schedules, SVB India has no Indebtedness as of January 31, 2024.

**4.7    Absence of Certain Changes**. Except as set forth on Section 4.7 of the Disclosure Schedules, since the Interim Balance Sheet Date:

(a)    SVB India has not sold, leased, transferred or assigned any asset, other than for fair consideration in the Ordinary Course;

(b)    SVB India has not experienced any damage, destruction or loss (whether or not covered by insurance) to its property or assets in excess of $100,000;

(c)    SVB India has not entered into any Contract (or series of related Contracts) involving the payment or receipt of more than $100,000 or that cannot be terminated without penalty on less than ninety (90) days notice, and no Person has accelerated, terminated, modified or canceled any Contract (or series of related Contracts) involving more than $100,000 to which SVB India is a party;

(d)    SVB India has not made a dividend or distribution;

(e)    no Encumbrance (other than any Permitted Encumbrance) has been imposed upon any asset of SVB India;

(f)    SVB India has not made any capital expenditure (or series of related capital expenditures) involving more than $100,000 or made any capital investment in, any loan to, or any acquisition of the securities or assets of, any other Person (or series of related capital investments, loans or acquisitions) involving more than $100,000;

(g)    SVB India has not issued, created, incurred or assumed any Indebtedness (or series of related Indebtedness) involving more than $100,000 in the aggregate or delayed or postponed the payment of accounts payable or other Liabilities beyond the original due date;

(h)    SVB India has not canceled, compromised, waived or released any right or claim (or series of related rights or claims) or any Indebtedness (or series of related Indebtedness) owed to it, in any case involving more than $100,000;

(i)    SVB India has not issued, sold or otherwise disposed of any of its Equity Interests, or granted any options, warrants or other rights to acquire (including upon conversion, exchange or exercise) any of its Equity Interests or declared, set aside, made or paid any dividend or distribution with respect to its Equity Interests (whether in cash or in kind) or redeemed, purchased or otherwise acquired any Equity Interests of SVB India or amended any of its Organizational Documents;

(j)    SVB India has not (i) conducted its businesses outside the Ordinary Course, (ii), made any loan to, or entered into any other transaction with, any of its managers, directors, officers or employees on terms that would not have resulted from an arms-length transaction or (iii) granted any increase in the base compensation of any of its managers, directors, officers or, except in the Ordinary Course, employees;

(k)    SVB India has not made any material payments, engaged in any discount activity or paid any other consideration to any customers or vendors, other than in the Ordinary Course;

(l)    Neither SVB India nor any Seller has made, rescinded or changed any Tax election, changed any Tax accounting period, adopted or changed any accounting method, filed any amended Tax Return, entered into any closing agreement, settled any Tax claim, assessment or Liability, surrendered any right to claim a refund of Taxes, consented to any extension or waiver of the limitation period applicable to any Tax claim or assessment or taken any other similar action relating to the filing of any Tax Return or the payment of any Tax;

(m)     other than the Bankruptcy Proceeding, there has not been any Proceeding commenced nor, to the Knowledge of SVB India, threatened or anticipated relating to or affecting SVB India or its Business or any asset owned or used by it;

(n)     there have not been any changes in any material respects made to the services provided by SVB India to the Sellers, any of its Affiliates or any third-party;

(o)     SVB India has not (i) hired or terminated the employment or service of any employee or independent contractor, except in the Ordinary Course; (ii) implemented any furloughs, compensation adjustments, or reduction in hours of any employee or independent contractor; (iii) implemented any employee layoffs, retrenchment or plant closings that would implicate any Law, (iv) granted any employee, or required any employee to take, a leave of absence, or (v) entered into, amended, or extended any collective bargaining agreement or other Contract with any Union; and

(p)     SVB India has not agreed or committed to any of the foregoing.

**4.8     No Undisclosed Liabilities**. Except as set forth on Section 4.8 of the Disclosure Schedules or as incurred in the Ordinary Course following the Interim Balance Sheet Date, SVB India does not have any Liability, except for (a) Liabilities under executory Contracts that are either listed on Section 4.12(a) of the Disclosure Schedules or are not required to be listed thereon, excluding Liabilities arising out of or relating to any breach of any executory Contract, (b) Liabilities to the extent specifically reflected and adequately reserved against on the Interim Balance Sheet or (c) other Liabilities that do not exceed $200,000.

**4.9     Title to and Sufficiency of Assets**. As of the Closing, SVB India will have good and marketable title to, or a valid leasehold interest in or license to, free and clear of any Encumbrances except Permitted Encumbrances, all assets that are necessary for the continued conduct of SVB India's businesses in the same manner as conducted immediately prior to the Closing.

**4.10     Accounts Receivable**. Except as set forth on Section 4.10 of the Disclosure Schedules, all Accounts Receivable are current and collectible in accordance with their terms.

**4.11     Real Property**.

(a)     SVB India does not own any real property.

(b)     Section 4.11(b) of the Disclosure Schedules lists all real property and interests therein leased or subleased by SVB India (collectively, the "**Leased Real Property**") and a list of all leases (the "**Leases**") entered into by SVB India with respect to the Leased Real Property. Except in any such case as would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India, (i) SVB India has a valid leasehold interest in all Leased Real Property, free and clear of all Encumbrances, except Permitted Encumbrances, (ii) to the Knowledge of SVB India, there exists no default or event of default on the part of SVB India under the Leases, and (iii) there are no written or oral subleases, concessions, licenses, occupancy agreements or other Contracts or arrangements granting to any Person other than SVB India the right to use or occupy the Leased Real Property.

**4.12     Contracts**.

(a)     Section 4.12(a) of the Disclosure Schedules lists, by applicable numbered subcategory, each of the following Contracts to which SVB India is a party or by which SVB India is bound or to which any asset of SVB India is subject as of the Execution Date (collectively, with the Insurance Policies, the

"**Material Contracts**"):

(i)      each Contract (or series of related Contracts) (A) that involves delivery or receipt of products or services of an amount or value in excess of $200,000 or (B) that involves expenditures or receipts in excess of $200,000;

(ii)      each Lease;

(iii)      each Contract pursuant to which SVB India grants or receives any license with respect to Intellectual Property, that is material to the Business, excluding (A) non-exclusive licenses for off-the-shelf, generally available, third-party software licensed to SVB India, including pursuant to software as a service agreements, and (B) customary invention assignment or similar agreement establishing ownership of SVB India by Intellectual Property created by current or former employees, consultants or contractors;

(iv)      each joint venture, partnership or Contract involving a sharing of profits, losses, costs or Liabilities with any other Person;

(v)      each Contract containing any covenant that purports to restrict the business activity of SVB India or limit the freedom of SVB India to engage in any line of business or to compete with any Person;

(vi)      each Contract that requires SVB India to use any vendor or third party for all or substantially all of SVB India's requirements or needs or requires SVB India to provide a third party "most favored nation" or similar protective pricing terms;

(vii)      each power of attorney;

(viii)      each Contract (or series of related Contracts) for capital expenditures in excess of $200,000;

(ix)      each Contract to guarantee the obligations of, or to indemnify, any third party, other than (A) indemnification of customers, vendors or service providers in the Ordinary Course and (B) indemnification obligations set forth in the Organizational Documents of SVB India;

(x)      each employment-related or consulting Contract, including Contracts regarding competitive business activities, proprietary and confidential information and Intellectual Property valued in excess of $200,000;

(xi)      each Contract with a Major Customer or Major Supplier;

(xii)      each Contract with any Governmental Body;

(xiii)      each Contract not terminable without penalty on less than ninety (90) days' notice; and

(xiv)      each Contract whereby services are provided by SVB India to SVB Financial or its Affiliates, or any other third-party, other than First-Citizens and its Affiliates.

(b)      Except as set forth on Section 4.12(b) of the Disclosure Schedules, SVB India has made available to the Buyers a correct and complete copy of each Material Contract. SVB India has not entered

28

into any oral Contract. Each Material Contract is legal, valid, binding, enforceable, in full force and effect and will continue to be so on identical terms immediately following the Closing Date. To the Knowledge of SVB India, SVB India is not in breach or default, and no event has occurred or circumstances exist that with or without notice or lapse of time or both would constitute a breach or default, or permit termination, modification or acceleration, under any Material Contract. To the Knowledge of SVB India, no other party is in breach or default, and no event has occurred or circumstances exist that with or without notice or lapse of time or both would constitute a breach or default, or permit termination, modification or acceleration, under any Material Contract. Each Contract listed or required to be listed in Section 4.12(a)(xiv) has been or will be terminated at or prior to the Closing and no further obligations will remain thereunder following such termination.

   **4.13    Intellectual Property**.

   (a)    The Intellectual Property owned by SVB India, together with the Intellectual Property licensed by SVB India, including pursuant to those Contracts listed on Section 4.12(a)(iii) of the Disclosure Schedules, constitute all material Intellectual Property (other than the Excluded Marks) used in or necessary for the conduct or operation of the Business after the Closing in the same manner, in all material respects, as conducted by SVB India immediately prior to the Closing. To the Knowledge of SVB India, SVB India has taken every necessary action to maintain each item of material Intellectual Property that it owns. Each item of material Intellectual Property owned by SVB India is subsisting and, to the Knowledge of SVB India, valid and enforceable.

   (b)    During the last three (3) years, to the Knowledge of SVB India, SVB India has not violated or infringed upon any Intellectual Property of third parties, except as would not be material to SVB India, and has not received any written notice alleging any such violation or infringement. To the Knowledge of SVB India, no third party has violated or infringed upon, or is violating or infringing upon any Intellectual Property owned by SVB India except as would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India.

   (c)    SVB India does not own, and has not been issued, any patent or registration (including in relation to copyrights, Trademarks, and Net Names) from any Governmental Body with respect to any Intellectual Property. SVB India has not made any patent application or application for registration (including in relation to copyrights, Trademarks, and Net Names) with any Governmental Body with respect to any Intellectual Property. SVB India has not granted a license to any third party with respect to any Intellectual Property owned by SVB India.

   (d)    Section 4.13(d) of the Disclosure Schedules identifies each item of material Intellectual Property to the Knowledge of SVB India that any Person other than SVB India owns and that SVB India uses pursuant to any license, permission, grant of rights, authorization or other Contract with respect to use, enforcement, enjoyment, or other exploitation of Intellectual Property, other than (i) off-the-shelf, generally available, third-party software licensed to SVB India, including pursuant to software as a service agreements, (ii) customary invention assignment or similar agreement establishing ownership of SVB India by Intellectual Property created by current or former employees, consultants or contractors, and (iii) Excluded Marks. With respect to each item of Intellectual Property required to be identified on Section 4.13(d) of the Disclosure Schedules, to the Knowledge of SVB India, (A) such item is not subject to any Order; (B) no Proceeding is pending or, is threatened or anticipated that challenges the legality, validity or enforceability of such item and (C) SVB India has not granted any sublicense or similar right with respect to the Contract relating to such item.

   (e)    To the Knowledge of SVB India, SVB India does not own, develop, market, distribute or sell any software. No software licensed to SVB India is subject to any "copyleft" or other obligation or

29

condition under any "open source" license, including the GNU Public License, Lesser GNU Public License or Mozilla Public License, that requires, or conditions the use or distribution of such software on, the disclosure, licensing or distribution of any proprietary source code owned by SVB India, or that otherwise imposes any material limitation, restriction or condition on the right or ability of SVB India to use or distribute any proprietary source code.

(f)    Each former or current employee, consultant or independent contractor of SVB India who has participated in the development of material Intellectual Property for or on SVB India's behalf has assigned to SVB India, or waived all non-assignable Intellectual Property rights (including all moral rights or rights of integrity or attribution) in and to, all of such Person's rights in such Intellectual Property.

(g)    SVB India has taken commercially reasonable measures to maintain the confidentiality of all material Trade Secrets owned by SVB India, and of all other material Confidential Information, the value of which is contingent upon maintenance of the confidentiality thereof. SVB India has not received any written notice asserting any claim with respect to, or challenging or questioning, the ownership, validity of, or right to use any Trade Secrets material to or necessary for the conduct or operation of the Business. There has been no disclosure by or on behalf of SVB India to any other Person of any such Trade Secrets, other than pursuant to a written confidentiality agreement. To the Knowledge of SVB India, there has been no unauthorized disclosure of or unauthorized access to any such Trade Secrets.

(h)    To the Knowledge of SVB India, the computer, information technology and data processing systems and services used by SVB India, including all software, hardware, components, networks, communications facilities, platforms, web services and related systems and services used by SVB India (collectively, the "**Systems**"), are sufficient for the existing and currently anticipated future needs of SVB India. To the Knowledge of SVB India, the Systems are in good working condition to effectively perform all computing, information technology and data processing operations necessary for the operation of the business of SVB India. Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, there have been no internal or external audits of the Systems in which material deficiencies or issues of non-compliance were noted.

(i)    To the Knowledge of SVB India, SVB India does not own or use any publicly-facing Net Names in the conduct of the Business other than the use of svb.com email addresses.

**4.14    Privacy and Data Security**.

(a)    Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, Processing of Personal Information by SVB India has complied, and complies, in all material respects with all (i) contracts or public representations to which SVB India is a party or has made (ii) Company Privacy and Data Security Policies and (iii) Information Privacy and Security Laws (collectively, the "**Data Protection Obligations**"). To the Knowledge of SVB India, no disclosure or representation made or contained in any Company Privacy and Data Security Policy has been inaccurate, misleading, or deceptive. To the Knowledge of SVB India, SVB India has all lawful bases, authority, consents and authorizations required by the Data Protection Obligations to process the Personal Information in SVB India's possession or control in the manner in which it is Processed by SVB India. SVB India does not "sell" and has not "sold" Personal Information in their possession by virtue of Processing of Personal Information by SVB India within the meaning of Information Privacy and Security Laws.

(b)    SVB India has implemented and maintains an information security program comprised of reasonable and appropriate administrative, organizational, technical, and physical safeguards to protect Personal Information material to the operation of the Business against unauthorized use, access, interruption, modification, or corruption. SVB India (i) takes commercially reasonable steps to ensure that

30

Personal Information collected or handled by authorized third parties acting on behalf of SVB India is handled in accordance with commercially reasonable security standards, and (ii) obligates all third-party service providers, outsourcers or any Person who receives Personal Information from SVB India to comply with all Information Privacy and Security Laws.

(c)　　　To the Knowledge of SVB India, all third-party service providers or other third parties acting for or on behalf of SVB India in connection with the Processing of Personal Information or that otherwise have been authorized to have access to Personal Information in the possession or control of SVB India comply, and, since March 10, 2023, have complied with the Data Protection Obligations.

(d)　　　SVB India is not a "covered entity" or "business associate" as defined under the Health Insurance Portability and Accountability Act of 1996, as amended. To the Knowledge of SVB India, SVB India is not required to comply with the Payment Card Industry Data Security Standard.

(e)　　　Since March 10, 2023, and to the Knowledge of SVB India since January 1, 2022, no Personal Information in the possession or control of SVB India, or held or Processed by any vendor, processor or other third party for or on behalf of SVB India, has been subject to any data or security breach or any attempted or successful unauthorized access, disclosure, use, loss, denial or loss of use, alteration, destruction, compromise or Processing (a "**Security Incident**"), and SVB India has not notified, and there have been no facts or circumstances that would require SVB India to notify, any Governmental Body or other Person of any Security Incident. Since March 10, 2023, and to the Knowledge of SVB India since January 1, 2022, SVB India has taken reasonable measures to identify, document, investigate, contain or eradicate and remediate all Security Incidents.

　　　**4.15**　　**Tax**. Except as set forth on Section 4.15 of the Disclosure Schedules:

(a)　　　SVB India has timely filed or caused to be filed with the appropriate Governmental Bodies all Tax Returns that SVB India was required to have filed. All Tax Returns filed by SVB India are true, correct and complete in all material respects. All Taxes owed shown as due on such Tax Returns have been paid, and to the Knowledge of SVB India, all Taxes owed (or required to be remitted) by SVB India have been timely paid to the appropriate Governmental Bodies. All deficiencies for Taxes asserted or assessed against SVB India have been fully and timely paid, or otherwise settled with the relevant Governmental Body. To the Knowledge of SVB India, the unpaid Taxes of SVB India did not, as of the Interim Balance Sheet Date, exceed the reserve for Tax liability (other than any reserve for deferred Taxes established to reflect timing differences between book and Tax income) set forth on the face of the Interim Balance Sheet, and will not exceed that reserve as adjusted for the passage of time through the Closing Date in accordance with the past custom and practice of SVB India.

(b)　　　To the Knowledge of SVB India, SVB India is not liable for any Tax Liabilities of any other party, including any Related Person or Affiliate of any Seller, whether arising under federal, state, local, or foreign Laws.

(c)　　　There are no Encumbrances, other than a Permitted Encumbrance, on any of the assets of SVB India that arose in connection with, or otherwise relate to, any failure (or alleged failure) to pay any Tax.

