**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

In re:                                                                                   **NOT FOR PUBLICATION**

       SVB FINANCIAL GROUP,                                         Chapter 11

                                            Case No. 23-10367 (MG)

                             Debtor.
------------------------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER SUSTAINING DEBTOR'S THIRD OMNIBUS OBJECTION TO PROOF OF CLAIM NO. 841 FILED BY TONI HENDERSON BUTLER

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL LLP
*Attorneys for the Debtor*
125 Broad Street
New York, New York 10004
By:    James L. Bromley, Esq.
        Andrew G. Dietderich, Esq.
        Christian P. Jensen, Esq.

TONI HENDERSON BUTLER
*Pro se Creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Pending before the Court is the third omnibus claims objection (the "Claims Objection,"

ECF Doc. # 908) of SVB Financial Group (the "Debtor") to proof of claim no. 841 (the "Butler

Claim"), a priority claim asserted in the amount of $370,352.23, filed by *pro se* creditor Toni

Henderson Butler ("Butler" or the "Claimant") on August 8, 2023.[1]  The Claims Objection seeks

entry of an order disallowing and expunging the Butler Claim from the Debtor's claims register

in its entirety on "no liability" grounds.  (Claims Objection, Ex. 1 at 1.)  Annexed to the Claims

Objection is (i) a proposed order granting the Claims Objection as Exhibit A and (ii) the

---

[1]     While the Butler Claim is dated August 9, 2023, the claims register and the Claims Objection specify a filing date of August 8, 2023.

supporting declaration of Holden Bixler (the "Bixler Declaration"), managing director at Alvarez & Marsal North America LLC, as Exhibit B.

Butler opposes the Claims Objection as it relates to her claim, filing a response to the Claims Objection on April 1, 2024 (the "First Butler Response," ECF Doc. # 1006). On April 5, 2024, the Debtor filed an omnibus reply (the "Debtor's Omnibus Reply," ECF Doc. # 1009), addressing several responses to the Claims Objection, including the First Butler Response. In connection with the Debtor's Omnibus Reply, the Debtor also filed the *Supplemental Declaration of Holden Bixler in Support of Debtor's Third Omnibus Objection to Certain Proofs of Claim with Brief in Support and Notice of Opportunity for Hearing* (the "First Supplemental Bixler Declaration;" ECF Doc. # 1009, Ex. A). Butler filed a response on April 8, 2024 (the "Second Butler Response," ECF Doc. # 1022) to the Debtor's Omnibus Reply, maintaining that her claim is enforceable against the Debtor. (*See* Second Butler Response at 2.)

A hearing on the Claims Objection was held on April 9, 2024, and the Court entered an order (the "April 9th Order," ECF Doc. # 1025) overruling the Claims Objection without prejudice as it relates to the Butler Claim, among others. Pursuant to the April 9th Order, the Debtor filed a status report (the "April 30th Status Report," ECF Doc. # 1069) on April 30, 2024, indicating that it was in the process of collecting documentation relating to shares in the Debtor that Butler alleged in the Butler Claim she had not received. To the extent such documentation reflected that Butler received all she was entitled to receive, the Debtor requested that Butler amend her claim; if Butler did not agree to do so, the Debtor would file an affidavit attesting to the foregoing and requesting to have the Claims Objection as to the Butler Claim re-heard. (April 30th Status Report at 2.)

On June 24, 2024, the Debtor filed the *Second Supplemental Declaration of Holden Bixler in Support of Debtor's Third Omnibus Objection to Certain Proofs of Claim with Brief in Support and Notice of Opportunity for Hearing with Respect to Toni Henderson Butler Proof of Claim* (the "Second Supplemental Bixler Declaration," ECF Doc. # 1216), requesting that the Objection to the Butler Claim should proceed and that it be sustained.[2]  The Debtor stated that it provided Butler with relevant records that supported its "no liability" objection to her claim, copies of which were included with the Second Supplemental Bixler Declaration, and requested that she amend her claim accordingly.  (Second Supplemental Bixler Declaration ¶ 10.)  The Debtor received no response.  (*Id.*)  Ultimately, Butler filed a response (the "Third Butler Response," ECF Doc. # 1235) to the Second Supplemental Bixler Declaration on June 28, 2024, reiterating that the Butler Claim is enforceable against the Debtor.  A hearing on the Claims Objection as to the Butler Claim was held on July 1, 2024.  Butler did not appear.

Following the hearing, the Debtor filed the *Third Supplemental Declaration of Holden Bixler in Support of Debtor's Third Omnibus Objection to Certain Proofs of Claim with Brief in Support and Notice of Opportunity for Hearing with Respect to Toni Henderson Butler Proof of Claim* (the "Third Supplemental Bixler Declaration," ECF Doc. # 1244).  Annexed to the Third Supplemental Bixler Declaration is a copy of the current Equity Incentive Plan, amended as of October 21, 2020 (generally, the "EIP" and this version of the EIP, the "2020 EIP").

