**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:                                                          <u>**NOT FOR PUBLICATION**</u>

         SVB FINANCIAL GROUP,                              Chapter 11

                                            Case No. 23-10367 (MG)

                         Debtor.

-------------------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER SUSTAINING DEBTOR'S EIGHTH OMNIBUS OBJECTION TO CLAIMS IN PART AND OVERRULING IN PART WITHOUT PREJUDICE

*A P P E A R A N C E S :*

SULLIVAN & CROMWELL LLP
*Attorneys for Debtor*
125 Broad Street
New York, NY 10004
By:    James L. Bromley, Esq.
        Christian P. Jensen, Esq.
        Angela Zhu, Esq.

Catherine Papadakos
*Pro se Creditor*

James Prindible
*Pro se Creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

        Pending before the Court is the Eighth Omnibus Claims Objection (the "Objection," ECF

Doc. # 1439) of SVB Financial Group (the "Debtor" or "SVB") for entry of an order disallowing

and expunging certain claims (each a "Claim," and collectively, the "Claims") from the Debtor's

claims register in their entirety.  (Objection at 1–2.)  The Claims are set forth and identified on

Exhibits 1 and 2 to the proposed order (the "Proposed Order") annexed to the Objection as

Exhibit A.  Also included as part of the Objection as Exhibit B is the declaration of Holden

Bixler, managing director at Alvarez & Marsal North America LLC, in support of the Objection

(the "Bixler Declaration").

The Claims are comprised of (i) the Exhibit 1 claims for which the Debtor asserts no

liability (the "No Liability Claims"), and (ii) the Exhibit 2 claims for which the Debtor asserts

there is insufficient documentation (the "Insufficient Documentation Claims").  (Objection ¶ 21.)

Each Claim and the basis for the Debtor's Objection are as follows:

| EXHIBIT 1- The No Liability Claims | | | |
|---|---|---|---|
| **Claimant** | **Claim No.** | **Reason for No Liability** | **Subgroup (as defined below)** |
| Atlas, Gregory | 1181 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Chee, Eileen Catherine | 1196 | *Claimant received equity grants in 2020, 2021 and 2022.  Outstanding equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Church, Philip | 743 | *The Claimant has not established the Debtor's liability for the drop in stock value.* | Loss of Value Claim |
| Curinos LLC | 1252 | *The Letter Agreement is executed by Silicon Valley Bank and therefore does not constitute any liability of the Debtor.* | Curinos Claim |
| George, Mark Allan | 494 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Graham, Colleen | 735 | *Claimant received equity grants in 2022.  Outstanding equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Husain, Shabbir | 644 | *Claimant's equity awards were granted in May 2022. Equity awards were forfeited upon employment termination.* | Equity Awards Claim |
| MacMoyle, David | 1157 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Papadakos, Catherine | 1158 | *Claimant received equity grants in 2021 and 2022. Outstanding equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |

| Prindible, James E. | 1046 | *The Claimant has not established the Debtor's liability for the drop in stock value.* | Loss of Value Claim |
|---|---|---|---|
| Rao, Rajeshwari | 400 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Santoro, Michael | 1212 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Singh, Amrinder | 1462 | *Claimant's equity awards were forfeited upon employment termination, which occurred on March 10, 2023 (prior to the supposed grant date of May 1, 2023).* | Equity Awards Claim |
| Vijaykrishnan, Preethi | 785 | *The Claimant has not established the Debtor's liability for the drop in stock value.* | Loss of Value Claim |
| Zurich American Insurance Company | 117 | *Upon review of the Debtor's books and records, there is no evidence that the underlying basis of claim is valid.* | Zurich Insurance Claim |

| EXHIBIT 2- The Insufficient Documentation Claims | | | |
|---|---|---|---|
| **Claimant** | **Claim No.** | **Reason for No Liability** | **Invoiced Party** |
| Cobalt Robotics Inc | 432 | *Insufficient documentation is provided to verify the Debtor is party to the underlying agreement and therefore liable for related assertions.* | Silicon Valley Bank |
| Concern: EAP | 222 | *Insufficient documentation is provided to verify the Debtor is party to the underlying agreement and therefore liable for related assertions.* | SVB Financial Group |
| Oakbrook Solutions, Inc. | 799 | *Insufficient documentation is provided to verify the Debtor is party to the underlying agreement and therefore liable for related assertions.* | SVB Financial Group |
| Sovos Compliance, LLC | 698 | *Insufficient documentation is provided to verify the Debtor is party to the underlying agreement and therefore liable for related assertions.* | Silicon Valley Bank |
| Verizon Business Global LLC | 359 | *Insufficient documentation is provided to verify the Debtor is party to the underlying agreement and therefore liable for related assertions.* | SVB Financial Group |

The Debtor received (i) a formal response from James Prindible (the "Prindible Response," ECF Doc. # 1477), and (ii) an informal response from Catherine Papadakos (the "Papadakos Response," and together with Prindible Response, the "Eighth Omnibus Responses"). On September 27, 2024, the Debtor filed a reply (the "Debtor's Reply," ECF Doc.

# 1491) that addresses the Eighth Omnibus Responses.  (*See* Debtor's Reply at 1–2.)  Annexed to the Debtor's Reply are (i) the Papadakos Response as Exhibit A-1; (ii) Ms. Papadakos's termination letter as Exhibit A-2; (iii) Claim No. 1158 filed by Ms. Papadakos (the "Papadakos Claim") as Exhibit A-3; (iv) a Year-End Compensation Statement ("YECS") for Ms. Papadakos as Exhibit A-4; (v) Claim No. 1046 filed by Mr. Prindible (the "Prindible Claim") as Exhibit B; and (v) the Supplemental Declaration of Holden Bixler (the "Supplemental Bixler Declaration") as Exhibit C.

