**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SVB FINANCIAL GROUP,<br><br>     Reorganized Debtor. | NOT FOR PUBLICATION<br><br>Case No. 23-10367 (MG) |

**MEMORANDUM OPINION AND ORDER SUSTAINING**
**THE LIQUIDATING TRUST'S THIRTEENTH**
**OMNIBUS OBJECTION TO CERTAIN PROOFS OF CLAIMS**

*A P P E A R A N C E S:*

SULLIVAN & CROMWELL LLP
*Attorneys for the Reorganized Debtor*
125 Broad Street
New York, NY 10004
By: James L. Bromley, Esq.
   Andrew G. Dietderich, Esq.
   Christian P. Jensen, Esq.

Michael Scheffe
*Pro se Creditor*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

   Pending before the Court is the thirteenth omnibus claims objection (the "Claims Objection," ECF Doc. # 1637) of SVB Financial Trust (the "Liquidating Trust"), as successor-in-interest to SVB Financial Group (the "Debtor" or "SVB") for entry of an order disallowing and expunging certain claims (each, "POC [Claim Number]," and collectively, the "No Liability Claims") from the Debtor's claims register in their entirety. (Claims Objection at 1.) The No Liability Claims are set forth and identified on Exhibit 1 to the proposed order (the "Proposed Order") that is annexed to the Claims Objection as Exhibit A. Also included as part of the Claims Objection is the declaration of Holden Bixler, managing director at Alvarez & Marsal North America LLC, in support of the Claims Objection (the "Bixler Declaration") as Exhibit B.

While no formal objections were received, the Liquidating Trust did receive an informal response from claimant Michael Scheffe (the "Scheffe Response") on January 29, 2025, with respect to the Liquidating Trust's objection to POC 824 (the "Scheffe Claim"). On February 7, 2025, the Liquidating Trust filed an omnibus reply (the "Omnibus Reply," ECF Doc. # 1685) that addresses, among other things, the Scheffe Response.[1] Copies of the Scheffe Response and Scheffe Claim are attached to the Omnibus Reply as Exhibit B-1 and Exhibit B-2, respectively.

For the reasons discussed, the Court **SUSTAINS** the Claims Objection and **OVERRULES** the Scheffe Response.

## I. BACKGROUND

**A. Relevant Case History**

On March 17, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for chapter 11 relief under the Bankruptcy Code. (Claims Objection ¶ 1.) On March 28, 2023, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102 of the Bankruptcy Code. (*Id.*)

On June 29, 2023, the Court entered an order establishing certain dates and deadlines for filing proofs of claims (the "Bar Date Order," ECF Doc. # 373). (*Id.* ¶ 5.) Specifically, the Bar Date Order established, among other things, (a) August 11, 2023 at 4:00 p.m. as the bar date for certain entities other than governmental units to file proofs of claim against the Debtor that arose prior to the Petition Date, including, subject to the exceptions, secured claims, unsecured priority claims, unsecured nonpriority claims, and claims pursuant to section 503(b)(9) of the Bankruptcy Code (the "General Bar Date"), and (b) September 14, 2023 at 4:00 p.m. as the bar date for governmental units to file proofs of claim against the Debtor (the "Governmental Bar Date").

---

[1] In addition to the Scheffe Response, the Omnibus Reply also addresses the informal response the Liquidating Trust received with respect to the eleventh omnibus claims objection (ECF Doc. # 1635).

(Bar Date Order ¶¶ 3–4.)  The bar date for any person or entity that holds a claim that arises from the rejection of an executory contract or unexpired lease is (i) the later of (A) the General Bar Date and (B) the date that is 30 days after the effective date of rejection for such executory contract or unexpired lease or (ii) any date this Court may fix in the applicable order authorizing the rejection of an executory contract or unexpired lease.  (Claims Objection ¶ 5.)

On August 2, 2024, the Court entered the *Findings of Fact, Conclusions of Law and Order Confirming the Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Confirmation Order," ECF Doc. # 1379, and with respect to the plan attached thereto, the "Plan") confirming the Plan.  (*Id.* ¶ 2.)