(d)　　　To the Knowledge of SVB India, SVB India has withheld or collected, and timely paid to the appropriate Governmental Bodies, all Taxes required to have been withheld or collected and remitted, has timely complied in all material respects with all information reporting and Tax withholding requirements in connection with amounts paid or owing to any employee, customer, creditor, member, stockholder, independent contractor or other third party.

(e)     To the Knowledge of SVB India, no written claim has been made by any Governmental Body in a jurisdiction where SVB India does not file Tax Returns that SVB India is or may be subject to the payment, collection or remittance of any Tax of that jurisdiction or is otherwise subject to taxation by that jurisdiction.

(f)     To the Knowledge of SVB India, there is no dispute or claim concerning any Liability for Taxes paid, collected or remitted (or to be paid, collected or remitted) by SVB India claimed or raised by any Governmental Body in writing.

(g)     To the Knowledge of SVB India, SVB India has not waived any statute or period of limitations with respect to any Tax or agreed, or been requested by any Governmental Body to agree, to any extension of time with respect to any statute or period of limitations with respect to any Tax.

(h)     The Sellers have delivered or made available to the Buyers correct and complete copies of all Tax Returns of SVB India, and all audit reports and statements of deficiencies assessed against or agreed to by SVB India, in each case, for the fiscal year periods 2019-2020, 2020-2021, 2021-2022, and 2022-2023.

(i)     To the Knowledge of SVB India, no Tax Return filed by SVB India in the past six (6) years has been examined or audited by any Governmental Body. SVB India has not received any notification that an audit, examination, investigation or other Proceeding may be commenced, with respect to any Tax Returns of, or any Taxes due from or with respect to, SVB India. There is no basis for any Governmental Body to, and no Seller or manager or director or officer (or employee responsible for Tax matters) of SVB India expects any Governmental Body to, assess any additional Taxes from or with respect to SVB India for any period. SVB India has complied on a year-on-year since incorporation with all the statutory provisions, conditions, rules, and regulations necessary for claiming deduction under Section 10AA of the Income Tax, 1961 and has a reasonable basis on which to conclude that the claim for such deduction is valid.

(j)     To the Knowledge of SVB India, the details, documents, and information furnished by SVB India to the authorities in India and the United States in connection with the Bilateral Advance Pricing Agreement is true, correct, and complete in all material respects. SVB India has not made with the tax and transfer pricing authorities any untrue statement or omitted to state a material fact.

(k)     SVB India has at all times since its formation been classified as a corporation for United States federal income tax purposes. To the Knowledge of SVB India, SVB India never had a permanent establishment (within the meaning of an applicable Tax treaty) or otherwise ever had an office or fixed place of business in a country other than India

(l)     To the Knowledge of SVB India, SVB India has kept and preserved all records, invoices, and other information required to be maintained for Tax purposes or to defend pending tax assessments/ Proceedings or as may be needed to enable it to deliver correct and complete returns, declarations and information to all relevant Tax authorities for the accounting periods for which such returns, declarations and information are required as per the statute of limitation under any applicable Law.

(m)     Notwithstanding anything to the contrary in this Agreement, (i) except for the representations and warranties set forth in Sections 3.2, 3.3, 3.4, 3.7 (to the extent such representations and warranties relate to or implicate Tax matters) and this Section 4.15, neither of the Seller nor SVB India makes, and each such party hereby expressly disclaims, any express or implied representations or warranties, statutory, common law or otherwise, of any nature, with respect to Taxes, (ii) the representations and warranties of the Sellers and SVB India in this Section 4.15 refer only to activities prior to the Closing

and shall not serve as representations or warranties regarding, or a guarantee of, nor can they be relied upon with respect to, Taxes attributable to any taxable period (or portion thereof) beginning, or Tax positions taken, after the Closing Date, and (iii) nothing in this Agreement (including the representations and warranties in this Section 4.15) shall be construed as providing a representation and warranty with respect to the existence, amount, expiration date or limitations on (or availability of) any Tax attribute of the Seller or SVB India.

**4.16    Legal Compliance**.

(a)    SVB India is and since March 10, 2023 has been, and to the Knowledge of SVB India since January 1, 2022 SVB India has been, in compliance with applicable Laws and Permits, except for violations that would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India. SVB India has not received any written communication alleging any noncompliance with any such Laws that has not been cured as of the Execution Date, except as would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India. SVB India has obtained and is in compliance with all permits, licenses, certifications, approvals, registrations, consents, authorizations, franchises, variances, exemptions and orders issued or granted by a Governmental Body necessary to conduct its business as presently conducted, except those the absence of which would not, individually or in the aggregate, reasonably be expected to be material in any respect to SVB India.

(b)    Section 4.16(b) of the Disclosure Schedules contains a complete and accurate list of each Permit held by SVB India or the Sellers that is material to the conduct of the Business. The Permits listed on Section 4.16(b) of the Disclosure Schedules constitute all of the Permits necessary to allow SVB India to lawfully conduct and operate the Business as currently conducted. To the Knowledge of SVB India, SVB India has not received any written notice that any Governmental Body has commenced or may commence any Proceeding to suspend, revoke, withdraw, or otherwise limit any Permit listed on Section 4.16(b) of the Disclosure Schedules or limit the ability of SVB India to provide or perform any services.

(c)    To the Knowledge of SVB India, SVB India has provided the Buyers with true and correct copies of all outstanding Orders in force on the date of this Agreement that are applicable to SVB India.

**4.17    Litigation**. There is no Proceeding pending or, to the Knowledge of SVB India, threatened or anticipated relating to or affecting (a) SVB India or its provision of services to third-parties pursuant to contractual obligations or any asset of SVB India or (b) the Transactions. Section 4.17 of the Disclosure Schedules lists all Orders in effect at any time since January 1, 2022 to which SVB India, or any asset owned SVB India, is subject that is reasonably expected to result in any ongoing cost or expenditure that reasonably could be expected to materially impair the conduct of the Business following the Closing in substantially the same manner as immediately prior to the date hereof, or that could reasonably be expected to prevent, materially delay or materially impair the consummation of the Transactions.

**4.18    Environmental**.

(a)    The operations of SVB India and the Business are in compliance in all material respects with all applicable Environmental Law.

(b)    There is no pending or, or to the Knowledge of SVB India, threatened action against SVB India under or pursuant to any Environmental Law, and to the Knowledge of SVB India, SVB India has not received written notice from any Person, including any Governmental Body, alleging that SVB India has been or is in violation, of any applicable Environmental Law or otherwise may be liable, in any material respect, under any applicable Environmental Law.

(c)     SVB India has furnished to the Buyers all environmental reports, audits and other information in its possession or reasonably available to it bearing on environmental, health and safety matters associated with the Leased Real Property and any other property previously owned, leased or used by SVB India.

**4.19    Employees**.

(a)     Section 4.19(a) of the Disclosure Schedules accurately sets forth the following information with respect to each Active Employee and each current consultant or independent contractor of SVB India (each consultant or independent contractor referred to as a "**Consultant**"): name; classification as an employee or independent contractor/consultant; job title; work location (city and state); current base salary or hourly rate of compensation or contract fee for Active Employees and current Consultants; temporary, part-time or full-time status; current commission and incentive compensation participation, eligibility; whether on a leave of absence (including a furlough) and if so, the reason for such leave and the expected return-to-work date; amount of sick and vacation leave and other paid time off that is accrued and unused; accrued but unpaid bonuses or bonuses otherwise due, and fringe benefits.

(b)     SVB India is not a party to, bound by, or negotiating any collective bargaining agreement or other Contract with a labor union, works council or labor organization (collectively, "**Union**"), and there is not any Union representing or purporting to represent any employee of SVB India, and no Union or group of employees is seeking to organize employees for the purpose of collective bargaining. There is not any threat of, any strike, slowdown, work stoppage, lockout, concerted refusal to work overtime or other similar labor disruption or dispute affecting SVB India or any of its employees. SVB India has no duty to bargain with any Union.

(c)     There are no proceedings, charges, complaints, claims, demands, notices, investigations, grievances, or disciplinary matters or controversies pending or, to the Knowledge of SVB India, threatened to be brought or filed, by or with any Governmental Body or arbitrator, between SVB India and any Active Employee or Consultant, or former employees or consultants or independent contractors of SVB India, in connection with the employment or engagement of any current or former applicant, employee, including any Active Employee, consultant, intern or independent contractor, including any Consultant, of SVB India, including, without limitation, any charge, investigation or claim relating to unfair labor practices, equal employment opportunities, fair employment practices, employment discrimination, harassment, retaliation, reasonable accommodation, disability rights or benefits, immigration, wages, hours, overtime compensation, employee classification, child labor, hiring, background checks, references, promotion and termination of employees, working conditions, meal and break periods, privacy, health and safety, workers' compensation, leaves of absence, paid sick leave, unemployment insurance or any other employment related matter arising under applicable Laws.

(d)     SVB India is in compliance with all immigration Laws. All Active Employees are authorized under applicable Law to provide services where they are currently located or where they currently provide services to SVB India.

(e)     SVB India is in compliance with all requirements under the SEZ Act with respect to its employees, independent contractors and consultants working at the unit(s) of SVB India located in a special economic zone regulated by the SEZ Act.

(f)     No Active Employee or Consultant is a party to or bound by any agreement that (i) restricts or limits in any way the scope or type of work in which he or she may be engaged other than for the benefit of SVB India, or (ii) requires him or her to transfer, assign or disclose information concerning his or her

work to anyone other than SVB India. The engagement of each of the Consultants may be terminated by SVB India without cause or financial penalty on SVB India.

**4.20** **Employee Benefits**.

(a)      Under and in connection with the Employee Provident Funds and Miscellaneous Provisions Act, 1952 ("**PF Act**"), SVB India has to the extent as required under applicable employment Laws (i) deposited in a timely manner a minimum monthly contribution amount of INR 1800 or a higher amount (as the case may be) for eligible Active Employees or any former eligible employees (being the employees contribution) together with an equivalent sum as SVB India's contribution (being the employers contribution) into the fund and scheme under the PF Act; and (ii) undertaken compliance in all material respects as required under the PF Act.

(b)      The Employees' State Insurance Act, 1948 ("**ESIC Act**") (i) is neither applicable to SVB India nor any Active Employees or any former employee of SVB India; and (ii) there are no obligations in respect of employee state insurance contributions and compliances under the ESIC Act applicable to or required to be discharged by SVB India.

(c)      Under and in connection with the Payment of Bonus Act, 1965 ("**PB Act**"), (i) SVB India has discharged in a timely manner its obligation to pay bonus amounts as required under the PB Act to eligible Active Employees or any former eligible employees; (ii) except as set forth on Section 4.20 of the Disclosure Schedule, to the Knowledge of SVB India there are no Active Employees or former employees eligible for any payments under the PB Act during the financial years 2020-2021, 2022-2023 and 2023-2024; and (iii) SVB India has undertaken compliance in all material respects as required under the PB Act.

(d)      Under and in connection with the Payment of Gratuity Act, 1972 ("**Gratuity Act**"), SVB India (i) has paid all former eligible employees the amounts due and payable under the Gratuity Act; and (ii) to the Knowledge of SVB India, does not pay or has any policy to pay amounts exceeding the monetary limit prescribed under Section 4 of the Gratuity Act; and (iii) SVB India has undertaken compliance in all material respects as required under the Gratuity Act.

(e)      Under and in connection with the Contract Labour (Regulation and Abolition) Act, 1970 ("**CLRA**"), (i) to the Knowledge of SVB India there are no wages and dues which are unpaid for contract labour engaged by SVB India; (ii) except as set forth on Section 4.20(e), to the Knowledge of SVB India, it has ensured that all contractors of SVB India have discharged all their obligations under the CLRA with respect to the contract labour engaged by SVB India through such contractors; (iii) except as set forth on Section 4.20(e) of the Disclosure Schedule, to the Knowledge of SVB India, it has procured all contractors to submit material licenses and registration to verify their compliance with CLRA; and (iv) has submitted and undertaken compliance in all material respects as required under the CLRA.

(f)      SVB India has ensured timely payment of all wages, salaries, commissions, accrued bonuses, benefits and other compensation due and payable to its employees, independent contractors and consultants and remittance of all statutory contributions under applicable employment Laws including provisions of the Minimum Wages Act, 1948, the Payment of Wages Act, 1936, the Employees' Compensation Act, 1923, Industrial Disputes Act, 1947, locally applicable shops and establishments Laws, Professional Tax Laws, and Labour Welfare Fund Laws.

(g)      All individuals characterized by SVB India as contract laborers, independent contractors or consultants are correctly classified as contract laborers, independent contractors, or consultants as the case may be, under all applicable Laws, and SVB India has not received any misclassification, de-facto

employment or employment regularization claims or any claims for non-payment of any contractual or statutory dues or benefits.

**4.21    Customers and Suppliers**. With respect to each of the two fiscal years most recently completed prior to the Execution Date, Section 4.21 of the Disclosure Schedules lists (a) the five largest (by dollar volume) customers of SVB India during each such period (each, a "**Major Customer**") (showing the dollar volume for each) and (b) the 10 largest (by dollar volume) suppliers, contractors or vendors of SVB India during each such period (each, a "**Major Supplier**") (showing the dollar volume for each). Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, no Major Customer or Major Supplier has given SVB India written notice, or, to the Knowledge of SVB India, oral notice terminating, canceling, or otherwise materially modifying its Contract or relationship with SVB India or threatening to take any of such actions, and, to the Knowledge of SVB India, no Major Customer or Major Supplier intends to do so. As of the date hereof, SVB India has no customers other than First-Citizens and SVB Financial (it being acknowledged and understood by Buyers that, prior to Closing, the applicable Contract with SVB Financial may contemplate and allow for services to be provided to Affiliates of SVB Financial).

**4.22    Transactions with Related Persons**. No Seller or any manager, officer, director, former partner, or employee of SVB India nor any Related Person or Affiliate of the Sellers or SVB India (a) owns any interest in any asset of the Business, (b) is involved in any business or transaction with SVB India or (c) engages in competition with SVB India. No Seller or any manager, officer, director, former partner, or employee of any Seller or SVB India nor any Related Person or Affiliate of any of the foregoing (i) is a party to any Contract with, or has any claim or right against, SVB India or (ii) has any Indebtedness owing to SVB India. Except as set forth on Section 4.22 of the Disclosure Schedules, SVB India does not (x) have any claim or right against any Seller, or any manager, officer, director, former partner, or employee of any Seller or SVB India or any Related Person or Affiliate of any of the foregoing or (y) have any Indebtedness owing to any Seller, manager, officer, director, former partner, or employee of SVB India or any Related Person or Affiliate of any of the foregoing.

**4.23    Insurance**. Section 4.23 of the Disclosure Schedules sets forth the following information with respect to each material insurance policy maintained by SVB India (collectively, the "**Insurance Policies**"). SVB India has made available to the Buyers true and complete copies of each Insurance Policy. All Insurance Policies provide full and adequate coverage for all normal risks incident to the business of SVB India and are in character and amount at least equivalent to that carried by reasonable Persons engaged in similar businesses and subject to the same or similar risks. The Insurance Policies are in full force and effect, subject to the Bankruptcy and Equity Exception, and all premiums due with respect to the Insurance Policies have been paid. Section 4.23 of the Disclosure Schedules describes any self-insurance arrangements affecting SVB India.

**4.24    Bank Accounts**. Section 4.24 of the Disclosure Schedules is a complete and correct list of all checking accounts, savings accounts, custodial accounts, safe deposit boxes or other similar accounts maintained by SVB India (the "**Bank Accounts**"). SVB India has not granted any outstanding powers of attorney to any Person with respect to the Bank Accounts.

**4.25    Controls and Procedures**.

(a)    The financial statements of SVB India have been prepared from, and are in accordance with, the Books and Records. Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, the Books and Records have been, and are being, maintained in accordance with applicable legal and accounting requirements, except as would not reasonably be expected to have a Material Adverse Effect on SVB India. Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, no independent public accounting firm of SVB India or any Seller has resigned (or informed SVB India or any

36

Seller that it intends to resign) or been dismissed as independent public accountants of SVB India or any Seller as a result of or in connection with any disagreements with SVB India or any Seller on a matter of accounting principles or practices, financial statement disclosure or auditing scope or procedure relating to SVB India.