For the reasons discussed, the Objection to the Butler Claim is **SUSTAINED.**

---

[2]    The Debtor also filed a separate motion (the "Sealing Motion," ECF Doc. # 1217) to seal certain personal information contained in exhibits annexed to the Second Bixler Declaration (collectively, the "Confidential Exhibits").  The Court entered an order (ECF Doc. # 1252) on July 2, 2024, granting the Sealing Motion without prejudice to the rights of the U.S. Trustee, or any other party in interest, to seek to unseal the Confidential Exhibits.

## I.  BACKGROUND

### A.  The Chapter 11 Filing and the Bar Date Order

On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for chapter

11 relief under the Bankruptcy Code.  (Claims Objection ¶ 1.)  On June 29, 2023, the Court

entered an order establishing certain dates and deadlines for filing proofs of claims (the "Bar

Date Order," ECF Doc. # 373).  (*Id.* ¶ 3.)  Specifically, the Bar Date Order established, among

other things, (a) August 11, 2023 at 4:00 p.m. as the bar date for certain entities other than

governmental units to file proofs of claim against the Debtor that arose prior to the Petition Date,

including, subject to the exceptions, secured claims, unsecured priority claims, unsecured

nonpriority claims, and claims pursuant to section 503(b)(9) of the Bankruptcy Code, and

(b) September 14, 2023 at 4:00 p.m. as the bar date for governmental units to file proofs of claim

against the Debtor.  (Bar Date Order ¶¶ 3–4.)

### B.  The Butler Claim

The Butler Claim was timely filed as a priority claim in the amount of $370,352.23

pursuant to "[c]ontributions to an employee benefit plan."  (Butler Claim at 3.)  Butler identified

the basis of her claim to be for "loss of compensation benefits."  (*Id.* at 2.)  Attached to the claim

is documentation reflecting Butler's share purchase and holdings summary from Morgan Stanley

for the period of January 1 through March 31, 2023.  The account had an opening value of

$339,456.50 as of January 1, 2023, and a closing value of $1,334.88 as of March 31, 2023.  (*Id.*

at 5.)

As set forth in the Claims Objection, the Debtor initially believed the Butler Claim

related to awards or balances under the Employee Stock Purchase Plan (the "ESPP").  (*See*

Claims Objection ¶ 17.)  Butler later clarified, however, that the Butler Claim actually relates to

the EIP as opposed to the ESPP.   (*See* Debtor's Omnibus Reply ¶ 3 (indicating that Butler

"informed the Debtor by email correspondence that she was in fact claiming under an [EIP] as

opposed to the [ESPP]").)

### C.  Omnibus Claims Objection Procedures

On November 30, 2023, the Court entered an order (ECF Doc. # 713) approving the

Debtor's proposed omnibus claims objection procedures (the "Omnibus Claims Objection

Procedures").  (Claims Objection ¶ 4.)  Among other things, the Omnibus Claims Objection

Procedures allow the Debtor to combine and file up to 200 objections to claims in a single

omnibus objection and group together the claims with multiple objections if the multiple

objections are the same with respect to all claims.  (*Id.*)

### D.  The Claims Objection

The Debtor's third omnibus objection to claims seeks entry of an order disallowing and

expunging the Butler Claim, among others.  The Debtor states that it reviewed the Butler Claim

to determine, among other things, whether the claim had already been satisfied by the Debtor

and/or corresponded to notation of amounts outstanding in the Debtor's books and records.  (*Id.* ¶

15.)  Based on a review of its books and records, the Debtor objects to the Butler Claim on "no

liability" grounds pursuant to section 502(b)(1) of the Bankruptcy Code, which provides that a

claim may not be allowed to the extent that "such claim is unenforceable against the Debtor."

(*See id.*, Ex. 1 (identifying the "no liability" claims); *id.* ¶ 16 (citing 11 U.S.C. § 502(b)(1) as the

basis for its objection).)  Underlying the Debtor's position is its contention that the Debtor is not

liable for awards or balances under the ESPP because, to the Debtor's knowledge, funds in the

ESPP have "already been returned by First Citizens Bank & Trust Company ("FCB") to

employees entitled to such funds."  (*Id.* ¶ 17(f); *see also id.*, Ex. 1 at 1 (stating that the Debtor "is

5

not liable for employee stock plan awards or balances").)  The Debtor submits that inclusion of the Butler Claim, along with other "no liability" claims, "unjustifiably encumbers the Debtor's asset pool and hinders the equitable treatment of legitimate creditors."  (*Id.* ¶ 18.)

### E.  The First and Second Butler Responses and the Debtor's Omnibus Reply

#### 1.  The First Butler Response

The First Butler Response opposes the Claims Objection on grounds that the Debtor is "liable due to the lack of factual information in the reasoning stated in section 17, subpart (f)," which states that the Butler Claim should be disallowed since "funds in the ESPP have already been returned by [FCB] to employees entitled to such funds."  (First Butler Response at 1.) Annexed to the First Butler Response is (i) a copy of the Butler Claim as Exhibit 1 and (ii) documentation reflecting Butler's share purchase and holdings summary from Morgan Stanley for the period October 1 through December 31, 2022, and January 1 through March 31, 2023 as Exhibit 2.