On October 2, 2024, the Court held a hearing on the Objection.

For the reasons discussed below, the Objection is **SUSTAINED** as to the No Liability Claims, which shall be expunged from the claims register.  As for the Insufficient Documentation Claims, the Objection to Claim Nos. 432 and 698 is **SUSTAINED**, and those claims shall be expunged from the claims register.  The Objection to Claim Nos. 222, 359, and 799 is **OVERRULED WITHOUT PREJUDICE**.  For the avoidance of doubt, the Debtor may still object to Claim Nos. 222, 359, and 799 on other grounds.

## I.    BACKGROUND

### A.  The Bank's Closure, the Chapter 11 Filing, and the Bar Date Order

On March 10, 2023 (the "Closure Date"), Silicon Valley Bank (the "Bank") went into receivership.  (Supplemental Bixler Declaration ¶ 6.)  Upon entering receivership, the Bank stopped being an affiliate of the Debtor.  (*Id.*)  On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for Chapter 11 relief under the Bankruptcy Code.  (Objection ¶ 1.)  On June 29, 2023, the Court entered an order establishing certain dates and deadlines for filing proofs of claims (the "Bar Date Order," ECF Doc. # 373).  (*Id.* ¶ 4.)  Specifically, the Bar Date Order established (a) August 11, 2023 at 4:00 p.m. as the bar date for certain entities other

than governmental units to file proofs of claim against the Debtor that arose prior to the Petition

Date, including, subject to the exceptions, secured claims, unsecured priority claims, unsecured

nonpriority claims, and claims pursuant to section 503(b)(9) of the Bankruptcy Code (the

"General Bar Date"); and (b) September 14, 2023 at 4:00 p.m. as the bar date for governmental

units to file proofs of claim against the Debtor (the "Governmental Bar Date").  (*Id.*; *see also* Bar

Date Order ¶¶ 3–4.)  The bar date for any person or entity that holds a claim that arises from the

rejection of an executory contract or unexpired lease is (i) the later of (A) the General Bar Date

and (B) the date that is 30 days after the effective date of rejection for such executory contract or

unexpired lease, or (ii) any date this Court may fix in the applicable order authorizing the

rejection of an executory contract or unexpired lease.  (Objection ¶ 4; Bar Date Order ¶ 7.)

**B.  The Claimants**

The Debtor objects to a total of 20 Claims in its Objection.  (Objection, Exs. 1–2.)  The

claimants are comprised of twelve former employees of the Debtor, a shareholder, and seven

vendors.  (*Id.*)

1.  <u>The No Liability Claims</u>

*a.  The Equity Awards Claimants*

Ten of the claims covered by the Debtor's Objection are for equity awards (Claims Nos.

1181, 1196, 494, 644, 735, 1157, 1158, 400, 1212, and 1462 (collectively, the "Equity Awards

Claims")) allegedly due to Bank employees pursuant to the Debtor's Equity Incentive Plan

("EIP"), a copy of which is annexed to Bixler's Declaration.  (Objection, Annex A.)  Each of

these claimants had ungranted or unvested equity awards on the Bank's Closure Date, though at

least one of these claimants continued to work for the Bank after the Closure Date.  (*See*

Papadakos Response at 1.)

All but two of the Equity Award Claimants attach either a YECS or an Employee Compensation Statement ("ECS") setting forth the value of their equity award and the vesting date of such awards. Claim No. 494 attaches five Award Agreements pursuant to which the claimant was to receive equity awards. Finally, Claim No. 1462 does not attach anything, but stated in the Proof of Claim that it was for an "RSU [Restricted Stock Units] award for 2022-2023." (Claim No. 1462 at 2.) All of the Equity Awards Claims are for equity or stock. Only the claim with the attached Award Agreement attributes the equity award to the EIP ("you have been granted an Award . . . under the SVB Financial Group 2006 Equity Incentive Plan"). (Claim No. 494 at 5.) The Debtor avers that all the equity awards were made under the EIP. (Objection ¶ 23(a).) None of the claimants disputed the Debtor's assertion. All ten Equity Award Claims are for equity awards only.

### b. The Loss of Value Claimants

There are three claims based on the loss of value of the Debtor's stock (collectively, the "Loss of Value Claims"). First, Claim No. 785 states that a "failure to pay wages" gave rise to the claim. (Claim No. 785 at 2.) However, the claimant explained that the "wages" were the stock the claimant received in lieu of compensation, and which has now lost 99% of its value. (*Id.* at 5.) Claim No. 743 simply states that it is for a "stock purchase," giving no further explanation and providing no further documentation. (Claim No. 743 at 2.) Finally, the Prindible Claim states that "SVB did not adequately hedge against risk, failed its own liquidity stress tests, and chased short-term profits at the expense of long-term stability." (Prindible Claim at 2.) In the Prindible Response, the claimant attaches an "investment report" detailing the loss that had occurred due to the declining value of the stock. (Prindible Reply at 3.) Each claimant

seeks to recover the difference in stock value before the Bank went into receivership and after it did. Ergo, their claim is for the *loss of value* of the stock.