On November 7, 2024, all conditions precedent to the Effective Date set forth in Article 13 of the Plan were satisfied in accordance with the Plan and the Confirmation Order, and the Effective Date of the Plan occurred.  (*See Notice of Effective Date of Debtor's Confirmed Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, ECF Doc. # 1563.)

**B.  Omnibus Claims Objection Procedures**

As of the date of the Claims Objection, the Debtor indicates that it has received nearly 1,500 claims asserting over $9.5 billion.  (*Id.* ¶ 7.)  Such claims include, among other things, general unsecured trade claims, employee claims, and litigation claims.  (*Id.*)  The Debtor notes that a number of these claims have been or may be satisfied in the ordinary course of business or pursuant to a prior order of the Court.  (*Id.*)  Claims that were allowed as of the Effective Date have been satisfied in accordance with the treatment provided for in the Plan.  (*Id.*)

On November 30, 2023, the Court entered an order (ECF Doc. # 713) approving the Debtor's proposed omnibus claims objection procedures (the "Omnibus Claims Objection Procedures").  (*Id.* ¶ 6.)  Among other things, the Omnibus Claims Objection Procedures allow

3

the Debtor to combine and file up to 200 objections to claims in a single omnibus objection and group together the claims with multiple objections if the multiple objections are the same with respect to all claims. (*Id.*)

### C. The Debtor's Thirteenth Omnibus Claims Objection

The Liquidating Trust seeks entry of an order disallowing and expunging each of the No Liability Claims in their entirety from the Debtor's claims register. The Liquidating Trust indicates that, with the assistance of its professionals, it reviewed the No Liability Claims to determine, among other things, whether such claims had already been satisfied by the Debtor or the Liquidating Trust and/or corresponded to notation of amounts outstanding in the Debtor's books and records. (*Id.* ¶ 25.)

Based on its review, the Liquidating Trust believes the No Liability Claims should be disallowed and expunged for being claims the Liquidating Trust is not liable for. (*Id.* ¶ 26.) In support of disallowance, the Liquidating Trust cites to section 502(b)(1), which provides that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor." (*Id.* (quoting 11 U.S.C. § 502(b)(1).) The Liquidating Trust indicates that the No Liability Claims allege (i) amounts owed on account of ownership of common stock or preferred stock or (ii) amounts owed due to the loss in value of such common stock or preferred stock. (*Id.* ¶ 27.) It maintains it is unclear as to what the basis of many of the No Liability Claims are. (*Id.*) For example, some No Liability Claims only note the number of shares of stock as the basis of the claim and attach an account statement showing the number of shares (*see, e.g.*, POC 874); some No Liability Claims explicitly mention "loss" under the basis of the Claim (*see, e.g.*, POC 886); and some No Liability Claims do not explicitly mention "loss" but attach an account statement of

4

a date other than the Petition Date that show a higher value than the Petition Date value (*see, e.g.*, POC 959). (*Id.*)

Moreover, the Liquidating Trust argues that, to the extent that the No Liability Claims are based solely on ownership of common stock or preferred stock, they are interests and not claims. (*Id.*) To the extent that the No Liability Claims are seeking amounts on account of loss in stock value, the Liquidating Trust argues that these claims, if properly stated, would be claims against the Debtor's directors and officers as opposed to the Debtor. (*Id.*) Citing to this Court's previous ruling on the eighth omnibus claims objection, the No Liability Claims, the Liquidating Trust contends, would therefore be "general claim[s]" that belong to the Liquidating Trust, as successor to the Debtor, and "not to individual creditors or shareholders." (*Id.* (citing *In re SVB Fin. Grp.*, No. 23-10367, 2024 WL 4565979, at *9 (Bankr. S.D.N.Y. Oct. 23, 2024)).) Even if these claims were not "general claims" that belonged to the Debtor, they would have been subject to subordination under 11 U.S.C. § 510(b) because they relate to "damages arising from the purchase or sale of such a security." 11 U.S.C. § 510(b). The Liquidating Trust points to the Plan, which classifies Section 510(b) Claims as claims in Class 7. (*Id.*) As set forth in the Plan, holders of such claims are not entitled to any distribution. (*Id.* (citing Plan § 4.2.8).)