(b)     The records, systems, controls, data and information of SVB India are recorded, stored, maintained and operated under means (including any electronic, mechanical or photographic process, whether computerized or not) that are under the exclusive ownership of SVB India or accountants (including all means of access thereto and therefrom), except for any non-exclusive ownership that would not reasonably be expected to have a Material Adverse Effect on SVB India. SVB India has implemented and maintains disclosure controls and procedures and internal controls over financial reporting to ensure that material information relating to SVB India, including its Affiliates, is made known to the senior officers of SVB India by others within those entities as appropriate to allow timely decisions regarding required disclosures and to make the certifications required by the Securities Exchange Act of 1934 (the "**Exchange Act**") and Sections 302 and 906 of the Sarbanes-Oxley Act of 2002 (the "**Sarbanes-Oxley Act**"), and has disclosed, based on its most recent evaluation prior to the Execution Date, to SVB India's outside auditors and the audit committee of SVB India's board of managers and partners (i) any significant deficiencies and material weaknesses in the design or operation of internal controls over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) which are reasonably likely to materially adversely affect SVB India's ability to record, process, summarize and report financial information, and (ii) any fraud, whether or not material, that involves management or other employees who have a significant role in SVB India's internal controls over financial reporting. These disclosures were made in writing by management to SVB India's auditors and audit committee and true, correct and complete copies of such disclosures have been made available by SVB India to the Buyers. There is no reason to believe that SVB India's outside auditors and its chief executive officer and chief financial officer will not be able to give the certifications and attestations required pursuant to the rules and regulations adopted pursuant to Section 404 of the Sarbanes-Oxley Act, without qualification, when next due.

(c)     Since March 10, 2023, and to the Knowledge of SVB India, since January 1, 2022, (i) neither SVB India, nor, to the Knowledge of SVB India, any director, officer, auditor, accountant or Representative of SVB India or any of its Affiliates, has received or otherwise had or obtained knowledge of any material complaint, allegation, assertion or claim, whether written or oral, regarding the accounting or auditing practices, procedures, methodologies or methods (including with respect to loan loss reserves, write-downs, charge-offs and accruals) of SVB India or any of its Affiliates or their respective internal accounting controls, including any material complaint, allegation, assertion or claim that SVB India or any of its Affiliates has engaged in questionable accounting or auditing practices, and (ii) to the Knowledge of SVB India, no employee of or attorney representing SVB India or any of its Affiliates, whether or not employed by SVB India or any of its Affiliates, has reported evidence of a material violation of securities Laws or banking Laws, breach of fiduciary duty or similar violation by SVB India or any of its Affiliates or any of their respective officers, directors, managers, employees or agents to the board of managers and partners of SVB India or any committee thereof or the board of managers and partners or similar governing body of any Affiliate of SVB India or any committee thereof, or to the Knowledge of SVB India, to any director, partner, manager or officer of SVB India or any Affiliate of SVB India.

4.26     **No Brokers' Fees**. No investment banker, broker, finder or intermediary or other Person is or will be entitled to any investment banking, brokerage, finder's, financial advisory or similar fee or commission in connection with this Agreement or the Transactions as a result of any arrangement made by the Seller Parties.

4.27     **No Acceleration of Rights and Benefits**. Except for customary professional fees incurred in connection with this Agreement and the other Transaction Documents and the Transactions contemplated

thereby, SVB India has not made, nor is SVB India obligated to make, any payment, including any Change of Control Payment, to any Person in connection with the Transactions or any change of control. No rights or benefits of any Person have been (or will be) accelerated, increased or modified, and no Person has the right to receive any payment or remedy (including rescission or liquidated damages), in each case as a result of a change of control or the consummation of the Transactions. SVB India is not a party to any Contract which, by its terms, will require any Buyer or any other Person to support its obligations under such Contract with a letter of credit or other collateral.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES REGARDING THE BUYERS

The Buyers, jointly and severally, represent and warrant as follows:

**5.1    Organization and Authority**. Each Buyer is a corporation duly formed, validly existing and in good standing under the Laws of the jurisdiction of its formation. Each Buyer has full corporate power and authority to execute and deliver this Agreement and the other Transaction Documents to which it is a party and to perform its obligations hereunder and thereunder. The execution, delivery and performance by each Buyer of this Agreement and of each Transaction Document to which a Buyer is a party and the consummation by each Buyer of the Transactions, have been duly authorized and approved by all requisite corporate action of each Buyer, and no other corporate action on the part of each Buyer is necessary to authorize the execution and delivery and performance by the Buyers under this Agreement or the other Transaction Documents and the consummation by the Buyers of the Transactions. This Agreement has been duly executed and delivered by each Buyer and each other Transaction Document to which a Buyer is a party will be, when delivered by the Buyers at Closing, duly executed and delivered by each Buyer, and assuming due authorization, execution and delivery thereof by the other Parties, constitutes a legal, valid and binding obligation of each Buyer, enforceable against each Buyer in accordance with its terms, subject to the Bankruptcy and Equity Exception.

**5.2    No Conflicts**. Except as set forth in Section 5.2 of the Disclosure Schedules, neither the execution and delivery of this Agreement nor the performance of the Transactions by each Buyer will, directly or indirectly, with or without notice or lapse of time, assuming that each of the Consents, authorizations and approvals referred to in Section 5.2 and Section 5.3 of the Disclosure Schedules are obtained (and any condition precedent to any such Consent, authorization or approval has been satisfied), (a) violate any Law to which the Buyers are subject; (b) violate any Organizational Document of the Buyers or (c) violate, conflict with, result in a breach of, constitute a default under, result in the acceleration of or give any Person the right to accelerate the maturity or performance of, or to cancel, terminate, modify or exercise any remedy under, any Contract to which a Buyer is a party or by which a Buyer is bound or the performance of which is guaranteed by Buyer (except in the case of clauses (b) and (c) above) that would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or impair the consummation of the Transactions or be material in any respect to the Sellers). The Buyers need not notify, make any filing with, or obtain any Consent of, any Person in order to perform the Transactions.

**5.3    Government Approvals**. Except for the approvals and filings set forth in Section 5.3 of the Disclosure Schedules, and, if so directed, by the Federal Reserve, no Consents or approvals of, or notices to, filings, declarations or registrations with, any Governmental Body are required under any Law, necessary for the execution and delivery of this Agreement and the Transaction Documents by the Buyers and the consummation by the Buyers of the Transactions.

**5.4    Litigation**. There is no Proceeding pending or, to the Knowledge of the Buyers, threatened in writing against either Buyer that would prevent or materially delay the Closing.

38

**5.5**    **Available Funds**. Each Buyer has cash on hand, or access to existing credit facilities of immediately available funds, sufficient to enable it to consummate the Transactions and satisfy all of its obligations under this Agreement when required to do so pursuant to the terms hereof.

**5.6**    **No Brokers' Fees**. Except as otherwise disclosed to Seller in writing or as set forth in any Transaction Document, no investment banker, broker, finder or intermediary or other Person is or will be entitled to any investment banking, brokerage, finder's, financial advisory or similar fee or commission in connection with this Agreement or the Transactions as a result of any arrangement made by either Buyer.

**5.7**    **No Other Representations or Warranties**. Except for the representations and warranties contained in this ARTICLE V, neither Buyer nor any other Person on behalf of such Buyer makes any other express or implied representation or warranty with respect to such Buyer or with respect to any other information provided by the Buyers to the Seller Parties, and each Buyer disclaims any other representations or warranties, whether made by the Buyers or any other Person.

## ARTICLE VI
## PRE-CLOSING COVENANTS

The Parties agree as follows with respect to the period between the Execution Date and the Closing:

**6.1**    **Performance**. Each Party will use its reasonable best efforts to take all actions necessary, proper or advisable in order to perform the Transactions (including satisfaction, but not waiver, of the closing conditions set forth in ARTICLE VII).

**6.2**    **Approvals and Consents**.

(a)    As promptly as practicable after the Execution Date and in any event, no later than ten (10) days after the Execution Date, each Party shall use their reasonable best efforts to promptly make all filings required by Law to be made by them in order to perform the Transactions contemplated to be performed on or before the Termination Date. Each Party will cooperate with the other Parties and their respective Representatives with respect to all filings that such other Parties are required to make or reasonably deem necessary or advisable to obtain in connection with the Transactions. As promptly as practicable after the Execution Date, the Seller Parties will solicit or satisfy the Consents set forth in Sections 3.3, 3.4, 4.4, and 4.5 of the Disclosure Schedules, but not prior to the approval of the Buyers of the form and substance of each such Consent, which approval will not be unreasonably withheld, conditioned or delayed.

(b)    Each Party shall, and shall cause its Affiliates to, use their reasonable best efforts to take, or cause to be taken, all actions, and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper, or advisable to consummate and make effective, as promptly as practicable (and in any event no later than the Termination Date), the Transactions. Each Party shall, subject to applicable Law, supply the other with any information that may be reasonably required in order to effectuate the taking of such actions. Each Party will keep the other apprised of the status of any filings made in connection with the Transactions. Each Party shall promptly inform the other Parties, as the case may be, of any communication from any Governmental Body regarding the Transactions or any of the registrations, approvals, waivers, filings or notifications contemplated herein. Notwithstanding the foregoing, nothing contained herein shall be deemed to require the Buyers to share with the Sellers any communications with a Governmental Body that includes confidential information (including confidential supervisory information and all other nonpublic information that is exempt from public disclosure under the Freedom of Information Act and the North Carolina Public Records Law) related to the Buyers or any of their Affiliates, including but not limited to Parent and First-Citizens. If any Party receives a request for additional information or documentary material from any Governmental Body with respect to any of the

registrations, approvals, waivers, filings or notifications contemplated herein or in connection with the Transactions, then it shall use reasonable best efforts to make, or cause to be made, as soon as reasonably practicable and after consultation with the other Party, an appropriate response in compliance with such request, and, if permitted by applicable Law and by any applicable Governmental Body, provide the other Parties (including the other Parties' counsel) with advance notice and the opportunity to attend and participate in any meeting with any Governmental Body in respect of any of the registrations, approvals, waivers, filings or notifications contemplated herein or in connection with the Transactions. No Party shall commit to or agree (or permit any of their respective Affiliates to commit to or agree) with any Governmental Body to stay, toll, or extend any applicable waiting period with respect to any of the registrations, approvals, waivers, filings or notifications contemplated herein or in connection with the Transactions, without the prior written consent of the other Parties, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, nothing contained herein shall be deemed to require SVB India, any Buyer, Parent, First-Citizens, or any of their Affiliates to, in connection with obtaining the foregoing permits, consents, approvals, and authorizations of any Governmental Body or third parties in connection with the Transactions, take any action, or commit to take any action, or agree to any condition or restriction that would reasonably be expected to result in a Burdensome Condition. For purposes of this Agreement, "**Burdensome Condition**" means any condition, prohibition, limitation, or other requirement which would (i) prohibit or materially limit the ownership or operation by Parent, First-Citizens or the Buyers of all or any material portion of the business or assets of SVB India, (ii) compel Parent, First-Citizens or the Buyers or SVB India to pay any amounts (other than customary filing fees and fees of professional advisors customary to effect transactions comparable in nature and size to those contemplated by this Agreement), (iii) compel Parent, First-Citizens or the Buyers or SVB India to divest or dispose of all or any material portion of its business or the business or assets of SVB India, (iv) increase the capital requirements of Parent, First-Citizens or the Buyers, (v) restrict or materially limit the ability of Parent, First-Citizens or the Buyers or SVB India to expand its business, or (vi) otherwise be reasonably likely to have a material and adverse effect on Parent.

      **6.3**     **Operation of Business**. Except as set forth on Schedule 6.3 of the Disclosure Schedules, the Sellers will, and the Sellers will cause SVB India to, (a) conduct the Business only in the Ordinary Course, in all material respects, and not enter into any Material Contracts or materially modify any Material Contracts other than in the Ordinary Course; (b) use their commercially reasonable efforts to maintain the businesses, properties, physical facilities and operations of SVB India, preserve intact the current business organization of SVB India, keep available the services of the current officers, employees and agents of SVB India and maintain the relations and goodwill with suppliers, customers, lessors, licensors, licensees, lenders, creditors, employees, agents and others having business relationships with SVB India; (c) confer with the Buyers concerning matters of a material nature to SVB India; (d) confer with the Buyers with respect to, and provide the Buyers with copies of, Tax Returns of SVB India before filing, and pay in a timely fashion, all Taxes or other public charges levied against SVB India, or against SVB India's business or assets, unless being contested in good faith; (e) use commercially reasonable efforts to preserve and maintain all of SVB India's Permits; (f) continue in full force and effect without modification all Insurance Policies; (g) not sell or transfer any of the assets of SVB India or purchase or acquire any assets for SVB India out of the Ordinary Course; (h) confer with the Buyers and their Affiliates regarding the negotiations and discussions of Bilateral Advance Pricing Agreement and any related transfer pricing issues (including making available its personnel and representatives, and providing access to its Books and Records regarding the same), and not enter into any agreement or position with any Governmental Body regarding the Bilateral Advance Pricing Agreement or any related transfer pricing issues without the consent of Buyers; and (i) deliver to the Buyers consolidated monthly financial statements of SVB India as they become available to SVB India and Sellers and otherwise report periodically to the Buyers concerning the status of the businesses, operations and finances of SVB India. Except (i) as otherwise expressly permitted by this Agreement, (ii) required by applicable Law or (iii) with the prior written consent of the Buyers (which shall not be unreasonably withheld, conditioned or delayed), SVB India shall not, and the Sellers shall not cause

or permit SVB India to, (A) pay any dividend or make any distribution or payment to any Seller or their respective Affiliates) or (B) make an election relating to Taxes, change any annual accounting period or method, file any amended Tax Return with respect to amounts of Tax, enter into any closing agreement relating to Taxes of SVB India with respect to any amounts of Tax, settle any Tax claim or assessment relating to SVB India, surrender any right to claim a refund of Taxes, or consent to any extension or waiver of the limitation period applicable to any Tax claim.

6.4    **Pre-Closing Access**. Subject to applicable Law, upon reasonable advance notice, the Seller Parties will, and will cause their respective Representatives to, prior to the Closing (a) permit the Buyers and their Representatives to have reasonable access, during normal business hours, to all premises, properties, personnel (including the opportunity to discuss the affairs of SVB India with such personnel), Books and Records, Contracts, documents and data of or pertaining to SVB India, (b) furnish the Buyers and their Representatives with copies of all such Books and Records, Tax Returns (for the avoidance of doubt, this shall not include the Sellers' or any of their Affiliates' Tax Returns (and any related work papers) other than those related to SVB India unless such Books and Records reasonably apply to SVB India), Contracts, documents and data as the Buyers may reasonably request and (c) furnish the Buyers and their Representatives with such additional financial, operating and other data and information (including compilations and analyses thereof) pertaining to SVB India as the Buyers may reasonably request; provided, that the foregoing shall not require the Seller Parties to disclose any privileged information of the Seller Parties or any of their Affiliates.

6.5    **Exclusivity**. From the Execution Date until the earlier of (i) the filing of a motion, pleading, or notice in order to obtain entry of the Sale Order by the Bankruptcy Court or (ii) the termination of this Agreement, the Seller Parties shall not, and shall cause all of their respective Representatives and Affiliates to not, (a) solicit, initiate, facilitate or encourage submissions or proposals or offers from any Person other than the Buyers relating to any sale of SVB India or the Business howsoever structured, whether as an acquisition or purchase of all or any part of the equity securities of any Seller Party that is not an individual or any material part of the Business, or SVB India's assets or properties (other than the sale or other disposition of such assets or properties in the Ordinary Course and not in violation of this Agreement) or the sale or issuance of any equity securities of any Seller Party that is not an individual, or any merger, combination, reorganization or consolidation of SVB India or any Seller that is not an individual, in each other case, that is not otherwise contemplated by the terms of this Agreement (each, an "**Acquisition Proposal**"), (b) participate in any discussions or negotiations regarding, furnish to any other Person any information with respect to, or otherwise cooperate in any way with any Acquisition Proposal by any Person, or assist or participate in, facilitate or encourage any effort or attempt by any other Person to do or seek to do any of the foregoing, or (c) enter into any agreement or understanding, either oral or written, that would prevent, hinder or delay the Transactions. Notwithstanding the foregoing, if prior to the Closing or termination of this Agreement, any Seller Party shall receive any Acquisition Proposal or any inquiry regarding any such proposal from any Person, the Seller Parties or their respective Affiliates shall promptly give notice thereof to the Buyers and shall provide reasonable detail regarding the nature of such proposal or inquiry and such Seller Parties' (as applicable) response thereto. Each Seller Party agrees that the rights and remedies for noncompliance with this Section 6.5 shall include having such provision specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach shall cause irreparable injury to the Buyers and that money damages would not provide an adequate remedy to the Buyers.