Butler states that the amounts shown were "part of [her] salary compensation where each year [she] received no less than $25,000 of SVBFG stock for the past 9 years."  (*Id.* at 1.)  Butler disputes that she has received the "SVBFG ESPP totaling $339,456.50 from FCB."  (*Id.*)  She also attaches "an email snapshot of the stock plan from [her] 2022 W-2 that highlights the $25,000 SVBFG stock [she] contractually received yearly" as well as her signed agreement for the ESPP.  (*Id.*, Ex. 2.)  Finally, Butler notes that the court in *In re Enron Corp.*, 341 B.R. 141 (Bankr. S.D.N.Y. 2006), found "that claims for damages that arise from the ownership of employee stock options . . . should be subordinated pursuant to section 510(b)."  (*Id.* at 2 (quoting *In re Enron Corp.*, 341 B.R. 141 (Bankr. S.D.N.Y. 2006).)

## 2.  The Debtor's Omnibus Reply

The Debtor's Omnibus Reply maintains that the Claims Objection should be sustained. Both the ESPP and EIP, the Debtor states, are "employee benefit plans that entitle participating employees to receive or purchase shares of SVB Financial Group's common stock as a form of compensation." (Debtor's Omnibus Reply ¶ 3.)  Participating employees are entitled to receive such shares at the time of grant or settlement of the award, or, in the case of the ESPP, the purchase of the shares. (*Id.*)  The Debtor indicates that neither the ESPP nor the EIP "represent[ed] a guarantee as to the ultimate value of the shares of common stock received in connection with such compensation." (*Id.*)

The Debtor indicates that it does not have any basis to conclude that Butler "did not receive the shares to which she was entitled or has any claim against the Debtor other than as a holder of shares, consistent with all other shareholders." (*Id.*)  As for the ESPP, the Debtor states that, with the cooperation of FCB and the Federal Deposit Insurance Corporation in its capacity as receiver for Silicon Valley Bank ("FDIC-R"), all such funds were returned to each of the ESPP participants entitled to such funds. (*Id.* ¶ 4.)

## 3.  The Second Butler Response

On April 6, 2024, Butler filed a second response in further opposition to the Claims Objection, maintaining that her claim is enforceable against the Debtor. (Second Butler Response at 2.)  Annexed to the Second Butler Response is (i) a document reflecting the equity target of $25,000.00 as Exhibit 1; (ii) a copy of EIP, amended as of December 8, 2015, as Exhibit 2 (the "2015 EIP"); (iii) a copy of relevant pages from the Debtor's 2022 Form 10-K as Exhibit 3; and (iv) a copy of the Federal Reserve Board's *Review of the Federal Reserve's Supervision and Regulation of Silicon Valley Bank*, dated April 2023 as Exhibit 4.

Butler states that there is no indication in relevant filings with the SEC that the EIP "did not represent a guarantee as to the ultimate value of the shares of common, restricted or options." (*Id.* at 1.) She further argues that her claim must stand as the Debtor cannot be discharged from:

- debts for money in which a debtor is liable that the creditor reasonable relied on pursuant to section 523(a)(2)(B)(iii) as she "reasonably relied on SVBFG to maintain strong board and senior management responsibilities and to manage the basic interest rate, capital, and liquidity risks";

- debts for fraud or defalcation while acting in a fiduciary capacity pursuant to section 523(a)(4) since "SVBFG was responsible for money and other assets . . . identified in the [EIP] and have violated their fiduciary duties as the Plan Administrator . . . by their failure to notify participants in the [EIP]";

- debts for reckless failure to fulfill any commitment to a federal depository institutions regulatory agency to maintain the capital of an insured depository institution pursuant to section 523(a)(12) as the Debtor failed to take sufficient steps to build a proper governance and risk-management framework, resulting in foundational weaknesses that were "reckless"; and

- debts involving deceit or manipulation in connection with the purchase or sale of any security pursuant to section 523(a)(19)(ii) since the Debtor's "foundational weakness . . . was deceitful."

(*Id.* at 1–2.)

Finally, Butler states that FCB paid the ESPP only for the 2023 period but "not for lost funds due to the bank failure that was previously in the accounts." (*Id.* at 2.)

### F.  The April 9, 2024 Hearing and Subsequent Order

A hearing on the Claims Objection was held on April 9, 2024. Following the hearing, the Court entered the April 9th Order, overruling the Claims Objection in part. The April 9th Order indicated that, at the time, the Butler Claim and the Claims Objection contained insufficient facts for the Court to render a ruling. (*See* April 9th Order at 4.) Moreover, there was also an open question whether "Butler received all the shares she was entitled to receive, but the shares were not worth what Butler believed (or the Debtor represented) them to be worth." (*Id.*)

Accordingly, the Court directed that the parties "meet and confer to either resolve the dispute or agree on a schedule for the Court to hear and resolve the issues." (*Id.*)