### c.   The Curinos Claim

Claim No. 1252 (the "Curinos Claim") is based on an agreement between Informa Research Services, Inc. and Silicon Valley Bank. (Curinos Claim at 11.) The agreement is for services described as "deposit rates for private banking." (*Id.* at 13.) According to the claimant, this is for a "rate and fee subscription." (*Id.* at 2.) The claimant also attached an addendum to its claims with a "Reservation of Rights." (*Id.* at 8.) Among the rights reserved are all remedies at law or in equity and the right to amend or modify the claim. (*Id.* at 8–9.) The claimant did not file a response or an amendment.

### d.   The Zurich Insurance Claim.

Claim No. 117 (the "Zurich Insurance Claim") asserts a claim of $1 based on "insurance obligation[s]." (Zurich Insurance Claim at 1–2.) Attached to the claim is a letter detailing the basis for the claim asserted. (*Id.* at 6.) The letter explains that the claimant issued insurance policies to the Debtor for the periods of "7/31/15-16." (*Id.* at 1.) Under the insurance policies, the Debtor is responsible for paying the deductible for each occurrence and the "retrospective premium . . . up to certain loss limits for each occurrence," amongst other obligations. (*Id.*) Furthermore, the claimant expressly reserves its rights to amend or supplement the claim. (*Id.*) Finally, the claimant states that "[d]ue to the voluminous nature of the [p]olicies . . . these documents are not attached [but claimant] will provide these documents upon request." (*Id.*) No response or further documentation was received in connection with the Objection.

2.  The Insufficient Documentation Claims

Five Claims were objected to on insufficient documentation grounds.  Four of these

Claims (Claim Nos. 222, 432, 698, and 799) attach invoices but failed to include copies of

underlying contracts between each respective claimant and the Debtor.  Meanwhile, the

remaining claim, Claim No. 359, includes a summary of the services provided but also fails to

attach a copy of any underlying contract with the Debtor.  Each Claimant indicated in box "8" of

their respective Proofs of Claim that the basis of their claim was for "services."  (*See* Claim No.

222 at 2; Claim No. 359 at 2; Claim No. 432 at 2; Claim No. 698 at 2; Claim No. 799 at 2.)  As

discussed in more detail below, two claims specified "Silicon Valley Bank" as the invoiced party

in the attached invoices while the remaining three claims specified "SVB Financial Group."

None of these claimants filed a reply to the Objection.

a.  *The Silicon Valley Bank Claims*

Claim Nos. 432 and 698 (the "Silicon Valley Bank Claims") attach invoices that show

Silicon Valley Bank as the invoiced party.  Claim No. 432 attaches five invoices, each showing

Silicon Valley Bank as both the party to "bill to" and to "ship to."  (Claim No. 432 at 7–11.)  The

invoices go as far back as January 31, 2023.  (*Id.* at 11.)  Similarly, Claim No. 698 attaches four

invoices, each showing "Silicon Valley Bank" as the "bill to" party.  (Claim No. 698 at 5–8.)

The earliest invoice dates back to May 31, 2021.  (*Id.* at 6.)

b.  *The SVB Financial Group Claims*

Claim Nos. 222, 359, and 799 (the "SVB Financial Group Claims") attach invoices that

show SVB Financial Group as the invoiced party.  Claim No. 222 attaches a single invoice dated

May 4, 2023, showing SVB Financial Group as the "bill to" party.  (Claim No. 222 at 4.)  Claim

No. 799 also attaches an invoice, dated Jan. 31, 2023, showing SVB Financial Group as the "bill

8

to" party.  (Claim No. 799 at 5.)  In addition, the proof of claim states on the first page that "[t]he

Debtor has listed you on Schedule G as a counterparty to one or more executory contracts."  (*Id.*

at 1.)  Finally, Claim No. 359 attaches to the Proof of Claim a summary of the services provided.

(Claim No. 359 at 5.)  This summary lists SVB Financial Group as the party that received the

services.  (*Id.*)  The summary includes the services that were provided, the account numbers, the

name of the provider, and the "pre-petition balance."  (*Id.*)

### C.  The Eighth Omnibus Claims Objection

#### 1.  <u>The Objection</u>

The Objection seeks entry of an order disallowing and expunging each of the Claims

from the Debtor's claims register.  The Debtor indicates that, with the assistance of its

professionals, it reviewed the Claims to determine, among other things, whether such Claims had

already been satisfied by the Debtor and/or corresponded to the notation of amounts outstanding

in the Debtor's books and records.  (Objection ¶ 21.)  Based on a review of the Debtor's books

and records, the Debtor objects to the following:

- the No Liability Claims identified on Exhibit 1 to the Proposed Order; and

- the Insufficient Documentation Claims identified on Exhibit 2 to the Proposed Order.

(*Id.,* Exs. 1–2.)

#### a.  *No Liability Claims (Ex. 1)*

The Debtor seeks to disallow and expunge the No Liability Claims in full on grounds that

it lacks liability.  (*Id.* ¶ 22.)  The inclusion of the No Liability Claims on the claims register,

according to the Debtor, "unjustifiably encumbers the Debtor's asset pool and hinders the

equitable treatment of legitimate creditors."  (*Id.* ¶ 24.)  The Debtor points to section 502(b)(1) of

the Bankruptcy Code, which provides that a claim may not be allowed to the extent that "such

claim is unenforceable against the debtor."  (*Id.* ¶ 22 (citing 11 U.S.C. § 502(b)(1)).)