The Liquidating Trust asserts that the disallowance and expungement of the No Liability Claims in their entirety is "necessary" to "prevent the allowance of claims for which the claimants are not entitled to any recovery from the Liquidating Trust." (*Id.* ¶ 28.)

**D. The Scheffe Claim and Scheffe Response**

The Scheffe Claim was filed in the amount of $50,146.50 in connection with "SVB Financial Group shares CUSIP 78486QAG6." (Scheffe Claim at 2.) Attached to the Scheffe Claim are various broker account statements. (*Id.* at 8–9.)

The Scheffe Response opposes the Claims Objection as it pertains to the Scheffe Claim on grounds that the failure of Silicon Valley Bank was not the "responsibility of the Claimant." (Scheffe Response at 1.) Moreover, the response makes clear that the amount sought in the Scheffe Claim was on account of the loss in value of certain "SVB Series B Notes" that Mr. Scheffe held. (*Id.*) Annexed to the Scheffe Response are copies of (i) the confirmation notice for the purchase of these notes; (ii) the confirmation notice for the sale of the claimant's shares of these notes; and (iii) a statement showing the "actual dollar loss amount." (*Id.* at 2–5.)

## II. **LEGAL STANDARD**

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502. Bankruptcy Rule 3007(c) and 3007(d) provide that, under certain circumstances, or with Court approval, more than one claim may be joined in a single objection. FED. R. BANKR. P. 3007(c)–(d).[2]

As set forth in Bankruptcy Rule 3001(f), a proof of claim executed and filed in accordance with Bankruptcy Rule 3001 shall constitute *prima facie* evidence of the validity and amount of claim. *See In re Residential Cap.*, 501 B.R. 531, 538 (Bankr. S.D.N.Y. 2013); *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citing Bankruptcy Rule 3001(f) and holding that the evidence submitted by the debtor was insufficient to overcome the validity and amount of bank's proof of claim); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 n.13, 553 (Bankr. S.D.N.Y. 2000) (citing Bankruptcy Rule 3001(f) in analysis of debtors' objection to former tenant's proof of claim and granting partial summary judgment with respect to the objection where there were no material facts in dispute).

---

[2] The order establishing the Omnibus Claims Objection Procedures provides a list of certain grounds upon which the Debtor is authorized to join claims in a single omnibus objection.

To receive the benefit of *prima facie* validity, however, "the proof of claim must set forth the facts necessary to support the claim." *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988) (citations and internal quotation marks omitted) (holding that claimant's proof of claim was not entitled to the presumption of *prima facie* validity because it did not set forth the necessary facts); *see also* FED. R. BANKR. P. 3001(c)(1) (requiring claimant to provide documentation where claim is based on a writing). "Failure to attach the documentation required by Rule 3001 will result in the loss of the *prima facie* validity of the claim." *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010) (citations omitted).

On the whole, "[a]n objecting party 'bears the initial burden of production and must provide evidence showing the claim is legally insufficient' under 11 U.S.C. § 502." *In re Lehman Bros. Holdings, Inc.*, 519 B.R. 47, 53–54 (Bankr. S.D.N.Y. 2014) (quoting *In re Arcapita Bank B.S.C.(c)*, 508 B.R. 814, 817 (S.D.N.Y. 2014)). A party objecting to the proof of claim must only provide evidence sufficient to negate the *prima facie* validity of the claim by refuting one or more of the facts in the filed claim. *See In re Waterman S.S. Corp.*, 200 B.R. 770, 774–75, 777 (Bankr. S. D.N.Y. 1996) (reopening discovery into asbestos claims due to insufficient information upon which to determine validity of claims); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229(DC), 2010 WL 234827, at *3 (S.D.N.Y. Jan. 22, 2010) (same); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); *Rockefeller*, 272 B.R. at 539 (same).