6.6    **Confidentiality**. Except as required by the Bankruptcy Court in connection with the Bankruptcy Proceeding, each Party will, and will cause its respective Affiliates and its and their respective Representatives to, maintain in confidence all information received from another Party or a Representative of another Party in connection with this Agreement or the Transactions (including the existence and terms of this Agreement and the Transactions) and use such information solely to evaluate, negotiate and

41

consummate the Transactions, unless (a) such information is subsequently disclosed to the receiving Party or its Representatives by a third party that, to the knowledge of the receiving Party, is not bound by a duty of confidentiality, (b) such information becomes publicly available through no fault of the receiving Party, (c) such information is disclosed in connection with ordinary or required pleadings made by SVB Financial in the Bankruptcy Court or if disclosure is otherwise required by applicable Law (including to the regulators of the Buyers and their Affiliates) or by the Bankruptcy Court or (d) the receiving Party in good faith believes that the furnishing or use of such information is required by or necessary or appropriate in connection with any Proceeding, Law or any listing or trading agreement.

**6.7    Sale Order**.

(a)     As soon as reasonably practicable following the Execution Date, SVB Financial shall file, or cause to be filed, any motions, pleadings, notices or proposed Orders necessary or advisable in order to obtain entry of the Sale Order by the Bankruptcy Court, and SVB Financial shall cause each of the foregoing to be served upon all persons or entities required by the Bankruptcy Code. From the Execution Date until the earliest of (i) the termination of this Agreement in accordance with the terms hereof, (ii) the entry of the Sale Order, and (iii) the Closing Date, SVB Financial shall continue to pursue the entry of the Sale Order by the Bankruptcy Court.

(b)     Each of the Sellers and the Buyers shall appear in the Bankruptcy Court if reasonably requested by the other Party or required by the Bankruptcy Court in connection with the Transactions.

(c)     The Parties shall reasonably consult with each other regarding pleadings that any of them intends to file with the Bankruptcy Court in connection with, or which might reasonably affect the Transactions, including the Bankruptcy Court's approval of the Sale Order, as soon as practicable and no later than two (2) Business Days before filing such pleadings if practicable under the circumstances. The Sellers shall promptly (i) provide the Buyers and their outside legal counsel with copies of all notices, filings and orders of the Bankruptcy Court that the Sellers have in their possession (or have served upon them or otherwise receive) pertaining to the Sale Order or related to any of the Transactions, but only to the extent such papers are not publicly available on the docket of the Bankruptcy Court or otherwise made available to the Buyers and their outside legal counsel, and (ii) notify the Buyers and their outside legal counsel of any threat or notice of intention of any Person to object to the sale motion, the proposed Sale Order, or any other relief relating to the Transactions. The Sellers shall not seek any modification to the Sale Order by the Bankruptcy Court or any other Governmental Body of competent jurisdiction to which a decision relating to the Bankruptcy Proceeding has been appealed, in each case, without the prior written consent of the Buyers (in the Buyers' sole and absolute discretion).

(d)     If the Sale Order is appealed by any Person (or if any petition for certiorari or motion for reconsideration, amendment, clarification, modification, vacation, stay, rehearing or reargument shall be filed with respect to the Sale Order), subject to rights otherwise arising from this Agreement, SVB Financial shall use commercially reasonable efforts to prosecute such appeal, petition or motion and obtain an expedited resolution of any such appeal, petition or motion.

(e)     The Sale Order shall, among other things, (i) approve, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, (A) the execution, delivery and performance by the Sellers of this Agreement and the other Transaction Documents, (B) the sale of the Interests on the terms set forth herein and, and solely in the case of the SVBFG Interests, free and clear of all Encumbrances, other than any transfer restriction under any applicable United States' federal or state securities Laws, or Indian securities Laws, to the fullest extent permitted by the Bankruptcy Code and applicable non-bankruptcy Law, including, without limitation, any successor liability claims, (C) the performance by each Seller of its obligations under this Agreement and the other Transaction Documents and (D) approve the execution, delivery and

performance by SVB Financial of the Assignment and License Agreement, including the releases by SVB Financial set forth therein; (ii) find that (A) the each Buyer is a "good faith" buyer within the meaning of Section 363(m) of the Bankruptcy Code, (B) each Buyer has not engaged in any of the acts prohibited by Section 363(n) of the Bankruptcy Code, (C) the consideration provided by, or for the benefit of, the Buyers to SVB Financial and SVB Global in exchange for the transfer of the Interests pursuant to this Agreement and the other Transaction Documents is fair and reasonable and constitutes the provision of reasonably equivalent value, fair saleable value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the Uniform Voidable Transactions Act or any similar Law (including common law) of the United States, any state, territory or possession of the United States, including the District of Columbia, or any foreign jurisdiction to each of SVB Financial and SVB Global, and (D) each Buyer is not a successor to SVB Financial; (iii) grant the Buyers the protections of Section 363(m) of the Bankruptcy Code; (iv) allow any claim payable by SVB Financial to a Buyer Indemnified Party in accordance with the terms of Article X with administrative priority against SVB Financial under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, (v) determine that the covenants and agreements of the Sellers in this Agreement shall be binding upon the Sellers' successors and assigns in accordance with Section 12.4, including any party appointed as trustee or plan administrator for SVB Financial in the Bankruptcy Proceeding, (vi) modify the automatic stay in the Bankruptcy Proceeding pursuant to Bankruptcy Code Section 362(d) to the extent necessary to allow set-off of the Indebtedness owed to SVB India as of the Closing against the SVB Financial Payable and (vii) contain such other findings of fact, conclusions of law and orders reasonably required by the Buyers.

**6.8    Assumption and Assignment of Certain Assets**.

(a)    If, at any time during the period beginning upon the Execution Date and prior to the Closing Date, it is reasonably determined that SVB Global or any Affiliates of SVB Global or SVB Financial (other than the Buyers or SVB India) holds any right, title or interest in or to any assets, properties, interests in properties or rights used by SVB India for the continued conduct of SVB India's businesses after the Closing, whether by reason of any defects in the organization of SVB India or the proper maintenance of company status or good standing of SVB India or otherwise, then the Sellers or their respective Affiliates shall take all such acts as may be necessary or desirable to convey such assets, properties, interests in properties and rights to SVB India without any adjustment to the Transaction Consideration, provided, that, the Buyers shall promptly reimburse Sellers for any reasonable and documented out of pocket expenses incurred in connection with any such conveyance.

(b)    If, at any time during the period beginning upon the Execution Date and prior to the Closing Date, the Buyers become aware of any Business Property not already contemplated hereunder to be transferred by the Sellers to the Buyers at the Closing, the Buyers may provide written notice to SVB Financial of the existence of such Business Property (a "**Discovered Asset Notice**"). After receipt of a Discovered Asset Notice, the Parties shall consult in good faith to determine whether such Business Property is used by SVB India.

(i)    If, after good faith consultation, (A) the Parties agree that such Business Property is used by SVB India, (B) is not necessary to the reorganization of SVB Financial (as determined by SVB Financial in its sole discretion) and (C) a transfer of such Business Property to Global II is not otherwise restricted by applicable Law, SVB Financial shall move the Bankruptcy Court to transfer such Business Property to Global II free and clear of all Encumbrances (other than Permitted Encumbrances) at the Closing, without any adjustment to the Transaction Consideration.

(ii)    If, after good faith consultation, (A) the Parties disagree that such Business Property is used by SVB India, (B) such Business Property is necessary to the reorganization of SVB Financial (as determined by SVB Financial in its sole discretion) or (C) a transfer of such

43

Business Property to Global II is otherwise restricted by applicable Law, the Parties shall work in good faith and use commercially reasonable efforts to, to the extent permitted by applicable Law, provide SVB India with the ability to continue to use such Business Property in the operation of SVB India's Business from and following the Closing, including, without limitation, entry into an agreement at or following the Closing for such use, without any adjustment to the Transaction Consideration or other cost to SVB India.

**6.9    RBI Approval Application Review**. From and following the date hereof (a) to the extent not already provided, the Sellers shall (or shall cause SVB India to) provide Buyers with a copy of the proposed draft application for the RBI Approval, (b) Buyers shall have a reasonable period of time to review and comment on such draft application and all documents referred to in the application and proposed to be submitted along with the application, and (c) the Sellers and SVB India shall consider in good faith any such comments received by Buyers.

<div align="center">

**ARTICLE VII**
**CLOSING CONDITIONS**

</div>

**7.1    Conditions to Each Party's Obligations**. The obligation of each Party to consummate the Transactions is subject to the satisfaction, or waiver in writing by the applicable Party, of each of the following conditions at Closing:

(a)    <u>Regulatory Approvals and Deliverables</u>. The SEZ In-Principle Approval shall have been obtained by the applicable Seller Parties without inclusion of a Burdensome Condition.

(b)    <u>Orders</u>. No court, arbitrator, mediator or other Governmental Body of competent jurisdiction shall have enacted, enforced, entered, issued or promulgated any Order or Law (whether temporary, preliminary or permanent) that is in effect and has the effect of making the Transactions, illegal or otherwise prohibiting consummation of the Transactions.

(c)    <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order, and the Sale Order shall have become a Final Order, shall be in full force and effect and shall not be subject to a stay.

(d)    <u>Proceedings</u>. There shall not be any Proceeding pending or threatened that (i) challenges or seeks damages or other relief in connection with any of the Transactions or (ii) may have the effect of preventing, delaying, making illegal or interfering with any of the Transactions.

**7.2    Conditions to the Buyers' Obligations**. The Buyers' obligation to perform the Transactions contemplated to be performed on or before the Closing Date is subject to satisfaction, or written waiver by the Buyers of each of the following conditions at Closing:

(a)    all of the representations and warranties of the Seller Parties in this Agreement shall be true and correct in all respects (disregarding any materiality qualifications contained therein) as of the Closing Date with the same force and effect as if made on the Closing Date (except that those representations and warranties that expressly address matters only as of a particular date, which shall have been true and correct only as of such date), except where the failure of any such representations and warranty to be so true and correct would not reasonably be expected to have a Material Adverse Effect, (ii) each Seller Party shall have performed and complied with, in all material respects, all of its covenants and agreements in this Agreement to be performed prior to or at the Closing and (iii) each Seller Party shall deliver to the Buyers at the Closing a certificate, in form and substance reasonably satisfactory to each Buyer, confirming the satisfaction of the conditions in clauses (i) and (ii) above; and

<div align="center">44</div>

(b)        since the Execution Date, there shall not have occurred and be continuing any event that has had, or would, individually or in the aggregate, reasonably be expected to have, a Material Adverse Effect; provided that no event which is disclosed in the Disclosure Schedules, by itself, nor the taking of any action by SVB India which is permitted under Section 6.3 shall constitute a Material Adverse Effect.

7.3        **Conditions to the Sellers' Obligations**. The Sellers' obligations to perform the Transactions contemplated to be performed on or before the Closing Date are subject to satisfaction, or written waiver by the Sellers, of the following conditions:

(a)        (i) all of the representations and warranties of the Buyers in ARTICLE V shall be true and correct in all material respects (except for those representations and warranties qualified by material, materiality or similar expressions, which shall be true and correct in all respects) as of the Closing Date with the same force and effect as if made on the Closing Date (except that those representations and warranties that expressly address matters only as of a particular date shall have been true and correct only as of such date), except where the failure of any such representation and warranty to be so true and correct would not, individually or in the aggregate, reasonably be expected to prevent, materially delay or materially impair the ability of the Buyers to consummate the Transactions, (ii) the Buyers shall have performed and complied with, in all material respects, all of its covenants and agreements in this Agreement to be performed prior to or at the Closing and (iii) the Buyers shall deliver to the Sellers at the Closing a certificate, in form and substance reasonably satisfactory to the Sellers, confirming satisfaction of the conditions in clauses (i) and (ii) above.

7.4        **Frustration of Closing Conditions**. A Party may not rely on the failure of any condition set forth in Section 7.1, Section 7.2 or Section 7.3, as the case may be, to be satisfied if such failure was due to the failure of such Party to perform any of its obligations under this Agreement.

### ARTICLE VIII
### TERMINATION

8.1        **Methods of Termination**. This Agreement may be terminated and the Transactions may be abandoned at any time prior to the Closing as follows:

(a)        by mutual written consent of the Sellers and the Buyers;

(b)        by the Buyers upon written notice to Sellers, if:

(i)        either Seller pursues, seeks Bankruptcy Court approval of, or closes an alternative transaction with respect to the Interests or assets of SVB India with a party other than the Buyers;

(ii)        SVB Financial withdraws the motion for the Sale Order;

(iii)        any creditor obtains an unstayed order of the Bankruptcy Court granting relief from the automatic stay with respect to the Interests or any material assets of SVB India;

(iv)        the Bankruptcy Proceeding is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code;

(v)        a Chapter 11 trustee or an examiner with expanded powers is appointed pursuant to Section 1106(b) of the Bankruptcy Code;

45

(vi)    the Bankruptcy Court denies the motion to approve the Sale Order; or

(vii)    the SEZ In-Principle Approval contains a Burdensome Condition.

(c)    by the Sellers upon written notice to the Buyers, if the Restructuring Committee of SVB Financial's board of directors determines in good faith, and on the advice of counsel, that proceeding with the Transactions or failing to terminate this Agreement would be a breach of such committee's fiduciary duties;

(d)    by either of the Sellers, on the one hand, or the Buyers, on the other hand, by written notice to the other, if:

(i)    the Closing has not occurred on or before September 18, 2024 (the "**Termination Date**"), provided, however, that neither the Sellers nor the Buyers may terminate this Agreement pursuant to this Section 8.1(d) if either has received written notice from the other that it is in breach of any of its covenants or agreements and such breach has primarily caused or resulted in either (A) the failure to satisfy the conditions to its obligations to consummate the Closing set forth in ARTICLE VII, as applicable, and, if reasonably capable of being cured, cannot be or has not been cured within fifteen (15) days from the date that the Sellers or the Buyers, as applicable, are notified by the non-breaching party in writing of such breach or (B) the failure of the Closing to have occurred prior to the Termination Date;

(ii)    either Seller, on the one hand, or either Buyer, on the other hand, shall have materially breached or failed to perform any of its representations, warranties, covenants or agreements set forth in this Agreement, which breach or failure to perform is not or cannot be cured by such Party within fifteen (15) days notice by the non-breaching Party of breach or failure to perform; or

(iii)    there is in effect any Law or Order enacted or issued by a Governmental Body of competent jurisdiction that restrains, enjoins, declares unlawful or otherwise prohibits the consummation of the Closing or declares unlawful the Transactions, and such Law or Order has become final, binding and non-appealable; provided that no Party may terminate this Agreement under this Section 8.1(d)(iii) if such Order became final and non-appealable primarily due to such Party's failure to materially perform any of its obligations under this Agreement.

**8.2**    **Effect of Termination**. In the event of the termination of this Agreement as provided in Section 8.1, all further obligations of the Parties under this Agreement will terminate; provided, however,

(a)    if this Agreement is terminated by the Buyers pursuant to Section 8.1(b)(vii), the Buyers shall promptly, but in any event no later than five (5) Business Days following the date of such termination, pay to the Sellers an amount equal to all reasonable and documented out-of-pocket costs and expenses incurred by the Sellers in connection with this Agreement and the Transaction Documents, including any such out-of-pocket costs and expenses incurred in connection with the termination of this Agreement and the abandonment of the transactions contemplated by this Agreement

(b)    If this Agreement is terminated by the Buyers pursuant to Sections 8.1(b)(i) or, 8.1(b)(ii) or by the Sellers pursuant to Section 8.1(c), the Sellers shall promptly, but in any event no later than five (5) Business Days following the date of such termination, pay to the Buyers an amount equal to all reasonable out–of-pocket costs and expenses incurred by the Buyers in connection with this Agreement and the Transaction Documents, including any such out-of-pocket costs and expenses incurred in connection

with the termination of this Agreement and the abandonment of the transactions contemplated by this Agreement; and

(c)    that the obligations in Section 6.6, this Section 8.2 and ARTICLE XII will survive termination. Nothing in this ARTICLE VIII will release any Party from any Liability for any material breach of any representation, warranty, covenant or agreement in this Agreement.

## ARTICLE IX
## POST-CLOSING COVENANTS

The Parties agree as follows with respect to the period following the Closing:

**9.1    Litigation Support**. For a period of two years following the Closing Date, if any Party is evaluating, pursuing, contesting or defending against any Proceeding in connection with the Transactions or any fact, situation, circumstance, status, condition, activity, practice, plan, occurrence, event, incident, action, failure to act or transaction on or prior to the Closing Date involving SVB India, then upon the request of such Party each other Party will reasonably cooperate with the requesting Party and its counsel in the evaluation, pursuit, contest or defense, make available its personnel, and provide such testimony and access to its Books and Records as may be necessary in connection therewith. The requesting Party will reimburse each other Party for its reasonable and documented out-of-pocket expenses arising after the Closing Date related to such cooperation (unless the requesting Party is entitled to indemnification therefor under Section 10.1 including attorneys' fees without regard to Section 10.4).