### G. The April 30, 2024 Status Report

In the April 30th Status Report, filed pursuant to the April 9th Order, the Debtor disclosed that it was in the process of collecting documentation regarding equity benefit programs relating to the Butler Claim. (April 30th Status Report at 2.) To the extent such documentation reflected that Butler received all she was entitled to, the Debtor indicated that it would request that Butler amend the Butler Claim to "reflect [her] . . . seeking the lost value of the SVB Financial Group stock she held on the Petition Date, and not additional compensation under the equity programs." (*Id.*) However, if Butler did not agree to amend the Butler Claim, the Debtor indicated that it would file an affidavit providing "evidence of stock received by Ms. Butler under the programs and will request to have the objection to the Butler Claim re-heard." (*Id.*) Lastly, the Debtor proposed providing Butler with an opportunity to file a supplemental response "until one week before such hearing, and the Debtor having the opportunity to file a supplemental reply to that response two business days before such hearing." (*Id.*)

### H. The Second Supplemental Bixler Declaration

On June 24, 2024, the Debtor filed the Second Supplemental Bixler Declaration in further support of the Claims Objection to the Butler Claim, requesting that the Claims Objection be sustained. The Debtor indicated that a "thorough review" of its books and records reflected that Butler "received all of the shares of common stock of the Debtor . . . to which she was entitled under her [EIP]." (Second Supplemental Bixler Declaration ¶ 4.)

Annexed to the Second Supplemental Bixler Declaration is (i) a copy of the Vesting Schedule Report as Exhibit A; (ii) a copy of the Award Transaction Report as Exhibit B; (iii) a

copy of the SVB Financial Group Global Restricted Stock United Award Agreement as Exhibit C (the "RSU Award Agreement"); (iv) a copy of a Payroll Release Report as to Butler as Exhibit D; (v) a copy of a Payroll Register as to Butler as Exhibit E; and (vi) a copy of the Global Nonstatutory Stock Option Award Agreement (the "Option Award Agreement") as Exhibit F.

    1.  <u>RSUs and Options Under the EIP</u>

The Vesting Schedule Report details the Restricted Stock Units[3] (the "RSUs") and stock options (the "Options") granted to Butler, including the number of RSUs or Options granted, the granting and vesting dates, the number of shares distributed or obtained, the number of RSUs forfeited, and, where applicable, the number of RSUs or Options that remain outstanding. (*Id.*) According to the Debtor, the Vesting Schedule Report "confirm[s] that all of [Butler's] RSUs were either vested and paid in the form of Shares, or forfeited, such that none are outstanding." (*Id.* ¶ 5.)

The Award Transaction Report provides a breakdown of each transaction in respect of Butler's RSUs, showing when her RSUs were granted, released to her (*i.e.*, paid out in shares), or forfeited. (*Id.* ¶ 4.) As of March 10, 2023, all of Butler's RSUs that were outstanding were unvested. (*Id.* ¶ 5.) The Debtor maintains that such RSUs were forfeited on March 10, 2023, when Butler ceased to be an employee of the Debtor and its affiliates when Silicon Valley Bank went into receivership. (*Id.*) The terms of the RSU Award Agreement, which governs Butler's RSUs, provides that unvested RSUs awarded thereunder would be forfeited if Butler ceased "to be a service provider of the Debtor and its affiliates (other than due to . . . death or disability)

---

[3]     Each RSU represents a right to receive shares upon vesting. (Second Supplemental Bixler Declaration ¶ 4.)

prior to the applicable vesting date."[4]  (*Id.*)  The Debtor states that Butler was an employee of Silicon Valley Bank, an "Affiliate" of the Debtor, prior to March 10, 2023.  (*Id.*)  However, when Silicon Valley Bank entered receivership on March 10, 2023, it ceased to be an "Affiliate" of the Debtor, and Butler's tenure as a service provider under the EIP also ended.  (*Id.*)

The Debtor's Vesting Schedule Report reflects that all of Butler's Options were vested and exercised prior to March 10, 2023, such that there were none outstanding as of March 10, 2023.  (*Id.* ¶ 6.)

The Debtor maintains that the foregoing distribution of RSUs and Options granted to Butler under the EIP is also reflected in the Payroll Release Report and the Payroll Exercise Report.  (*Id.* ¶ 7.)  Based on the Payroll Release Report, the Debtor states that Butler received the shares to which she was entitled pursuant to awards under the EIP through May 2022, the last day on which any award granted to the Claimant vested.  (*Id.*)

Most importantly, the Debtor highlights that there was no agreement that guaranteed value as to Butler's interests.  The RSU Award Agreement did not guarantee that the RSUs or the shares issued on settlement of the RSUs would have any particular future value.  (*Id.* ¶ 9 (citing to section 10 of the Form of RSU Award Agreement, which stated that "the future value of the Shares is unknown, indeterminable and cannot be predicted with certainty").)  Similarly, the Option Award Agreement evidencing the Options did not guarantee that the Options, or the shares issued on exercise of the Options, would have any particular future value.  (*Id.* (citing to section 9 of the Option Award Agreement, which stated that "the future value of the Shares is unknown, indeterminable, and cannot be predicted with certainty").)