9

Specifically, the Debtor asserts that it has no liability for the No Liability Claims for the following reasons:

*First*, with respect to the ten "Equity Awards" claims, including the Papadakos Claim, the Debtor avers it does not owe the amounts asserted under each of the Claims because the claimants were not employees of the Debtor or its affiliates on either (i) the planned *grant date* of the equity awards (Claims Nos. 1181, 1196, 494, 735, 1157, 1158, 400, 1212, and 1462) or (ii) the planned *vesting date* of the equity awards (the "Shabbir Husain Claim," Claim No. 644). (*Id.* ¶ 23(a); *id.* at Ex. 1.) In support, the Debtor points to the language of the EIP, which provides that equity awards may only be granted to "Service Providers," which is defined in Section 2(mm) to comprise "Employee[s], Director[s], or Consultant[s]" (each as further defined in the EIP). (EIP at 5.) The Debtor argues that, because the employment of all ten claimants with SVB ended on March 10, 2023, that, in turn, terminated each claimant's status as a Service Provider, and, therefore, any equity awards not granted and/or vested before that date were forfeited. (Objection ¶ 23(a).) Accordingly, the Debtor asserts that it has no liability with respect to these claims. (*Id.*)

*Second*, the Debtor argues that it is also not liable for three claims (Claims No. 743, 785, and 1046) arising out of a loss in value of the Debtor's common stock, which includes the Prindible Claim. (*Id.* ¶ 23(b); *id.*, Ex. 1 at 2 (listing the Prindible Claim).) The Debtor argues that for such claims to be valid, the claimants would have to establish the Debtor's liability. (*Id.*) Even if they had, the Debtor argues, the claims would be subject to subordination under 11 U.S.C § 510(b), which would classify them as general equity claims. (*Id.*) Under the Debtor's confirmed plan of reorganization (the "Plan," ECF Doc. # 1379), these general equity claims receive no distribution. (*Id.* (citing 11 U.S.C 510(b)); Plan § 4.2.7.)

*Third*, the Debtor asserts that it is not liable for the Curinos Claim, which is based on an agreement between Silicon Valley Bank and Informa Research Services, Inc., since the agreement was not with the Debtor.  (Objection ¶ 23(c).)

*Finally*, the Debtor states that it also lacks liability with respect to the Zurich Insurance Claim, a protective claim filed in the amount of $1 filed by Zurich American Insurance Company ("Zurich"), as its books and records reflect no outstanding amounts owed to the claimant.  (*Id.* ¶ 23(d).)

### b.  *Insufficient Documentation Claims (Ex. 2)*

The Debtor objects to the Insufficient Documentation Claims listed on Exhibit 2 to the Proposed Order as lacking the requisite documentation to "verify the existence of any claim against the Debtor."  (*Id.* ¶ 25.)  The Debtor states that the claims "attached only invoices and not the underlying contracts," and the Debtor has no record of any contracts with the claimants as counterparties.  (*Id.*)  Furthermore, the Debtor cites to Rule 3001(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which requires that a claim based on a writing "shall" file with the Proof of Claim a copy of the writing or a statement explaining the circumstance of its loss or destruction.  (*Id.* ¶ 26; FED. R. BANKR. P. 3001(c).)  As noted, none of the Insufficient Documentation Claims attach the underlying contract.  (*See* Claim Nos. 222, 359, 432, 698 and 799.)  Exhibit 2 to the Objection specifies the same reason underlying the Debtor's Objection to each Insufficient Documentation Claim: "Insufficient documentation [was] provided to verify [that] the Debtor is a party to the underlying agreement and therefore liable for related assertions."  (Objection Ex. 2.)  Therefore, the Debtor's objection to the Insufficient Documentation Claims can more succinctly be summarized as an objection based on insufficient documentation to corroborate privity.

2. <u>Responses Received</u>

*a.  The Prindible Response*

On September 23, 2024, James Prindible filed the Prindible Response to the Objection.
Mr. Prindible alleges, *inter alia*, that the loss of value in the Debtor's stock, certain of which he
owned at the time he filed the Prindible Claim and has since sold, was due to "very high and
careless risk." (Prindible Response at 2.)  This, he asserts, ultimately caused him to lose
$42,312.00 in stock value.  (*Id.*)  Prindible alleges that "SVB did not adequately hedge against
risk, failed its own liquidity stress tests, and chased short-term profits at the expense of long-term
stability." (*Id.*)  His Response further alleges that, for months, "SVB was also without the head
of risk management." (*Id.* at 1.)  Mr. Prindible concludes that "[n]o one needs any more proof to
establish SVB liability for the drop in stock value." (*Id.*)

*b.  The Papadakos Response*

The Papadakos Response consists of a letter from Catherine Papadakos to the Debtor
stating that Ms. Papadakos "continued to be employed full time by SVB until [she] was
terminated on August 31, 2023." (Papadakos Response at 1.)  Therefore, Ms. Papadakos argues,
she is "entitled to the earned equity grant." (*Id.*)  In support of her assertion, Ms. Papadakos
attached her termination letter.  (Debtor's Reply, Ex. A-2.)  The letter was authored by
PricewaterhouseCoopers Inc., as liquidator for Silicon Valley Bank in Canada.  (*Id.*)

3. <u>The Debtor's Reply</u>

The Debtor filed its reply on September 27, 2024.  In it, the Debtor argues that when
*Silicon Valley Bank* went into receivership on March 10, 2023, it ceased to be an affiliate of the
Debtor.  (Debtor's Reply ¶ 2.)  As such, Ms. Papadakos's employment under the EIP, which only
applies to the Debtor and its affiliates, was terminated on March 10, 2023.  (*Id.* ¶ 3.)