Once this occurs, "the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re WorldCom, Inc.*, No. 02-13533 (AJG), 2005 WL 3832065, at *4, *9 (Bankr. S.D.N.Y. 2005) (citing Bankruptcy Rule 3001(f) and holding that

7

claimant did not meet its burden to prove validity of anticipatory breach and unjust enrichment claims, but that further evidence was needed to assess the merits of lack of good faith claim) (quoting *Allegheny*, 954 F.2d at 173–74); *see also In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323, 328 (Bankr. S.D.N.Y. 1997) (citing Bankruptcy Rule 3001(f) and allowing claim where debtor failed to refute any of the material facts in proof of claim).

Generally, the claimant must prove the claim and not sit back while the objector attempts to disprove it. *See In re Bennett,* 83 B.R. 248, 252 (Bankr. S.D.N.Y. 1988) (holding that debtor presented sufficient evidence to rebut the *prima facie* validity of claimant's claim and that claimant failed to prove claim by a preponderance of credible evidence).

### III.    DISCUSSION

The Liquidating Trust argues that, based on a review of the Debtor's books and records, the No Liability Claims should be disallowed and expunged in their entirety. (*See* Bixler Declaration ¶ 6.) Here, the Liquidating Trust has sufficiently overcome the *prima facie* validity of the No Liability Claims and established that these claims are unenforceable. As noted, these claims seek amounts allegedly owed on account of ownership of common or preferred stock or amounts owed due to "loss in value" of such common or preferred stock.

In general, an equity interest does not constitute a "claim" under section 101(5) of the Bankruptcy Code and should not be filed on a proof of claim. *See* 11 U.S.C. §§ 101(5) & 101(16); FED. R. BANKR. P. 3007(d)(2)(G); *see also In re Lehman Bros. Holdings Inc.*, 855 F.3d 459, 469 (2d Cir. 2017) (distinguishing an interest in an equity security from a claim against the debtor); *In re Pine Lake Vill. Apartment Co.*, 21 B.R. 478, 480 (Bankr. S.D.N.Y. 1982) (stating that an equity interest is not a claim against the debtor and the equity interest is only entitled to a proof of interest).

For claims that seek amounts in connection with loss in stock value, this Court previously concluded that (i) such claims, if properly stated, would be claims against the Debtor's directors and officers, and not against the Debtor, and (ii) would be claims that belonged to the Liquidating Trust as opposed to individual creditors or shareholders. *See SVB Fin. Grp.*, 2024 WL 4565979, at *9.

In any event, such claims would be subject to subordination under section 510(b) of the Bankruptcy Code because they concern "damages arising from the purchase or sale of such a security." 11 U.S.C. § 510(b). Section 4.2.8 of the Plan provides that Section 510(b) Claims are not entitled to any distribution under the Plan. (Plan § 4.2.8.)

With respect to the Scheffe Claim, such claim is clearly predicated on the alleged loss in value of the preferred stock Mr. Scheffe held. (*See* Scheffe Response at 1–2, 5 (containing documentation of the "actual dollar loss amount" to substantiate the $50,146.50 in value that he lost).) Mr. Scheffe believes he is entitled to such loss in value because the failure of Silicon Valley Bank was not his "responsibility." (*Id.* at 1.) However, the Scheffe Claim does not establish the Debtor's liability for the loss in value he is seeking—simply showing that there was a decrease without establishing that it is the Debtor who was responsible is not enough. To the extent Mr. Scheffe is alleging breach of fiduciary duty or mismanagement by the Debtor's former directors and officers, the Court has already concluded that such a claim would belong to the Debtor's estate and not individual creditors. *See SVB Fin. Grp.*, 2024 WL 4565979, at *9. Accordingly, the Scheffe Response to the Claims Objection is hereby **OVERRULED**.

## IV.    CONCLUSION

For the reasons discussed, the Court **SUSTAINS** the Claims Objection as to the No Liability Claims and **OVERRULES** the Scheffe Response.

**IT IS SO ORDERED.**

Dated:    February 11, 2025
            New York, New York

                                            *Martin Glenn*
                                            MARTIN GLENN
                                  United States Bankruptcy Judge