**9.2    Tax Litigation**. The Sellers shall promptly notify the Buyers of all claims, Orders, Proceedings, and other developments/actions relating to, or arising from the Tax Litigation ("**Tax Litigation Claim**") within ten (10) Business Days upon the Sellers becoming aware of the Tax Litigation Claim ("**Tax Litigation Claim Notice**") and provide to the Buyers and their legal advisors reasonable access to all information, documents, Books and Records related thereto. To the extent the Tax Litigation Claim relates to or involves or in any manner impacts SVB India, the sale of Interests (or any part thereof) to the Buyers on the terms set forth herein and/or the title of the Buyers to the Interests (or any part thereof), if requested by the Buyers, the Sellers shall reasonably cooperate with the Buyers in the prosecution of the Tax Litigation Claim.

**9.3    Confidentiality**.

(a)    Except as may be required by applicable Law (including applicable securities Laws) or the rules or regulations of any national securities exchange, including any public filings with respect to the Sale Order, in each case upon the advice of counsel, neither the Sellers nor the Buyers shall, and each shall cause their respective Affiliates not to, issue or cause the publication of any press release or other public announcement or disclosure with respect to the Transactions without the consent of the other Parties, which consents shall not be unreasonably withheld, conditioned or delayed; provided that no such consent shall be required in connection with any press release, announcement or other communication by a Party or any Affiliate of a Party if the contents of such press release, announcement or other communication that relate to the Transactions are limited to information that previously has been publicly disclosed in accordance with the terms of this Agreement. Except in cases of any press release, announcement or other communication described in the proviso to the foregoing sentence, the Buyers and the Sellers (a) shall cooperate with each other in the development and distribution of all press releases and other public announcements with respect to this Agreement and the Transactions, (b) shall furnish the other with drafts of any such releases and announcements as far in advance as reasonably possible and (c) acknowledge that materials required to be disclosed or made public by the Bankruptcy Court pursuant to the Sale Order may

47

be redacted (i) as necessary to comply with contractual arrangements and (ii) as necessary to address reasonable privilege or confidentiality concerns.

(b)      For a period of six (6) years following the Closing Date, the Sellers shall, and shall cause their respective Affiliates and Representatives to, keep confidential and not disclose to any Person (except those Persons to whom such disclosure is necessary in connection with a Permitted Purpose and who are advised of the confidential nature of Confidential Information and directed to comply with the confidentiality and non-use obligations under this Section 9.3(b)), or use, any Confidential Information, except as required to (i) perform the Sellers' or their Affiliates' obligations or exercise or enforce any of their rights and remedies under this Agreement or any Transaction Document, (ii) comply with applicable Law or the Sellers' or their Affiliates' respective regulatory, tax or financial reporting requirements, (iii) respond to court orders, subpoenas or inquiries, investigations, audits or other Proceedings of Governmental Bodies, (iv) prosecute or defend any Proceeding or for other like purposes, including claims, objections and resolutions in the Bankruptcy Proceeding, or (v) administer, or satisfy their obligations in connection with, the Bankruptcy Proceeding (each, a "**Permitted Purpose**"). The Sellers shall treat, and shall cause their Affiliates and Representatives to treat, Confidential Information as confidential, using the same degree of care as the Sellers normally employ to safeguard their own confidential information from unauthorized use or disclosure, but in no event less than a reasonable degree of care. The Sellers shall be responsible for any use or disclosure of Confidential Information by any of their Affiliates, successors, assigns or Representatives that results in a breach of this Section 9.3(b).

(c)      For a period of six (6) years following the Closing Date, in the event either Seller (or SVB India) is requested pursuant to, or required by, applicable Law to disclose any Confidential Information, it will notify the Buyers first in a timely manner (to the extent legally permissible and practicable) so that the Buyers may seek a protective order or other appropriate remedy or, in the Buyers' sole discretion, waive compliance with the confidentiality provisions of this Agreement. Without limiting any parties' rights and obligations under Section 9.3(b), each Party will cooperate in all reasonable respects in connection with any reasonable actions to be taken for the foregoing purpose. In any event, the Sellers may furnish Confidential Information as requested or required pursuant to applicable Law (subject to any such protective order or other appropriate remedy) without liability hereunder, provided that the Sellers comply with the provisions of this Agreement and only furnish that portion of Confidential Information which, based on its good faith judgment upon advice of counsel, they believe is legally required, and if such Seller exercises reasonable efforts to obtain reliable assurances that confidential treatment will be accorded to such Confidential Information.

9.4      **Seller Undertakings**. During the two (2) year period following the Closing Date, if the Buyers reasonably determine that any Seller or any of their respective Affiliates, or any of their respective successors or assigns (other than the Buyers or SVB India) holds any right, title or interest in or to any assets, properties, interests in properties or rights used by SVB India prior to Closing and necessary for the continued conduct of SVB India's businesses after the Closing (other than Excluded Marks or Excluded Net Names) (collectively, the "**Business Property**"), whether by reason of any defects in the organization of SVB India or the proper maintenance of company status or good standing of SVB India, or for any other reason, then the Sellers and their respective Affiliates, successors and assigns shall, subject to applicable Law, take all such acts as may be necessary or desirable to (i) convey (by way of assignment, service, license or otherwise) such Business Property and rights to SVB India (or an Affiliate of SVB India as designated by the Buyers) at no additional cost to SVB India or the Buyers or their Affiliates, provided, that, the Buyers shall promptly reimburse Sellers for any reasonable and documented out of pocket expenses incurred in connection with any such conveyance, or (ii) provide SVB India with other accommodations as reasonably necessary for SVB India to continue its businesses after Closing. Notwithstanding anything to the contrary in this Agreement, the Parties acknowledge and agree that this Agreement shall not be deemed

to address, waive, amend, or otherwise affect any Party's right, title, interest in, or rights to use the Excluded Marks or the Excluded Net Names.

**9.5    Subsequent Actions and Post-Closing Filings**.

(a)    In case at any time after the Closing Date any further action is necessary, proper or advisable to carry out the purposes of this Agreement, each Party shall take, and shall cause its proper officers and directors to take (as applicable), as soon as is reasonably practicable, all such necessary, proper or advisable actions. No later than two (2) Business Days from the date of SVB India receiving approval from the applicable Governmental Body in respect of Global Interests India Filings, the Buyers shall file the SVBFG Interests India Filings with the relevant (Indian) Registrar of Companies as per the provisions of the relevant rule(s) of the (Indian) Limited Liability Partnership Rules, 2009 (as amended from time to time) and provide a copy of the filed LLP Form 3 and LLP Form 4 filed and the payment receipts issued in respect thereof to the Sellers within seven (7) days of the filing.

(b)    No later than twenty (20) Business Days from the date of SVB India receiving approval from the applicable Governmental Body in respect of SVBFG Interests India Filings, the Buyers shall file an application and procure the SEZ Approval and provide a copy of the SEZ Approval so procured to the Sellers within two (2) days of receiving the same.

**9.6    Assistance with Financial Reporting**. For a period of two years following the Closing Date, upon receipt of a written request from the Buyers, the Sellers shall, and shall cause their respective Affiliates to, reasonably cooperate with the Buyers and their Affiliates so that the Buyers and their Affiliates can comply with any financial reporting or other disclosure obligations under GAAP and applicable securities Laws and stock exchange listing requirements relating to the Buyers' acquisition of the Interests. The Sellers shall be entitled to seek reimbursement for any reasonable and documented out-of-pocket expenses to third parties reasonably incurred by the Sellers with respect to such assistance.

**9.7    Insurance Matters**. To the extent there are any potential insurance claims that exist as of the date of this Agreement or arise prior to the Closing related to SVB India: (a) under any occurrence-based Insurance Policy or (b) under any claims-made based Insurance Policy (in the case of each of clauses (a) and (b), including insurance policies underwritten by any captive insurer of any Seller or any of its Affiliates covering events related to SVB India occurring prior to the Closing Date), (i) the Sellers shall, and shall cause their Affiliates to, as promptly as practicable following the Execution Date and in any event prior to the Closing, notify each carrier of any such claim and (ii) from and after the Execution Date (including following the Closing Date), the Sellers shall cooperate, and shall cause their Affiliates to cooperate, with the Buyers and SVB India and take all reasonable actions as may be required to assist SVB India in obtaining amounts payable under such insurance claims, including but not limited to, providing prompt written notice of such insurance claim to the third party insurer (with a copy of any such notice to be provided concurrently to the Buyers) and any other information regarding any such insurance claim required by any insurance policy or third party insurer. For the avoidance of doubt, the Sellers shall provide access to the Buyers and SVB India to any Insurance Policy for any claim related to such Insurance Policy which relates to any claim, occurrence or loss that occurred or existed prior to the Closing Date, regardless of the date the claim is reported.

**9.8    Post-Closing Access**. Subject to applicable Law, from and after the Closing, the Buyers shall cause SVB India to, and SVB India shall, (a) preserve, maintain and retain all books, ledgers, files, reports, plans, operating records and any other material documents including to the extent stored electronically (except to the extent duplicative) pertaining to the Seller Parties and their respective Affiliates in existence and in its possession at the Closing (collectively, "**Pre-Closing Records**") for a period of six years from the Closing Date, and (b) upon reasonable advance notice from the Sellers, to the extent

permitted by applicable Law and any applicable privacy policy or agreements with third parties governing the applicable Pre-Closing Records, provide the Sellers or SVB Financial's trustee in bankruptcy and, in each case, any of their respective Representatives (collectively, the "**Seller Receiving Party**"), at the Sellers' expense, with reasonable access to the Pre-Closing Records for a Permitted Purpose; provided however, such Pre-Closing Records shall only be used by a Seller Receiving Party solely for the Permitted Purpose, subject to the continuing compliance by the Seller Receiving Parties with their confidentiality obligations set forth in this Agreement; provided, further that, for purposes of this Section 9.8, (i) "Pre-Closing Records" shall not include customer information of SVB India, First-Citizens or their Affiliates (other than SVB India's pre-Closing Affiliates), "personally identifiable information" (as defined by applicable Law) or attorney-client privileged information or attorney-client work product (provided that, if the Buyers and SVB India determine in good faith that any information requested by a Seller Receiving Party shall not be shared with such Seller Receiving Party as a result of being attorney-client privileged information or attorney-client work product, the Buyers and SVB India, on the one hand, and the Sellers and such Seller Receiving Party, on the other hand, shall discuss in good faith alternative means of the Buyers or SVB India providing such requested information to such Seller Receiving Party in another manner or form (such as redacted versions of such information, execution of a waiver or consent or delivery of such information to such Seller Receiving Party's outside counsel only)), and (ii) Pre-Closing Records shall not be used by any Seller Receiving Party for any purpose that could reasonably be deemed to be competitive to SVB India and its Affiliates. In addition, subject to their confidentiality obligations hereunder and otherwise, the Seller Receiving Parties shall be permitted to retain a copy of the Pre-Closing Records for the Permitted Purposes as required by any applicable Law. Seller Receiving Party shall enter into any additional confidentiality agreements reasonably requested by SVB India or Buyers relating to the Pre-Closing Records, including due to requirements in any upstream agreements or as required by applicable Laws.

9.9    **Employee Matters**.

(a)    Commencing on the Closing Date and ending on December 31 of the year in which the Closing occurs, the Buyers shall use commercially reasonable efforts to provide employees of SVB India who on the Closing Date become employees of either Buyer or its Subsidiaries (the "**Continuing Employees**") with the following compensation and benefits: (i) a base salary or base wage rate, as applicable, that is no less favorable than the base salary or base wage rate, as applicable, provided to such Continuing Employee immediately prior to the Closing, (ii) short-term cash incentive compensation or bonus opportunities that are no less favorable, in the aggregate, than the short-term incentive compensation or bonus opportunities, in the aggregate, provided to such Continuing Employee immediately prior to the Closing (provided that SVB India shall deliver to the Buyers at least ten (10) Business Days prior to the Closing Date a schedule setting forth the amounts for each of the elements of compensation set forth in clauses (i) and (ii) for each Continuing Employee), and (iii) pension and welfare benefits that are no less favorable in the aggregate than those provided to such Continuing Employee immediately prior to the Closing.

(b)    For purposes of eligibility, participation, vesting and benefit accrual (except not for purposes of benefit accrual under any defined benefit pension plan or to the extent that such credit would result in a duplication of benefits), service with SVB India by Continuing Employees shall be treated as service with Buyer or its Subsidiaries to the same extent that such service was taken into account under the analogous SVB India employee benefit plan prior to the Closing.

9.10    **Post-Closing Services**. Buyers acknowledge that as of, and prior to, the Execution Date, SVB India provides certain administrative services to Sellers and their Affiliates as identified in Section 9.10 of the Disclosure Schedules ("**SVB Services**"). During the 90-day period after the Closing Date (the "**Post-Closing Service Period**"), Parent, directly or through its Affiliates, shall provide the same SVB

50

Services to Sellers and their Affiliates, as applicable, as provided to them by SVB India in the ordinary course prior to the Closing Date; provided; however, that any such SVB Services may be terminated upon receipt or written notice to that effect from the Sellers. The Sellers agree to compensate Parent for the SVB Services at the rates and fees that SVB India received for the provision thereof immediately prior to the Closing Date, as set forth in Section 9.10 of the Disclosure Schedules. Prior to the Closing and during the Post-Closing Service Period, Parent and the Sellers shall cooperate in good faith and use reasonable best efforts to agree upon and implement a plan to transition each SVB Service to an alternative service provider to the Sellers and their Affiliates. If an alternative service provider for any SVB Service is not identified by the Sellers prior to or during the Post-Closing Service Period, Parent and the Sellers may enter into a mutually acceptable services agreement to have Parent or its Affiliates provide the SVB Services to the Sellers and their Affiliates for an additional period of up to 90 days after the expiration of the Post-Closing Service Period. Subject to this Section 9.10, upon termination of the Master Intercompany Services Agreement, dated July 19, 2022, among SVB Financial, Silicon Valley Bank, SVB India and any other affiliates of Silicon Valley Bank that may have become a party thereto from time to time, at or prior to the Closing in accordance with Section 4.12(a)(xiv), SVB India will not have any customers other than First-Citizens and its Affiliates. For the avoidance of doubt, the Sellers acknowledge that neither First-Citizens nor any of its Affiliates have assumed the Master Intercompany Services Agreement referenced above or any related services agreements.

**9.11    RBI Approval; Payment of SVB Financial Payable**. To the extent that the RBI Approval is not received by the Sellers and/or SVB India prior to the Closing (or, to the extent the RBI Approval is received shortly prior to the Closing but the SVB Financial Payable remains outstanding and unpaid as of the Closing), from and following the Closing, (a) the Sellers, SVB India and Buyers shall cooperate and use reasonable best efforts to seek and obtain the RBI Approval to the extent not yet received and (b) Buyers shall cause SVB India to, and SVB India shall (or shall cause an Affiliate of SVB India to on its behalf, as permitted by applicable Law), following receipt of the RBI Approval, no later than seven (7) Business Days, pay SVB Financial the full amount of the SVB Financial Payable (less Taxes if applicable under Law, and penalties, if any) by wire transfer of immediately available funds to the account(s) specified by SVB Financial in writing to the Buyers.

**9.12    Bilateral Advance Pricing Agreement**. To the extent the payments to be repatriated by SVB Financial under a fully executed Bilateral Advance Pricing Agreement approved by the Buyer exceeds the amount paid to SVB India from the Repatriation Funds Escrow Fund, within ten (10) Business Days after the Bilateral Advance Pricing Agreement is fully executed, SVB Financial shall pay such excess amount within the timelines specified in the fully executed Bilateral Advance Pricing Agreement to SVB India. If SVB Financial makes a payment to SVB India for any repatriation obligations SVB Financial has under the Bilateral Advance Pricing Agreement that are in excess of the amounts paid to SVB India in the Repatriation Funds Escrow Fund, then upon Sellers providing Buyers with evidence of such payment reasonably acceptable to the Buyers, Buyers shall promptly reimburse SVB Financial for its payment of the amount of such excess. For clarity, in the event that the Repatriation Funds Escrow Fund exceeds the repatriation obligations SVB Financial has under the Bilateral Advance Pricing Agreement, then the excess amount shall be remitted and belong to Buyers (or any of their Affiliates as designated by Buyers).

## ARTICLE X
## INDEMNIFICATION

**10.1    Indemnification by the Sellers**. From and after the Closing and subject to the terms and conditions of this ARTICLE X, each Seller, jointly and severally, will indemnify, defend and hold harmless each Buyer, SVB India and their respective Affiliates and their respective Representatives (collectively, the "**Buyer Indemnified Parties**") from and against, and pay and reimburse Buyer Indemnified Parties for, all

Losses suffered or incurred by, or imposed on, the Buyer Indemnified Parties, directly or indirectly, relating to or arising from, without duplication:

(a)        any breach of, or inaccuracy in, any representation or warranty made by any Seller or SVB India in this Agreement, any Transaction Document or any certificate delivered by any Seller or SVB India pursuant to this Agreement or any Transaction Document;

(b)        any failure to perform any pre-Closing covenant or agreement of SVB India or any covenant or agreement of any Seller in this Agreement or any Transaction Document;

(c)        Tax Litigation; and

(d)        any Company Transaction Expenses.