---

[4]    "Service Provider" is defined in the EIP to mean "an Employee, Director or Consultant."  (Second Supplemental Bixler Declaration at 3 n.3.)  Meanwhile, "Employee" is defined in the EIP to mean "any person, including Officers and Directors, employed by [the Debtor] or its Affiliates."  (*Id.* (modifications in original).)

2.  <u>Remaining Funds in the ESPP</u>

Based on a review of records provided by FCB, the Debtor states that funds remaining in
the separate account for the ESPP were returned to each of the ESPP participants entitled to such
funds.  (*Id.* ¶ 8.)  Specifically, the Payroll Register indicates that Butler received a return of funds
in the amount of $20,979.70 on May 5, 2023, representing the value of her outstanding funds in
the ESPP account.  (*Id.*)

3.  <u>Documentation Provided to Butler</u>

The Debtor provided copies of the Vesting Schedule and Award Transaction Reports to
Butler on June 6, 2024 and requested that she "amend the [Butler] Claim to a claim for the
decreased value of the Debtor's stock held by [her] instead of Shares [she] did not receive."  (*Id.*
¶ 10.)  On June 20, 2024, the Debtor contacted Butler again, asking if she agreed to do so and/or
if she had any questions.  (*Id.*)  The Debtor did not receive a response.  (*Id.*)

**I.  The Third Butler Response**

In response to the Second Supplemental Bixler Declaration, Butler filed the Third Butler
Response on June 27, 2024, maintaining that her claim "has liability and is enforceable against
the Debtor."  (Third Butler Response at 3.)  Annexed to the Third Butler Response is a copy of
the 2015 EIP as Exhibit 1.

Butler acknowledges that she received a payment of $20,979.70 in connection with the
ESPP for 2023, but she clarifies that her claim actually relates to the EIP.  (*Id.* at 2.)  In
connection with the latter, she disputes that her RSUs were forfeited as her employment was not
terminated as a result of Silicon Valley Bank's entry into receivership.  Rather, she believes that
her "employment was retained" as the receivership constituted a "change in control" under the
EIP, which would require any "successor corporation or a Parent or Subsidiary of the successor

corporation" to assume or substitute an equivalent option or right for "each outstanding Award."
(*Id.* at 1–2 (quoting section 15(c) of the 2015 EIP).)  She further argues that the Debtor violated
its fiduciary duties and section 15(b) of the 2015 EIP, when she received no notification
concerning her RSUs, the Debtor's bankruptcy proceedings, or her employment generally.  (*Id.*
at 2.)  She suggests again that the Debtor should not be entitled to a discharge as it failed in its
"fiduciary duties to Plan participants" that includes, at a minimum, an obligation to "notify
participants in the Plan."  (*Id.*)

### J.  The July 1, 2024 Hearing and the Third Supplemental Bixler Declaration

As already stated, Butler did not appear at the July 1 Claims Objection hearing.  Debtor's
counsel argued that to the extent the Butler Claim is for unvested RSUs under the EIP, such
amounts would be equivalent to "180 shares in the debtor's common stock . . . [which] will be
canceled for no value under the [D]ebtor's plan."  (July 1, 2024 Hr'g Tr. at 27:22–28:5.)  Thus,
Debtor's counsel stated that the Claims Objection as to the Butler Claim, at the very least,
"should be sustained as to any claim other than a claim for such common shares."  (*Id.* at 28:5–
7.)

Nonetheless, the Debtor believes that her unvested RSUs were "properly terminated upon
Ms. Butler no longer being a service provider as defined under the EIP" because she no longer
worked for an affiliate of the Debtor.  (*Id.* at 28:7–10, 19–21.)  The Debtor also rejects Butler's
assertion that the receivership constituted a "change of control under the EIP that would
automatically vest unvested RSUs since the [D]ebtor remained the continuing corporation under
the plan."  (*Id.* at 28:16–19.)

Following the July 1 hearing, the Debtor filed the Third Supplemental Bixler Declaration
to provide the Court with a copy of the 2020 EIP, the current version of the EIP.  (*See id.* at

28:12–14 (noting that the version of the EIP attached to the Third Butler Response was "outdated
. . . [and] replaced by an amended version in October 2020").)

## II.    <u>LEGAL STANDARD</u>

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is
filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . .
. objects."  11 U.S.C. § 502(a).  Under Bankruptcy Rule 3001(f), a proof of claim executed and
filed in accordance with Bankruptcy Rule 3001 shall constitute *prima facie* evidence of the
validity and amount of claim.  *See In re Residential Cap., LLC*, 501 B.R. 531, 538 (Bankr.
S.D.N.Y. 2013) ("If the claim is properly filed, it is *prima facie* evidence of the validity and
amount of the claim.").  To receive the benefit of *prima facie* validity, however, "the proof of
claim must set forth the facts necessary to support the claim."  *Matter of Marino*, 90 B.R. 25, 28
(Bankr. D. Conn. 1988) (holding that claimant's proof of claim was not entitled to the
presumption of *prima facie* validity because it did not set forth the necessary facts); *see also* FED.
R. BANKR. P. 3001(c)(1) (requiring claimant to provide documentation where claim is based on a
writing).