Additionally, the Debtor restates its arguments in support of its Objection to the Prindible Claim, namely that Mr. Prindible failed to establish the Debtor's liability and that the claim would be subject to subordination under section 510(b) of the Bankruptcy Code. (*Id.* ¶ 5; 11 U.S.C § 510(b).)

### 4. Other Relevant Procedural History

A hearing on the Objection was held on October 2, 2024. Debtor's counsel and Ms. Papadakos appeared. (Oct. 2, 2024, Hr'g Tr. at 74:15-25.) No other claimant for these Claims appeared. At the hearing, Ms. Papadakos argued that the Objection as to her claim should be overruled since she remained a full-time employee until August 31, 2023, after the vesting date of the equity award, which was May 1, 2023. (*Id.* at 81:1–82:4.)

## II.     LEGAL STANDARD

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Bankruptcy Rule 3007(c) and 3007(d) provide that, under certain circumstances, or with Court approval, more than one claim may be joined in a single objection. FED. R. BANKR. P. 3007(c)–(d). In addition, the order establishing the Omnibus Claims Objections Procedures provides a list of certain grounds upon which the Debtor is authorized to join claims in a single omnibus objection.

As set forth in Bankruptcy Rule 3001(f), a proof of claim executed and timely filed in accordance with Bankruptcy Rule 3001 shall constitute *prima facie* evidence of the validity and amount of claim. *See In re Residential Cap., LLC*, 501 B.R. 531, 538 (Bankr. S.D.N.Y. 2013). "Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010); *see*

*also In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13, 553 (Bankr. S.D.N.Y. 2000) (citing Bankruptcy Rule 3001(f) in analyzing the debtors' objection to former tenant's proof of claim and granting partial summary judgment with respect to the objection where there were no material facts in dispute).

"Federal pleading standards apply when assessing the validity of a proof of claim." *In re Residential Cap.*, No. 12-12020, 2015 WL 4747860, *7 (Bankr. S.D.N.Y. Aug. 4, 2015). Although "[claims] drafted by *pro se* [claimants] are to be construed liberally, [ ] they must nonetheless be supported by specific and detailed factual allegations sufficient to provide the court and the defendant with 'a fair understanding of what the [claimant] is complaining about and . . . whether there is a legal basis for recovery.'" *Kimber v. GMAC Mortgage, LLC (In re Residential Capital, LLC)*, 489 B.R. 489, 494 (Bankr. S.D.N.Y. 2013) (quoting *Iwachiw v. New York City Bd. of Elections*, 126 F. App'x. 27, 29 (2d Cir. 2005) (ellipsis in original)). A claimant that files a proof of claim based on a writing must file an original or duplicate of the writing with the proof of claim or otherwise explain that the writing has been lost or destroyed. *See* FED. R. BANKR. P. 3001(c) ("[W]hen a claim, or an interest in property of the debtor securing the claim, is based on a writing, a copy of the writing shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim."). Courts look to applicable nonbankruptcy law to determine whether a claim is allowable by law. *In re Residential Cap.*, 2015 WL 4747860, at *7. Courts may also "accept proofs of claim supported by evidence that does not exactly conform to the provided form." 4 COLLIER ON BANKRUPTCY ¶ 501.02 (16th 2024) (citing *Sears v. Sears (In re Sears)*, 863 F.3d 973, 980 (8th Cir. 2017).)

Thus, to receive the benefit of *prima facie* validity, "the proof of claim must set forth the facts necessary to support the claim." *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988) (holding that claimant's proof of claim was not entitled to the presumption of *prima facie* validity because it did not set forth the necessary facts); *see also* FED. R. BANKR. P. 3001(c)(1) (requiring claimant to provide documentation where claim is based on a writing).

On the whole, "[a]n objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." *In re Lehman Bros. Holdings, Inc.*, 519 B.R. 47, 53 (Bankr. S.D.N.Y. 2014) (quoting *Alsohaibi v. Arcapita Bank B.S.C.(c) (In re Arcapita Bank B.S.C.(c))*, 508 B.R. 814, 817 (S.D.N.Y. 2014)). A party objecting to the proof of claim must only provide evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See Waterman S.S. Corp. v. Aguiar (In re Waterman S.S. Corp.)*, 200 B.R. 770, 774–75, 777 (Bankr. S.D.N.Y. 1996) (reopening discovery into asbestos claims due to insufficient information upon which to determine validity of claims); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (same); *In re Rockefeller*, 272 B.R. at 539 (same).

Rule 3007 governs objections to claims. FED. R. BANKR. P. 3007. Specifically, an objecting party can object to a claim in an omnibus objection, under Rule 3007(d)(6), that was "presented in a form that does not comply with applicable rules, and the objection states that the objector is unable to determine the validity of the claim because of the noncompliance." FED. R. BANKR. P. 3007(d)(6). Under this rule, the objector simply has to state that, *due to the*

*noncompliance*, the objector was unable to verify the validity of the claim.  Therefore, an

objector's objection can only prevail when they establish the noncompliance of a claim.

Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by

a preponderance of the evidence."  *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL

3832065, at *4, *9 (Bankr. S.D.N.Y. Dec. 29, 2005) (citing Bankruptcy Rule 3001(f) and

holding that claimant did not meet its burden to prove validity of anticipatory breach and unjust

enrichment claims, but that further evidence was needed to assess the merits of lack of good faith

claim) (quoting *In re Allegheny*, 954 F.2d at 173–74); *see also In re St. Johnsbury Trucking Co.*,

206 B.R. 318, 323, 328 (Bankr. S.D.N.Y. 1997) (citing Bankruptcy Rule 3001(f) and allowing

claim where debtor failed to refute any of the material facts in proof of claim).  In other words,

the claimant must prove the claim and not sit back while the objector attempts to disprove it.  *See*

*In re Bennett*, 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988) (holding that debtor presented sufficient

evidence to rebut the *prima facie* validity of claimant's claim and that claimant failed to prove

the claim by a preponderance of credible evidence).

### III.    <u>DISCUSSION</u>

#### A.  The No Liability Claims

There are fifteen No Liability Claims identified in Exhibit 1 and listed earlier in this

Opinion.

##### 1.  <u>The Equity Awards Claims</u>

There are ten "Equity Awards" claims with three different levels of substantiation.  First,

Claim No. 494 attaches the Award Agreement, setting forth the most detail of any of the Equity

Awards claims.  The Award Agreement gives more than enough detail to inform the Debtor of

the basis of the claim.  Next, for eight of the ten claims (Claim Nos. 1181, 1196, 735, 1157,

1158, 400, 1212, and 644; *not 494 or 1462*), the claimants attach either a YECS or an ECS

stating the equity award they were to receive.  This, too, is sufficient to inform the Debtor of the

basis of each claim.  Finally, Claim No. 1462 failed to attach anything, instead just adding on

box eight of the Claim "ESPO RSU AWARD FOR 2022 – 2023, PART OF ANNUAL

COMPENSATION."  (Claim No. 1462 (caps in original).)  This seems to have been enough to

tell the Debtor that the claim was one for an equity award, which is how the Debtor classified it.

(Objection Ex. 1.)

      The Debtor objects to these ten claims on the basis that the awards were forfeited upon

the claimants' termination of employment with the Debtor when the Bank went into receivership,

on March 10, 2023, before either the "grant" date or the "vest" date and, therefore, the Debtor

has no liability with respect to these claims.  (Bixler Declaration ¶ 6(a).)  In support of its

Objection, the Debtor filed the EIP as Annex A to the Bixler Declaration.  (*Id.*; Annex A (copy

of the EIP).)  According to the EIP, a "Service Provider" is an "Employee, Director, or

Consultant" of the Debtor or one of its affiliates.  (*Id.* at 5.)

      It is uncontested that the Bank ceased to be an affiliate of the Debtor when it went into

receivership.  And when the Bank went into receivership, all the employees of the Bank ceased

to be employed by an "affiliate" of the Debtor.  As of that date, each of these claimants was no

longer a "Service Provider" for the Debtor or one of its affiliates.  The claimants' termination

resulted in the loss of any ungranted or unvested equity awards.  Because the claimants forfeited

any ungranted or unvested awards upon the termination of their employment with the Debtor,

they are not entitled to such awards.

### a. The Papadakos Claim and Response

Ms. Papadakos claims that she was still working for the Debtor on the vesting date of her

equity award.  (Oct. 2, 2024, Hr'g Tr. at 81:8–82:1; Papadakos Claim at 2, 5; Papadakos

Response at 1.)  She annexed to her Response a letter from PricewaterhouseCoopers Inc., the

appointed liquidators for the Bank's Canadian Branch, stating that her employment would end on

August 31, 2023, which is *after* the vesting date of her award of May 1, 2023.  However, it is not

her loss of employment that caused her termination with the Debtor, but rather, the Bank losing

its status as an affiliate of the Debtor that caused all of the Bank's employees to cease being

employees of the Debtor.  Put simply, she may have continued working for the Bank's Canadian

branch, but she did not work for an affiliate of the Debtor, which is a requirement for "Service

Provider" status under the EIP.  As such, her award was forfeited when the Bank went into

receivership.

Because the claimants, including Ms. Papadakos, ceased to be Service Providers for the

Debtor or one of its affiliates before their equity awards were either granted or vested, the awards

were forfeited.  As such, the Objection to the Equity Award Claims is sustained.

### 2.   The Loss of Value Claims

With respect to the three "Loss of Value" claims (Claim Nos. 743, 785, and 1046), the

Objection is also sustained.  Claim No. 743 has no attachments.  Instead, it merely states in box 8

of the Proof of Claim form that the claim was for a "[s]tock purchase."  (Claim No. 743 at 2.)

Meanwhile, Claim No. 785 attaches a letter explaining, *inter alia*, that part of his employee

compensation had been in stock and the claim was for the loss of value in that stock.  (Claim No.

785 at 5.)  That Claim also attaches proof of the loss of value of the stock.  (*Id.* at 8.)  Finally, the

Prindible Claim does not attach any proof, but instead simply states in box 8 of the Proof of

Claim that SVB acted irresponsibly (by "chasing short-term profits over long-term stability") to the detriment of shareholders. (Prindible Claim at 2.) In the Prindible Response, the claimant goes into further detail, alleging that the debtor breached its fiduciary duty to shareholders by taking careless risks which led to a loss of value in the shares of the company. (Prindible Response at 1.)

The Debtor objected to the three claims under a "No Liability" theory arguing, in essence, that the claimants failed to make a *prima facia* case that the Debtor was liable for the loss in value of the stock. (Objection ¶ 23(b).) While the Debtor does not point to any case or statute, the Loss of Value Claims most closely resemble claims asserted under a breach of the fiduciary duty of care theory. But such a claim, if properly stated, would be a claim against SVB's directors and officers, and not against the Debtor. The claim would also be a "general claim" that belonged to the Debtor's estate and not to individual creditors or shareholders. All shareholders would have suffered loss in value of their stock if SVB's directors and officers breached their fiduciary duties resulting in the alleged loss in value of the stock.