**10.2        Indemnification by the Buyers**. From and after the Closing and subject to the terms and conditions of this ARTICLE X, each Buyer, jointly and severally, will indemnify and hold harmless the Sellers and their respective Affiliates and their respective Representatives ("**Seller Indemnified Parties**") from, and pay and reimburse the Seller Indemnified Parties for, all Losses suffered or incurred by, or imposed on, the Seller Indemnified Parties, directly or indirectly, relating to or arising from (a) any breach or inaccuracy of any representation or warranty made by a Buyer in this Agreement, any Transaction Document or any certificate delivered by any Buyer pursuant to this Agreement or any Transaction Document; or (b) any failure to perform any covenant or agreement of a Buyer in this Agreement or any Transaction Document.

**10.3        Survival and Time Limitations**. Subject to the limitations and other provisions of this Agreement, the representations and warranties of the Parties in this Agreement or in any certificate delivered pursuant to this Agreement will survive the Closing and remain in full force and effect until 11:59 p.m. Eastern Time on the 12 month anniversary of the Closing Date, at which time such representations and warranties shall expire; provided, however, that (a) Section 3.1 (Organization and Authority), Section 3.2 (Title), Section 3.6 (No Brokers' Fees), Section 4.1 (Organization, Qualification and Limited Liability Partnership Power), Section 4.2 (Authority), Section 4.3 (Capitalization), Section 4.9 (Title to and Sufficiency of Assets), and Section 4.26 (No Brokers' Fees) (such representations and warranties identified in this Section 10.3), the "**Fundamental Representations**") will survive Closing until 11:59 p.m. Eastern Time on the date that is the earlier of (i) the fifth anniversary of the Closing Date or (ii) sixty (60) days after the expiration of all applicable statutes or periods of limitations (giving effect to any waiver, mitigation or extension thereof) and (b) the survival date applicable to the covenants, obligations and agreements contained in this Agreement shall be the date on which such covenants, obligations and agreements have been fully performed or otherwise satisfied in accordance herewith. No claim for indemnification under this ARTICLE X may be asserted by any Buyer Indemnified Party or any Seller Indemnified Party unless notice of such claim is given in accordance with Section 10.6(b) prior to the expiration of the applicable survival period set forth above. If notice of such claim is given in accordance with Section 10.6(b) prior to the expiration of the applicable survival period set forth above, such claim, and Liability for such claim, will continue to survive until such claim is resolved, regardless of whether any Proceedings are instituted prior to the expiration of the applicable periods set forth above. Notwithstanding anything to the contrary herein, in the event of any inaccuracy in or breach of a representation or warranty that constitutes or involves fraud or Willful Breach, such representation or warranty, and any claims in connection therewith, shall survive the Closing indefinitely.

**10.4        Limitations on Indemnification**.

(a)        The Sellers will have no Liability with respect to the matters described in Section 10.1(a)

or 10.1(b) unless and until the total of all Losses with respect to such matters exceeds $250,000 (the "**Basket**"), at which point the Sellers will be obligated to indemnify the Buyer Indemnified Parties for all Losses that exceed the Basket; provided, however, that any claim relating to any Fundamental Representation will not be subject to the Basket. Sellers shall have no Liability with regards to Section 4.15, except to the extent of Losses relating to or arising from Willful Breach of such sections.

(b)      The maximum aggregate amount to which the Buyer Indemnified Parties shall be entitled to recover with respect to any Losses under Section 10.1(a) shall not exceed $2,000,000 (the "**Cap**"); provided, however, that any claim relating to any Fundamental Representation will not be subject to or counted towards the Cap.

(c)      The indemnification provided for in this ARTICLE X is not intended and shall not be deemed to limit, condition, reduce or supplant the primary availability of any insurance that would be available in the absence of such indemnification. The amount of any Loss for which indemnification is provided under this ARTICLE X shall be net of any insurance proceeds actually received by a Buyer Indemnified Party as an offset against such Loss after deducting any related costs and expenses (including Taxes), including the aggregate cost (including attorneys' fees) of pursuing any related insurance claims and any related increases in insurance premiums or other chargebacks. The pendency of an insurance claim or the potential availability of insurance coverage shall not relieve the Sellers of their obligation to pay Losses when and as incurred by a Buyer Indemnified Party.

(d)      The Buyers will have no Liability with respect to the matters described in Section 10.2 unless and until the total of all Losses with respect to such matters exceeds the Basket, at which point Buyer will be obligated to indemnify the Seller Indemnified Parties for all Losses; provided, however, that any claim relating to Section 5.1 (Organization and Authority), Section 5.6 (No Brokers' Fees) or the Buyers' obligations to pay the Global Closing Cash Consideration (as adjusted) or the SVBFG Interests Purchase Price will not be subject to the Basket. The maximum aggregate amount to which the Seller Indemnified Parties shall be entitled to Losses under Section 10.2(a) shall not exceed the Cap; provided, however, that any claim relating to Section 5.1 (Organization and Authority), Section 5.6 (No Brokers' Fees) will not be subject to or counted towards the Cap.

(e)      In addition to the other exceptions set forth in this Section 10.4, the limitations set forth in this Section 10.4 will not apply to Losses arising out of or relating to fraud or Willful Breach.

(f)      Notwithstanding anything to the contrary in this Agreement, the Sellers shall not be required to indemnify any Buyer Indemnified Party for Losses pursuant to Section 10.1(a) and (b): (i) to the extent that any action or knowing omission by any Buyer Indemnified Party (other than SVB India) caused the breach of, or inaccuracy in, the representation or warranty made by any Seller or SVB India giving rise to such Losses or (ii) to any extent any such Losses relate to actions taken by SVB India at the direction of any Buyer Indemnified Party.

**10.5    Claims Against SVB India; Release**.

(a)      Subject to Section 10.4(f), and except for claims for indemnification against a manager or employee of SVB India for gross negligence, each Seller agrees not to make, directly or indirectly, and hereby waives, any claim for indemnification against SVB India by reason of the fact that such Seller was a partner, member, trustee, manager, director, officer, employee or agent of SVB India or was serving at the request of SVB India as a partner, member, trustee, manager, director, officer, employee or agent of another entity (whether such claim is for judgments, damages, penalties, fines, costs, amounts paid in settlement, Losses, expenses or otherwise and whether such claim is pursuant to any Law, Organizational Document, Contract or otherwise) with respect to any Proceeding brought by any Buyer, SVB India, or

otherwise against such Seller or any Affiliate thereof (whether such Proceeding is pursuant to this Agreement or otherwise).

(b)    Subject to Section 10.4(f), effective as of the Closing, each Seller, on its own behalf and on behalf of each of such Seller's beneficiaries, Related Persons, estate, successors and assigns (the "**Sellers Releasors**"), hereby irrevocably and unconditionally releases the Buyers, Parent, First-Citizens and SVB India (and their respective Affiliates and Related Persons, and each of their respective employees, directors, partners, members, managers, shareholders, officers, agents, attorneys, representatives, predecessors, successors, related entities, assigns and the like and any Person acting by, through, under or in concert with any of them) from any and all Losses and Proceedings of any nature whatsoever, known or unknown, suspected or unsuspected, existing or prospective, contingent or otherwise, in contract or tort, direct or indirect, at law or in equity, in any such case, arising from or substantially relating to the management or operation of SVB India prior to the Closing Date; except for Losses arising from and after the Execution Date directly related to a breach of this Agreement by the Buyers. Notwithstanding anything to the contrary in the foregoing, nothing in this Section 10.5(b) shall apply to any Losses or Proceedings that any Sellers Releasors may have against any current or former director or officer of SVB Financial or of any current or former Affiliate of SVB Financial (other than SVB India), any current or former Affiliate of SVB Financial (other than SVB India), Silicon Valley Bank, Silicon Valley Bridge Bank, N.A. or First-Citizens, in each case, other than any Losses or Proceedings in such Person's capacity as a director or officer of SVB India or in performing functions similar to that of a director or officer of SVB India, arising from or substantially relating to the management or operation of SVB India prior to the Closing Date.

**10.6    Indemnification Procedures; Third-Party Claims**.

(a)    For purposes of this Agreement, a party entitled to indemnification under this Agreement shall be referred to as an "**Indemnified Party**," and a party obligated to indemnify an Indemnified Party under this Agreement shall be referred to as an "**Indemnifying Party**."

(b)    An Indemnified Party seeking indemnification or reimbursement pursuant to this ARTICLE X must provide to (i) the Sellers, in the case of indemnification pursuant to Section 10.1 or (ii) the Buyers, in the case of indemnification pursuant to Section 10.2, in each case, a written notice of any claims it asserts pursuant to this ARTICLE X ("**Claim Notice**"), including Third-Party Claims. Such Indemnified Party must provide the Indemnifying Party a Claim Notice with respect thereto that contains a good faith, non-binding, preliminary estimate of the Losses the Indemnified Party claims to have so incurred or suffered to the extent then ascertainable (the "**Claimed Amount**"), a statement that such Indemnified Party is entitled to indemnification pursuant to this ARTICLE X for such Losses and a brief description of the circumstances supporting the Indemnified Party's belief that it is entitled to such indemnification; provided, however, that the failure to provide such notice shall not release the Indemnifying Party from any of its obligations under this ARTICLE X except to the extent that the Indemnifying Party is materially prejudiced by such failure. Within ten (10) Business Days after receipt by the Indemnifying Party of a Claim Notice, such Indemnifying Party shall deliver to the Indemnified Party a written response (a "**Response Notice**") in which such Indemnifying Party: (a) agrees that the Indemnified Party is entitled to the full Claimed Amount, (b) agrees that the Indemnified Party is entitled to part, but not all, of the Claimed Amount (such amount agreed to under clause (a) or (b), the "**Agreed Amount**"), or (c) indicates that the Indemnifying Party disputes the entire Claimed Amount. Any part of the Claimed Amount that is not agreed to pursuant to the Response Notice is the "**Contested Amount**". If a Response Notice is not received within such ten (10) Business Days period, then the Indemnifying Party shall be conclusively deemed to have agreed that the Indemnified Party is entitled to the full Claimed Amount (such amount, also an "**Agreed Amount**"). If the Parties are unable to resolve the dispute relating to the Contested Amount within thirty (30) days after the delivery of the Response Notice, then the Parties shall be entitled to seek a legal remedy in accordance with Section 12.7 to resolve such dispute. In the event that the full Claimed Amount is

accepted, but then increases from the original preliminary estimate, the Indemnified Party shall provide a supplemented Claim Notice to the Indemnifying Party and work through the response and agreement process provided herein for the original Claim Notice.

(c)    If a third party commences a Proceeding or makes a claim or demand (a "**Third-Party Claim**") against an Indemnified Party with respect to any matter that the Indemnified Party might make a claim for indemnification against an Indemnifying Party under this ARTICLE X, then the Indemnified Party shall notify the Indemnifying Party thereof in writing with a Claim Notice of the existence of such Third-Party Claim, no later than thirty (30) days following such Indemnified Party's receipt of such Third-Party Claim, and shall deliver copies of any documents served on the Indemnified Party with respect to the Third-Party Claim; provided, however, that any failure to notify the Indemnifying Party with a Claim Notice or deliver copies will not relieve the Indemnifying Party from any obligation hereunder unless (and then solely to the extent) the Indemnifying Party is materially prejudiced by such failure.

(d)    Upon receipt of the Claim Notice, the Indemnifying Party will have the right to defend the Indemnified Party against the Third-Party Claim with counsel reasonably satisfactory to the Indemnified Party so long as (i) within ten (10) days after receipt of such Claim Notice, the Indemnifying Party notifies the Indemnified Party in writing that the Indemnifying Party will, subject to the limitations of this ARTICLE X, indemnify the Indemnified Party from and against any Losses the Indemnified Party may incur relating to or arising out of the Third-Party Claim, (ii) the Indemnifying Party provides the Indemnified Party with evidence reasonably acceptable to the Indemnified Party that the Indemnifying Party will have the financial resources to defend against the Third-Party Claim and fulfill its indemnification obligations hereunder, (iii) the Indemnifying Party is not a party to the Proceeding or the Indemnified Party has determined in good faith that there would be no conflict of interest or other inappropriate matter associated with joint representation, (iv) the Third-Party Claim does not involve, and is not likely to involve, any claim by any Governmental Body or any customer, supplier, licensor or licensee of SVB India, (v) the Third-Party Claim involves only money damages and does not seek an injunction or other equitable relief, (vi) settlement of, or an adverse judgment with respect to, the Third-Party Claim is not, in the good faith judgment of the Indemnified Party, likely to establish a precedential custom or practice adverse to the continuing business interests of the Indemnified Party, (vii) the Indemnifying Party conducts the defense of the Third-Party Claim actively and diligently, and (viii) the Indemnifying Party keeps the Indemnified Party apprised of all developments, including settlement offers, with respect to the Third-Party Claim and permits the Indemnified Party to participate in the defense of the Third-Party Claim.

(e)    If the Indemnifying Party has duly assumed the defense of a Third-Party Claim, the Indemnified Party shall have the right, but not the obligation, to participate in any such defense and to employ separate counsel of its choosing (at the expense of the Indemnified Party). The Indemnifying Party's assumption of the defense of a Third-Party Claim shall conclusively establish for purposes of this Agreement that the claims made in such Third-Party Claim are within the scope of and subject to indemnification by the Indemnifying Party under this ARTICLE X. So long as the Indemnifying Party is conducting the defense of the Third-Party Claim in accordance with Section 10.6(d) neither the Indemnified Party nor the Indemnifying Party will consent to the entry of any judgment or enter into any settlement with respect to the Third-Party Claim without the prior written consent of the other party, which consent will not be unreasonably withheld, conditioned or delayed. If a firm offer is made to settle a Third-Party Claim that is being defended by the Indemnifying Party in accordance with the provisions of Section 10.6(d) without leading to any Liability or admission of wrongdoing or the creation of a financial or other obligation on the part of the Indemnified Party and provides, in customary form, for the unconditional release of each Indemnified Party from all liabilities and obligations in connection with such Third-Party Claim and the Indemnifying Party desires to accept and agree to such offer, the Indemnifying Party shall give written notice to that effect to the Indemnified Party. If the Indemnified Party fails to consent to such firm offer within ten (10) Business Days after its receipt of such notice, the Indemnified Party may continue to contest

or defend such Third-Party Claim and, in such event, the maximum liability of the Indemnifying Party as to such Third-Party Claim shall not exceed the amount of such settlement offer. If the Indemnified Party fails to consent to such firm offer and also fails to assume defense of such Third-Party Claim, the Indemnifying Party may settle the Third-Party Claim upon the terms set forth in such firm offer to settle such Third-Party Claim.

(f)  If, following notice and an opportunity to satisfy all of the conditions set forth in Section 10.6(d) (the time for satisfying such conditions not to exceed thirty (30) days), a condition is or becomes unsatisfied, (i) the Indemnified Party may defend against, and consent to the entry of any judgment or enter into any settlement with respect to, the Third-Party Claim in any manner it may in good faith deem appropriate (and the Indemnified Party need not consult with, or obtain any consent from, the Indemnifying Party in connection therewith), (ii) the Indemnifying Party will reimburse the Indemnified Party promptly and periodically (but no less often than monthly) for the costs of defending against the Third-Party Claim, including attorneys' fees and expenses and costs of investigation and (iii) the Indemnifying Party will remain responsible for any Losses the Indemnified Party may incur relating to or arising out of the Third-Party Claim to the fullest extent provided in this ARTICLE X.

**10.7    Duty to Mitigate**. To the extent required by applicable Law, each Indemnified Party shall use commercially reasonable efforts within its control (but, for clarity, not including incurring any material expense) to mitigate any Losses or potential Loss after such Indemnified Party has actual knowledge of any event that would reasonably be expected to give rise to any Loss; provided that the failure of any Indemnified Party to so mitigate shall only reduce the rights of such Indemnified Party to recover for Losses under this ARTICLE X to the extent of the Loss that would have been avoided by such mitigation (and in any event not with respect to any damages awarded to any third party against any Indemnified Party).