A party in interest may object to a proof of claim, and once an objection is made, the
court must determine whether the objection is well founded.  *Residential Cap.*, 501 B.R. at 538.
"An objecting party 'bears the initial burden of production and must provide evidence showing
the claim is legally insufficient' under 11 U.S.C. § 502."  *In re Lehman Bros. Holdings, Inc.*, 519
B.R. 47, 53–54 (Bankr. S.D.N.Y. 2014) (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814,
817 (S.D.N.Y. 2014)).  A party objecting to the proof of claim need only provide evidence
sufficient to negate the *prima facie* validity of the claim by refuting one or more of the

14

allegations "that is essential to the claim's legal sufficiency." *Residential Cap.*, 501 B.R. at 538–39 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).

Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832065, at *4 (Bankr. S.D.N.Y. Dec. 29, 2005) (quoting *Allegheny Int'l*, 954 F.2d at 173–74). Generally, a claimant must prove the claim as opposed to the objector disproving it. *See In re Bennett,* 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988) (citations omitted). "The burden of persuasion is always on the claimant." *Allegheny Int'l*, 954 F.2d at 174 (citations omitted).

"Federal pleading standards apply when assessing the validity of a proof of claim." *In re Residential Cap., LLC*, 518 B.R. 720, 731 (Bankr. S.D.N.Y. 2014). Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [ ] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC),* 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (ellipsis in original) (quoting *Iwachiw v. New York City Bd. of Elections,* 126 F. App'x. 27, 29 (2d Cir. 2005)).

Section 502(b)(1) of the Bankruptcy Code provides that claims may be disallowed if such claims are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1). To determine whether a claim is allowable by law, bankruptcy courts will look to applicable nonbankruptcy law. *Residential Cap.*, 518 B.R. at 731.

### III.    <u>DISCUSSION</u>

**A.  Grounds Exist to Sustain the Claims Objection as to the Butler Claim**

While the Butler Claim initially appeared to relate to the ESPP, Butler subsequently

clarified that her claim in fact relates to the EIP.  (*See* Debtors' Omnibus Reply ¶ 3 (stating that

Butler informed the Debtor by email correspondence that "she was in fact claiming under an

[EIP] as opposed to the [ESPP]"; Third Butler Response at 2 ("[M]y claim in question is for the

EIP for 2023 that was part of my compensation plan.").)  Regardless, the Court will address each

employee benefit plan as it relates to Butler, in turn.

For the reasons set forth below, the Debtor, by establishing that Butler received all she

was entitled to receive, has offered sufficient evidence to refute and overcome the *prima facie*

validity of the Butler Claim.  *See Arcapita Bank*, 508 B.R. at 817 (providing that the "objecting

party bears the initial burden of production and must provide evidence showing the claim is

legally insufficient") (citation omitted).  Butler, who now bears the burden to prove by a

preponderance of the evidence that her claim should be allowed, has not satisfied her burden.

Therefore, grounds exist to sustain the Claims Objection as it relates to the Butler Claim.

### 1.   <u>EIP</u>

The EIP was an employee benefit plan that entitled participating employees to receive or

purchase shares of the Debtor's common stock as a form of compensation at the time of the grant

or settlement of the award.  (Debtor's Omnibus Reply ¶ 3.)

Here, the Debtor provided copies of both the Vesting Schedule Report and the Award

Transaction Report, which reflect that Butler received all shares she was entitled to receive under

the EIP.  (*See* Vesting Schedule Report (reflecting no outstanding RSUs and the vesting and

exercise of all Options prior to March 10, 2023); Award Transaction Report (reflecting that all

outstanding and unvested RSUs were forfeited on March 10, 2023).)  All of Butler's RSUs were either vested and paid out in the form of shares or were forfeited.  (*See* Second Supplemental Bixler Declaration ¶ 5.)  This is confirmed in the Payroll Release Report and Payroll Exercise Report, which describe the distribution of RSUs and Options granted to Butler under the EIP. (*Id.* ¶ 7.)  Based on the Payroll Release Report, Butler received all shares she was entitled to receive pursuant to awards under the EIP through May 2022, which was the last day at which any award to Butler vested.  (*Id.*)  Accordingly, the Debtor has provided sufficient evidence to refute the *prima facie* validity of the Butler Claim as to the EIP.

In the Third Butler Response, however, Butler disputes that (i) her unvested RSUs were forfeited as the receivership constituted a "change in control" under the EIP; (ii) she did not receive notice of the Debtor's bankruptcy proceeding; and (iii) her employment was not terminated pursuant to section 201 of the California Labor Code.[5]  (*See* Third Butler Response at 2.)  Each argument is without merit.