As the Second Circuit recently explained *In re Nordlicht*, 115 F.4th 90 (2d Cir. 2024):

> A creditor's legal claim asserted against the debtor or a third party to the bankruptcy, too, is property of the estate if [the claim's] outcome might have any conceivable effect on the bankruptcy estate. A central purpose . . . of extending bankruptcy jurisdiction to actions against certain third parties [and] suits against debtors themselves [ ] is to protect the assets of the estate [and] to ensure a fair distribution of those assets at a later point in time.
>
> However, not all claims asserted by a creditor are property of the estate. Only general claims are; personal claims are not. General claims arise [ ] from [the] harm done to the estate, and thus could be brought by any creditor. General claims are property of the estate, because they inure [ ] to the benefit of all creditors by enlarging the estate, thereby making the trustee . . . the proper person to assert the claim. [T]he creditors are bound by the outcome of the trustee's action.

> Personal claims, on the other hand, are claim[s] for injury that [are] particular [ ] to the creditor, and in which other creditors generally have no interest. Personal claims therefore are in the legal or equitable interest only of the creditor. Creditors are exclusively entitled to pursue [personal] claim[s], and the bankruptcy trustee is precluded from doing so. The distinction between general and personal claims promotes the orderly distribution of assets in bankruptcy by funneling all asset-recovery litigation through a single plaintiff: the trustee.

*Id.* at 105 (internal quotations and citations omitted); *see also In re Tribune Co.*, 2013 WL 1909617, at *9 n.9 (Del. Bankr. May 2, 2013) (concluding that, to the extent that a shareholder may have a claim for breach of fiduciary duty for diminution in the value of stock, it is "likely to be [a] derivative claim[] that cannot generally be brought by a single shareholder").

### a.  The Prindible Claim and Response

The Prindible Response gives more detail about the Prindible Claim, detailing the steps the Debtor's management took or failed to take, which, Mr. Prindible claims, makes the Debtor liable for the loss in value of the stock Mr. Prindible held.  (Prindible Response at 1–2.) Specifically, Mr. Prindible claims that the Debtor "did not adequately hedge against risk, failed its own liquidity stress tests, and chased short-term profits at the expense of long-term stability." (*Id.*)

But as discussed above, even if a cause of action did exist for a breach of fiduciary duty, it would be for an injury that affected *all shareholders*.  Neither the Prindible Claim nor the Prindible Response state any facts that the Debtor took actions that hurt Prindible *individually*. Therefore, such a claim would be a "general claim" that belongs to the Debtor's estate, and a trustee would be the proper person to assert it.

### 3.  The Curinos Claim

The Curinos Claim was filed by King & Spalding LLP ("K&S") on behalf of Curinos LLC.  In support of its claim, Curinos attached the Letter Agreement from which the claim

stemmed.  (Claim No. 1252 at 11–12.)  The Debtor objects to the Curinos Claim on the grounds

that the Letter Agreement is with the Bank, not the Debtor.  (Objection, Ex. 1 at 1.)  Neither

K&S nor Curinos filed a response disputing that assertion.  An examination of the Curinos Claim

confirms that the Letter Agreement is indeed with the Bank and not the Debtor, SVB Financial

Group.  As such, the Debtor has sufficiently demonstrated a lack of privity between the parties.

The Debtor is, therefore, not liable under the agreement, and the Objection to the Curinos Claim

is sustained.

### 4.  The Zurich Insurance Claims

The Zurich Insurance Claim was filed as a protective claim in the total amount of $1.  In

support, Zurich attaches a letter explaining, *inter alia*, that Zurich had issued the Debtor certain

insurance policies.  (Claim No. 117 at 6.)  As part of the policies, the Debtor is obligated to pay

the deductible level for each occurrence.  (*Id.*)  Zurich ends the Zurich Insurance Claim with a

statement that if more supporting documentation is needed, "Zurich will provide [it] upon

request."  (*Id.*)  The Debtor, on the other hand, asserts that after a search of its books and records,

it found that no outstanding amounts are due to the claimant.  (Objection ¶ 23(d).)  Zurich did not

file a reply providing more documents to corroborate and/or supplement its claim despite having

plenty of time to do so.  Zurich originally filed its claim on or around June 15, 2023, over a year

ago.  (Claim 117 at 1.)  The Bar Date passed on August 13, 2023, also over a year ago.  Finally,

Zurich filed no response to the Objection.  Without further corroboration, it is not possible for

the Debtor to know the basis of the claim.  As such, the Objection to the Zurich Insurance Claim

is sustained.

B.    **The Insufficient Documentation Claims**

There are five "Insufficient Documentation Claims" to which the Debtor is objecting (Claim Nos. 222, 359, 432, 698, and 799).  The five claims can be subdivided into two separate subclasses: (i) claims that show "Silicon Valley Bank" as the invoiced party (Claims No. 432 and 698; collectively, the "Silicon Valley Bank Claims"); and (ii) claims that show "SVB Financial Group" as the invoiced party (Claim Nos. 222, 359, and 799; the "SVB Financial Group Claims").