**10.8    Other Indemnification Matters**. The right to indemnification will not be affected by any investigation conducted, or any knowledge acquired (or capable of being acquired), at any time, whether before or after the Execution Date, with respect to any representation, warranty, covenant or agreement in this Agreement or any certificate delivered in connection with this Agreement and a Party shall not have waived its right to indemnification under this ARTICLE X by Closing with such knowledge. Without limiting any Indemnified Party's rights to indemnification in ARTICLE X, no Seller Indemnified Party shall make any claim for indemnification, contribution or subrogation from or against any Buyer Indemnified Party with respect to any indemnity claims arising under or in connection with this Agreement to the extent that any Buyer Indemnified Party is entitled to indemnification hereunder with respect to such claim, and no Buyer Indemnified Party shall make any claim for indemnification, contribution or subrogation from or against any Seller Indemnified Party with respect to any indemnity claims arising under or in connection with this Agreement to the extent that any Seller Indemnified Party is entitled to indemnification hereunder with respect to such claim. The Seller Indemnified Parties and the Buyer Indemnified Parties hereby waive any such rights of indemnification, contribution, and subrogation from and against the Buyer Indemnified Parties and the Seller Indemnified Parties, respectively, that they have or may have in the future. For purposes of this ARTICLE X, all "material," "material adverse change" and similar materiality type qualifications contained in the representations, warranties and covenants set forth in this Agreement or in any of the related agreements, exhibits, schedules or certificates to, or delivered in connection with this Agreement shall be ignored and not given any effect, including for purposes of determining (a) the amount of any Losses incurred, and (b) whether the Basket has been surpassed.

**10.9    Exclusive Remedy**. Subject to Section 12.13, after the Closing, this ARTICLE X will provide the exclusive legal remedy of the Indemnified Parties with respect to breaches of this Agreement and any certificate delivered pursuant to this Agreement, except for claims based upon fraud or Willful Breach; provided, however, that this Section 10.9 shall not limit the rights or remedies of any Party under

or with respect to any other Transaction Document (solely with respect to Transaction Documents expressly contemplated hereunder).

**10.10    Escrow Arrangements**. The Indemnity Escrow Fund shall be available to compensate Buyer Indemnified Parties for amounts due and owing in accordance with this ARTICLE X and ARTICLE XI, subject in each case to the terms and conditions of the Escrow Agreement relating to the disbursement of the Indemnity Escrow Fund. Any Losses payable to the Buyers pursuant to this Agreement shall be satisfied first from the Indemnity Escrow Fund; and thereafter, to the extent the amount of Losses exceed the amounts available to the Buyers in the Indemnity Escrow Fund, from the Sellers according to their joint and several liability and indemnification obligations set forth in this Agreement. The Buyers and the Sellers agree to promptly execute joint written instructions as required by the Escrow Agreement in relation to amounts due to the Buyers from time to time under ARTICLE X and ARTICLE XI.

**10.11    Administrative Expense Priority for Buyer Indemnified Parties**. Any claim payable by SVB Financial to a Buyer Indemnified Party in accordance with the terms of this ARTICLE X shall constitute an allowed claim with administrative priority against SVB Financial under Sections 503(b) and 507(a)(2) of the Bankruptcy Code. SVB Financial agrees that any Chapter 11 plan it proposes in the Bankruptcy Proceeding shall (a) classify such claims of a Buyer Indemnified Party then outstanding consistent with this Section 10.11 and (b) direct any party administering claims under such plan to (i) settle any claims payable by the Liquidating Trust to a Buyer Indemnified Party in accordance with the terms of this ARTICLE X as an Other Administrative Claim under the Plan of Reorganization; (ii) reserve funds reasonably sufficient to satisfy any contingent or outstanding claims that may become payable by SVB Financial to a Buyer Indemnified Party in accordance with the terms of this ARTICLE X and all other administrative claims in full, taking into account the total available assets of the Liquidating Trust; (iii) upon the reasonable request of the Buyers and subject to reasonable confidentiality limitations, provide reasonable information regarding the status of the Buyers' administrative claim and the related reserve; (iv) discuss in good faith the sufficiency of the reserve for any contingent or outstanding claims that may become payable by SVB Financial to a Buyer Indemnified Party in accordance with the terms of this ARTICLE X, and, in the event of a material dispute, the Parties shall be entitled to seek a legal remedy in accordance with Section 12.7 to resolve such dispute; and (v) notify the Buyers at least sixty (60) days before such party intends to make any final distribution to creditors or to wind up administration of SVB Financial's bankruptcy estate. For the avoidance of doubt, Buyers shall not be required to file in the Bankruptcy Proceeding a claim for administrative priority arising from an indemnification obligation under ARTICLE X until thirty (30) days after the delivery of the Response Notice described in Section 10.6(b).

**10.12    Assumption of Indemnification Obligations by Liquidating Trust**. For the avoidance of doubt, from and following the Plan Effective Date, (i) any obligation of the Sellers in this Article X shall be the obligation of the Liquidating Trust, and (ii) none of SVB Financial, NewCo or SVB Global shall have any indemnification obligations hereunder from and after the Plan Effective Date.

## ARTICLE XI
## TAX MATTERS

The following provisions will govern the allocation of responsibility as between the Buyers and the Sellers for certain Tax matters following the Closing Date:

**11.1    Intentionally Omitted**.

**11.2    Tax Periods Ending on or Before the Closing Date**. The Buyers will prepare and file, or cause to be prepared and filed, all Tax Returns for SVB India for all Pre-Closing Tax Periods and Straddle Periods (such Tax Return a "**Pre-Closing Tax Return**"). All Pre-Closing Tax Returns shall be prepared in

a manner consistent with prior practices of SVB India unless otherwise required by applicable Law or as otherwise required to reflect the consummation of the transactions contemplated by this Agreement. The Buyers will submit a draft of such Tax Return to the Sellers for review and comment at least sixty (60) days prior to the due date (with applicable extensions) for filing such Tax Return. The Buyers will consider any reasonable comments from the Sellers in good faith; however, if the Sellers do not provide any written comments within thirty (30) days after receiving such Tax Return, the Sellers will be deemed to have accepted such Tax Return as drafted by the Buyers. The Buyers will consider any reasonable comments from the Sellers in good faith, and shall not unreasonably fail to reflect any comments relating to liabilities that may reasonably be expected to be borne by the Sellers, their Affiliates, or any member of the consolidated, unitary, combined, or similar type of group of which SVB India is a member as of the Closing Date (including by operation of Tax law or as a result of indemnification obligations under this Agreement).

**11.3    Additional Tax Covenants**. The Buyers covenant that, without obtaining the prior written consent of the Sellers (such consent not to be unreasonably withheld, conditioned or delayed), it will not and will not cause or permit SVB India or any Affiliate of the Buyers, to, in each case which could reasonably be expected to give rise to a material Tax Liability to the Sellers, their Affiliates or any member of the consolidated, unitary, combined or similar type of group of which SVB India is a member as of the Closing Date:

(a)    make any election under Section 336 or 338 of the Code or any similar provision of foreign, state or local Law with respect to the transactions contemplated by this Agreement, or change the classification of SVB India for U.S. federal income tax purposes with effect on or prior to the Closing Date, or

(b)    unless SVB India continues to be treated as a "controlled foreign corporation" for U.S. federal (and applicable state and local) income tax purposes through the end of the taxable year of SVB India for U.S. federal (and applicable state and local) income tax purposes that includes the Closing Date, including as a result of any election under Treasury Regulations Section 1.245A-5 (it being understood and agreed that such an election, if available, will be made at the request of the Sellers, and the Buyers will reasonably cooperate with respect to such election), take any action outside the Ordinary Course on or after the Closing Date through the end of the taxable year that includes the Closing Date that would reasonably be expected to materially increase the "subpart F" or "global intangible low-taxed income" of SVB India for such taxable year within the meanings of Section 951 and 951A of the Code.

**11.4    Cooperation on Tax Matters**. The Buyers and the Sellers will cooperate in good faith, as and to the extent reasonably requested by the other Party, (i) in connection with the filing and preparation of Tax Returns pursuant to this ARTICLE XI and any Proceeding related thereto, (ii) providing information related to Tax Returns of the Sellers and any of its prior Affiliated Group members and any Proceeding related thereto, and (iii) evaluation and negotiation of the bilateral Advance Pricing Agreement (the "**Bilateral Advance Pricing Agreement**") filed by SVB India and SVB Financial with the United States and India tax authorities, and related proceedings. Such cooperation will include the retention and (upon the other Party's reasonable advance request) timely provision of records and information that are reasonably relevant to any such filing and preparation of Tax Returns pursuant to this ARTICLE XI, Sellers or any relevant Proceeding and making employees available on a mutually convenient basis to provide additional information and explanation of any material provided hereunder. The Party requesting assistance pursuant to the preceding two sentences shall bear all of the documented out-of-pocket costs and expenses reasonably incurred in connection with providing such assistance or information. The Buyers and the Sellers agree (i) that SVB India will retain all Books and Records with respect to Tax matters pertinent to the Sellers, its prior Affiliated Group members and SVB India relating to any taxable period beginning before the Closing Date until the expiration of the statute or period of limitations of the respective taxable periods,

(ii) to allow the other Party, at times and dates mutually acceptable to the Parties, to inspect, review and make copies of such records as such Party may deem necessary or appropriate from time to time, such activities to be conducted during normal business hours and at such Party's expense and (iii) to give the other Party reasonable written notice prior to transferring, destroying or discarding any such books and records and, if the other Party so requests, Sellers or Buyer, as the case may be, shall allow the other Party to take possession of such books and records prior to such transfer, destruction or discard.

**11.5    Certain Taxes**. All transfer, documentary, sales, use, stamp, registration, and other similar Taxes and fees (including any penalties and interest but expressly excluding any income Taxes of the Sellers) (collectively, the "**Transfer Taxes**") incurred in connection with this Agreement or the Transactions will be borne equally (one-half each) by the Sellers and the Buyers when due. The party customarily responsible under applicable Law shall file all necessary Tax Returns with respect to Transfer Taxes. The non-preparing parties shall cooperate in duly and properly preparing, executing and filing any certificates or other documents required to be filed in connection with such Transfer Taxes.

**11.6    Tax Sharing Agreements**. The Sellers shall cause all Tax Sharing Agreement with respect to or involving SVB India to be terminated as of the Closing Date, and, after the Closing Date, the Buyers and SVB India shall not be bound thereby or have any Liability thereunder.

# ARTICLE XII
# MISCELLANEOUS

**12.1    Further Assurances**. Each Party agrees to furnish upon request to any other Party such further information, to execute and deliver to any other Party such other documents and to do such other acts and things, all as any other Party may reasonably request for the purpose of carrying out the intent of the Transaction Documents.

**12.2    No Third-Party Beneficiaries**. This Agreement does not confer any rights or remedies upon any Person other than the Parties and their respective successors and permitted assigns and, as expressly set forth in this Agreement, any Indemnified Party.

**12.3    Entire Agreement**. The Transaction Documents constitute the entire agreement among the Parties with respect to the subject matter of the Transaction Documents and supersede all prior agreements (whether written or oral and whether express or implied) among any Parties to the extent related to the subject matter of the Transaction Documents (including any letter of intent or confidentiality agreement).

**12.4    Successors and Assigns**. This Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns. No Party may assign, delegate or otherwise transfer (whether by operation of Law or otherwise) any of its rights, interests or obligations in this Agreement without the prior written approval of the other Parties; provided, however, without the consent of the other parties, any Buyer may assign, delegate, or otherwise transfer any or all of its rights, interests or obligations in this Agreement to one or more of the Buyers' Affiliates; provided, further, that, without the consent of Buyers or Parent, from and following the Plan Effective Date with respect to SVB Financial and, to the extent it is dissolved, SVB Global, (a) the Liquidating Trust shall be the sole successor to the Sellers for purposes of any outstanding rights of the Sellers contemplated in Sections 2.2(e)(ii) and 2.2(e)(iii), (b) other than with respect to rights of the Sellers contemplated in Sections 2.2(e)(ii) and 2.2(e)(iii), both the Liquidating Trust and NewCo shall be the successors to the Sellers for purposes of any other outstanding rights of the Sellers contemplated hereunder, (c) both the Liquidating Trust and NewCo shall be the successors to the Sellers for purpose of the obligations of the Sellers contemplated in Sections 9.1, 9.3, 9.4, 9.6, 9.7 and 12.1, (d) other than with respect to obligations of the Sellers contemplated in Sections 9.1, 9.3, 9.4, 9.6, 9.7 and 12.1, the Liquidating Trust shall be the sole successor to the Sellers for

purposes of any other outstanding obligations of the Sellers contemplated hereunder and (e) the Sellers shall no longer have any rights or obligations hereunder, except for Sections 9.1, 9.3, 9.4, 9.5(a), 9.6, 9.7, 11.4 and 12.1 to the extent the Liquidating Trust and/or NewCo, as applicable, are unable to reasonably perform such obligations, and the Sellers may assign, delegate or otherwise transfer their respective rights, interests and obligations under this Agreement to the Liquidating Trust and/or NewCo, as applicable, consistent with the foregoing, provided however that Sellers shall not assign or otherwise transfer ownership of, or title to, the Interests to any Person prior to the Closing. Notwithstanding the foregoing, Parent may not assign, delegate or otherwise transfer any of its rights, interests or obligations in this Agreement without the prior written consent of Sellers, except that Parent may make such an assignment, delegation or transfer, without consent to: (i) an Affiliate of Parent provided that (A) such Affiliate is a creditworthy entity, is solvent and has sufficient resources to perform under this Agreement and (B) Parent shall remain primarily liable for any acts or omissions of such Affiliate; or (ii) an acquirer in connection with a change of control of Parent provided that the acquiring party assumes performance of this Agreement (expressly or by operation of Law) in connection with such change of control.

**12.5    Counterparts**. This Agreement may be executed by the Parties in multiple counterparts, whether or not the same counterpart is executed and delivered by each Party. When so executed and delivered, each such counterpart shall be deemed an original, and all such counterparts shall be deemed one and the same document. Signature pages executed and delivered by facsimile, email or other electronic means shall have the same effect as the delivery of manually signed documents in person.

**12.6    Notices**. Any notice pursuant to this Agreement shall be in writing and will be deemed effectively given by the applicable Party on the earliest of the date (a) three (3) Business Days after such notice is sent by registered U.S. mail, return receipt requested, (b) on which such notice is sent by email, (c) one (1) Business Day after such notice is deposited with an overnight courier service for next day delivery, or (d) on which such notice is delivered by hand; in each case to the appropriate address set forth below (or by such other address as the Party may designate by written notice to the other Parties, with such change of address effective five (5) days following delivery of such written notice of change). Each Seller Party, on behalf of such Seller Party and such Seller Party's successors, heirs and permitted assigns hereby designate SVB Global as such Seller Party's agent and attorney-in-fact, with full power of substitution, for all purposes set forth in this Agreement, including the full power and authority (i) to receive any notices, deliveries or funds designated hereunder or in the Transaction Documents to any other Seller Party, (ii) disburse any funds received hereunder to the Seller Parties and (iii) to execute and deliver on behalf of each Seller Party any amendment or waiver under this Agreement and to agree to resolution of all claims hereunder. If SVB Global is declared bankrupt, insolvent, resigns or is otherwise unable or unwilling to serve in such capacity, Sellers will appoint a new Person to serve as in place of SVB Global and will provide prompt written notice thereof to the Buyers. Until such notice is received, each Buyer shall be entitled to rely on the actions and statements of SVB Global. The power and authority granted hereunder will be exclusive and no Seller shall be entitled to exercise any right under this Agreement or the Transaction Documents except through SVB Global.

If to any Seller (or to SVB India prior to the Closing):

SVB Financial Group
2100 Ross Avenue, 21st Floor
Dallas, TX 75225
Attn:    Rafael Petrone
E-mail: rpetrone@svbfg.com

with a courtesy copy to (which shall not constitute notice):

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004-2498
Attn:    Andrew G. Dietderich
         James L. Bromley
         Jared M. Fishman
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        fishmanj@sullcrom.com

If to any Buyer, to:

First Citizens Global I, Inc.
4300 Six Forks Road
Raleigh, NC 27609
Attn: Office of Chief Counsel
E-mail: Doug.Witte@firstcitizens.com
        Rob.Schaaf@firstcitizens.com

with a courtesy copy to (which shall not constitute notice):

Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P.
150 Fayetteville Street, Suite 2300
Raleigh, North Carolina 27601
Attn: Gerald F. Roach
E-mail: groach@smithlaw.com

**12.7    Jurisdiction; Service of Process**. Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transactions, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in Section 12.6; provided, however, that if the Bankruptcy Proceeding has been closed pursuant to section 350 of the Bankruptcy Code, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the courts of the United States District Court for the Southern District of New York (or in the event (but only in the event) that such court does not have subject matter jurisdiction over such matter or matters, in the Supreme Court of the State of New York, County of New York), for the resolution of any such claim or dispute arising out of or relating to this Agreement, or the negotiation, validity or performance of this Agreement, or the Transactions. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such action brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Each Party irrevocably consents to and agrees that service of process, summons, notice or other document by internationally recognized overnight delivery service to such Party's address set forth in Section 12.6 (as such address may be updated pursuant to Section 12.6) shall be effective service of process for any suit, action or other proceeding brought against it under this Agreement in any such court. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT OR

4888-4564-6483 v.12.3

HE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) IT OR HE UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (III) IT OR HE MAKES SUCH WAIVER VOLUNTARILY, AND (IV) IT OR HE HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 12.7.

**12.8   Governing Law**. This Agreement shall be interpreted and construed in accordance with the Laws of the State of New York. Except to the extent expressly set forth in another Transaction Document, any and all claims, controversies and causes of action arising out of or relating to this Agreement, whether sounding in contract, tort or statute, shall be governed by the Laws of the State of New York, including its statutes of limitations, without giving effect to any conflict-of-laws or other rule that would result in the application of the Laws of a different jurisdiction.

**12.9   Amendments and Waivers**. No amendment of any provision of this Agreement will be valid unless the amendment is in writing and signed by the Buyers and the Sellers. No waiver of any provision of this Agreement will be valid unless the waiver is in writing and signed by the waiving Party. The failure of a Party at any time to require performance of any provision of this Agreement will not affect such Party's rights at a later time to enforce such provision. No waiver by any Party of any breach of this Agreement will be deemed to extend to any other breach hereunder or affect in any way any rights arising by virtue of any other breach. Unless otherwise provided, the rights and remedies provided for in this Agreement are cumulative and are not exclusive of any rights or remedies which the Parties may otherwise have at law or in equity.

**12.10   Severability**. Any provision of this Agreement that is determined by any court of competent jurisdiction to be invalid or unenforceable will not affect the validity or enforceability of any other provision hereof or the invalid or unenforceable provision in any other situation or in any other jurisdiction. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

**12.11   Expenses**. All costs and expenses incurred in connection with this Agreement and the consummation of the Transactions shall be paid by the Party incurring such expenses whether or not the Transactions are consummated, except as specifically provided to the contrary in this Agreement; provided however, that such out-of-pocket expenses for SVB India shall be paid by the Sellers.

**12.12   Construction**. The Article and Section headings in this Agreement are inserted for convenience only and are not intended to affect the interpretation of this Agreement. Any reference in this Agreement to any Article or Section refers to the corresponding Article or Section of this Agreement. Any reference in this Agreement to any Schedule or Exhibit refers to the corresponding Schedule or Exhibit attached to this Agreement, and all such Schedules and Exhibits are incorporated herein by reference. The word "including" in this Agreement means "including without limitation." The phrases "made available to Buyers," "delivered to Buyers" or "provided to Buyers" and similar phrases as used herein with respect to any documents or information means that such information or documents posted in the virtual data rooms (via Microsoft) relating to the transaction hosted by Alvarez & Marsal North America, LLC and Nishith Desai Associates at least 24 hours preceding the time at which the Parties mutually release their respective signature pages to execute this Agreement, and Buyers and their designated representatives had unrestricted access rights to such information and documents. References to "SVB India" include, for the avoidance of

doubt, any predecessor of SVB India. Any requirements for Buyers to make available, provide, or deliver any document, instrument, funds or the like to any Seller or the Sellers shall be interpreted to be made available, provided or delivered to SVB Global. The phrase "applicable Buyer" means Global I with respect to Global Interests and Global II with respect to SVBFG Interests. The phrase "its Interests" with respect to a Seller refers to the Global Interests in the case of SVB Global and refers to the SVBFG Interests in the case of SVB Financial. This Agreement will be construed as if drafted jointly by the Parties, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any provision in this Agreement. Unless the context requires otherwise, any reference to any Law will be deemed also to refer to all amendments and successor provisions thereto and all rules and regulations promulgated thereunder and any comparable Laws in any other jurisdiction. All accounting terms not specifically defined in this Agreement will be construed in accordance with GAAP. The word "or" in this Agreement means "and/or." All words in this Agreement will be construed to be of such gender or number as the circumstances require. References in this Agreement to time periods in terms of a certain number of days mean calendar days unless expressly stated herein to be Business Days. In interpreting and enforcing this Agreement, each representation and warranty will be given independent significance of fact and will not be deemed superseded or modified by any other such representation or warranty.

**12.13    Specific Performance**. Each Party acknowledges that the other Parties would be damaged irreparably and would have no adequate remedy at Law if any provision of this Agreement is not performed in accordance with its specific terms or otherwise is breached. Accordingly, each Party agrees that the other Parties will be entitled to seek an injunction to prevent any breach of any provision of this Agreement and to enforce specifically any provision of this Agreement, in addition to any other remedy to which they may be entitled and without having to prove the inadequacy of any other remedy they may have at Law or in equity and without being required to post bond or other security.

**12.14    No Recourse**. With the exception of Section 12.16, the Seller Parties agree that (a) this Agreement may only be enforced against, and any Proceeding arising out of the Transactions (whether for breach of contract, tort, fraud or otherwise) may only be made against, the Buyers and (b) no Non-Recourse Party shall have any Liability (whether for breach of contract, tort, fraud or otherwise) relating to this Agreement or the Transactions, whether by or through attempted piercing of the corporate veil or similar action, by the enforcement of any assessment or by any legal or equitable proceeding, or by virtue of any applicable Law. The Seller Parties hereby covenant and agree that they shall not institute, and shall cause each of their respective Representatives not to institute, directly or indirectly, any Proceeding arising under, or in connection with, this Agreement or the Transactions against a Non-Recourse Party.

**12.15    No Limitation on Liquidation, Dissolution or Wind Down**. Notwithstanding anything to the contrary in this Agreement (except, in the case of the Liquidating Trust, subject to Section 10.11(b)(v)), nothing in this Agreement shall prevent any Seller or the Liquidating Trust from liquidating, dissolving or assigning to, or require any Seller or the Liquidating Trust to delay its liquidation, dissolution or assignment to, the Liquidating Trust or any other liquidating trust, as the case may be, or the winding down of its respective bankruptcy estates, as applicable; provided, that neither Seller will be dissolved or liquidated prior to the Closing; provided further that Sellers will not assign or otherwise transfer ownership of, or title to, the Interests to any Person prior to the Closing.

**12.16    Parent Guarantee**. In order to induce the Seller Parties to enter into this Agreement, Parent hereby absolutely, irrevocably and unconditionally guarantees (the "**Parent Guarantee**") to the Seller Parties the full and prompt payment of all amounts due and payable, and performance of all obligations, by Global I and Global II under or in connection with this Agreement and the Transaction Documents, in accordance with the terms hereof and thereof ("**Guaranteed Obligations**"). The Parent Guarantee is a guarantee of timely payment and performance, and not merely of collection, and a separate action or actions may be brought and prosecuted against Parent to enforce such Parent Guarantee,

irrespective of whether any action is brought against Parent or any other person or whether Parent or any other person is joined in any such action or actions. Parent's obligations hereunder shall remain in full force and effect until the Guaranteed Obligations have been paid or performed in full, irrespective of the absence of any action to enforce the Guaranteed Obligations. This is a continuing guarantee of Parent coupled with an interest and shall be binding upon Parent and its successors and assigns, and no amendment, waiver or modification of the terms hereof shall affect or release such guarantee.

*[Signature page follows]*

64

The Parties have executed and delivered this Agreement as of the Execution Date.

**BUYERS:**

**FIRST CITIZENS GLOBAL I, INC.,**
**A DELAWARE CORPORATION**

By: _Julie M. Sizer_____
Name: Julie M. Sizer
Title: President

**FIRST CITIZENS GLOBAL II, INC.,**
**A DELAWARE CORPORATION**

By: _Julie M. Sizer_____
Name: Julie M. Sizer
Title: President

DocuSign Envelope ID: 082010F32C9C5F53

**PARENT:**

**FIRST CITIZENS BANCSHARES, INC.**

By: _____
Name: Jeffery L. Ward
Title: Chief Strategy Officer

[*Signature Page to Purchase and Sale Agreement*]

**SELLERS:**

**SVB FINANCIAL GROUP**

By: _Bill Kosturos_
Name: William Kosturos
Title: Chief Restructuring Officer


**SVB GLOBAL FINANCIAL, INC.**

By: _Nick Grossi_
Name: Nick Grossi
Title: President

[*Signature Page to Purchase and Sale Agreement*]

DocuSign Envelope ID: 3911F6B5-BB13-4577-8C88-C38303530835

**SVB INDIA:**


**SVB GLOBAL SERVICES INDIA LLP**

By: _Andreas Papadatos_____

Name: _Andreas Papadatos_____

Title: _Designated Partner_____

[*Signature Page to Purchase and Sale Agreement*]

## **<u>EXHIBIT C</u>**

**Kosturos Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
: 
In re                                                            :        Chapter 11
                                                                 :
SVB FINANCIAL GROUP,[1]                                          :        Case No. 23-10367 (MG)
                                                                 :
                                    Debtor.                      :
                                                                 :
---------------------------------------------------------------- x

**DECLARATION OF WILLIAM C. KOSTUROS IN SUPPORT OF DEBTOR'S
MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTOR TO SELL
SVB INDIA BY (A) SELLING PARTNERSHIP INTERESTS IN SVB INDIA FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES AND
(B) CAUSING NON-DEBTOR SUBSIDIARY TO SELL PARTNERSHIP INTERESTS IN
SVB INDIA; (II) APPROVING THE DEBTOR'S ENTRY INTO, AND PERFORMANCE
UNDER, THE PURCHASE AND SALE AGREEMENT; (III) AUTHORIZING
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS;
AND (IV) GRANTING RELATED RELIEF**

William C. Kosturos, being duly sworn, states the following under penalty of

perjury:

1.      I am the Chief Restructuring Officer of SVB Financial Group (the

"Debtor"). I have served as Chief Restructuring Officer ("CRO") of the Debtor since March 13,

2023. I am also a Managing Director with Alvarez & Marsal North America, LLC (together with

employees of its affiliates (all of which are wholly owned by its parent company Alvarez &

Marsal Holdings, LLC), its subsidiaries and independent contractors, "A&M"), a restructuring

advisory services firm retained by the Debtor in this Chapter 11 Case.  I submit this declaration

(this "Declaration") in support of the Debtor's *Motion for Entry of an Order (I) Approving the*

*Debtor to Sell SVB India by (A) Selling Partnership Interests in SVB India Free and Clear of All*

*Liens, Claims, Interests and Encumbrances and (B) Causing Non-Debtor Subsidiary to Sell*

---

[1]      The last four digits of SVB Financial Group's tax identification number are 2278.

*Partnership Interests in SVB India; (II) Approving the Debtor's Entry Into, and Performance Under, the Purchase and Sale Agreement; (III) Authorizing Assumption and Assignment of Certain Contracts; and (IV) Granting Related Relief* (the "Motion")[2].

2.    Except as otherwise indicated, all facts set forth in this Declaration are based upon:  (i) my personal knowledge, information and belief, or my opinion based upon experience, knowledge and information concerning the Debtor and its non-debtor affiliates; (ii) information learned from my review of relevant documents; and/or (iii) information supplied by members of the Debtor's management, employees of A&M working directly with me or under my supervision, direction or control, and/or from the Debtor's other professionals and advisors.

A.    **A Sound Business Justification Exists for the Sale Transaction**.

3.    I believe that the Debtor's consummation of the Sale Transaction on a private basis pursuant to the Purchase Agreement is appropriate in light of the facts and circumstances of this Chapter 11 Case and is in the best interest of its estate and all parties-in-interest. A public auction would require the Debtor to incur substantial additional costs and would not likely result in additional value sufficient to justify the incurrence of such costs. Further, the proposed Sale Transaction would best preserve the value of SVB India as a going concern.

B.    **The Sale Transaction Will Produce a Fair and Reasonable Purchase Price for SVB India**.

4.    Based on my experience, I believe the Debtor has fairly marketed SVB India and conducted the related sale process in good faith.

---

[2]    Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in (a) the Motion, or (b) the Purchase Agreement (as defined below), as applicable.

5.      In June 2023, following its acquisition of a substantial portion of Bridge Bank's assets, First-Citizens expressed to the Debtor its interest in purchasing SVB India to achieve synergies with the Silicon Valley Bank business that SVB India had serviced and that continued to account for a substantial majority of SVB India's operations.  Over the following months, the Debtor engaged in conversations with First-Citizens about a potential sale of SVB India and also reached out to and held discussions with other potential strategic buyers in an effort to obtain a higher or otherwise better offer for SVB India.  The Debtor, however, did not receive any indications of interest from those other parties.

6.      After receiving an offer from First Citizens Parent (together with Buyers, which are wholly owned by First Citizens Parent, the "Buyer Group") for SVB India, the Debtor engaged in arm's-length, good-faith negotiations with the Buyer Group regarding the terms of a sale of SVB India.  The Debtor, in consultation with the Restructuring Committee, considered the Buyer Group's seriousness of interest in acquiring, and financial capacity to acquire, SVB India, the Buyer Group's positioning as the most logical acquirer for a business that currently predominantly services the Buyer Group and its affiliates, the Purchase Price offered and strategic alternatives for SVB India.

7.      On March 18, 2024, the Debtor, SVB Global, SVB India and the Buyer Group entered into the Purchase Agreement.  A copy of the Purchase Agreement is attached as Exhibit B to Motion.  The aggregate consideration for all the partnership interests in SVB India as set forth in the Purchase Agreement is an amount in cash equal to $21.8 million, subject to deduction of up to $8.9 million for outstanding post-petition obligations owed by the Debtor and its Affiliates to First-Citizens and its Affiliates and a holdback of $2 million for the Indemnity Escrow Funds and $3 million for the Repatriation Funds Escrow Fund.

8.      I believe that the purchase price for SVB India contemplated by the Purchase Agreement is fair and reasonable.  The Debtor was faced with unique circumstances where SVB India, a back-office support center which primarily provides customized services for Silicon Valley Bank, was not sold together with Silicon Valley Bank to First Citizens Parent in the transaction arranged by the FDIC-R.  Accordingly, there is a lack of market interest in such a standalone supporting unit that lacked any binding contractual services agreement, and as a result, the Debtor's outreach to additional strategic buyers did not yield offers.  Given the synergistic value and serious interest reflected in the Buyer Group's offer, I believe that the purchase price for SVB India is fair and reasonable.  I do not believe that there is a reasonable likelihood that any materially improved offer could be obtained through a more extensive or public sale process at this time.

9.      I believe that any other alternative to the proposed sale of SVB India to Buyer, including a liquidation of SVB India, would not have resulted in a higher or otherwise better value to the estate.  Selling SVB India now will enable the Debtor to receive cash proceeds and avoid further expenses relating to the continued operation or a wind-down of SVB India.

10.      Based on my experience, involvement in the process and review of available alternatives, it is my opinion that there is no higher or otherwise better offer or alternative currently available for SVB India.  I believe that interested persons and entities have been afforded a full, fair and reasonable opportunity to make a higher or otherwise better offer to purchase SVB India.

C.      **The Parties Have Acted in Good Faith and Buyers Should Be Entitled to the Good Faith Protections of Section 363(m) of the Bankruptcy Code**.

11.      Upon reviewing the applicable information provided by the Buyer Group and information supplied by persons working under my direction whose information I rely upon,

-4-

I believe that no common identity of directors or controlling equity interest holders exists

between the Buyer Group and its affiliates, on the one hand, and the Debtor or SVB Global, on

the other hand, and none of Buyers or any other member of the Buyer Group controls the Debtor

or SVB Global in any respect. I further submit that neither Buyer is an "insider" of the Debtors,

as that term is defined in section 101(31) of the Bankruptcy Code.

**D.** **The Sale of the Debtor Interests Should be Made Free and Clear of Any Liens**.

12.     I believe that not transferring the Debtor Interests free and clear of all

Encumbrances, except for any Permitted Restriction, would adversely affect the Debtor's efforts

to maximize the value of SVB India. I believe that Buyers would not have entered into the

Purchase Agreement and would not consummate the transactions contemplated thereby if the

sale of the Debtor Interests was not free and clear of all Encumbrances, except for any Permitted

Restriction.

**E.** **Buyers Should Have No Successor Liability**.

13.     Neither Buyer is a successor to, continuation of or alter ego of, the Debtor,

its estate or SVB Global, and there is no continuity of enterprise between either Buyer on one

hand, and the Debtor and SVB Global on the other hand, as a result of any action taken in

connection with the Sale Transaction. It is my understanding that neither Buyer is holding itself

out to the public as a successor to or a continuation of the Debtor, its estate or SVB Global. The

Sale Transaction does not amount to a consolidation, succession, merger, or de facto merger of

either Buyer, on the one hand, and the Debtor, its estate or SVB Global, on the other hand.

14.     Accordingly, for the foregoing reasons, I believe that the Purchase

Agreement represents the highest or otherwise best offer for SVB India and that the sale of SVB

India to Buyers pursuant to the Purchase Agreement will provide a greater recovery for the

Debtor's estate than would be provided by any other reasonably available alternative.

[*Remainder of page intentionally left blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge, information and belief.

Dated:  March 19, 2024
New York, New York

/s/ William C. Kosturos
William C. Kosturos
Chief Restructuring Officer