*First*, assuming *arguendo* that Silicon Valley Bank's entry into receivership constituted a "change in control" as that term is defined in the 2020 EIP, Butler has not established that

---

[5]     "Change in Control" is defined to mean, in relevant part, the consummation of any of the following:

> (i)   A merger or consolidation of Silicon Valley Bank (the "Bank") or the [Debtor] with any other corporation, other than a merger or consolidation which would result in beneficial owners of the total voting power in the election of directors represented by the voting securities ("Voting Securities") of the Bank or the [Debtor] (as the case may be) outstanding immediately prior thereto continuing to beneficially own securities representing (either by remaining outstanding or by being converted into voting securities of the surviving entity) at least fifty percent (50%) of the total Voting Securities of the Bank or the Company, or of such surviving entity, outstanding immediately after such merger or consolidation;

> (ii)  The filing of a plan of liquidation or dissolution of the Bank or the closing of the sale, lease, exchange or other transfer or disposition by the Bank or the [Debtor] of all or substantially all of the Bank's assets . . . .

(2020 EIP § 2(h).)

17

section 16(c) of the 2020 EIP applies in this instance.[6]  Section 16(c)(i) provides that "[i[n the

event of a . . . Change in Control . . . outstanding Awards will be treated in the manner *provided

in the agreement relating to the Change in Control*."  (2020 EIP § 16(c)(i).)  Butler has not

shown that a separate agreement, if any, relating to the alleged "change in control" provides that

she is entitled to her unvested RSUs.

Additionally, section 16(c)(ii) provides that:

> In the event that the Successor Corporation refuses to assume, continue or
> substitute for the Award . . . the Participant will fully vest in and have the
> right to exercise all of his or her outstanding Options and Stock
> Appreciation Rights, including Shares as to which such Awards would not
> otherwise be vested or exercisable, all restrictions on Restricted Stocks will
> lapse, and, with respect to Restricted Stock Units . . . all performance goals
> or other vesting criteria will be deemed achieved . . . and all other terms and
> conditions met. . . .

> [A]n Award will be considered assumed if, following the Change in
> Control, the Award confers the right to purchase or receive, for each Share
> subject to the Award immediately prior to the Change in Control, the
> consideration . . . the fair market value of the consideration received in the
> merger or Change in Control by holders of Common Stock for each Share
> held on the effective date of the transaction.

(*Id.* § 16(c)(ii).)

"Successor Corporation" is defined to be the "acquiring or succeeding corporation (or an

affiliate thereof)."  (*Id.* § 16(c)(i)(2).)  To the extent there was a "Successor Corporation," Butler

has not established that such entity "refuse[d] to assume, continue or substitute for the Award,"

which would trigger the application of section 16(c)(ii) under the 2020 EIP.  (2020 EIP §

16(c)(ii).)

---

[6]    Butler cites section 15(c) of the 2015 EIP, which since has been replaced by the 2020 EIP.  (*See* Third
Butler Response at 2.)  As section 16(c) of the 2020 EIP governs "change in control," the Court will discuss this
provision instead.

Regardless, the Debtor has indicated that it remains the "continuing corporation under the [EIP]." (July 1, 2024 Hr'g Tr. at 28:18–19.)  Accordingly, there was no "change of control" that triggers the application of section 16(c) under the 2020 EIP, and Butler has not established otherwise.

*Second*, Butler asserts that she was entitled to notice of any "proposed dissolution or liquidation of the Company" under the EIP.[7]  Section 16(b) of the 2020 EIP provides:

> In the event of the proposed dissolution or liquidation of the Company, the Administrator will notify each Participant as soon as practicable prior to the effective date of such proposed transaction.  To the extent it has not been previously exercised, an Award will terminate immediately prior to the consummation of such proposed action.

(2020 EIP § 16(b).)

"Company" is defined in the 2020 EIP to refer to the Debtor and not Silicon Valley Bank. Here, there has not been a proposed dissolution or liquidation of the Debtor that would render this provision applicable.

*Third*, Butler's contention that her employment was not terminated pursuant to section 201 of the California Labor Code is unpersuasive.  Section 201 of the California Labor Code governs the payment of wages in the event of discharge or layoff and the treatment of related benefits; it does not address under what circumstances an employee is deemed terminated by an employer.  *See generally* Cal. Lab. Code § 201 (West).  Accordingly, the cited statutory provision does not support Butler's contention that her employment with Silicon Valley Bank was not terminated.

Rather, section 4 of the RSU Award Agreement provides, in relevant part, that:

> Notwithstanding any contrary provision of this Award Agreement . . . if the Participant ceases to be a Service Provider *for any or no reason* (other than

---

[7]    Butler cites section 15(b) of the 2015 EIP.  (*See* Third Butler Response at 2.)  As section 16(b) of the 2020 EIP is the closest provision, the Court will discuss this provision instead.

due to . . . death or Disability or Retirement pursuant to the terms of Section 3) prior to the Vesting Date, the then-unvested RSUs awarded by this Award Agreement will thereupon be forfeited at no cost to the [Debtor] or its Affiliate and the Participant will have no further rights thereunder.

In the event of the Participant's termination as a Service Provider (regardless of the reason for such termination and whether or not later to be found invalid or in breach of employment laws in the jurisdiction where the Participant is employed or the terms of the Participant's employment agreement, if any) . . . the Participant's right to vest in the RSUs under the Plan, if any, will terminate effective as of the date that the Participant is no longer employed by the Participant's employer (the "Employer") and any notice period has ended. . . . The Committee shall have the exclusive discretion to determine when the Participant is no longer employed for purposes of the RSUs.

(RSU Award Agreement § 4 (emphasis added).)

Here, Butler ceased to be a service provider upon Silicon Valley Bank's entry into receivership, which ended its status as an "Affiliate" of the Debtor, and also Butler's status as a service provider under the EIP.  (*See* Second Supplemental Bixler Declaration at 3 n.3.) Therefore, Butler's unvested RSUs were forfeited pursuant to the terms of the RSU Award Agreement, which provides that unvested but awarded RSUs are forfeited where a participant ceases to be a service provider "for any or no reason . . . prior to the Vesting Date."  (RSU Award Agreement § 4.)

To the extent Butler is seeking the lost value in the stock she held, the Debtor has shown that there was no guarantee of value of the shares she held.  (*See* RSU Award Agreement § 10 (acknowledging, as a participant to the RSU Award Agreement, that "the future value of the Shares is unknown, indeterminable and cannot be predicted with certainty" with respect to the RSUs); Option Award Agreement § 9 (acknowledging, as a participant to the Option Award Agreement, that "the future value of the Shares is unknown, indeterminable, and cannot be predicted with certainty" as to Options).)  Butler does not point to any provision explicitly providing that the EIP provides a guarantee of value, stating only that there is nothing in relevant

SEC filings concerning the EIP that provides that the EIP "did not represent a guarantee as to the ultimate value of the shares of common, restricted, or options." (*Id.*)

Finally, Butler also opposes the Claims Objection as it relates to her claim on grounds that the Debtor should not be entitled to a discharge pursuant to various subsections of section 523 of the Bankruptcy Code. (*See generally* Second Butler Response at 1–2.) Her arguments against the Debtor being entitled to a discharge are largely predicated on management's failures and shortcomings that she alleges resulted in Silicon Valley Bank's collapse. (*Id.*) However, this is not directly pertinent to resolution of the Claims Objection as it relates to her claim, which was filed for "loss of compensation benefits." (*See* Butler Claim at 2.)

Accordingly, as Butler has not proved by a preponderance of the evidence that her claim should be allowed, the Claims Objection with respect to the Butler Claim as it relates to the EIP is **SUSTAINED** and the Claim is **EXPUNGED.**

### 2. ESPP

Under the ESPP, portions of a participating employee's wages are withheld from the employee's paycheck and deposited into a separate account. (Debtor's Omnibus Reply ¶ 4.) At the end of a set period, amounts deposited into the separate account are used to purchase the Debtor's common stock at a predetermined price and then transferred to an employee's brokerage account as compensation. (*Id.*)

As of the Petition Date, the Debtor states that there were still funds remaining in the separate account that had yet to be used to purchase stock. (*Id.*) However, to the Debtor's knowledge, such funds have been returned from such deposit account to each of the ESPP participants entitled to such funds, including Butler, with the cooperation of FCB and the FDIC-R. (*Id.*) The Debtor submits that $20,979.70 was returned to Butler on May 5, 2023,

representing the value of Butler's outstanding funds in her ESPP account as reflected in the

Payroll Register.  (Second Supplemental Bixler Declaration ¶ 8.)

While Butler initially contests that such funds were returned, she ultimately concedes that

she received payment in the amount of $20,979.70 in connection with her ESPP account.

(*Compare* First Butler Response at 1 (disputing the Debtor's statement that "funds in the ESPP

have already been returned by [FCB] to employees entitled to such funds" as "not confirming

that any funds have been returned to the ESPP" and noting that she had not received the

"SVBFG ESPP totaling $339,456.50 from FCB") *with* Third Butler Response at 2 ("I did receive

payment for the [ESPP] for $20,979.70 for 2023"); *see also* Second Butler Response at 2 ("[T]o

date, First Citizens Bank (FCB) paid the ESPP for only the 2023 period").)  Rather, she argues

that the Debtor has not paid the "lost funds due to the bank failure that was previously in the

accounts."  (Second Butler Response at 2.)  As already discussed, the Debtor has established that

there was no guarantee of value of the shares she held.

Accordingly, the Debtor has provided the Court with sufficient evidence to overcome the

*prima facie* validity of the Butler Claim to the extent it seeks amounts relating to the ESPP, and

Butler has not satisfied her burden that her claim should be allowed.  The Claims Objection as to

the Butler Claim to the extent it seeks amounts relating to the ESPP is also **SUSTAINED** and the

Claim is **EXPUNGED**.

## IV.    <u>CONCLUSION</u>

For the reasons discussed, the Court **SUSTAINS** the Claims Objection as it relates to the

Butler Claim.

**IT IS SO ORDERED.**

Dated:    July 17, 2024
             New York, New York

<u>            *Martin Glenn*            </u>
MARTIN GLENN
Chief United States Bankruptcy Judge