For each of these, the Debtor claims that the documents attached to each of the Insufficient Documentation Claims are not enough to "verify the Debtor is a party."  (Objection, Ex. 2.)  The Debtor also claims the documents are insufficient to "verify the existence or amount of the [claim]," and the Debtor "does not have any record of any contracts with the claimant[s] as . . . counterpart[ies]."  (*Id.* ¶ 25.)  Additionally, the Debtor asserts that these claims are based on writings, and the claimants all failed to attach copies of such writings or to explain that they had been lost or destroyed.  (*Id.* ¶ 26.)  The Bixler Declaration includes a single sentence in support of the Objection to the Insufficient Documentation Claims, stating that "[u]pon a thorough review of the proofs of claim . . . the Debtor has determined that [these claims] lack the requisite supporting documentation for the Debtor to verify [their] existence."  (Bixler Declaration ¶ 8.)  The Supplemental Bixler Declaration further adds that there was a "reasonable inquiry" undertaken with a "high level of diligence."  (Supplemental Declaration of Bixler ¶ 5.)

1.    The Silicon Valley Bank Claims

Each of the Silicon Valley Bank Claims attaches invoices for "[s]ervices [p]erformed." (Claim No. 432 at 2; Claim No. 698 at 2.)  Claim No. 432 attaches invoices for "[s]ecurity [s]ervices" and "[s]ales [t]ax."  (Claim No. 432 at 7–11.)  Claim No. 698 attaches invoices for

"[c]onsulting" services.  (Claim No. 698 at 5–8.)  Notably, the invoices for both claims identify

*Silicon Valley Bank* as the party being invoiced.  (Claim No. 432 at 7–11; Claim No. 698 at 5–8.)

For a claim to enjoy a presumption of validity, it must set forth the facts necessary to support the

claim.  Here, the claims fail to set forth the necessary fact that the Debtor was the party who

received the services, and not the Bank.  On the contrary, the invoices set forth the Bank as the

party who received the services.  Because the claimants failed to state sufficient facts to establish

the validity of each of the Silicon Valley Bank Claims, the Objection to those claims is sustained.

### 2.  The SVB Financial Group Claims

The SVB Financial Group Claims attached invoices for "[s]ervices."  (Claim No. 222 at

2; Claim No. 359 at 2; Claim No. 799 at 2.)  Claim No. 222 attached an invoice for "employee

assistance program" or "EAP" services.  (Claim No. 222 at 2, 4.)  Claim No. 359 attached a

summary of the "internet" and "wireless" services provided, including the account number and

the legal name of the service provider for each service.  (Claim No. 359 at 5.)  Finally, Claim No.

799 attached an invoice for services performed by "[b]usiness [a]nalyst[s]."  (Claim No. 799 at

5.)  Notably, each of these claims identifies "SVB Financial Group" as the party for whom these

services were performed.  In light of such, each of these claimants has established a rebuttable

presumption that the Debtor, and not the Bank, was the party for whom these services were

rendered.  Therefore, each claimant has set forth sufficient facts to give each of their claims the

benefit of *prima facie* validity.

The Debtor objects to the SVB Financial Group Claims by stating, in essence, that they

lack sufficient documentation to "verify the Debtor is a party."  (Objection, Ex. 2.)  However, it

is the Debtor's burden to establish that a proof of claim that has been presumed valid is legally

insufficient, which the Debtor has failed to do.  Rather, the only evidence the Debtor submitted

in support of its objection to these claims is the conclusory statement in the Bixler Declaration noting that "the Debtor has determined that the [SVB Financial Group Claims] listed on Exhibit 2 lack the requisite supporting documentation for the Debtor to verify the existence of any claim against the Debtor." (Bixler Declaration ¶ 8.) Such a statement alone does not constitute sufficient evidence to rebut the presumption of validity of each of the SVB Financial Group Claims. The Court notes, for example, that Claim No. 799 states that "[t]he Debtor has listed you on Schedule G as a counterparty to one or more executory contracts." (Claim No. 799 at 1.)

The Debtor makes a second argument, under Bankruptcy Rule 3001(c)(1), that the claimants failed to attach the underlying writing (*i.e.*, contract or agreement) for their respective claim and, therefore, the claims fail to comply with the applicable rules. FED. R. BANKR. P. 3001(C)(1). (*See also* Objection ¶ 26.) However, the basis of these claims does not rest on a writing but, rather, on *services performed*. *See In re Benyamin*, 587 B.R. 243, 249 (Bankr. S.D.N.Y. 2018) ("Section (c)(1) [of Rule 3001 of the Federal Rules of Bankruptcy Procedure] requires that, if the claim is based on a writing, that writing must be attached or the circumstances of its unavailability must be explained." (quoting *In re Gorman*, 495 B.R. 823, 831 (Bankr. E.D. Tenn. 2013))). As such, no writing is necessary for the claimants to state sufficient facts to support their claims. Accordingly, Bankruptcy Rule 3001(c)(1) is not applicable here.

Thus, as the SVB Financial Group Claims comply with all applicable rules, those claimants have established their presumption of validity, and the Debtor has failed to meet their burden of proof to show that any of these claims are legally insufficient. Therefore, the Objection to the SVB Financial Group Claims is overruled without prejudice.

## IV.    <u>CONCLUSION</u>

For the reasons explained above, the Objection is **SUSTAINED** to the No Liability

Claims, which are **EXPUNGED.**  The Objection is also **SUSTAINED** to the Insufficient

Documentation Claims Nos. 432 and 698, which are **EXPUNGED.**  The Objection is

**OVERRULED WITHOUT PREJUDICE** to the Insufficient Documentation Claims Nos. 222,

359, and 799.

**IT IS SO ORDERED.**

Dated:  October 23, 2024
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge